# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN MART, Individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>  v.<br><br>TACTILE SYSTEMS TECHNOLOGY, INC., GERALD R. MATTYS, LYNN BLAKE, and BRENT A. MOEN,<br><br>         Defendants. | No. 0:20-cv-02074-NEB-BRT |

## BRIAN MART'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND <u>APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL</u>

## I. INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") grants courts the authority to appoint as lead plaintiff a "person or group of persons." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Such authority has been used to appoint small lead plaintiff groups that jointly apply for appointment. It has also been used to join separate applicants as co-lead plaintiffs when the movants speak to each other and agree, or where the court puts the non-consenting movants together, without choice.

This is just such a case where there is no good reason why the movants cannot agree to prosecute this case jointly or the court should not put the movants together. Only two motions for appointment as lead plaintiff are pending before this Court pursuant to the PSLRA. No other parties stand to object.

Plaintiff, and now movant, Brian Mart, through his counsel Hagens Berman Sobol Shapiro LLP, and Gustafson Gluek PLLC, identified, investigated, drafted and filed the initial and only complaint against Defendants.

Mr. Mart is the owner and operator of an accredited private school providing early education and childhood services, and his loss of $10,580.67 is personally significant to him. Declaration of Brian Mart, ECF No. 19-3 ¶¶ 2-3; Certification of Brian Mart ECF No. 19-1; Loss Calculations ECF No. 19-2. There are no questions regarding his adequacy or typicality, nor the imminent qualifications of his selected counsel.

The only other movant for lead plaintiff is St. Clair County Employees Retirement System ("St. Clair County"), an institutional investor. While St. Clair County did not draft or file a complaint, there is no question concerning St. Clair County's adequacy or

typicality, nor their selection of qualified counsel, Robbins Geller Rudman and Dowd LLP as lead, and Zimmerman Reed LLP as local counsel.

St. Clair County suffered absolute larger losses than Mr. Mart, but with assets of $253.8 million as of December 31, 2019[1] the St. Clair County's $65,199.57 loss is only .025% of its assets – neither personal to the St. Clair County nor significant. *See e.g.*, *In re Del Monte Foods Co. S'holders Litig.,* No. 6027-VCL, 2010 WL 5550677, at *6-7 (Del. Ch. Dec. 31, 2010) (selecting as lead plaintiff a pension trust that owned 25,000 shares worth $475,000 and representing 0.07% of its assets under management instead of a European asset manager for private and institutional clients that held 1,899,900 shares worth $36 million and representing 0.02% of its assets under management). With 1500 members, the personal loss averages out to $43 each.

Aside from the relatively different significance of the losses to Mr. Mart and St. Clair County, Mr. Mart has a different trading pattern from St. Clair County. Mr. Mart traded late in the Class Period (May 7, 2018 - June 8, 2020). Mr. Mart bought on March 11, 2020, and sold on March 14, 2020 for a loss. He then bought again on May 13, 2020 and retained those shares through the Class Period for an additional loss. St. Clair County purchased all of its shares in the middle of the Class Period, on December 10, 2019, and held them through the Class Period. In between Mr. Mart's purchases and St. Clair

---

[1] Nyhart, *St. Clair County Emps. Ret. Syst. 12/31/2019 Funding Valuation Management Summary* (Sept. 20, 2020), https://www.stclaircounty.org/offices/hr/forms/retirement/2019%20Actuarial%20Report%20-%20Pension.pdf.

County's, is the first partial disclosure of the truth alleged in the complaint: the unsealed *Qui Tam* lawsuit alleging fraudulent sales and Medicare fraud. ECF 1 No. ¶¶ 9, 52. The next and final partial disclosure of the truth pled in the Complaint occurs with the publication of the OSS Research report on June 8, 2020. The OSS Research report alleges that Defendants falsified Tactile's addressable market, were involved in a "daisy-chain kickback scheme" and concealed that Medicare audits found the failure of Tactile to establish medical necessity in 71% of its submitted claims. ECF No. 1 ¶¶ 11, 55-58. The *Qui Tam* complaint and OSS Research report are two different frauds. Thus, each movant, having purchased shares at different points in the revelation of the fraud, may have somewhat different incentives.

Finally the law firms here are not strangers to each other. Hagens Berman and Robbins Geller have a history of working with each other and know how to litigate cases effectively and efficiently. So too, the movants have no interests adverse to each other, and each have an interest in making sure that the class is adequately represented. In addition, their differing positions will bolster the chances of successfully reaching class certification, since the attack on an institution with sophisticated professionals making the investment decisions often using sophisticated trading and derivative protections is likely different from the attack on an individual. Thus, appointing both Mr. Mart and St. Clair County, and approving their selection of counsel will better ensure the most adequate and capable representation.

