# EXHIBIT 4



# OSS Research

Follow

**Contributor since:** 20:

Follow

(33 followers)

OSS Research

RSS Feed

Send Message

Office of Strategic Shorts (OSS) https://ossresearch.com
Differentiated short-biased research with a focus on small and mid-cap equities traded in the US.
"Even a regimented press will, again and again, betray their nation's interests to a painstaking observer."
– William "Wild Bill" Donovan

Mute OSS Research

| **2** | **1** | **0** | **2** | **33** | **6** |
|-------|-------|-------|-------|--------|-------|
| Articles | Author's Picks | Comments | Likes | Followers | Following |

| **All** | **(2)** |
|---------|---------|

Filter By Ticker

TCMD (2)

Articles

### Strong Sell On Tactile Systems: Part II
Dec. 10, 2020 • TCMD • 2 Comments

### Strong Sell On Tactile Systems: Bloated Stock Needs Compression Therapy
Jun. 8, 2020 • TCMD • 2 Comments



# Strong Sell on Tactile Systems: Part Two

*This report expresses the author's opinions. The author of this report has a short position in TCMD that will benefit from a decline in the price of TCMD's securities. A full disclaimer can be found at the end of this report. This is a follow-on to our initial report published in June 2020. If you have not done so already, we strongly encourage you to read it here: [link](link)*

**Previously on OSS:** In our first report, we expressed the opinion that Tactile had significantly overstated its addressable market. Moreover, we presented Medicare RAC audit data showing that RAC auditor Performant Recovery had audited and retroactively denied over 70% of Tactile's Medicare claims since February 2019. Finally, we also highlighted the existence of a whistleblower lawsuit against Tactile in which the relator alleges Tactile knowingly violated the Anti-kickback Statue by providing remuneration to clinicians in the form of training fees.

## Summary

*Multiple sources of government data suggest a concerning pattern of **reporting discrepancies between Tactile's financial statements and VA and Medicare payment statistics**. Backed by hard data, we shed light on what we believe to be revenue recognition practices that mask the increasingly severe repercussions of both the Medicare RAC audits as well as the whistleblower lawsuit.*

*New documents from the Qui Tam case provide further insight into the inner workings of Tactile's sales and marketing activity, including witness testimony from **former senior regulators** attesting to the presence of systemic misconduct covering kickbacks, pre-filled prescriptions, and other false claims. **Expert testimony on pre-filled prescriptions is supported by actual documentation sent to us by an industry insider that we believe suggests these practices are systemic across the Tactile organization.***

*If that is not disturbing enough, discovery documents in a discrimination lawsuit also revealed exorbitantly high rates of prescriber concentration—high enough that a **current senior medical director** of a top national insurer raised red flags when discussing their own investigations into Tactile reimbursement.*

*All this while **five** new reputable and well-capitalized MedTech competitors have recently received 510(k) approval to compete with Tactile—nearly **tripling** the number of competitors on the playing field.*

## Table of Contents

- **RAC Audits Appear to be Homing in on Tactile**
- **CMS FOIA Data Reveal Potential Discrepancies with Tactile Revenue Reporting**
- **More Revenue Reporting Questions with the VA Channel**
- **Concerning Expert Witness Testimony from Qui Tam Lawsuit**
- **Potentially Systemic Use of Pre-Filled Prescriptions at Tactile**
- **Prescriber Concentration: More Questions on Tactile's Sales and Marketing Activity**
- **Rapidly Emerging Competition**

# RAC Audits Appear to be Homing in on Tactile

Since our report in June, further FOIA requests via CMS have revealed additional RAC audit requests targeted at Tactile.

> Dear ▮▮▮▮▮▮▮▮▮▮
>
> This letter is in response to your Freedom of Information Act (5 U.S.C. §552) request of ▮▮▮▮▮ which you sent to the Centers for Medicare & Medicaid Services. Within your correspondence, you requested *Specific HCPCS code information for two codes along with providers and claim numbers..*
>
> After careful review of the documents submitted to me, a total of twenty-six *Pages*, I have determined to release them to you, as enclosed. Thirteen pages *pages* are released to you in their entirety. However, I am denying you access to portions of thirteen (13) *pages* pursuant to Exemption 6 of the FOIA (5 U.S.C. §552(b)(6)).

*Source: CMS FOIA*

FOIA officers provided a table of all E0651 claims audited over the last year, including dates, denial reasons, and the associated provider. A sample of the raw data we received is shown below, including highlights indicating some of Tactile's more recent RAC audit denials (Tactile's NPI code is 1427131424, see here).

| RAC Region | Provider NPI | DME Ordering Provider NPI | Initial selection of record for audit | Request for medical records | Results letter sent to provider | Demand letter sent | No findings letter sent | Technical Denial Determination Date | Demand Letter Amount | Denial Reason |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | 1720256662 | 1629259478 | 20191210 | 20191213 | 20200212 | | | | | Medical necessity |
| 5 | 1053791129 | 1487656179 | 20191210 | 20191213 | 20200129 | 20200318 | | | $ 1,043.72 | Medical necessity |
| 5 | 1124124953 | 1619976628 | 20191210 | 20191213 | 20200212 | | | | | Medical necessity |
| 5 | 1427131424 | 1093224768 | 20191210 | 20191213 | 20200312 | | | | | Medical necessity |
| 5 | 1427131424 | 1003194531 | 20191210 | 20191213 | 20200226 | | | | | Medical necessity |
| 5 | 1427131424 | 1295778686 | 20191210 | 20191213 | 20200311 | | | | | Medical necessity |
| 5 | 1669746541 | 1275570897 | 20191210 | 20191213 | 20200228 | | | | | Medical necessity |
| 5 | 1720256662 | 1316145352 | 20191210 | 20191213 | 20200210 | | | | | Medical necessity |
| 5 | 1427131424 | 1275571879 | 20191210 | 20191213 | 20200311 | | | | | Medical necessity |
| 5 | 1427131424 | 1083614754 | 20191210 | 20191213 | 20200312 | | | | | Medical necessity |
| 5 | 1053368076 | 1033195151 | 20191210 | 20191213 | 20200226 | | | | | Medical necessity |
| 5 | 1427131424 | 1619974557 | 20191210 | 20191213 | 20200311 | | | | | Medical necessity |
| 5 | 1720256662 | 1184911612 | 20191210 | 20191213 | 20200211 | | | | | Medical necessity |
| 5 | 1720256662 | 1184911612 | 20191210 | 20191213 | 20200211 | | | | | Medical necessity |
| 5 | 1720256662 | 1023122900 | 20191210 | 20191213 | 20200212 | | | | | Medical necessity |
| 5 | 1578931051 | 1891716981 | 20191210 | 20191213 | 20200303 | | | | | Medical necessity |
| 5 | 1720256662 | 1023047420 | 20191210 | 20191213 | 20200212 | | | | | Medical necessity |
| 5 | 1124124953 | 1871513234 | 20191210 | 20191213 | 20200214 | | | | | Medical necessity |
| 5 | 1225309263 | 1285639211 | 20191210 | 20191213 | 20200224 | | | | | Medical necessity |

*Source: CMS FOIA, emphasis added, the original source document can be found here (#1)*

Using this data, we provide a timeline and analysis of the RAC audit results specifically for Tactile below:

**RAC Audit Data - Tactile Only**

| | | Selection for Audit | No Finding / Results Letter Date | Claims Requested | Denial Rate % | |
|---|---|---|---|---|---|---|
| First Wave | Batch 1 | 3/26/2019 | Jul 2019 | 41 | 63% | |
| | Batch 2 | 9/26/2019 | Dec 2019 | 123 | 74% | |
| Second Wave | Batch 3 | 12/10/2019 | Feb - Mar 2020 | 121 | 81% | *new data from recent FOIA request* |

*Source: CMS FOIA, OSS analysis of FOIA data (TCMD denials taken as a percentage of claims requested from TCMD)*

According to the FOIA records, Performant requested an additional 121 claims for audit on December 10th, 2019. The results of these audits were disclosed to Tactile over the course of February and March 2020. Our analysis of the data *revealed a denial rate of 81%: a further increase from the already sky-high denial rates in previous batches of claim audits*.

Nevertheless, sell-side continues to downplay and ignore the risks continued RAC audits represent to the company:

> way to trial, which is scheduled for Q2'21. As it relates to the RAC audits that have garnered some attention in recent months, the company believes CMS tends to cast a wide net in these cases and has not heard back from the agency regarding additional claims since December of 2019. Regardless, management saw no selling impact from these audits previously, and the company has not made any changes given its already tight controls in place, so they expect these issues to be resolved in due time.

*Source: Piper Sandler Research Report, June 18th, 2020, emphasis added*

Evidently, the sell-side has attempted to assuage investors by making three key arguments:

1. The RAC audits are broad-based and were not specifically targeted at Tactile,
2. Performant has not requested further claims for review since December 2019, and
3. The RAC audits have had no impact on revenue and prescriber activity in the Medicare channel

We believe these arguments are spurious and push back below:

**<u>SELL-SIDE COUNTERARGUMENT #1: The RAC audits are broad-based and were not specifically targeted at Tactile</u>**

Putting aside the previously mentioned fact (from our June report) that Tactile already represents ~10% of all audits we have data for so far, we believe the evidence actually suggests an increasing focus on Tactile over time.

Based on CMS FOIA records as shown below, we were able to put together a basic timeline of the RAC audit process:

| Month/ 2019 | New Issue Name | New Issue Number | Total Number of Reviews Conditionally Approved | New Issue Approval Status (Approved, HOLD, Rescinded) | Number of Reviews Completed* - (prior Month) | Number of Reviews Completed* (cumlative to EOM) | Number of Discussion Periods Initiated in Prior Month | Number of Discussion Periods Completed in Prior Month | Number of Discussion Periods resulting in Overturned Decisions (cumulative) | Number of Additional Approvals Requested | Date Additional Approval Granted by CMS COR | Date Revision Approved by CMS COR | Performant Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Aug-19 | Pneumatic Compression Device: Medical Necessity and Documentation Requirements | 0131 | 800 | Approved | 223 | 345 | 22 | 24 | 5 | 400 | 7/25/2019 | 1/23/2019 | Requested 1,000 additional reviews on July 19, 2019. CMS approve 400 additional reviews on 7/25/19 |
| Sep-19 | Pneumatic Compression Device: Medical Necessity and Documentation Requirements | 0131 | 5,800 | Approved | 29 | 374 | 30 | 22 | 10 | 400 5,000 | 7/25/2019 8/12/2019 | 8/29/2019 | Requested 1,000 additional reviews on July 19, 2019. CMS approve 400 additional reviews on 7/25/19 8/12/2019-CMS approved 5,000 additional ADR reviews |

*Source: CMS FOIA records, some columns were removed to fit table legibly, [the original source document here (#2). Received from a third party's FOIA request](...)*

| Month | Timeline Event | Total Reviews Authorized by CMS |
|---|---|---|
| Feb-19 | RAC Audit issue is approved: CMS authorizes review of up to 400 claims | 400 |
| Jul-19 | Performant requests a further 1,000 in additional reviews on July 19 | 400 |
| Jul-19 | CMS approves a further 400 reviews on July 25 | 800 |
| Aug-19 | CMS approves a further 5,000 additional reviews | 5,800 |

*Source: CMS FOIA records, OSS analysis of FOIA data*

Between these two waves (the first 800 up to August 2019, and the next 5,000), ***the percentage of claims requested from Tactile more than doubled from ~5% to ~12%***. We see this as strong evidence that Tactile is being disproportionately targeted. Recall that in the most recent batch of audits, Tactile once again saw an extremely high denial rate of 81%.

