UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN MART, Individually and on Behalf of All Others Similarly Situated, ) ) | Civ. No. 0:20-cv-02074-NEB-BRT |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| TACTILE SYSTEMS TECHNOLOGY, ) | |
| INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## <u>DEFENDANTS' REPLY MEMORANDUM OF LAW<br>IN SUPPORT OF MOTION TO DISMISS</u>

Date:  September 22, 2021.

**FAEGRE DRINKER BIDDLE &
REATH LLP**
Wendy J. Wildung (#117055)
Matthew Kilby (#0335083)
Anderson C. Tuggle (#0400277)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
wendy.wildung@faegredrinker.com
matthew.kilby@faegredrinker.com
anderson.tuggle@faegredrinker.com

*Attorneys for Defendants*

US.134579501.05

## TABLE OF CONTENTS

**Page**

I.    THE AC FAILS TO PLEAD ILLEGAL CONDUCT. ........................................... 2

II.   THE AC FAILS TO PLEAD FALSE OR MISLEADING STATEMENTS. ........ 7

III.  THE AC FAILS TO PLEAD SCIENTER. ........................................................ 10

IV.   THE AC FAILS TO PLEAD SCHEME LIABILITY. ....................................... 13

V.    THE AC FAILS TO PLEAD "CONTROLLING PERSON" LIABILITY. ......... 14

VI.   THE AC FAILS TO PLEAD A SECTION 20A CLAIM. ................................... 15

CONCLUSION ........................................................................................................ 15

Plaintiff's brief opposing Defendants' motion to dismiss ("Opp.", ECF 71) confirms the AC[1] is hollow at its core.

Plaintiff cites the AC's allegations of "illegal sales practices" to attempt to overcome the deficiencies Defendants identified.  But those allegations are too speculative to support a securities fraud claim.  Plaintiff never explains why this Court *should* credit information from the *qui tam* lawsuit, the OSS reports, or the long-departed former employee when that information itself is vague, conclusory, or anecdotal; relies upon unnamed sources; is being promoted by the self-interested; and has not proven predictive.

Despite repeatedly claiming Tactile's alleged illegal conduct created a material risk to Tactile's financial performance, Plaintiff never identifies any pleaded facts demonstrating this hypothetical risk materialized—Tactile continues to be paid by the VA and Medicare, and Tactile's 2021 financial results have improved over the comparable six-month period in 2020.  (*See* 2Q2021-10-Q, at 19 (reporting revenue growth of $15,037,000, including $5,523,000 increased Medicare revenues and $1,788,000 increased VA revenues).)[2]

Plaintiff doesn't cite case law sustaining a complaint that was comparably skimpy or that involved a comparably speculative theory.  Instead, Plaintiff relies in part upon "sound bites" from cases where courts dismissed the complaints,[3] where the PSLRA did not apply,[4]

---

[1] This brief uses the same reference terms as Defendants' opening brief (ECF 65).

[2] https://investors.tactilemedical.com/sec-filings/sec-filing/10-q/0001558370-21-009806.

[3] *E.g., In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 882 (8th Cir. 2002); *In re Medtronic Inc., Sec. Litig.*, 618 F. Supp. 2d 1016 (D. Minn. 2009), *aff'd sub nom. Detroit Gen. Ret. Sys. v. Medtronic, Inc.*, 621 F.3d 800 (8th Cir. 2010); *In re Cree Sec. Litig.*, No. 1:03-cv-00549 (FWB), 2005 U.S. Dist. LEXIS 21975 (M.D.N.C. Aug. 2, 2005).

1

or that addressed issues Defendants did not raise,[5] plus a PSLRA case where a court sanctioned plaintiff's counsel for an unfounded complaint.[6]   The applicable Circuit law does not support Plaintiff's arguments.

The Court should dismiss the AC with prejudice[7] for the reasons stated in Defendants' opening brief ("Ds' Br.") and below.

## I.   THE AC FAILS TO PLEAD ILLEGAL CONDUCT.

Plaintiff's only sources for alleging Tactile engaged in illegal conduct during the Class Period are (1) papers filed in the *qui tam* action,[8] and (2) the OSS reports.  (Ds' Br. 9-10.)  Plaintiff's assertion that there is no "absolute rule" that such sources must be disregarded (Opp. 16-17) is a straw-man.  Plaintiff ignores the particular flaws in these two sources—and the allegations attributable to them—that Defendants detailed at length.  (Ds' Br. 12-17.)

