# Exhibit B

**Robbins Geller
Rudman & Dowd** LLP

| | | |
|---|---|---|
| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

Ashley M. Price
APrice@rgrdlaw.com

July 25, 2022

<u>VIA EMAIL</u>

Matthew Kilby
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402

   Re: *Mart v. Tactile Systems Technology, Inc. et al.,*
     No. 0:20-cv-02074-NEB-BRT (D. Minn.)

Dear Counsel:

   We write on behalf of St. Clair County Employees' Retirement System ("St. Clair" or "Lead Plaintiff") in response to your letter dated July 17, 2022 regarding Defendants' discovery requests served on Lead Plaintiff (the "July 17 Letter").

**I.  Initial Issues Related to Defendants' Discovery Requests**

   **Definition of "You"**: Lead Plaintiff objected to the Defendants' definition of "You" as overbroad because, as we discussed during the parties' June 15, 2022 meet-and-confer call, Lead Plaintiff's counsel is not a party to this action. However, to the extent that Lead Plaintiff's counsel possesses responsive, non-privileged documents of St. Clair, we either already have or will produce them. Indeed, the majority of Lead Plaintiff's production on June 21, 2022 were documents in Robbins Geller's possession.

   **Time Period**: Lead Plaintiff confirms that the time period for documents produced will be January 1, 2018 through September 30, 2020. In the July 17 Letter, Defendants identified Interrogatory No. 4 and RFP No. 7, which relate to Lead Plaintiff's transactions in Tactile stock, as a "potential exception" to the agreed time period. We will collect documents reflecting Lead Plaintiff's transactions in Tactile common stock dating from January 1, 2018 through December 31, 2021, but St. Clair divested from its Tactile holdings in March 2021. Please confirm your agreement and that this is the only exception to the time period for Defendants' discovery requests.

**Robbins Geller
Rudman & Dowd** LLP

Matthew Kilby
July 25, 2022
Page 2

**II.      Defendants' Interrogatories and Requests for Production ("RFP")**

**Interrogatory No. 1 and RFP No. 14**:  This Interrogatory, like RFP No. 14, prematurely seeks Lead Plaintiff's damages computation, which is a subject of expert analysis and opinion, and which is not required to be served until January 19, 2023.  That analysis will likely involve an event study to assess any statistically significant movements in Tactile's stock price, and a quantification of such price movements caused by Tactile-specific news.  Such quantification generally allows an expert to determine the per-share artificial inflation in Tactile's stock caused by Defendants' fraud. Such economic and statistical analysis is the purview of an expert, and any conclusions will not be served until the Court-ordered deadline.

Defendants state they are seeking information on "each item" of damages.  To the extent Lead Plaintiff understands what Defendants mean by "each item," the Amended Complaint's Prayer for Relief specifies the relief sought, including: (i) compensatory damages, which Lead Plaintiff expects will be computed as described above, (ii) reasonable costs, and (iii) any equitable or injunctive relief the Court deems proper.

**Interrogatory No. 3**:  Geneva Capital is the only investment manager that conducted transactions in Tactile stock on Lead Plaintiff's behalf, and indeed, the investment manager whose guidelines permitted investment in Tactile stock on St. Clair's behalf.  Your request for Lead Plaintiff to "explain the services" of all its other investment fiduciaries is therefore overbroad and irrelevant.

However, Lead Plaintiff's document production will include St. Clair's investment policy statements, which identifies the other investment managers and the investment guidelines they followed.

**Interrogatory No. 4 and RFP No. 7**:  Any transaction Lead Plaintiff made in Tactile stock after the news of the fraud was disclosed is irrelevant since the corrective disclosures released the artificial inflation from the stock price.  *See e.g. Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 4098741, at *4 (D. Minn. July 28, 2016) ("Plaintiffs' averments that they purchased shares during the proposed class period in reliance on the integrity of the market is not poisoned by their later post-[disclosure] purchases.").

To minimize disputes, however, Lead Plaintiff has already produced the monthly account statements reflecting transactions in Tactile stock through March 31, 2021, when Lead Plaintiff divested entirely from its position in Tactile.  Lead Plaintiff has made no further transactions in Tactile stock since that time.  In addition, Lead Plaintiff will search the mailboxes of the three custodians identified in my email on July 14, 2022 for the terms "Tactile," "TCMD," and "@tactilemedical.com" during the time period January 1, 2018 through December 31, 2021.