## II. ARGUMENT

The PSLRA grants courts the authority to appoint as lead plaintiff a "person or group of persons." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); A group of persons can collectively serve as lead plaintiff. *Erickson v. Hutchinson Tech. Inc.*, No. 0:15-cv-04261-DSD-LIB, 2016 WL 8199314, at *3 (D. Minn. Apr. 4, 2016) (*citing Kops v. NVE Corp.*, No. 0:15-cv-04261-DSD-LIB, 2006 WL 2035508, at *5 (D. Minn. July 19, 2006); *see also In re Surebeam Corp. Sec. Litig.*, No. 3:03-cv-01721-JM-POR, 2004 WL 5159061, at *4 (S.D. Cal. Jan. 5, 2004) (collecting cases where groups of unrelated persons have been appointed); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (noting that the PSLRA "expressly contemplates the appointment of more than one plaintiff").

The statutory language of the PLSRA also states, "the court . . . shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable . . ." which allows for the possibility of the Court combining competing movants. *Sayce v. Forescout Techs., Inc.*, No. 3:20-cv-00076-SI, 2020 WL 6802469, at *7 (N.D. Cal. Nov. 19, 2020) (appointing both competing institution with smaller individual investor citing 15 U.S.C. § 78u-4(a)(3)(B)(i)).

Thus, courts across the country routinely appoint co-lead plaintiffs when movants stipulate to work together after the statutory deadline.[2] Similarly, district courts across the

---

[2] *See also* Stipulation and Order Appointing Co-Lead Plaintiffs, *Ortiz v. Canopy Growth Corp.*, No. 2:19-cv-20543 (D.N.J. Feb. 10, 2020), ECF No. 27 (endorsing stipulation appointing Co-Lead Plaintiffs and Co-Lead Counsel of Pomerantz LLP and Hagens Berman); Stipulation and Order Appointing Co-Lead Plaintiffs, *In re Plantronics,*

4

country regularly approve stipulations to resolve lead plaintiff disputes in situations such as this one. Stipulation and Order, *In re Crown Castle Int'l. Corp Securities Litig.*, 2:20-cv-02156 (D.N.J. Dec. 7, 2020), ECF No. 22 (endorsing stipulation of approving Robbins Geller and Hagens Berman as lead counsel along with their local counsel and appointing institution and individual as co-lead plaintiffs).[3]

Moreover, courts use their authority to join movants when they do not agree. *See Oxford Health*, 182 F.R.D. at 51 (appointing three movants to serve as co-lead plaintiffs together and three co-lead counsel, even though one of the candidates objected to the arrangement.); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 419 (S.D.N.Y. 2004) (collecting cases and stating, "Other courts have determined that the interests of a proposed class will be served best by the

---

*Inc. Sec. Litig.*, 4:19-cv-07481-JST (N.D. Cal. Feb. 13, 2020), ECF No. 62 (endorsing stipulation of Hagens Berman and Bernstein Litowitz Berger & Grossmann LLP to combine institution and individual investor as co-lead plaintiffs); *See, e.g.,* Order Appointing Co-Lead Plaintiffs, *Burbridge v. ADTRAN, Inc., et al.*, 5:20-cv-00050-LCB (N.D. Ala. Mar. 16, 2020), ECF No. 77 (endorsing competing movants' stipulation appointing co-lead plaintiffs and counsel, and setting forth co-lead counsel responsibilities and duties); *Pompano Beach Gen. Emps.' Ret. Sys. v. Synovus Fin. Corp.*, No. 1:09-cv-01811-JOF, 2010 WL 11465298, at *3-4 (N.D. Ga. Feb. 2, 2010) (same); *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 568, 570 (D.N.J. 2006) (holding that "two movants, each of whom filed a motion and certification within the sixty-day deadline" could "unite after the expiration of the sixty-day period" and appointing co-lead plaintiff group represented by two firms as co-lead counsel).

[3] *See also* Stipulation and Order Appointing Lead Plaintiffs, *In re Xinhua*, No. 1:07-cv-3994-LTS (S.D.N.Y. Aug. 22, 2007), ECF No. 20 at 2-3 (endorsing stipulation appointing competing movants as co-lead plaintiff and their respective firms as co-lead counsel); Stipulation and Order, *In re UBS AG Sec. Litig.*, No. 1:07-cv-11225 (S.D.N.Y. Mar. 6, 2008), ECF No. 20 at 2 (same); *City of Pompano Beach Gen. Emps.' Ret. Sys. v. Synovus Fin. Corp.*, No. 1:09-cv-01811-JOF, 2010 WL 11465298, at *3-4 (N.D. Ga. Feb. 2, 2010) (same).

appointment of co-lead plaintiffs or multiple lead plaintiffs who did not move initially as a group."); *Miller v. Ventro Corp.*, No. 4:01-cv-01287-SBA, 2001 WL 34497752, at *11-12 (N.D. Cal. Nov. 28, 2001) (appointing separate movants as co-lead plaintiffs in order to ensure adequate representation); c*f. Arkansas Teacher Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 625 (D. Mass. 2016) (refusing to appoint a third lead when the lead plaintiff group is already diverse and the movants would "operate in concert and manage the litigation and the lawyers" and the court was already appointing two lead counsel).