**RAC Auditor Homing in on Tactile Medical**

| Performant Reviews vs. Tactile | | | | | | |
|---|---|---|---|---|---|---|
| | Time Period | Total Reviews Allowed by Medicare | Reviews Allowed During Period | Claims Requested by Performant | Claims Requested from Tactile | % of Reviews Targeted at Tactile |
| First Wave | Feb to Aug 2019 | 800 | 800 | 768 | 41 | 5.3% |
| Second Wave | Sep 2019 to Date | 5,800 | 5,000 | 2080 | 244 | 11.7% |

*Source: CMS FOIA records, OSS analysis of FOIA records (claims requested from Tactile as a percentage of total claims requested by Performant delineated by time period as shown in the table. "To Date" refers to the latest data we have, or Aug 2020)*

**SELL-SIDE COUNTERARGUMENT #2: Performant has not requested further claims for review since December 2019**

According to management, Tactile has not received any additional claims requests since December 2019. While true, we believe this argument is misleading: what it ignores is that **all Medicare Fee-For-Service (FFS) medical reviews were suspended as of March 30, 2020**.

Recall that audit results from Tactile's third and most recent batch of claims were released in February and March of 2020. In other words, **all** RAC audits were **suspended** shortly after the end of Tactile's third batch of reviews.

WE believe the fact that Tactile has not received additional claims requests since December in no way attests to an end in RAC audits. In our opinion, it is purely a symptom of the COVID-19 pandemic.

> **Coronavirus Disease 2019 (COVID-19) Provider Burden Relief Frequently Asked Questions (FAQs)**
>
> **Q. Is CMS suspending most Medicare Fee-For-Service (FFS) medical review during the Public Health Emergency (PHE) for the COVID-19 pandemic?**
>
> **A.** On March 30 CMS suspended most Medicare Fee-For-Service (FFS) medical review because of the COVID-19 pandemic. This included pre-payment medical reviews conducted by Medicare Administrative Contractors (MACs) under the Targeted Probe and Educate program, and post-payment reviews conducted by the MACs, Supplemental Medical Review Contractor (SMRC) reviews and Recovery Audit Contractor (RAC). As states reopen, and given the importance of medical review activities to CMS' program integrity efforts, CMS expects to discontinue exercising enforcement discretion beginning on August 3, 2020, regardless of the status of the public health emergency. If selected for review, providers should discuss with their contractor any COVID-19-related hardships they are experiencing that could affect audit response timeliness. CMS notes that all reviews will be conducted in accordance with statutory and regulatory provisions, as well as related billing and coding requirements. Waivers and flexibilities in place at the time of the dates of service of any claims potentially selected for review will also be applied.

*Source: https://www.cms.gov/files/document/provider-burden-relief-faqs.pdf*

Notably, CMS authorized the resumption in RAC audit activities on August 3, 2020. We highlight three points:

- Tactile's most recent batch of audits saw an even greater denial rate of 81% vs. ~70% previously.
- The percentage of reviews targeted at Tactile has increased from 5% to 12% over the last two waves of audits.
- Medicare has authorized 5,800 claim requests, of which Performant has only conducted ~2,800. There are another 3,000 claims to go in the current audit wave alone.

We will let readers come to their own conclusions on the likelihood of further audits on Tactile.

**SELL-SIDE COUNTERARGUMENT #3: RAC audits have had no impact on revenue and prescriber activity in the Medicare channel**

Empirical evidence suggests this is not true and we believe we have hard data to refute sell-side's claim. This discussion merits a whole other section on its own—one that addresses a potentially unsettling question. What's going on with Tactile's revenue reporting?

# CMS FOIA Data Reveal Potential Discrepancies with Tactile Revenue Reporting

Detailed analysis of Medicare FOIA data and Tactile's SEC filings revealed the following fact pattern:

- ***Tactile's self-reported Medicare revenues are 50 - 70% higher than what Medicare payments data has shown since at least 2019***
- During this same period, Tactile's Medicare days receivable have skyrocketed by nearly ***3x***
- Also during this same period, Medicare denials of Tactile billing requests for both E0651 and E0652 devices have both seen ***high-double-digit increases***

On their own, ballooning days receivable, increasing denial rates, and a large and growing gap between government data vs. revenue reporting are concerning but possibly explainable. ***Together, with the RAC audits, we find it potentially alarming.***

**Medicare Data vs. Tactile Reporting**

To start with, we received data collected by a CMS FOIA officer that allowed us to compile Medicare payments to and billings by Tactile, by HCPC code. A sample of that data is included below:

Dear ███████████████████████

This letter is in response to your ████████████████████████████████ (5 U.S.C.§ 552) request addressed to the Centers for Medicare & Medicaid Services (CMS). Within your correspondence, you sought documents in relation to the Tactile Systems Technology Inc - Tactile.

After careful review of the documents submitted to me, ███████████████████ a claim summary excel spreadsheet, forwarded to my office, I have determined to release them to you, as enclosed. However, I am denying you access to portions of 83 pages and three columns of the spreadsheet pursuant to Exemptions 4 & 6 & of the FOIA (5 U.S.C. § 552 (b)(4) & (b)(6)).

| Date of Service | Procedure Code | Procedure Description | Total Amount Billed by Provider | Amount Paid by Medicare | Claim Status | Submitted Billing Provider Name |
|---|---|---|---|---|---|---|
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 650.00 | 255.78 | Paid | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0668 | Seg pneumatic appl full arm | 575.00 | 410.68 | Paid | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0651 | Pneum compressor segmental | 1280.00 | 853.57 | Paid | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0651 | Pneum compressor segmental | 1280.00 | 853.57 | Paid | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 650.00 | 300.91 | Paid | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 650.00 | 300.91 | Paid | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 825.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 825.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 825.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 825.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 650.00 | 255.78 | Paid | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 825.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0668 | Seg pneumatic appl full arm | 750.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0651 | Pneum compressor segmental | 1280.00 | 747.89 | Paid | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 650.00 | 255.78 | Paid | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 825.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 825.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 825.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 825.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0667 | Seg pneumatic appl full leg | 825.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |
| 22Jun2020 | E0652 | Pneum compres w/cal pressure | 7150.00 | 0.00 | Denied | TACTILE SYSTEMS TECHNOLOGY, INC |

*Source: CMS FOIA Response, the original source document sent by the FOIA officer can be found here (#3)*

We compiled all claims approved by Medicare to Tactile based on the date of service of the devices. Notice that the data includes all codes (E0667 / E0668) and not just E0651 and E0652: we believe this should represent an objective, un-biased measure of Tactile's Medicare revenue as reported by the US government.

A comparison of this CMS data and Tactile's reporting presented to investors revealed serious concerns. Tactile's reported Medicare revenue of ~$22mm in 2019 appears to be **overstated by 53%** when compared with CMS. This gap further increased to **73%** for the first half of 2020.



*Source: CMS FOIA, OSS analysis of FOIA records, Tactile SEC Filings (table above compares the sum of all "Paid by Medicare" figures from FOIA records for the 2019 and 1H20 time periods and Tactile reporting of Medicare revenue in 2019 10K and 10Qs. Note that "Paid by Medicare" figures were summed based on Date of Service and not date of payment.)*

***These are large discrepancies between reporting by the company and the US government.***

**Tactile Medicare A/R vs. Medicare Denial Rates from FOIA**

Now consider that since our last report in June, Tactile's 2Q 2020 results revealed yet another highly concerning increase in Medicare accounts receivable days. ***Between 1Q and 2Q, Medicare receivable days stretched by over 68%. This was a ~150% increase year on year.***



*Source: Tactile SEC filings, OSS analysis (for each quarter, reported LT accounts receivable divided by reported Medicare revenue, then multiplied by 90 days)*

Though surprising at first glance, the increase in A/R days actually fits with what FOIA data suggests is happening behind the scenes. ***Since the RAC audits began in January 2019, Medicare denials of both E0651 and E0652 devices billed by Tactile have dramatically increased—nearly doubling in the case of E0651's from March 2019.***

*(Note that this is different from the RAC audit denial rates: the RAC audit is looking back and denying claims that have already been paid by Medicare. The denial rate here is denying requests submitted by Tactile and a refusal by Medicare to approve the product around the time of prescription. Note also that the data sent to us was through to July 19th, 2020 and the last column may therefore not be reflective of final results.)*



*Source: CMS FOIA Data, OSS analysis (for each month of FOIA data, the sum total of all E0651 units denied by Medicare as a percentage of the sum total of all E0651 claims submitted by Tactile to CMS, according to FOIA data)*

Our opinion is that the high denial rates in January and February 2019 may have been a one-time bump driven by the beginning of the RAC audit. ***We believe this because the RAC audit was announced on January 23, 2019, and Tactile denial rates in January dramatically increased into the back half of the month, largely coinciding with the beginning of the RAC audit:***



*Source: CMS FOIA Data, OSS analysis (for each time period in January, the sum total of all E0651 units denied by Medicare as a percentage of the sum total of all E0651 claims submitted by Tactile to CMS, according to FOIA data)*

Moreover, E0652 denial rates show a similarly increasing trend since the RAC audit began:



*Source: CMS FOIA Data, OSS analysis (for each month of FOIA data, the sum total of all E0652 units denied by Medicare as a percentage of the sum total of all E0652 claims submitted by Tactile to CMS, according to FOIA data)*

***Recall sell-side was claiming that "management saw no selling impact" from the RAC audits.*** Also, what will commercial insurers do when they find out Medicare is denying nearly every Tactile E0652 request coming its way?

**Tactile Risk Disclosure**

The final piece of the puzzle comes from Tactile's own risk disclosure language on this issue:

> A significant increase in Medicare denial of submitted claims or an increase in the proportion of Medicare denials that are upheld by an Administrative Law Judge could adversely affect our results of operations or cause us to reduce the carrying value of our Medicare accounts receivable related to Flexitouch system sales.

*Source: Tactile 2019 10K, Risk Disclosure*

***Instead of writing these receivables down as indicated in the company's own accounting policy, Tactile has continued to book Medicare revenue while allowing Medicare receivable days to skyrocket.***

In fact, based on evidence as presented below, we believe this is potentially a systemic issue that also affects other revenue channels.

## More Revenue Reporting Questions with the VA Channel

Indeed, the discrepancies do not appear to be isolated to just Medicare. A recent FOIA request revealed that during calendar year 2019, the VA spent a total of ~$25.5mm in purchases of products from Tactile:

> In addition, the Office of Rehabilitation and Prosthetics conducted a search for documents responsive to your request. The search was conducted by utilizing the search criteria of all items issued to patients where the vendor name contained the string "Tactile Systems" as maintained in the National Prosthetic Patient Database (NPPD) for the full year 2019. The search resulted in the information provided below and represents transactions related to prosthetic items purchased for specific patients.

| Calendar Year | Amount |
|---|---|
| 2019 | $25,480,789.24 |

*Source: VA FOIA, FOIA Warriors (data provided to us by FOIA request filed by 3rd party—we do not make any representations to its veracity but have reviewed the original request and source documents)*

During this same period, however, Tactile in fact reported ~$31mm in VA revenue, ***an overstatement of ~22% when compared to VA FOIA data***.