---

[4] *E.g., S.E.C. v. Levin*, 232 F.R.D. 619 (C.D. Cal. 2005); *Merchant & Gould, PC v. Premier Glob. Servs., Inc.*, 749 F. Supp. 2d 923 (D. Minn. 2010).

[5] *E.g., Campbell v. Transgenomic, Inc.*, 916 F.3d 1121 (8th Cir. 2019).  Contrary to the impression left by Plaintiff (Opp. 20), the opinion was addressing a dispute over materiality, not falsity.

[6] *De la Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250 (S.D.N.Y. 2003).

[7] Plaintiff has not requested leave to amend or identified how it could amend to correct the deficiencies in the AC.

[8] Plaintiff falsely states that the *qui tam* plaintiff's FCA claim survived summary judgment.  (Opp. 18.)  Tactile's summary judgment motion as to the FCA claim was only filed on August 13, 2021 and is pending.  *Veterans First Medical Supply LLC, ex rel. v. Tactile*, No. 4:18-cv-2871 (S.D. Tex.) (ECF 184).  Tactile's summary judgment motion as to the other two claims was granted.  (*Id*. ECF 114.)

Where plaintiffs source their fraud allegations from others, a court must "conduct an examination of the detail provided by the . . . sources," including their "basis of knowledge . . . reliability of the sources, [and] the corroborative nature of other facts alleged." *In re NVE Corp. Sec. Litig.*, 551 F. Supp. 2d 871, 881 (D. Minn. 2007). The same scrutiny applied to confidential witnesses is applied to allegations borrowed from other lawsuits and short-seller reports. Indeed, there is more reason to be skeptical of allegations sourced from another lawsuit because the securities plaintiff "presumably does not even know" the witnesses who are the source of allegations in another complaint. *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11-cv-6805 (DLC), 2013 U.S. Dist. LEXIS 132250, at *21 (S.D.N.Y. Sep. 16, 2013) (quotation omitted). This makes "[s]uch reliance . . . impermissible, particularly in light of counsel's personal, non-delegable responsibility under Rule 11 to validate the truth . . . of the papers filed." *Id*. The same is true for short-seller reports. *See, e.g.*, *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020) (applying confidential witness scrutiny to short-seller report); *Miller v. PCM, Inc.*, No. 17-cv-3364 (VAP), 2018 U.S. Dist. LEXIS 148930, at *27-30 (C.D. Cal. Jan. 3, 2018) (holding that short-seller's *Seeking Alpha* article did not meet the Ninth Circuit's standards for pleading reliability of allegations from confidential witnesses).

Plaintiff attempts to distinguish the numerous decisions dismissing similar complaints (Ds' Br. 10-12)—including Judge Frank's highly analogous decision in *Shoemaker v. Cardiovascular Systems, Inc.*, No. 16-cv-568 (DWF), 2017 U.S. Dist. LEXIS 47972 (D. Minn. Mar. 29, 2017)—on the supposed basis that Plaintiff has sources

other than the *qui tam* action and OSS reports.  (Opp.17 n.5.)  But Plaintiff admits the

*only* sources of its cornerstone allegations that "Tactile paid illegal kickbacks in its KOL

[key opinion leader] program and contract trainer program" are paragraphs 37-45 of the

AC.  (*Id*. 11.)  Paragraphs 37-44 come from papers filed in the *qui tam* action,[9] while

paragraph 45 adds an allegation predating the Class Period by at least three years (and

therefore legally irrelevant) from an unidentified former employee who was told by

another unidentified employee that she shouldn't hire trainers who didn't provide

referrals.[10]

Thus, the AC is no different than cribbed-allegation complaints Defendants cited

in their opening brief.  (Ds' Br. 10-12.)  Indeed, the very case Plaintiff cites to prop up its

*qui tam*-sourced allegations demonstrates the dissimilarity between this case and those