4877-4037-2267.v1

**Robbins Geller
Rudman & Dowd** LLP

Matthew Kilby
July 25, 2022
Page 3

**Interrogatory No. 5**:  We can confirm that St. Clair does not know which particular individual or individuals at Geneva Capital made the investment decisions to purchase and sell Tactile stock.

**RFP No. 1**:  Excluding depositions or expert statements in this action, Lead Plaintiff has produced on June 21, 2022 the statements – as defined by Defendants – that concern the matters alleged in the Amended Complaint, Tactile, and the Defendants.  Such produced statements were originally made in the related *qui tam* litigation and in *Sempowich v. Tactile Sys. Tech., Inc., d/b/a Tactile Medical*, No. 5:18-cv-488 (E.D.N.C.).

**RFP No. 2**:  For the agreed upon time period of January 1, 2018 through September 30, 2020, Lead Plaintiff will produce non-privileged documents reflecting St. Clair's interviews or meetings relating to this action, to the extent any exist.

While the Request is utterly unclear – especially given the time period Defendants have proposed and because the Request is explicit in "excluding meetings with your counsel" – Defendants appear to be fishing for whether there were meetings or documents exchanged between the *qui tam* plaintiff and Robbins Geller prior to the filing of the Amended Complaint.  As stated on the call, there were not.

To the extent Defendants are seeking documents reflecting Robbins Geller's investigation relating to the confidential witness cited in the Amended Complaint, such documents are work product and will not be produced.  *See e.g.*, *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 487-488 (M.D. Tenn. 2018).  Furthermore, the Court "disregard[ed]" these allegations in its Order on Defendants' Motion to Dismiss (ECF 81 at 15), and Lead Plaintiff does not intend to have that witness testify at trial.  Therefore, any further disclosure is unwarranted.  *In re St. Paul Travelers Sec. Litig. II*, 2007 WL 1424673, at *1 (D. Minn. May 10, 2007).

**RFP Nos. 3-5**:  Lead Plaintiff has already produced the documents underlying the Amended Complaint's allegations, including the SEC filings, analyst reports, other public information regarding Tactile and lymphedema, and the public filings in the *qui tam* and *Sempowich* litigations.

Lead Plaintiff will also produce documents obtained from the Department of Veteran Affairs and the Centers for Medicare & Medicaid Services pursuant to requests made under the Freedom of Information Act.  These documents were not considered or used for the Amended Complaint because they were produced after its filing.

We have and will continue to serve on Defendants copies of document productions made pursuant to third-party subpoenas issued in this action.

4877-4037-2267.v1

**Robbins Geller
Rudman & Dowd** LLP

Matthew Kilby
July 25, 2022
Page 4

**RFP No. 6**:   There is no non-privileged document that exists in either St. Clair or its counsel's possession, custody, and control that is responsive to this Request.

**RFP No. 8**:   Your letter requests "information beyond [Lead Plaintiff's] agreements with the advisors who invested in Tactile on its behalf."  This new position is vastly broader in scope – and thus, completely irrelevant – than the Request itself, which was limited to information on the duties of advisors "who had any role in [Lead Plaintiff's] acquisition or disposition of Tactile shares."

However, as explained above, Lead Plaintiff will produce its investment policy statements for the agreed-to time period.  These statements are sufficient to show the other investment advisors and their roles.  As the other investment advisors are irrelevant to this action, Lead Plaintiff will not collect and produce any further documents discussing their roles.

**RFP No. 9**:   We confirm that, as limited to the three custodians identified in my email on July 14, 2022, Lead Plaintiff will search for responsive documents using the search terms and time periods identified in Matthew Kilby's email on July 17, 2022.

**RFP No. 15**:   We have particularly identified the documents you have requested relating to Defendants' Interrogatories, namely by providing you the docket information for prior class actions in which St. Clair was a representative party, and thus satisfied this Request for Interrogatory Nos. 2 and 6.  As for the other Interrogatories: we have explained that Interrogatory No. 1 prematurely calls for expert evidence; we have confirmed for Interrogatory No. 5 that St. Clair does not know which individual(s) at Geneva Capital exercised the purchase and sale decisions of Tactile stock; and Interrogatory Nos. 3 and 4, to the extent they seek relevant information, have been "previously requested" in Defendants' Requests for Production of Documents.

Regards,

ASHLEY M. PRICE

AMP:lls
cc:   Jessica Shinnefield
      Nicole Gilliland
      Joseph Tull
      June Hoidal
      Rory Collins
      Anderson Tuggle

4877-4037-2267.v1