Appointing a group of institutional and individual investors "ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants." *Oxford Health*, 182 F.R.D. at 49. Appointment of a group comprised of an individual and institutional investor promotes a welcome diversity of incentives, lowers scrutiny at the class certification stage, and preempts a multitude of defenses. *See e.g.*, *Johnson v. Pozen Inc.,* No. 1:07-cv-00599-NCT-WWD, 2008 WL 474334, at *3 (M.D.N.C. Feb. 15, 2008) (appointing an individual and a fund as co-lead plaintiffs to provide diversity in representation); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.,* No. 1:00-cv-00152-JEI, 2000 WL 486956, at *3 (D.N.J. Apr. 24, 2000) (appointing two competing movants as co-lead plaintiffs in view of the desirability of having both institutional investors and individual investors as lead plaintiffs "since each may bring a unique perspective to the litigation"); *see also In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 375-77 (E.D. Va. 2003) (exercising discretion to appoint institution as co-

lead plaintiff with individual investor); *Bell v. Ascendant Solutions, Inc.*, No. 3:01-cv-00166-N, 2002 WL 638571, at *5 (N.D. Tex. Apr. 17, 2002) (observing that the inclusion of an institutional investor with two individual investors helps to "improve[] diversity of experience" for the class); *Campbell Soup*, 2000 WL 486956, at *3 ("The Court also considers it desirable to have both an institutional investor, like Connecticut, and individual investors, like DeValle and Green, included as lead plaintiffs since each may bring a unique perspective to the litigation."); *Yousefi v. Lockheed Martin Corp.,* 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999) ("The Court also finds that with the appointment of one lead plaintiff who is an individual private investor and one lead plaintiff that is an institutional investor, the lead plaintiffs will represent a broader range of shareholder interests than if the Court appointed an individual or an institutional investor alone."). *See generally*, David H. Webber, *The Plight of the Individual Investor in Securities Class Actions*, 106 Nw. U. L. Rev. 157 (2012) ("In theory, the interests of institutional and individual investors align, nullifying the need for a separate voice for individuals; . . . . But in practice, individual investors' interests in these actions often differ from, and may directly conflict with, those of institutional lead plaintiffs. . . . This Article examines the recurrent conflicts between these two groups of investors and suggests that the best remedy is for courts to appoint representative individual investors as co-lead plaintiffs with institutional investors.").

  Here, Mr. Mart and St. Clair County are the only movants, and each are adequate and typical. The difference in their losses is not significant – a $54,000 difference – but the relative significance of the loss to Mr. Mart is much greater than that to St. Clair

County with assets in excess of $250 million. Mr. Mart's loss is also personal, while St. Clair County's loss is spread amongst 1,500 current and former employees (ECF No. 24 at 7) – about $43 each. As noted above Mr. Mart and St. Clair County also have different trading patterns that focus their relative interest on different statements and disclosures.

Finally, Mr. Mart and his counsel identified the case, investigated the facts and drafted and filed the complaint. *See* Fed. R. Civ. P. 23(g)(1) ("In appointing class counsel, the court: **(A)** must consider: **(i)** the work counsel has done in identifying or investigating potential claims in the action"). Regardless, Mr. Mart and St. Clair County have selected qualified counsel who have a history of working together and are working together on cases currently. Thus, appointing Mr. Mart with St. Clair County as Lead Plaintiff and approving their selection of counsel would provide the best possible representation of the class.

### III. CONCLUSION

The court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C.A. § 78u-4. Mr. Mart and St. Clair is the "person or group of persons" with the largest financial interest and satisfy the Rule 23 requirements. For the reasons discussed above, Mr. Mart requests that the Court appoint him and the St. Clair County as Lead Plaintiff and approve their selection of Hagens Berman and Robbins Geller as Lead Counsel for the Class, and Gustafson Gluek and Zimmerman Reed as local counsel.

DATED: December 14, 2020          Respectfully submitted,

GUSTAFSON GLUEK PLLC

By: */s/ Daniel C. Hedlund*
    DANIEL C. HEDLUND

Daniel E. Gustafson (202241)
Daniel C. Hedlund (258337)
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

Dennis Stewart
GUSTAFSON GLUEK PLLC
600 B Street, Suite 1700
San Diego, CA, 92101
Telephone: (612) 333-8844
dstewart@gustafsongluek.com

*[Proposed] Liaison Counsel*

Reed R. Kathrein
Lucas E. Gilmore (admitted *Pro Hac Vice*)
Danielle Smith
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 2nd Avenue, Suite 2000
Seattle, WA 98101
steve@hbsslaw.com
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*[Proposed] Lead Counsel*