*Source: VA FOIA data, Tactile 2019 10K, graphical representation created by OSS*

***Given what appears to be consistent over-reporting of revenue relative to government data, we feel compelled to express concern about the company's receivables and/or its revenue recognition policies.***

This is probably a good time to share one final chart. **Total** accounts receivable days for the **entire company**. This is *including* the private payor channel:



*Source: Tactile SEC filings, OSS analysis (for each quarter, reported accounts receivable + LT accounts receivable, then divided by total reported revenue, then multiplied by 90 days)*

Before readers bring up Covid-19, don't forget Tactile still grew revenue 16% YoY in 1Q20. **And over that same period of time, accounts receivables (EXCLUDING Medicare receivables) grew a whopping 42%.**

## Concerning Expert Witness Testimony from Qui Tam Lawsuit

On September 29, 2020, the relator in the Qui Tam lawsuit filed against Tactile released a new brief that included alarming testimony from two key expert witnesses, Thomas M. Suehs, former Executive Commissioner of the Texas Health and Human Services Commission, and Cynthia Brock, Divisional VP of Regulatory Affairs for Kindred at Home.

> However, this assertion is far from the case. Relator relies on the attached expert report of Thomas M. Suehs, former Executive Commissioner of the Texas Health and Human Services Commission[1], the attached expert report of Cynthia Brock, RN, BSN, MS – Divisional Vice President Regulatory Affairs for Kindred at Home,[2] and the substantial body of documentary evidence attached to these reports. This evidence overwhelmingly demonstrates Tactile's liability under the False Claims Act ("FCA") and the Anti-Kickback Statute ("AKS") through its tie-in provision to the FCA, 42 U.S.C. § 1320a–7b(g).

*Source: Case 4:18-cv-02871 Document 68, emphasis added*

***In fact, testimony from both experts strongly corroborates what we have discussed in our current and previous reports:*** 1) an indirect sales and marketing strategy that experts believe to be in violation of the Anti-kickback Statute, and 2) serious issues surrounding medical necessity for Tactile pump prescriptions as backed by the RAC audit results.

While many of the underlying evidence documents remain under seal, we believe what has surfaced in this brief is already concerning. Let's start with the statement from Thomas Suehs, the former Executive Commissioner:

> Based on my review of the data and my over 4 decades' experience in oversight and management of health care systems in the State of Texas, including as the Executive Commissioner for Health and Human Services for the State of Texas[3] it is my opinion that Defendant Tactile Systems Technologies, Inc. ("Tactile") is engaged in systemic and pervasive misconduct over a period of many years, resulting in artificially increased need/demand for its E0651 and E0652 pneumatic compression devices and excessive claims being submitted to and paid by Government healthcare programs. Tactile's misconduct includes (1) multiple illegal kickback schemes; (2) false claims for payment – including submitting orders for Durable Medical Equipment with pre-filled medical necessity or without proper showing of medically necessity completed by the treating physician, and doing so on a systematic basis; and (3) paying remuneration directly or indirectly, overtly or covertly, to persons to induce such persons to purchase, order or arrange for or recommend purchasing or ordering Tactile's E0651 and E0652 pneumatic compression pumps.

*Source: Case 4:18-cv-02871 Document 68, emphasis added*

In fact, ***Mr. Suehs calculates penalties for Tactile's AKS violations to be nearly ~$700mm***. More importantly, his testimony is apparently backed by detailed analysis of Tactile's trainer agreements, consulting arrangements, and more:

kickback statute and the Stark law)...”[6] Mr. Suehs states that as Executive Commissioner, he would not have permitted Tactile to participate in Government healthcare programs if he had known then what he now knows regarding Tactile's illegal activities[7], specifically, the activities revealed in the data considered portion of his report.

Mr. Suehs explains that Tactile's violations of the Anti-Kickback Statute and False Claims Act have caused significant damage to Government healthcare programs.[8] He goes on to demonstrate that Tactile's "evolving care delivery model" violates that 31 USC 3729 and the Anti-Kickback Statute as well as the Center for Medicaid and Medicare's well-publicized warnings of Tactile's responsibilities under 31 USC 3729 and 42 USC 1320a-7b(b).[9] Mr. Suehs computes the penalties for Tactile's AKS violations to be **$694,715,840** with actual damages of **$32,731,853.65.**[10] Tactile's assertion that there is no genuine issue of material fact is far from reality.

Mr. Suehs' report provides the Court with a detailed analysis of the facts underlying his opinions. These include side-by-side comparisons of the "safe harbor" provisions of the AKS with Tactile's trainer agreements, physician speaker agreements, consulting agreements and demonstration equipment agreements.

*Source: Case 4:18-cv-02871 Document 68*

Equally, the expert report of Cynthia Brock testifies to a similar opinion:

> Based on my review of the data and documents available for review, it is my opinion that Tactile System Technologies, Inc. ("Tactile") has been engaged in long term, systemic processes which violate the False Claims Act and Anti-kickback Statute regarding kickback schemes and false claims for payment. My opinion is based on more than 30 years of experience in support, management and oversight of Medicare and Medicaid conditions of participation and conditions of billing in a variety of regional and national healthcare corporations as well as working knowledge of the standard or practice in agreements/relationships with DMEPOS suppliers. CMS and State Medicaid Programs are transparent and comprehensive in their requirements for participation regarding inducement for referrals and integrity of claims, specifically the physician's certification of medical necessity. A review of documents provided clearly indicates noncompliance with these regulatory provisions as evidenced by compensation to a select group of practitioners, sample of pre-filled medical necessity verbiage for certifying physicians, as well as supporting results of ongoing CMS RAC (Recovery Audit Contractor) audit.

*Source: Case 4:18-cv-02871 Document 68*

We believe this following section of Mrs. Brock's statement is even more important:

> A review of documents provided reflects Tactile's 1099 compensation to the treating clinicians of patients for the home education session and is a direct violation of the regulation. Further, Tactile's concealment and non-disclosure that it remunerates these clinicians as trainers and remuneration of prescribing physicians to promote Tactile's products violates the statutes and creates an unfair market for other providers who are in fact complying with the federal regulation. It is also noteworthy that Tactile provides gift cards to clinic employees for redemption by internal email but no document of corresponding policy and

*Source: Case 4:18-cv-02871 Document 68*

While industry participants we spoke to have brought up Tactile's clinician remuneration activity before (see our first article), ***these Form-1099s appear to represent concrete evidence of this conduct***. The fact these forms are mentioned here is revealing. If the relator is able to establish links between training compensation and prescriptions, we believe this would be a crucial piece of evidence for the case.

### "Pre-Filled Medical Necessity Verbiage"

Note we have yet to discuss the text we emphasized with red boxes—the expert opinion relating to Tactile's use of pre-filled medical necessity and prescription.

What is a pre-filled prescription in this context? Given the rigorous reimbursement and medical necessity criteria in reimbursing E0652 devices, doctors need to diagnose and then document patient progress through multiple first-line treatments (if they work, E0652 is not needed) before filling out a prescription request for the device. A pre-filled prescription is when a sales rep or distributor fills these documents out *for* the doctor.

**Think of it this way: the salesperson marketing the device is telling/giving the *doctor* what to diagnose and prescribe a patient.** The conflict of interest issues here should be self-evident: manufacturer and distributor sales staff have clear incentives to drive more prescriptions and therefore revenue for their devices, sometimes at the expense of patient treatment (and of course taxpayers).

Unsurprisingly, pre-filling prescriptions is illegal. If you're still not convinced, just look at this recent indictment from the US Dept. of Justice for a case being investigated by the FBI and OIG HHS in Arkansas. This is an issue prosecutors and regulators take seriously. Note this is merely an example to demonstrate the legality and seriousness of these issues. We are in no way suggesting any affiliation between Tactile and the events or individuals covered in the indictment.

FOR IMMEDIATE RELEASE                                    Friday, January 10, 2020

## Doctor and Sales Rep Charged in $12 Million Fraud Scheme Targeting Tricare and Extensive Cover Up

### Kickbacks Generate Expensive Compounded Drug Prescriptions

LITTLE ROCK—A doctor and a medical sales representative have been charged in a scheme to pay and receive kickbacks to generate expensive prescriptions for compounded drugs. TRICARE, the military's health insurer, paid over $12 million for the prescriptions, which the indictment alleges were rubber stamped without examining patients or regard to medical necessity. The 43-count indictment alleges the scheme also encompassed widespread efforts to obstruct the ensuing investigation.

Upon receipt of TRICARE beneficiary information from recruiters, the ringleader of the scheme sent pre-filled prescriptions—with drugs to be dispensed, refills authorized, and patient names already listed—to medical professionals who signed without consulting patients or any regard to medical necessity. Prescriptions went to a Mississippi pharmacy, which shipped drugs nationwide and billed TRICARE for reimbursement.

This case is being investigated by the FBI and HHS-OIG, and prosecuted by Assistant United States Attorneys Alexander D. Morgan and Stephanie G. Mazzanti.

*Source: https://www.justice.gov/usao-edar/pr/doctor-and-sales-rep-charged-12-million-fraud-scheme-targeting-tricare-and-extensive*

Since that's established, this next discussion is so important it deserves its own section:

## Potentially Systemic Use of Pre-Filled Prescriptions at Tactile

We were recently connected with a reputable industry insider who works closely with lymphedema patients, distributors, and manufacturers. For the last several years, this individual has been at the receiving end of mass communications sent by Tactile via non-digital means.

These documents were addressed to and/or intended for clinics or physicians in the individual's wider territory. This source believes these documents were sent to him/her erroneously. ***We believe these documents provide strong evidence suggesting systemic misconduct at the hands of Tactile employee in providing pre-filled prescriptions and pre-written medical necessity letters to physicians.***

A partial list including multiple examples of these documents was shared with us and is included in the appendix in their original form with personal information redacted by the source. We have further redacted the full names of Tactile employees in these documents out of respect for their privacy, leaving

only their first initials visible. We present a few samples below to facilitate discussion and to highlight the critical legal and regulatory risks that these documents represent for both Tactile and the physicians.

One set of these documents starts with a cover letter *specifically requesting for a physician's signature and asking the clinic to "Copy and Paste" a "draft narrative" onto company letterhead*. Note the first initial at the top right-hand corner—an individual whose name we have redacted but can confirm is a Tactile employee (in this case, a "Sales Support Representative", others we have found are "Order Intake Coordinators"). To reiterate, we believe this fax was intended to be sent to a physician whose name has also been redacted.



*Source: Industry insider, emphasis added by OSS*

The second page of that same fax shows this "draft narrative"—a **pre-written letter on the patient's medical history, symptoms, and the medical necessity / rationale for prescribing the Flexitouch pump**. Note the empty space left in for the physician's signature. Recall from the cover letter that this document was faxed to a physician with the express purpose of requesting the doctor's signature on this letter pre-written by Tactile staff.



*Source: Industry insider, emphasis added by OSS*

Note also that the date and first initial both correspond with the cover letter. See also in the appendix **multiple, different instances** of these cover letters and medical necessity letters on different dates, from different Tactile staff (as determined by their first initial). We believe this suggests that these practices are not isolated, one-off issues for specific employees, but a systemic issue with sales conduct across the organization.

*It actually gets even worse.* The next document is yet another cover letter faxed from a Tactile employee and intended for a physician (name redacted). This time, however, it precedes *an actual prescription order for a Flexitouch device that is already filled out* (pre-filled, one might say) by a Tactile employee—the only thing empty is the signature box for the physician. The cover letter itself even *directly asks for the physician's signature*, in all caps no less.



*Source: Industry insider, emphasis added by OSS*

As mentioned, the cover letter above came attached with this prefilled prescription as shown below. Notice again that the data and first initial of the Tactile rep match in both documents. A cursory glance at the rest of the documents in the appendix will also show **multiple faxes from multiple reps on multiple dates filling out nearly identical language for multiple prescription orders**. This leads us to believe that pre-filling prescriptions is systemic across the company.