---

[9] As shown in Defendants' Exhibit 2, the AC's allegations primarily come from memoranda and compilation exhibits filed by the *qui tam* plaintiff's attorneys, ***not*** documents produced in discovery.  (ECF 66-2.)  Thus, the AC's allegations are primarily drawn from lawyers' characterizations of documents Plaintiff has never seen.  Plaintiff argues Defendants' Exhibit 2 "should be stricken," though not because it is inaccurate but because it includes an additional column showing Tactile contested the *qui tam* plaintiff's summary judgment arguments.  (Opp. 16 n.4.)  Defendants don't ask the Court to accept their own summary judgment arguments as true, however; rather, the Court may take judicial notice that Tactile contested the *qui tam* plaintiff's arguments repeated in the AC.

[10] Unreliability aside, the former employee doesn't even allege kickbacks occurred. Plaintiff doesn't claim Tactile's trainers didn't actually provide the training they were compensated for, just that they worked at facilities where physicians could prescribe Tactile devices.  (Opp. 13.)  Plaintiff cites no law suggesting this constitutes an AKS violation.  And Plaintiff's sole case for the proposition that "courts in this Circuit have given weight to confidential witnesses . . . employed before the class period" observed that the witnesses there were all employed "during or ***immediately*** prior to the Class Period"—a fact that distinguishes that case from the three-year gap here.  (Opp. 19 n.7 (citing *In re St. Jude Med. Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 901 (D. Minn. 2011) (emphasis added)).)

-4-

courts have allowed to proceed.  In *In re Mylan N.V. Sec. Litig.*, the court denied the motion to dismiss because the borrowed allegations came from a "State AG action, were the result of a government investigation, and were verified by Plaintiffs' counsel in this case."  379 F. Supp. 3d 198, 215 (S.D.N.Y. 2019) (emphasis added).  None of that is true here.[11]

Plaintiff never explains how allegations sourced from the *qui tam* filings and the OSS reports can withstand the required scrutiny.  Plaintiff doesn't claim to have obtained any information directly from the *qui tam* plaintiff, and alleges no facts about that entity. The OSS reports' allegations of illegal conduct are themselves based on an unnamed "industry insider" and employees of an unnamed distributor and supplier, but no facts are alleged indicating these sources were in positions to know the facts attributed to them. (Ds' Br. 15-17.)  The Court should thus disregard them.  *E.g.*, *Shoemaker,* 2017 U.S. Dist. LEXIS 47972, at *22-23 (requiring such particularized allegations for confidential witnesses); *Long Miao*, 442 F. Supp. 3d at 803 (disregarding short-seller allegations that bore "none of the indicia of reliability" required of confidential witnesses); *Hurst v. Enphase Energy, Inc.*, No. 20-cv-04036 (BLF), 2021 U.S. Dist. LEXIS 155188, at *16-

---

[11] *Gordon v. Vanda Pharms. Inc.*, No. 1:19-CV-01108 (FB/LB), 2021 U.S. Dist. LEXIS 45457, at *4-5 (E.D.N.Y. Mar. 10, 2021), is unavailing because the court never said it was accepting the *qui tam* plaintiff's allegations.  Likewise for *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 548 n.24 (S.D.N.Y. 2020). There, the court wasn't concerned about the source of allegations because they came from a leaked internal investigation that the company had conducted and were corroborated by independent sources.  There are no such indicia of reliability here.

17 (N.D. Cal. Aug. 17, 2021) (same, and also dismissing because plaintiff and its counsel failed to "independently investigate[]" the short seller's allegations).[12]

Even considering the *qui tam* filings' and OSS reports' substance, Plaintiff fails to respond to Defendants' arguments that Plaintiff overstates the source material, and that the source material concerns a small number of physicians, at best amounting to anecdotal examples of arguably unsavory, but far from illegal, conduct.  (Ds' Br. 12-17.) This case is thus readily distinguishable from *In re CenturyLink Sales Practices & Sec. Litig.*, 403 F. Supp. 3d 712 (D. Minn. 2019), which Plaintiff cites repeatedly. There, the executive defendants had received monthly reports "***detailing thousands of [overbilling] complaints by the FCC, state agencies, and others***," affecting "more than ***3.5 million*** customers."  *Id.* at 720, 724 (emphasis added).  Plaintiff alleges nothing of the sort here; its assertion that illegal sales practices were part of a "Company-wide strategy" is wholly conclusory.  (Opp. 13.)