*Source: Industry insider, emphasis added by OSS*

Included below is a snippet from the full indictment for the pre-filled prescription case in Arkansas:

> 32. Promoter 1 then forwarded pre-filled prescriptions to Prescriber 1, Prescriber 2, or MAY, knowing each would sign (thereby authorizing drugs to be dispensed) without examining patients or demanding any medical information (*e.g.*, medical history, physical condition, chief complaint, current medications). Typically, Promoter 1 forwarded pre-filled prescriptions as follows:
>
> a. For Prescriber 1, Promoter 1 faxed pre-filled prescriptions to her work or emailed them (as PDFs) to Individual 1, who emailed them to Prescriber 1. Prescriber 1 then signed the pre-filled prescriptions and faxed them to Pharmacy 1.

*Source: https://www.justice.gov/usao-edar/press-release/file/1233736/download*

### *Sound familiar?*

To be clear, we fully acknowledge that we do not prove from these documents alone that the physicians in these cases are not properly examining or reviewing the patients. In fact, it might be perfectly reasonable to speculate that these practices were put into place for the sake of prescriber convenience and time-efficiency. Presumably, prescribers are also free to modify or disregard these documents if they so choose.

However, we ask readers to put this in context with the 70%+ denial rates from the RAC audits—all of which related to **medical necessity denials**—to illustrate this may be a systemic problem with serious risk to investors.

Consider again this snippet from the US DoJ website detailing its Arkansas pre-filled prescription indictment:

> Upon receipt of TRICARE beneficiary information from recruiters, the ringleader of the scheme sent pre-filled prescriptions—with drugs to be dispensed, refills authorized, and patient names already listed—to medical professionals who signed without consulting patients or any regard to medical necessity. Prescriptions went to a Mississippi pharmacy, which shipped drugs nationwide and billed TRICARE for reimbursement.

*(Again, note this is an example to demonstrate the legality and seriousness of these issues. We are in no way suggesting any affiliation between Tactile and the events or individuals covered in the Arkansas indictment.)*

Now consider the fact pattern we have shown both in our current and previous report:

- As demonstrated above, Tactile employees appear to be pre-filling prescriptions that are sent to doctors for signature. Device, patient name, symptoms, and medical necessity are all already listed.
- Citing medical necessity, the RAC auditor Performant has denied over 70% of all Tactile Medicare claims audited so far.

To take this one step further, we also wanted to illustrate just how similar the language is across all the different pre-filled or pre-written documents being faxed from Tactile employees. Each of the boxes below is taken from a different medical necessity letter for different patients. Color-coding is added by us to demonstrate just how similar the language Tactile employees appear to be using across multiple documents and patients. Full copies of these documents can be found in the appendix.

**Appen-H2**

In order to gain control of her condition ██████ will need to augment her conservative treatment modalities with the addition of pneumatic compression device treatments. I have ruled out use of basic pumps, which use harsh static pressures she would not be able to tolerate and are incapable of providing required proximal treatment. I am instead prescribing daily home treatment with the Flexitouch pump, which treats the legs and trunk with gentle sequential pressures that promote lymph flow without worsening her pain. Please approve coverage for the prescribed E0652 Flexitouch device.

**Appen-I2**

██████ will need to augment her conservative treatment modalities with the addition of a pneumatic compression device for at home treatments. She should use the Flexitouch once daily on the normal pressure setting for the rest of her life. I have ruled out the use of a basic pump, which uses harsh static pressure, as ████ would not be able to tolerate this because of the severe pain she already suffers from. Please approve coverage for the prescribed E0652 Flexitouch device.

**Appen-J2**

In order to manage his condition more effectively ██████ will need to augment his conservative treatment modalities with the addition of home treatments with a pneumatic compression device. Basic pumps will not suffice as they use harsh static pressures that he will not be able to tolerate. I have instead prescribed daily treatment with a Flexitouch pump, which applies gentle waves of programmable pressure that promote effective lymph flow without worsening pain. There are also clinical studies showing a significant reduction in recurrent cellulitis episodes with daily use of the Flexitouch. We look forward to your approval.

**Appen-K2**

In order to assist her in gaining control of her symptoms I have prescribed daily treatment with a Flexitouch lymphedema pump. I have specifically prescribed this E0652 device as it applies gentle waves of calibrated pressure that promote lymph flow without exacerbating pain. I have ruled out the use of basic pumps as she would not be able to tolerate their harsh static pressures. Please make an out-of-network exception for this medically necessary device and approve coverage for the prescribed Flexitouch pump.

**Appen-L2**

In order to gain control of her condition ██████ will need to augment her current conservative treatment modalities with the addition of home treatments with a pneumatic compression device. Basic pumps will not suffice as a one-time trial exacerbated her symptoms causing increased proximal swelling. I have instead prescribed a Flexitouch pump, which treats the trunk and legs with gentle calibrated pressures that ██████ tolerated well during a trial treatment. We look forward to your approval of the prescribed pump.

Given the range of dates and different employees involved, we believe these practices are system and not one-time, one-off, or individual bad apples. In the documents included within the appendix alone, nine different Tactile employees show up.

| Document (in Appendix) | Date on Document | TCMD Employee |
|---|---|---|
| Appen-A1 | 18/06/2020 | Ma (first 2 letters of first name) |
| Appen-B1 | 6/5/2020 | P |
| Appen-C1 | 28/05/2020 | Ma |
| Appen-D1 | 18/02/2020 | Ma |
| Appen-E1 | 5/15/2020 | SL (initials) |
| Appen-F1 | 2/21/2020 | C |
| Appen-G1 | 6/11/2020 | ED (initials) |
| Appen-H1 | 3/30/2020 | Ca |
| Appen-I1 | 5/6/2020 | EW (initials) |
| Appen-J1 | 6/4/2020 | MM (initials) |
| Appen-K1 | 6/10/2020 | S |
| Appen-L1 | 2/24/2020 | EW |

*Source: Documents included in appendix. Dates were written in different formats and are displayed above in original format. First letter of first name, first two letters of first name, or initials are shown above to differentiate Tactile employees.*

We do also want to acknowledge the issue of credibility here. While we are highly confident in the source and the preservation / validity of these documents, readers may express doubts about their veracity. Understandable.

Since we want to respect our source's wish to remain anonymous, we can point you to something else: a medical justification template sent by a Tactile rep to doctors at the Dallas VA hospital we received via FOIA request.



**FLEXITOUCH PLUS (bilateral treatment options)**
**Pneumatic Compression Pump**
**FSS Contract:** V797P-4274B **NPI:** 1427131424 **DUNS:** 146295980 **HCPC Code:** E0652

[black redaction box]

**\*\*Please note that Medical Justification is <u>KEY</u> to getting your patient the Flexitouch Plus Pump. The more documentation of WHY they need FT over a high pressure squeeze and hold pump (veterans first pump) that has no clinical evidence, the better.\*\***

**<u>Copy and paste below here</u>→**

------------------------------------------------------------------------------------------------------------------------

Tactile Medical- Flexitouch PLUS – DO NOT SUBSTITUTE
Location: Right Leg, Left Leg or BLE (indicate below knee or full leg if known)
Medical Justification: **(Examples- must be specific as examples below- can make your own- choose 1 or 2)**

- a. Patient with compromised skin integrity cannot tolerate the static compression applied by the Veterans First pump. I am only recommending the Flexitouch Plus as it provides gentler pressures for my veteran to be complaint with at home management of their lymphedema
- b. Patient is diabetic and has neuropathy making pressures applied by the Veterans First pump intolerable and cannot utilize for treatment, I only approve the gentle pressures of the Flexitouch Plus
- c. Patient has chronic wounds and cannot tolerate pressures applied by the Veterans First pump and only needs the Flexitouch Plus as the only at home treatment indicated to reduce wound healing time
- d. Patient has chronic cellulitis infections and requires the Flexitouch Plus to manage their swelling and infections. Veterans First pumps does not have clinical data to reduce incidences of these infections as published in JAMA
- e. Patient has truncal edema and needs the Flexitouch Plus due to the truncal decongestion that the Veterans First pump cannot provide. Flexitouch Plus includes a multiple chambered trunk garment to help address swelling in abdomen, hips and genitals. Without the trunk garment that Flexitouch offers, patient symptoms will worsen.
- f. Patient has a Spinal Cord Injury that limits mobility, increases pain levels and can only tolerate the gentle pressures of the Flexitouch Plus. The garments are easier for this veteran to donn and doff with Velcro and patient will be compliant with the treatment to manage his swelling. Patient cannot tolerate the Veterans First pump and I do not approve of him using it.
- g. Patient has head and neck lymphedema and needs the Flexitouch Plus as it is the only pump designed to treat the head and neck. The Veterans First pump cannot treat this patient's condition for head and neck swelling.
- h. Patient has edema in their chest and needs the Flexitouch Plus as it is the only pump that addresses the chest, axilla, back and trunk to help decongest the patient's edema in the proximal areas before clearing the swelling in the arm. Patient cannot tolerate the Veterans First pump as it only provides static compression to arm, making swelling in the chest worse.

Patient has tried and failed conservative therapy, exercise, elevation and/or compression, with significant symptoms remaining.

[black redaction box]

------------------------------------------------------------------------------------------------------------------------

**Diagnosis Code:** Choose appropriate diagnosis. ex.) I89.0 secondary lymphedema, R60.1 Edema, i87.2 CVI
**Please contact** [redacted] **via Text/Call/Email to notify her a consult has been placed. She will then follow up with Prosthetics to ensure the consult was received.**

*Once the patient receives the Flexitouch Plus a Tactile Medical Rep will train ALL patients (and his/her caregiver) how to use the Flexitouch.*

*Source: VA FOIA Records, the original source document sent by the FOIA officer can be found here (#4)*

Though less direct than pre-filled prescriptions, the similarities in language ("Flexitouch Plus… provides gentler pressures", "…cannot tolerate the static compression…") and intent ("Copy and paste below here") are hard to ignore. ***Readers looking to obtain these records for themselves should request email correspondence between Tactile employees and the Dallas VA hospital via FOIA.***

## Prescriber Concentration: More Questions on Tactile's Sales and Marketing Activity

In mid-2018, the former regional manager of Tactile's Mid-Atlantic region filed a lawsuit alleging employment related gender discrimination. The case can be found on Pacer under 5:18-cv-00488-D.

The allegations of gender discrimination were discomfiting to us to say the least, but also disturbing was the company's sales account data released during the discovery process.

It turns out that as of 2017, more than 70% of all Flexitouch devices shipped came from only 20% of clinics. Conversations with former and current executives at large national insurers revealed that prescriber concentration is a key indicator that investigators look for in uncovering potential problems. We walk through our findings below.