Because each of Plaintiff's claims is premised on allegations of widespread illegal conduct that do not satisfy the PSLRA, the AC should be dismissed.

---

[12] In addition to OSS's sources being insufficiently pleaded, OSS is itself an anonymous source.  OSS is not a legal entity.  (Ds' Br. 14.)  Plaintiff claims OSS was a "contributor" to *Seeking Alpha* (Opp. 20 n.8), but that is not even a fig leaf.  *Seeking Alpha* is a website aggregating crowdsourced and often anonymous content, and is "notorious for self-interested short-sellers trafficking in rumors for their own pecuniary gain."  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 801 (9th Cir. 2020) (Lee, J., concurring in part and dissenting in part) (citing Jeff Katz & Annie Hancock, *Short Activism: The Rise of Anonymous Online Short Attacks*, Harvard Law School Forum on Corporate Governance (Nov. 27, 2017)).

**II.    THE AC FAILS TO PLEAD FALSE OR MISLEADING STATEMENTS.**

Even if the AC had adequately pleaded illegal conduct, it still fails to connect that conduct to *securities* fraud.  Usually securities fraud claims are brought after unexpected financial or business reversals lead a company's shareholders to question the accuracy of its previous public statements.  Tactile hasn't suffered any reversals, leaving Plaintiff straining to concoct "falsity" arguments from thin air, and failing.

***Statements About Tactile's Revenues.***  Case law, including Plaintiff's cited cases, overwhelmingly holds that accurate reports about a company's financial results do not become "misleading" simply because a securities plaintiff has alleged that illegal conduct led or contributed to those results.  *E.g.*, *Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*, __F. 4th __, 2021 U.S. App. LEXIS 25592, at *11-13 (2d Cir. Aug. 25, 2021).   A few of Plaintiff's cited cases indicate that if a company attributes its success to a particular business practice, it may have a duty to accurately disclose that practice, including (if applicable) its risky or illegal aspects.  *See Mehaldi v. Och-Ziff Cap. Mgmt. Grp LLC*, 164 F. Supp. 3d 568, 581-82 (S.D.N.Y. 2016) (recognizing concept, but holding that connection between identified public statements and alleged criminal conduct was too tenuous to create disclosure duty).  This concept doesn't help Plaintiff here because Plaintiff hasn't identified any statements by Defendants that specifically attributed Tactile's VA revenues to, for example, its trainer program or KOLs, and because Tactile disclosed the potential legal and regulatory risks it faces. (Ds' Br. 22-23.)

***Reports About Medicare Revenues.***  Parroting one of the OSS reports, Plaintiff argues Tactile overreported its 2019 and 2020 Medicare revenues because it received less cash from Medicare in the applicable periods than it recorded as revenues.  (Opp. 24.) This argument is specious.  Tactile informed investors that there is a timing difference between when Medicare revenues are recognized and Medicare payments are actually received (which is consistent with GAAP).  Tactile explained that "we recognize revenue from [Medicare] sales upon shipment of our products" (*e.g.*, 2018-10-K, at 77, Ex. 22, ECF 66-22), and book a portion of those revenues as accounts receivable, based upon historical experience (*id.*).

***Statements That Tactile Believed It Was In Compliance With The Law.***  Plaintiff doesn't cite any cases holding that statements about a company's ***belief*** it is complying with the law are actionable, especially in the absence of an adjudication of wrongdoing. Not only does the AC lack facts showing widespread illegal sales practices (*supra* at 2-7), it is devoid of facts indicating that Defendants actually believed (or believe today) that Tactile violates the law.  Mattys' statements that "we" do not "believe" the *qui tam* suit has merit are inactionable for the same reasons.  (Ds' Br. 25-26.)