The order and shipment data by sales account (e.g. prescriber, clinic, etc.) for the Mid-Atlantic sales region was released under Exhibit 7 of a recent discovery document filed on Pacer:

# EXHIBIT 7

# "Mid-Atlantic Region, All Accounts Tab (TACTILE0388870)"

*Source: Case 5:18-cv-00488-D, Document 46-3, Exhibit 7*

The data includes ~20 pages totaling 458 accounts that shipped one or more Tactile devices in the Mid-Atlantic region during 2017. A sample is provided below. We believe each row refers to an account while 'CR12 Ship' refers to devices shipped in the then-current period (2017) for that account.

| Region | PR12 Refs | CR12 Refs | PR12 OCs | CR12 OCs | PR12 Ship | CR12 Ship |
|---|---|---|---|---|---|---|
| Mid Atlantic | 70 | 77 | 72 | 80 | 56 | 64 |
| Mid Atlantic | 19 | 51 | 13 | 38 | 7 | 35 |
| Mid Atlantic | 43 | 40 | 36 | 33 | 27 | 25 |
| Mid Atlantic | 12 | 18 | 10 | 17 | 7 | 14 |
| Mid Atlantic | 9 | 16 | 7 | 14 | 6 | 13 |
| Mid Atlantic | 18 | 21 | 12 | 13 | 11 | 12 |
| Mid Atlantic | 13 | 14 | 13 | 12 | 9 | 11 |

*Source: Case 5:18-cv-00488-D, Document 46-3, Exhibit 7*

Charting the results (Y: devices shipped by X: sales account) revealed what appeared to us a skewed and top-heavy prescriber base:

*Source: OSS analysis, Case 5:18-cv-00488-D, Document 46-3, Exhibit 7*

Shown below is a conversation we had with a senior medical director at a top national insurer:

> *"What's interesting... by the way, the other area of what we focus on is if, let's say, 80% of the sourcing of the FlexiTouch is coming from 20% of the providers, that's another red flag that a small number of providers are accounting for an excessive number of the prescriptions because it should be diffused across the nation. When we have pockets, we know that something is going on, usually a kickback scheme of some type because why would there be such a pocket?"*
>
> - Medical Director at a top national insurer, June 2020

Imagine our surprise (or lack thereof) when we discovered that ***Tactile's top 20% prescribers accounted for 72% of prescriptions***:

| Top 20th Percentile Accounts: Devices Shipped | | | |
|---|---|---|---|
| | Number of Accounts | Devices Shipped | % of Shipments |
| Top 20% of Accounts | 92 | 2,387 | 72% |
| Bottom 80% | 366 | 950 | 28% |
| Total | 458 | 3,337 | 100% |

*Source: Case 5:18-cv-00488-D, Document 46-3, Exhibit 7, OSS analysis*

More still, buried in the lawsuit was yet another new reference to potential misbehavior at the hands of sales staff at Tactile. The excerpt below is taken directly from an email sent by the plaintiff, Tracy Sempowich, in February 2018 to Tactile's then HR manager Wendy Watt:

| | |
|---|---|
| From: | Tracy Sempowich [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=9D1EAD6FD71841ACA8BE72750CCAB7EA-TSEMPOWICH] |
| Sent: | 2/22/2018 6:20:20 AM |
| To: | Wendy Watt [wwatt@tactilemedical.com] |
| Subject: | CONFIDENTIAL |
| Attachments: | Map-Territories.pdf |
| Importance: | High |

To Whom it May Concern,

DEFENDANT'S EXHIBIT 21 7-8-19

*Source: Case 5:18-cv-00488-D, Document 46-3, Exhibit A033*

The SVP of Sales has berated me over numbers and headcount disruption when I became aware on two separate incidents of President club members doing illegal company activity that would damage us in the present and our future goal of going public. I spent weeks ,months doing drills, being questioned, him taking calls and discussions with the sales personnel and chastised for probably not looking the other way. These individuals were given to me by two former managers who could not control their behavior when they were under their management. They both expressed that I had a tough road ahead of me. I stood isolated and continued to pursue their dismissal, since I knew it was the right thing to do.

*Source: Case 5:18-cv-00488-D, Document 46-3, Exhibit A033*

***We find all of this to be highly troubling for investors of the company. Between the RAC audits, whistleblower lawsuit, Mrs. Sempowich's allegations above, prescription documents, and the clear evidence of exorbitant prescriber concentration... all roads seem to be leading to Rome.***

# Rapidly Emerging Competition

Last but not least, we believe the market may not fully grasp the sheer extent to which competition is intensifying in the PCD industry.

While the distributor side has always been highly fragmented, PCD manufacturing has historically been dominated by a handful of key players: Tactile Systems, Bio Compressions, Lympha Press, and 2018 entrant NormaTec.

Since December 2019, five new entrants have received 510(k) approval for PCD devices - at least two of which were specifically approved using Tactile devices as the predicate product to establish equivalency.

These new competitors are shown below from the FDA website:

| Device Name | Applicant | 510(K) Number | Decision Date |
|---|---|---|---|
| Varilymph 12 Pro | SLK Medical GmbH | K193476 | 08/19/2020 |
| Manaflow | ManaMed, Inc | K200353 | 08/06/2020 |
| B&J Mhp800 Deep Vein Thrombosis (Dvt) Prevention System | B & J Manufacturing Ltd | K200568 | 07/10/2020 |
| B&J Dvt Compression Devices Mhh800/Mhh800sq | B & J Manufacturing Ltd. | K200154 | 07/08/2020 |
| Venaone | Vena Group, LLC | K200285 | 07/02/2020 |
| Zeroveno | Dimedi Co., Ltd. | K192337 | 06/22/2020 |
| Koya Ripple | Koya, Inc. | K193288 | 06/16/2020 |
| Aria System | Inova Labs | K200564 | 04/03/2020 |
| Compression Therapy Device | Guangzhou Longest Science & Technology Co., Ltd. | K191856 | 03/19/2020 |
| Therm-X | Zenith Technical Innovations | K193550 | 02/28/2020 |
| Ezvena Ipc, Ezvena Sqs | Eezcare Medical Corp | K191937 | 01/29/2020 |
| Airos 8 Sequential Compression Device | AIROS Medical, Inc. | K193068 | 12/04/2019 |
| Airos 6 Sequential Compression Device | AIROS Medical, Inc. | K193069 | 12/04/2019 |
| Venapro Vascular Therapy System | Innovamed Health, LLC | K193020 | 12/04/2019 |

Source: FDA, link

We highlight a few emerging competitors in particular:

**VariLymph 12 Pro (August 2020 Approval)**

Product Website and Description: link

Developed by German medtech manufacturer SLK Medical GMBH. Varilymph is notable given the company's high market share and strong presence in the European lymphedema treatment market. Note that Germany is widely recognized as being at the cutting edge of lymphedema treatment and expertise. Varilymph's launch in the US will be backed by publicly listed Apex Medical from Taiwan. Apex has existing distribution into wound therapy clinics that have strong overlap with PCD.

**Pressure distribution Comparison Test**

The purpose of the test was to find out if the SLK VariLymph 12 Pro has a pressure distribution comparable to that of the predicate (Lympha Press Optimal of Mego Afek) to ensure that the device is as safe and effective as a legally market device.

*Source: https://www.accessdata.fda.gov/cdrh_docs/pdf19/K193476.pdf*

Varilymph was approved against Lympha Press as the predicate device. Lympha Press is one of Tactile's largest competitors for the Flexitouch product.

**Aria Pump (April 2020 Approval)**

the aria lymphedema pump is designed to transform pneumatic compression therapy.

While cumbersome equipment can tie you down, the compact aria system is so portable, you can move from room to room, and take therapy wherever you go.

aria targets the burden, the isolation, and the time-suck of managing lymphedema symptoms.

*Source: https://aria-therapy.com/meet-aria/*

The Aria system is being launched by InovaLabs, an internal spin out from publicly traded ResMed. The Aria device was approved against the Tactile Entre as its predicate device. Like Koya, the Aria pump looks to iterate upon legacy technology by adding portability and connectivity features.

**Koya Ripple (June 2020 Approval)**

> growing at 7% CAGR. Existing solutions such as stockings, manual drainage, and Pneumatic Compression Devices (PCDs) are archaic and ineffective. PCDs are bulky, noisy, tethered, and difficult-to-use, yet they remain the standard-of-care for both home-health and hospital care. Our founding team has deep experience in successfully bringing value-based health technologies to market. Koya's platform is based on advanced materials that allows electro-active compression to be weaved into clothing, making it a truly wearable therapeutic. This platform allows patient-specific patterned compression that is tailored, quiet, portable, and easy-to-wear. We are focused in developing the technology for treating edema with a sensor-based closed-loop system that can address the patient's chronic needs. The device is IoT-enabled to remotely monitor and enable compliance. Our lean and hyper-efficient operating plan allows us to solve a large and growing unmet need.

*Source: link*

Venture-backed (UCSF Rosenman Institute) new entrant based out of San Francisco. Koya is taking traditional PCD technology and developing a portable, connected version that will be portable. The device will connect to a cloud application that will then allow physicians and therapists to interact with care via usage data and develop personalized treatment plans.

The Koya device received 510(K) approval going head to head against the Flexitouch Plus as its predicate device:

| Feature | Subject Device (K193288) | Predicate Device (K170216) |
|---|---|---|
| Indications for Use | The Koya Dayspring system is a prescription only wearable compression system that is intended for use in a clinic or home setting by medical professionals and patients who are under medical supervision for the treatment of the following:  • Lymphedema | The Flexitouch Plus System and garments for legs, arms, trunk, and chest are intended for use by medical professionals and patients who are under medical supervision, for the treatment of many conditions such as:  • Lymphedema  • Primary lymphedema |

*Source: https://www.accessdata.fda.gov/cdrh_docs/pdf19/K193288.pdf*

Legacy PCD technology like Tactile's have been around since the 1980s and ripe for disruption: here's what Tactile's patients look like when using their devices.

**Medi USA (January 2019 Approval)**



| Medi Pneumatic Compression System (Pcs) – Brio (Model 651) | Medi USA, LP | K183631 | 01/25/2019 |

Though not highlighted in our earlier table, we note that Medi launched a competing PCD device, receiving 510(k) approval in January 2019. Conversations with industry contacts suggest they are slow-playing commercial launch in order to avoid reimbursement issues like Tactile.

Note in particular that Medi is an industry giant in traditional compression garments with an extremely strong presence across all call points for lymphedema treatment and diagnosis.

*Over the next few months, we believe the PCD industry will transform from a three-player oligopoly to a highly competitive field contested by at least nine well-capitalized competitors.*

*We believe many of these recent new entrants are in a strong position to take share from Tactile - especially in light of Tactile's issues with its whistleblower lawsuit and Medicare audits.*

# Conclusion

*Instead of being a high-growth, disruptive player with a large and growing TAM, we think Tactile is fighting for a smaller share in a shrinking pie - all while fighting off numerous regulatory and legal disruptions as a result of the company's marketing practices. Auditors, regulators, and competitors appear to be closing in. We believe investors should think twice before investing in Tactile.*

*Disclosures: This report expresses the author's opinions.  The author of this report has a short position in TCMD that will benefit from a decline in the price of TCMD's securities.  Following publication of the report, the author may continue transacting in the securities TCMD, and may be long, short, or neutral at any time hereafter regardless of the initial recommendation.  This report is for informational purposes only. Under no circumstances should this report or any information herein be construed as investment advice, or as an offer to sell or the solicitation of an offer to buy any securities or other financial instruments. This report is based on publicly available information, industry expert interviews and the author's due diligence and analytical processes. To the best of the author's belief, all information contained herein is accurate and reliable. However, such information is presented "as is," without warranty of any kind, whether express or implied. The author makes no representation, express or implied, as to the accuracy, timeliness, or completeness of any such information or with regard to the results to be obtained from its use. This report and the author's opinions herein include a significant number of assumptions and forward-looking statements. All expressions of opinion are subject to change without notice, and the author does not undertake to update or supplement this report or any of the information, analysis and opinion contained in it.*

*The lymphedema industry is small. Certain pronouns, locations, names, and titles have been paraphrased or adjusted to preserve the anonymity of industry sources quoted in this report.*

# Appendix

**Appen-A1**



**Appen-A2**

## PRESCRIPTION FOR E0652
### PNEUMATIC COMPRESSION DEVICE FLEXITOUCH® SYSTEM

Place Copy in Patient's Medical Chart

### PATIENT INFORMATION

| | |
|---|---|
| NAME | DOB |
| ADDRESS | |
| CITY/STATE/ZIP | PHONE |

### SUPPLIER INFORMATION

Tactile Systems Technology Inc.
3701 Wayzata Blvd, Suite 300
Minneapolis, MN 55416
Phone: 833-382-2845  Fax: 866-435-3949
NPI: 1427131424