***Statements About The Future Market For Tactile's Products (TAM).***  Plaintiff asserts falsity based upon an analysis Plaintiff's counsel conducted "using the same BHI database as Tactile [supposedly] used" that generated a different number than Tactile's TAM.  (Opp. 27.)  Neither the AC nor Plaintiff's counsel detail their analysis, but Plaintiff acknowledges it generated an ***estimate*** of market opportunities.  (*Id*.)  Of

-8-

course, TAM is Tactile's *estimate*.[13]  (*Id*. 26.)  The AC lacks any source for its allegation that TAM comes from the "BHI database"—Tactile told investors that TAM "is based on *a number of* internal and third-party estimates."  (*E.g*., 2018-10-K, at 37, Ex. 22, ECF 66-22 (emphasis added).)  That Plaintiff's counsel can generate a different estimate doesn't make Tactile's estimate of market opportunities false or misleading where, as here, the bases for and limitations on Tactile's estimate were disclosed.  As Tactile said about TAM: **"The size of the market for our products is an estimate and may be smaller than we believe."**  (*Id.* (emphasis in original).)

*Item 303.*  Plaintiff is wrong in arguing that Item 303 required Defendants to disclose that Tactile's "reported revenues were derived in part from illegal kickbacks and false reimbursement claims."  (Opp. 28.)  As previously discussed, the AC doesn't sufficiently plead illegal conduct (*supra* at 2-7) and allegations of "illegal sales practices" do not, on their own, give rise to a duty of disclosure (*supra* at 7).   Further, nothing in the AC shows that management knew Tactile's sales practices were "reasonably likely to have a material . . . unfavorable impact on net sales or revenues or income from continuing operations," as Item 303 requires, *see* 17 C.F.R. 229.303(a)(2)(ii), or that unfavorable impacts have occurred.  Thus, Item 303 is inapplicable here.

---

[13] Disclosing that TAM is an estimate in Tactile's 10-Ks puts investors on notice of that fact as a matter of law.  *E.g.*, *De Vito v. Liquid Holdings Grp., Inc.*, No. 15-cv-6969 (KM), 2018 U.S. Dist. LEXIS 217963, at *69 n.29 (D.N.J. Dec. 31, 2018) ("[I]nvestors are presumed to have read prospectuses, quarterly reports, and other information relating to their investments.") (quotation omitted).

## III.    THE AC FAILS TO PLEAD SCIENTER.

Even if the AC had adequately pleaded false or misleading statements, it doesn't

plead facts showing Defendants knew their statements were false when made.  The

PLSRA requires plaintiffs to "raise a ***strong inference*** of scienter for ***each*** defendant and

with respect to ***each*** alleged misrepresentation."  *Horizon Asset Mgmt. Inc. v. H&R*

*Block, Inc*., 580 F.3d 755, 761 (8th Cir. 2009) (emphasis added).  Nothing in the AC

meets this high standard.

***Access to Contradictory Information***.  Rather than allege that Defendants knew or

had access to ***specific*** information concerning illegal conduct—such as internal audits

confirming the *qui tam*'s allegations— the AC relies upon speculative inferences.

Because ***some*** Defendants had "access to [Flexitouch] sales data" and "trainer

evaluations," Plaintiff argues ***all*** Defendants must have known "of the illegal sales

practices."  (Opp. 45-46.)  This is impermissible group pleading and too general: Plaintiff

doesn't explain what in those sales data or trainer evaluations showed illegal sales

practices.  It is insufficient to "merely assert that [conflicting] information must have

existed and must have been known" without any discussion of specifics.  *Elam v.*

*Neidorff*, 544 F.3d 921, 930 (8th Cir. 2008).

***Insider Stock Sales***.  Implicitly conceding the AC's lack of contemporaneous facts

showing actual knowledge, Plaintiff focuses on circumstantial "motive evidence,"

namely, Defendants' stock sales.  (Opp. 34-41.)  But absent adequate knowledge

allegations, stock sales count for little.  *E.g.*, *In re Navarre Corp. Sec. Litig.*, 299 F.3d

735, 746 (8th Cir. 2002) (affirming dismissal, despite defendants' sales of 100% of their

-10-

stock in a two-day period, because plaintiff failed to connect those sales to any other facts indicative of fraudulent intent).  Beyond that, the AC fails to allege anything suspicious about Defendants' sales here.