### MEDICAL NECESSITY INFORMATION

DIAGNOSIS:
[I89.0] Lymphedema, not elsewhere classified

LYMPHEDEMA IS SECONDARY TO:
Venous Insufficiency

TREATMENT HISTORY:

Treatment
Lymphedema home therapy (bandaging, garments, exercise, elevation) for at least 4 weeks

Clinical Outcomes
Failed to effectively control symptoms

Basic pneumatic compression device (E0651) not ordered

Ruled out for patient because: Risk of causing trunk/chest/abdominal swelling, Existing pain levels preclude use of static pressure applied by basic pump

COMPLICATIONS:
Patient has the following related complications/impairments: Unable to control swelling, impaired ROM/Mobility, Pain, Hyperpigmentation, Trunk/chest/abdominal swelling

### PRESCRIPTION

**R**x

**Flexitouch Pneumatic Compression Device (E0652) and Lower Garments (E0667 or E0669) for the treatment of Bilateral Lower Extremity Lymphedema**

FREQUENCY:      Daily bilateral lower extremity treatment (Primary); As Needed (Supplemental)
PRESSURE:       Increased (Primary); Increased (Supplemental)
LENGTH OF NEED: Lifetime

### PHYSICIAN CERTIFICATION AND SIGNATURE

I certify that this patient is under my care and the equipment is medically necessary. I have reviewed the list of contraindications and the patient has no contraindications that would prohibit use of the prescribed equipment.

| PRESCRIBER'S NAME | PRESCRIBER'S SIGNATURE | DATE (Required) | NPI |
|---|---|---|---|
| MD | | | |

DYN-500123-01400 Rev. C 11/2019

1-866-435-3949  From: P

# FAX COVER SHEET

| TO | |
|---|---|
| COMPANY | |
| FAX NUMBER | |
| FROM | P |
| DATE | 6/5/2020 |
| RE | Prescription for |

## COVER MESSAGE

Patient:

Thank you for recommending a Flexitouch Pneumatic Compression Device for your patient ███████ Attached is the written prescription requiring your signature.

Please SIGN AND DATE THE PRESCRIPTION and fax back toll-free to 866-435-3949.

Tactile Medical is the manufacturer and sole provider of the Flexitouch system and will facilitate the necessary insurance authorization on behalf of your patient. Thank you in advance for your assistance. Please contact our Account Services Team at 866-435-3948 with questions or concerns.

WWW.EFAX.COM

**Appen-B2**

## PRESCRIPTION FOR E0652
### PNEUMATIC COMPRESSION DEVICE FLEXITOUCH® SYSTEM

Place Copy in Patient's Medical Chart

| PATIENT INFORMATION | | SUPPLIER INFORMATION |
|---|---|---|
| NAME | DOB | Tactile Systems Technology Inc. |
| ADDRESS | | 3701 Wayzata Blvd, Suite 300 |
| | | Minneapolis, MN 55416 |
| CITY/STATE/ZIP | PHONE | Phone: 833-382-2845 Fax: 866-435-3949 |
| | | NPI: 1427131424 |

### MEDICAL NECESSITY INFORMATION

**DIAGNOSIS:**
[Q82.0] Hereditary lymphedema

**TREATMENT HISTORY:**

| Treatment | Clinical Outcomes |
|---|---|
| Lymphedema home therapy (bandaging, garments, exercise, elevation) for at least 4 weeks | Failed to effectively control symptoms |
| Basic pneumatic compression device (E0651) not ordered | Ruled out for patient because: Existing pain levels preclude use of static pressure applied by basic pump |

**COMPLICATIONS:**
Patient has the following related complications/impairments: Unable to control swelling, Pain, Impaired ROM/Mobility, Hyperpigmentation

### PRESCRIPTION

**R<sub>x</sub>**

Flexitouch Pneumatic Compression Device (E0652) and Lower Garments (E0667 or E0669) for the treatment of Bilateral Lower Extremity Lymphedema

FREQUENCY:     Daily bilateral lower extremity treatment
PRESSURE:     Normal
LENGTH OF NEED: Lifetime

### PHYSICIAN CERTIFICATION AND SIGNATURE

I certify that this patient is under my care and the equipment is medically necessary. I have reviewed the list of contraindications and the patient has no contraindications that would prohibit use of the prescribed equipment.

| PRESCRIBER'S NAME | PRESCRIBER'S SIGNATURE | DATE (Required) | NPI |
|---|---|---|---|
| MD | | | |

LVN-500123-019-00 Rev. C 11/2019

**Appen-C1**

## FAX COVER SHEET

| | |
|---|---|
| TO | |
| COMPANY | |
| FAX NUMBER | ████████ |
| FROM | M ████████ |
| DATE | 28/05/2020 ████████ |
| RE | Prescription for ████████ |

**COVER MESSAGE**

Patient: ████████

Thank you for recommending a Flexitouch Pneumatic Compression Device for your patient ████████ Attached is the written prescription requiring your signature.

Please SIGN AND DATE THE PRESCRIPTION and fax back toll-free to 866-435-3949.

Tactile Medical is the manufacturer and sole provider of the Flexitouch system and will facilitate the necessary insurance authorization on behalf of your patient. Thank you in advance for your assistance. Please contact our Account Services Team at 866-435-3948 with questions or concerns.

**Appen-C2**

## PRESCRIPTION FOR E0652
### PNEUMATIC COMPRESSION DEVICE FLEXITOUCH® SYSTEM

Place Copy in Patient's Medical Chart

### PATIENT INFORMATION

NAME

ADDRESS

CITY/STATE/ZIP

DOB

PHONE

### SUPPLIER INFORMATION

Tactile Systems Technology Inc.
3701 Wayzata Blvd, Suite 300
Minneapolis, MN 55416
Phone: 833-382-2845 Fax: 866-435-3949
NPI: 1427131424

### MEDICAL NECESSITY INFORMATION

DIAGNOSIS:
[I89.0] Lymphedema, not elsewhere classified

LYMPHEDEMA IS SECONDARY TO:
Venous Insufficiency

TREATMENT HISTORY:

Treatment
Lymphedema home therapy (bandaging, garments, exercise, elevation) for at least 4 weeks

Basic pneumatic compression device (E0651) not ordered

Clinical Outcomes
Failed to effectively control symptoms

Ruled out for patient because: Existing pain levels preclude use of static pressure applied by basic pump, Risk of causing trunk/chest/abdominal swelling

COMPLICATIONS:
Patient has the following related complications/impairments: Unable to control swelling, impaired ROM/Mobility, Pain, Hyperpigmentation, Trunk/chest/abdominal swelling

### PRESCRIPTION

**℞**

**Flexitouch Pneumatic Compression Device (E0652) and Lower Garments (E0667 or E0669) for the treatment of Bilateral Lower Extremity Lymphedema**

FREQUENCY: Daily bilateral lower extremity treatment
PRESSURE: Normal
LENGTH OF NEED: Lifetime

### PHYSICIAN CERTIFICATION AND SIGNATURE

I certify that this patient is under my care and the equipment is medically necessary. I have reviewed the list of contraindications and the patient has no contraindications that would prohibit use of the prescribed equipment.

PRESCRIBER'S NAME                MD

PRESCRIBER'S SIGNATURE

DATE (Required)

NPI

DVN:500123-01000 Rev.C 11/2019

**Appen-D1**

18667794266 From: M ████████

## FAX COVER SHEET

| | |
|---|---|
| TO | |
| COMPANY | |
| FAX NUMBER | ████████ |
| FROM | M ████████ |
| DATE | 18/02/2020 ████████ |
| RE | Prescription for ████████ |

COVER MESSAGE

Patient: ████████

Thank you for recommending a Flexitouch Pneumatic Compression Device for your patient ████████. Attached is the written prescription requiring your signature.

Please SIGN AND DATE THE PRESCRIPTION and fax back toll-free to 866-435-3949.

Tactile Medical is the manufacturer and sole provider of the Flexitouch system and will facilitate the necessary insurance authorization on behalf of your patient. Thank you in advance for your assistance. Please contact our Account Services Team at 866-435-3948 with questions or concerns.

WWW.EFAX.COM

**Appen-D2**

18667794266 From: M

## PRESCRIPTION FOR E0652
### PNEUMATIC COMPRESSION DEVICE FLEXITOUCH® SYSTEM

Place Copy in Patient's Medical Chart

| PATIENT INFORMATION | | SUPPLIER INFORMATION |
|---|---|---|
| NAME | DOB | Tactile Systems Technology Inc. |
| ADDRESS | | 3701 Wayzata Blvd, Suite 300 |
| CITY/STATE/ZIP | PHONE | Minneapolis, MN 55416 |
| | | Phone: 833-382-2845 Fax: 866-435-3949 |
| | | NPI: 1427131424 |

### MEDICAL NECESSITY INFORMATION

**DIAGNOSIS:**
[I89.0] Lymphedema, not elsewhere
classified, [Q82.0] Hereditary
lymphedema

**LYMPHEDEMA IS SECONDARY TO:**
Venous Insufficiency

**TREATMENT HISTORY:**

Treatment
Lymphedema home therapy
(bandaging, garments, exercise,
elevation) for at least 4 weeks

Clinical Outcomes
Failed to effectively control symptoms

Basic pneumatic compression device
(E0651) not ordered

Ruled out for patient because: Existing pain levels
preclude use of static pressure applied by basic pump

COMPLICATIONS:
Patient has the following related complications/impairments: Unable to control swelling,
Pain, Infections, Hyperpigmentation

### PRESCRIPTION

**℞** Flexitouch Pneumatic Compression Device (E0652) and Lower Garments
(E0667 or E0669) for the treatment of Bilateral Lower Extremity
Lymphedema

FREQUENCY: Daily bilateral lower extremity treatment
PRESSURE: Normal
LENGTH OF NEED: Lifetime

### PHYSICIAN CERTIFICATION AND SIGNATURE

I certify that this patient is under my care and the equipment is medically necessary. I have reviewed the list of contraindications and the
patient has no contraindications that would prohibit use of the prescribed equipment.

| PRESCRIBER'S NAME | PRESCRIBER'S SIGNATURE | DATE (Required) | NPI |
|---|---|---|---|
| MD | | | |

LIT#:900123-019-00 Rev. C 11/2019

## FAX COVER SHEET

| | |
|---|---|
| TO | |
| COMPANY | |
| FAX NUMBER | |
| FROM | |
| DATE | 5/15/2020 |
| RE | Prescription for |

### COVER MESSAGE

Patient:

Thank you for recommending a Flexitouch Pneumatic Compression Device for your patient [redacted] Attached is the written prescription requiring your signature.

Please SIGN AND DATE THE PRESCRIPTION and fax back toll-free to 866-435-3949.

Tactile Medical is the manufacturer and sole provider of the Flexitouch system and will facilitate the necessary insurance authorization on behalf of your patient. Thank you in advance for your assistance. Please contact our Account Services Team at 866-435-3948 with questions or concerns.