- Defendants previously explained that the mid-February 2019 Mattys stock sales— the only specific sales Plaintiff identifies as having suspicious timing (Opp. 35)— are not suspicious because "they were made pursuant to a 10b5-1 plan Mattys entered into on 12/12/18—two months before the *qui tam* complaint was served." (Ds' Br. 35.)  Plaintiff offers no response to this point.

- Plaintiff's argument that some Defendants sold up to 61% of their combined holdings during the Class Period (Opp. 38) means little absent specific facts showing Defendants *timed* their sales to take advantage of insider knowledge. *E.g.*, *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (affirming dismissal despite defendant selling 100% of holdings); *In re Hertz Global Holdings Inc.*, 905 F.3d 106, 120-21 (3d Cir. 2018) (same, where defendant sold 62% of holdings). There are no such allegations here.

- Despite Plaintiff's protestation (Opp. 38), it is obvious and relevant that Defendants did not coordinate their sales with one another.  (*See* Ex. 6, ECF 66-6.) More likely, Defendants' sales were rooted in idiosyncratic, individual needs, rather than in a collective fraud.  *See Metzler*, 540 F.3d at 1067 ("We typically require . . . corroborative sales by other defendants . . . to allow insider trading to support scienter.").

- Plaintiff argues that 10b5-1 plans can be tainted if they were entered into at a suspicious time or with a manipulative intent (Opp. 38-39), but doesn't identify any facts indicating Defendants here entered into their 10b5-1 plans at suspicious times or with manipulative intent. *Compare City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 412 F. Supp. 3d 206, 226 (E.D.N.Y. 2019) (no scienter in case where defendants adopted new 10b5-1 plans during the class period; plaintiff failed to allege "any facts that suggest there was strategic trading and manipulative intent involved in the trading plan") *with In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1069 (C.D. Cal. 2008) (finding scienter where plaintiff offered detailed allegations of plan manipulation).

- Plaintiff doesn't contest the point for which Defendants cite *Hertz*: courts "regularly conclude[] that an inference from insider trading is lessened when, as here, the class period is well over a year." 905 F.3d at 120. Indeed, the Class Period here is not only "well over a year," it is also almost as long as Tactile's entire pre-Class Period existence as a public company, thus rendering comparisons between the periods uninformative. (*See* Ex. 5, ECF 66-5.)

*Incentive Payments*. Plaintiff notes some Defendants earned bonuses when Tactile earned more revenue. (Opp. 41-42.)[14] As the Eighth Circuit has repeatedly explained, such "bonus compensation allegations" are meaningless absent specific

---

[14] Specifically, Plaintiff argues Defendants earned bonuses when Tactile earned more *Flexitouch* revenue. (Opp. 41.) This is incorrect. The AC alleges that, with the exception of Rishe, the employee-Defendants' bonuses were tied to *company-wide* revenues. (¶¶245-47.)

allegations that Defendants' bonuses were of an "overwhelming magnitude *and* received under suspicious circumstances." *Horizon*, 580 F.3d at 766 (emphasis added). The AC doesn't contain facts showing either.

## IV.     THE AC FAILS TO PLEAD SCHEME LIABILITY.

The AC doesn't meet this Circuit's requirement to "specify, with particularity, *what* manipulative acts were performed, *which* defendants performed them, *when* the manipulative acts were performed, and *what* effect the scheme had on the securities at issue." *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 986 (8th Cir. 2012) (emphasis added). As already explained, the AC lacks sufficient facts to show illegal conduct, without which there could be no "scheme." The AC also lacks particularized facts identifying *each* act by *each* Defendant that was a "manipulative act" performed in alleged furtherance of the (phantom) "scheme." In a footnote (Opp. 32 n.18), Plaintiff argues it has met this requirement by pleading each Defendant's position and responsibilities at Tactile. But one doesn't adequately plead a role in a "scheme" simply by reciting a person's role in a business.

Moreover, Plaintiff concedes the "scheme" it alleges is a failure-to-disclose-scheme. (Opp. 31 ("Defendants *concealed from investors* that Tactile's sales relied in part on illegal business practices, rather than legitimate means.").) Thus, Plaintiff's scheme-liability claim is improperly duplicative of its statement-liability claim and should be dismissed on that ground, too. *Cf. W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384, 393 (8th Cir. 2016) (permitting scheme-liability claim

where plaintiff alleged company manipulated the securities market through sham medical studies, not direct statements to investors).