WWW.EFAX.COM

**Appen-E2**

1-866-435-3949 From: S█████

## PRESCRIPTION FOR E0652
### PNEUMATIC COMPRESSION DEVICE FLEXITOUCH® SYSTEM

Place Copy in Patient's Medical Chart

### PATIENT INFORMATION

NAME ████████

ADDRESS ████████

CITY/STATE/ZIP ████████

DOB ████████

PHONE ████████

### SUPPLIER INFORMATION

Tactile Systems Technology Inc.
3701 Wayzata Blvd, Suite 300
Minneapolis, MN 55416
Phone: 833-382-2845  Fax: 866-435-3949
NPI: 1427131424

### MEDICAL NECESSITY INFORMATION

**DIAGNOSIS:**
[Q82.0] Hereditary lymphedema

**TREATMENT HISTORY:**

Treatment
Lymphedema home therapy
(bandaging, garments, exercise,
elevation) for at least 4 weeks

Clinical Outcomes
Failed to effectively control symptoms

Basic pneumatic compression device
(E0651) not ordered

Ruled out for patient because: Existing pain levels
preclude use of static pressure applied by basic pump

COMPLICATIONS:
Patient has the following related complications/impairments: Unable to control swelling,
Pain, Hyperpigmentation, Impaired ROM/Mobility

### PRESCRIPTION

℞ Flexitouch Pneumatic Compression Device (E0652) and Lower Garments
(E0667 or E0669) for the treatment of Bilateral Lower Extremity
Lymphedema

FREQUENCY:     Daily bilateral lower extremity treatment
PRESSURE:      Normal
LENGTH OF NEED: Lifetime

### PHYSICIAN CERTIFICATION AND SIGNATURE

I certify that this patient is under my care and the equipment is medically necessary. I have reviewed the list of contraindications and the
patient has no contraindications that would prohibit use of the prescribed equipment.

| PRESCRIBER'S NAME | PRESCRIBER'S SIGNATURE | DATE (Required) | NPI |
|---|---|---|---|
| ██████ MD | | | ████████ |

D/N-500123-01000 Rev. C 11/2019

18663621882  From: C▮▮▮▮▮▮

## FAX COVER SHEET

| TO | |
|---|---|
| COMPANY | |
| FAX NUMBER | ▮▮▮▮▮▮ |
| FROM | C▮▮▮▮▮▮ |
| DATE | 2/21/2020 ▮▮▮▮ |
| RE | Prescription for ▮▮▮▮▮▮ |

COVER MESSAGE

Patient: ▮▮▮▮▮▮▮▮

Thank you for recommending a Flexitouch Pneumatic Compression Device for your patient ▮▮▮▮▮▮. Attached is the written prescription requiring your signature.

Please SIGN AND DATE THE PRESCRIPTION and fax back toll-free to 866-435-3949.

Tactile Medical is the manufacturer and sole provider of the Flexitouch system and will facilitate the necessary insurance authorization on behalf of your patient. Thank you in advance for your assistance. Please contact our Account Services Team at 866-435-3948 with questions or concerns.

WWW.EFAX.COM

**Appen-F2**

18663621882 From: C

## PRESCRIPTION FOR E0652
### PNEUMATIC COMPRESSION DEVICE FLEXITOUCH® SYSTEM

Place Copy in Patient's Medical Chart

### PATIENT INFORMATION

| | |
|---|---|
| NAME | DOB |
| ADDRESS | |
| CITY/STATE/ZIP | PHONE |

### SUPPLIER INFORMATION

Tactile Systems Technology Inc.
3701 Wayzata Blvd, Suite 300
Minneapolis, MN 55416
Phone: 833-362-2845 Fax: 866-435-3949
NPI: 1427131424

### MEDICAL NECESSITY INFORMATION

**DIAGNOSIS:**
[I89.0] Lymphedema, not elsewhere classified, [Q82.0] Hereditary lymphedema

**LYMPHEDEMA IS SECONDARY TO:**
Venous Insufficiency

**TREATMENT HISTORY:**

Treatment
Lymphedema home therapy (bandaging, garments, exercise, elevation) for at least 4 weeks

Basic pneumatic compression device (E0651)

Clinical Outcomes
Failed to effectively control symptoms

Discontinued because: Exacerbated symptoms, Caused trunk/chest/abdominal swelling, Did not reduce swelling/no clinical improvement

COMPLICATIONS:
Patient has the following related complications/impairments: Unable to control swelling, Pain, Impaired ROM/Mobility, Trunk/chest/abdominal swelling

### PRESCRIPTION

**R͓x** Flexitouch Pneumatic Compression Device (E0652) and Lower Garments (E0667 or E0669) for the treatment of Bilateral Lower Extremity Lymphedema

FREQUENCY:     Daily bilateral lower extremity treatment (Primary); As Needed (Supplemental)
PRESSURE:     Normal (Primary); Normal (Supplemental)
LENGTH OF NEED: Lifetime

### PHYSICIAN CERTIFICATION AND SIGNATURE

I certify that this patient is under my care and the equipment is medically necessary. I have reviewed the list of contraindications and the patient has no contraindications that would prohibit use of the prescribed equipment.

| PRESCRIBER'S NAME | PRESCRIBER'S SIGNATURE | DATE (Required) | NPI |
|---|---|---|---|
| MD | | | |

LIT-800123-01600 Rev. C 11/2019

**Appen-G1**

 1-866-435-3949 From: E



# Tactile
MEDICAL

HEALING RIGHT AT HOME

## FACSIMILE MESSAGE

| Date: 6/11/2020 | # of Pages (excl cover): 2 |
|---|---|
| To: ▮▮▮▮ MD | From: E▮▮▮▮ |
| Attn: | Phone: 866-435-3948 ext. 05623 |
| Fax: ▮▮▮▮ | Fax: 866-435-3949 |

| Re: Prescription for ▮▮▮▮ |
|---|

Patient: ▮▮▮▮

## SIGNATURE REQUEST

A Flexitouch Plus™ Pneumatic Compression Device (HCPCS: E0652) was recommended for your patient by (Metro Vein Centers Clear Lake; Webster, TX). If the enclosed form(s) is acceptable:

## Please REVIEW, SIGN AND DATE THE FORM(S) and fax to 866-435-3949.

Tactile Medical is the manufacturer and provider of the Flexitouch system and will facilitate the insurance authorization process for your patient. Documentation of your patient's relevant treatment history and a prescription with program selection and treatment plan are required by the insurance company to make a coverage decision.

Thank you in advance for your assistance. Please contact our Sales Support Team at 612-800-5611 with questions or concerns. If you'd like more information about the product, please visit our web site at www.tactilemedical.com.

Confidentiality Notice: The information contained in this facsimile is privileged and confidential, intended only for the use of the individual named above. If you are not the intended recipient of this message, you are hereby notified that disclosing, distributing, or copying this facsimile is prohibited. If you have received this facsimile in error, please notify the sender by telephone immediately so that we can arrange for return of these documents.

3701 WAYZATA BLVD, SUITE 300, MINNEAPOLIS, MN 55416 | T 612.355.5100 F 612.355.5101 TACTILEMEDICAL.COM

**Appen-G2**

1-866-435-3949 From: E▮▮▮▮

## PRESCRIPTION FOR E0652
### PNEUMATIC COMPRESSION DEVICE FLEXITOUCH® SYSTEM

Place Copy in Patient's Medical Chart

| PATIENT INFORMATION | | SUPPLIER INFORMATION |
|---|---|---|
| NAME ▮▮▮ | DOB ▮▮▮ | Tactile Systems Technology Inc. |
| ADDRESS ▮▮▮ | | 3701 Wayzata Blvd, Suite 300 |
| CITY/STATE/ZIP ▮▮▮ | PHONE ▮▮▮ | Minneapolis, MN 55416 |
| | | Phone: 833-382-2845  Fax: 866-435-3949 |
| | | NPI: 1427131424 |

### MEDICAL NECESSITY INFORMATION

**DIAGNOSIS:**
[I89.0] Lymphedema, not elsewhere classified

**LYMPHEDEMA IS SECONDARY TO:**
Venous Insufficiency

**TREATMENT HISTORY:**

Treatment
Lymphedema home therapy (bandaging, garments, exercise, elevation) for at least 4 weeks

Clinical Outcomes
Failed to effectively control symptoms

Basic pneumatic compression device (E0651) not ordered

Ruled out for patient because: Risk of causing trunk/chest/abdominal swelling, Existing pain levels preclude use of static pressure applied by basic pump

COMPLICATIONS:
Patient has the following related complications/impairments: Unable to control swelling, impaired ROM/Mobility, Pain, Trunk/chest/abdominal swelling, Hyperpigmentation

### PRESCRIPTION

**R**x  **Flexitouch Pneumatic Compression Device (E0652) and Lower Garments (E0667 or E0669) for the treatment of Bilateral Lower Extremity Lymphedema**

FREQUENCY:   Daily bilateral lower extremity treatment (Primary); As Needed (Supplemental)
PRESSURE:    Increased (Primary); Increased (Supplemental)
LENGTH OF NEED: Lifetime

### PHYSICIAN CERTIFICATION AND SIGNATURE

I certify that this patient is under my care and the equipment is medically necessary. I have reviewed the list of contraindications and the patient has no contraindications that would prohibit use of the prescribed equipment.

| PRESCRIBER'S NAME | PRESCRIBER'S SIGNATURE | DATE (Required) | NPI |
|---|---|---|---|
| ▮▮▮ MD | | | ▮▮▮ |

LVN-500133-010-00 Rev. C 11/2019 ▮▮▮

**Appen-H1**



18664353949  From: C▬▬



HEALING RIGHT AT HOME

## FACSIMILE MESSAGE

| Date: 3/30/2020 | # of Pages (excl cover): 1 |
|---|---|
| To: ▬▬ MD | From: ▬▬ |
| Attn: | Phone: 866-435-3948 ext. 58991 |
| Fax: ▬▬ | Fax:  866-435-3949 |

| Re:  SIGNATURE REQUEST- Letter of Medical Necessity |
|---|

Patient: ▬▬

## SIGNATURE REQUEST- Letter of Medical Necessity

We are currently working on the authorization for the above patient's Flexitouch Plus™ system through her insurance. They require a Statement of Medical Necessity from the treating physician.

Please review the attached draft narrative.

### If you are in agreement, please COPY ONTO YOUR LETTERHEAD* AND SIGN.

*Many state regulations require that physician communications be on letterhead.

*** We are providing this narrative as a courtesy.  As the prescriber of this equipment, please feel free to modify/change or add any details you feel necessary to enhance accuracy and demonstrate medical necessity.

### Fax back to 866-613-5232.

If you would prefer an electronic version of this document (via encrypted email), please contact me at 612-800-5611 with your email address.

**Confidentiality Notice:** The information contained in this facsimile is privileged and confidential, intended only for the use of the individual named above. If you are not the intended recipient of this message, you are hereby notified that disclosing, distributing, or copying this facsimile is prohibited. If you have received this facsimile in error, please notify the sender by telephone immediately so that we can arrange for return of these documents.

3701 WAYZATA BLVD, SUITE 300, MINNEAPOLIS, MN 55416  |  T 612.355.5100  F 612.355.5101  TACTILEMEDICAL.COM

**Appen-H2**

March 30, 2020

Patient: ▮▮▮▮▮▮
DOB: ▮▮▮▮

To Whom It May Concern:

▮▮▮▮▮▮ is a ▮▮ year old female who presents with stage II bilateral lower extremity lymphedema secondary to venous insufficiency, with initial onset of symptoms in December 2017. She currently experiences hyperpigmentation, impaired mobility, fibrosis, severe pain and swelling that extends from her feet to her hips and abdomen. While she has remained compliant with use of compression garments, exercise and elevation for the past year her symptoms remain, continue to progress, and are now negatively affecting her overall quality of life.