## V.    THE AC FAILS TO PLEAD "CONTROLLING PERSON" LIABILITY.

Plaintiff doesn't dispute that if its Section 10(b) claims fail, its claim under Section 20(a) for "controlling person" liability fails too. Nor does Plaintiff dispute that Blake and Moen cannot be "controlling persons" for the periods of time when they were not Tactile officers. (Ds' Br. 41 n.8.)

Plaintiff's principal argument is that "naked allegations of control" suffice. (Opp. 49.) That language originates from *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1059-1060 (D. Minn. 2003), which pre-dates the Supreme Court's adoption of the *Iqbal/Twombly* standard. Following *Iqbal/Twombly*, "naked allegations" don't suffice. Where, as here, the AC lacks facts showing the outside directors actually exercised control over the conduct at issue, a Section 20(a) claim against them fails. *See Beaver Cty. Employees' Ret. Sys. v. Tile Shop Holdings, Inc.*, 94 F. Supp. 3d 1035, 1055 (D. Minn. 2015). And Plaintiff's own arguments indicate that Rishe and Folkes had control over only Tactile's sales and sales strategy (Opp. 49), not over Tactile's "general operations" (manufacturing, human resources, legal, compliance, accounting, financial reporting, investor relations, etc.). The Section 20(a) claim against those Defendants therefore fails, too.

-14-

## VI.    THE AC FAILS TO PLEAD A SECTION 20A CLAIM.

Plaintiff doesn't dispute that if its Section 10(b) claim fails,[15] its Section 20A

claim should be dismissed as well.  (Ds' Br. 42.)  Nor does Plaintiff dispute that the

PSLRA and Rule 9(b) apply to its Section 20A claim.  *See In re Openwave Systems Sec.*

*Litig.*, 528 F. Supp. 2d 236, 255 n.10 (S.D.N.Y. 2007).  Because the AC doesn't tie any

insider stock sale to any specific material non-public information a Defendant possessed

at the time of that sale (Opp. 51-52), it fails both pleading standards.

Even if Plaintiff had adequately pleaded insider training, Plaintiff only meets

Section 20A's contemporaneous requirement with respect to one sale, the 12/10/19 Rishe

sale.  (Ds' Br. 43-44.)[16]  But Plaintiff makes no sufficiently-particularized insider-trading

allegations about that sale, thus dooming its Section 20A claim.[17]

### CONCLUSION

The Court should grant Defendants' motion and dismiss the AC with prejudice.

---

[15] Plaintiff's Section 10(b) insider-trading claim is simply a conclusory one-paragraph statement tacked onto the end of the AC.  (¶307.)

[16] Plaintiff's assertion that "the weight of authority" holds that a purchase is "contemporaneous" with an insider sale if it occurs at any point during the Class Period is wrong.  (Opp. 54.)  Almost all courts apply the same-day rule, as Defendants argue for, with some courts in the Second Circuit applying a "3-5 day" rule.  *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 311 n.51 (S.D.N.Y. 2008) (explaining "the weight of authority in this Circuit").  The two unpublished cases Plaintiff cites are outliers.

[17] Even if that sale constituted insider trading, Plaintiff could only represent a Section 20A class as to *that* sale, nothing more.  Plaintiff's cited authority does not dispute this point. (Opp. 54 n.30 (citing *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 605 (S.D.N.Y. 2006).)

Date:  September 22, 2021.                    **FAEGRE DRINKER BIDDLE &**
                                              **REATH LLP**

                                              */s/ Wendy J. Wildung*
                                              Wendy J. Wildung (#117055)
                                              Matthew Kilby (#0335083)
                                              Anderson C. Tuggle (#0400277)
                                              2200 Wells Fargo Center
                                              90 South Seventh Street
                                              Minneapolis, MN  55402-3901
                                              Telephone: (612) 766-7000
                                              wendy.wildung@faegredrinker.com
                                              matthew.kilby@faegredrinker.com
                                              anderson.tuggle@faegredrinker.com

                                              *Attorneys for Defendants*

-16-