In order to gain control of her condition ▮▮▮▮ will need to augment her conservative treatment modalities with the addition of pneumatic compression device treatments. I have ruled out use of basic pumps, which use harsh static pressures she would not be able to tolerate and are incapable of providing required proximal treatment. I am instead prescribing daily home treatment with the Flexitouch pump, which treats the legs and trunk with gentle sequential pressures that promote lymph flow without worsening her pain. Please approve coverage for the prescribed E0652 Flexitouch device.

Sincerely,

▮▮▮▮ MD

**Appen-I1**



18668778919 From: E▮▮▮▮▮

# Tactile
## MEDICAL

HEALING RIGHT AT HOME

## FACSIMILE MESSAGE

| Date: 5/6/2020 | # of Pages (excl cover): 1 |
| --- | --- |
| To: ▮▮▮▮▮ MD | From: E▮▮▮▮▮ |
| Attn: | Phone: 866-435-3948 ext. 07187 |
| Fax: ▮▮▮▮▮ | Fax: 866-435-3949 |

| Re: Signature/Copy on Letterhead Request |
| --- |

Patient: ▮▮▮▮▮▮

## SIGNATURE REQUEST

We are currently working on the authorization for the above patient's Flexitouch Plus™ system through her insurance. They require a Statement of Medical Necessity from the treating physician.

Please review the attached draft narrative.

## If you are in agreement, please COPY ONTO YOUR LETTERHEAD* AND SIGN.

*Many state regulations require that physician communications be on letterhead.

*** We are providing this narrative as a courtesy. As the prescriber of this equipment, please feel free to modify/change or add any details you feel necessary to enhance accuracy and demonstrate medical necessity.

## Fax back to 866-435-3949.

If you would prefer an electronic version of this document (via encrypted email), please contact me at 612-800-5611 with your email address.

**Confidentiality Notice:** The information contained in this facsimile is privileged and confidential, intended only for the use of the individual named above. If you are not the intended recipient of this message, you are hereby notified that disclosing, distributing, or copying this facsimile is prohibited. If you have received this facsimile in error, please notify the sender by telephone immediately so that we can arrange for return of these documents.

3701 WAYZATA BLVD, SUITE 300, MINNEAPOLIS, MN 55416 | T 612.355.5100  F 612.355.5101  TACTILEMEDICAL.COM

**Appen-I2**

May 6, 2020

Patient:
DOB:

To Whom It May Concern:

████████ is a ██-year-old female who presents with stage II bilateral lower extremity hereditary lymphedema with an initial onset of symptoms in January 2015. ████████ history includes a C-Section, obesity, right toe surgery and a trauma surgery. She currently experiences hyperpigmentation, impaired mobility, fibrosis, severe pain and swelling that extends from her lower leg to her hips and buttocks. Despite my physician oversight and my patient's compliance with use of compression garments, exercise and elevation for over 4 weeks, her symptoms have worsened. Due to her progression of symptoms, her lymphedema is now negatively affecting her employment, social activities, ADLs, and overall quality of life.

████████ will need to augment her conservative treatment modalities with the addition of a pneumatic compression device for at home treatments. She should use the Flexitouch once daily on the normal pressure setting for the rest of her life. I have ruled out the use of a basic pump, which uses harsh static pressure, as ████████ would not be able to tolerate this because of the severe pain she already suffers from. Please approve coverage for the prescribed E0652 Flexitouch device.

Sincerely,

████████ MD



18684353949 From: M▆▆▆▆▆▆▆

# Tactile
## MEDICAL

HEALING RIGHT AT HOME

# FACSIMILE MESSAGE

| Date: 6/4/2020 | # of Pages (excl cover): 1 |
|---|---|
| To: ▆▆▆▆ MD | From: M▆▆▆▆▆▆ |
| Attn: | Phone: 866-435-3948 ext. 05351 |
| Fax: ▆▆▆▆▆ | Fax: 866-435-3949 |

| Re: MD Signature & Date Request- Prior Authorization |
|---|

Patient: ▆▆▆▆▆▆▆▆▆▆

## MD SIGNATURE REQUEST - Prior Authorization

We are currently working on the prior authorization for the above patient's Flexitouch Plus™ system through his insurance. They require a Statement of Medical Necessity from the treating physician.

Please review the attached draft narrative.

## If you are in agreement, please COPY ONTO YOUR LETTERHEAD* AND SIGN.

*Many state regulations require that physician communications be on letterhead.

*** We are providing this narrative as a courtesy. As the prescriber of this equipment, please feel free to modify/change or add any details you feel necessary to enhance accuracy and demonstrate medical necessity.

## Fax back to 866-435-3949.

If you would prefer an electronic version of this document (via encrypted email), please contact me at 612-800-5611 with your email address.

**Confidentiality Notice:** The information contained in this facsimile is privileged and confidential, intended only for the use of the individual named above. If you are not the intended recipient of this message, you are hereby notified that disclosing, distributing, or copying this facsimile is prohibited. If you have received this facsimile in error, please notify the sender by telephone immediately so that we can arrange for return of these documents.

3701 WAYZATA BLVD, SUITE 300, MINNEAPOLIS, MN 55416 | T 612.355.5100 F 612.355.5101 TACTILEMEDICAL.COM

18664353949  From: M███████████

June 4, 2020

RE: ████████████ ████████

██████████████ is a ███ year-old male who presents with stage II bilateral lower extremity lymphedema secondary to venous insufficiency. He was hospitalized for cellulitis in February of this year. Despite his continued compliance with compression, manual lymph drainage, exercise and elevation, his symptoms of hyperpigmentation, fibrosis, severe pain and uncontrolled swelling persist. While he remains compliant with compression it has become increasingly painful due to progressive symptoms. He also experiences impaired mobility, which makes it difficult to complete activities of daily living.

In order to manage his condition more effectively ████████ will need to augment his conservative treatment modalities with the addition of home treatments with a pneumatic compression device. Basic pumps will not suffice as they use harsh static pressures that he will not be able to tolerate. I have instead prescribed daily treatment with a Flexitouch pump, which applies gentle waves of programmable pressure that promote effective lymph flow without worsening pain. There are also clinical studies showing a significant reduction in recurrent cellulitis episodes with daily use of the Flexitouch. We look forward to your approval.

Sincerely,

████████████, MD

**Appen-K1**



18664353949  From: S▮▮▮▮▮▮

# Tactile
## MEDICAL

HEALING RIGHT AT HOME

## FACSIMILE MESSAGE

| Date: 6/10/2020 | # of Pages (excl cover): 1 |
|---|---|
| To: ▮▮▮▮▮▮ | From: S▮▮▮▮▮ |
| Attn: | Phone: 866-435-3948 ext. 07106 |
| Fax: ▮▮▮▮▮ | Fax  866-435-3949 |

| Re:  MD Signature Request (Device Reauth) -- Thank You! |
|---|

Patient: ▮▮▮▮▮▮▮▮

## SIGNATURE REQUEST

We are currently working on the reauthorization for the above patient's Flexitouch Plus™ system through her insurance. They require a Statement of Medical Necessity from the treating physician.

Please review the attached draft narrative.

## If you are in agreement, please COPY ONTO YOUR LETTERHEAD* AND SIGN.
*Many state regulations require that physician communications be on letterhead.

*** We are providing this narrative as a courtesy.  As the prescriber of this equipment, please feel free to modify/change or add any details you feel necessary to enhance accuracy and demonstrate medical necessity.

## Fax back to 866-435-3949.

If you would prefer an electronic version of this document (via encrypted email), please contact me at 612-800-5611 with your email address.

**Confidentiality Notice:** The information contained in this facsimile is privileged and confidential, intended only for the use of the individual named above. If you are not the intended recipient of this message, you are hereby notified that disclosing, distributing, or copying this facsimile is prohibited. If you have received this facsimile in error, please notify the sender by telephone immediately so that we can arrange for return of these documents.

3701 WAYZATA BLVD, SUITE 300, MINNEAPOLIS, MN 55416   |   T 612.355.5100   F 612.355.5101   TACTILEMEDICAL.COM

**Appen-K2**

18664353949  From: S

June 10, 2020

Patient:
DOB:

RE: Flexitouch E0652 Lymphedema Pump

To Whom It May Concern:

I am writing to support medical necessity of the Flexitouch lymphedema pump I have prescribed for treatment of my patient's bilateral lower extremity lymphedema. experiences impaired mobility, pain and swelling that extends throughout her legs. While she has attempted over 5 weeks of conservative therapy including compression, exercise and elevation, her symptoms still persist and are negatively impacting her overall quality of life.

In order to assist her in gaining control of her symptoms I have prescribed daily treatment with a Flexitouch lymphedema pump. I have specifically prescribed this E0652 device as it applies gentle waves of calibrated pressure that promote lymph flow without exacerbating pain. I have ruled out the use of basic pumps as she would not be able to tolerate their harsh static pressures. Please make an out-of-network exception for this medically necessary device and approve coverage for the prescribed Flexitouch pump.

Thank you,

**Appen-L1**



# Tactile
### MEDICAL

HEALING RIGHT AT HOME

## FACSIMILE MESSAGE

| Date: 2/24/2020 | # of Pages (excl cover): 1 |
|---|---|
| To: ███████, MD | From: E███ |
| Attn: | Phone: 866-435-3948 ext. 07187 |
| Fax: ██████ | Fax: 866-435-3949 |

| Re: SIGNATURE/ COPY TO LETTER HEAD |
|---|

 Patient: ████████

## SIGNATURE REQUEST

We are currently working on the authorization for the above patient's Flexitouch Plus™ system through her insurance. They require a Statement of Medical Necessity from the treating physician.

Please review the attached draft narrative.

## If you are in agreement, please COPY ONTO YOUR LETTERHEAD* AND SIGN.

*Many state regulations require that physician communications be on letterhead.

*** We are providing this narrative as a courtesy. As the prescriber of this equipment, please feel free to modify/change or add any details you feel necessary to enhance accuracy and demonstrate medical necessity.

## Fax back to 866-435-3949.

If you would prefer an electronic version of this document (via encrypted email), please contact me at 612-800-5611 with your email address.

**Confidentiality Notice:** The information contained in this facsimile is privileged and confidential, intended only for the use of the individual named above. If you are not the intended recipient of this message, you are hereby notified that disclosing, distributing, or copying this facsimile is prohibited. If you have received this facsimile in error, please notify the sender by telephone immediately so that we can arrange for return of these documents.

3701 WAYZATA BLVD, SUITE 300, MINNEAPOLIS, MN 55416 | T 612.355.5100 F 612.355.5101 TACTILEMEDICAL.COM

18668778919 From: E▮▮▮▮▮

February 24, 2020

Patient: ▮▮▮▮▮▮▮
DOB: ▮▮▮▮

To Whom it May Concern,

▮▮▮▮▮▮ is a ▮ year old female who presents with stage II bilateral lower extremity lymphedema secondary to venous insufficiency, with initial onset of symptoms in 2010. Swelling is present from feet to hips/buttocks. She has worn compression garments, exercised, and elevated her legs for the past 7+ weeks. Despite her continued compliance, she has not seen any improvement and her swelling has not gone down. She complains of pain and impaired mobility, which have limited her activities of daily living and reduced her quality of life.

In order to gain control of her condition ▮▮▮▮ will need to augment her current conservative treatment modalities with the addition of home treatments with a pneumatic compression device. Basic pumps will not suffice as a one-time trial exacerbated her symptoms causing increased proximal swelling. I have instead prescribed a Flexitouch pump, which treats the trunk and legs with gentle calibrated pressures that ▮▮▮▮ tolerated well during a trial treatment. We look forward to your approval of the prescribed pump.

Sincerely,

▮▮▮▮▮ MD