# EXHIBIT 1

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN MART, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  vs.<br><br>TACTILE SYSTEMS TECHNOLOGY, INC., et al.,<br><br>       Defendants. | Civ. No. 0:20-cv-02074-NEB-BRT<br><br>CLASS ACTION<br><br>LEAD PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS |

4854-3905-2830.v1

Pursuant to Federal Rules of Civil Procedure 26 and 34, Lead Plaintiff St. Clair County Employees' Retirement System requests that Defendants (defined below) respond to and produce for inspection and copying the documents designated under the heading "Documents Requested" that are in their actual or constructive possession, custody or control, within 30 days from the date of service of this request, to the offices of Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego CA, 92101, or Zimmerman Reed LLP, 1100 IDS Center, 80 South 8th St., Minneapolis, MN, 55402, or at such other time and place as the parties mutually agree.

## I.    DEFINITIONS

Unless stated otherwise, the terms set forth below are defined as follows:

1.    "Tactile" refers to Tactile Systems Technology, Inc., d/b/a Tactile Medical, any of its direct or indirect subsidiaries, divisions or affiliates (foreign and domestic), predecessors, successors, present and former officers, directors, employees, agents, accountants and advisors, and all other persons acting or purporting to act on its behalf.

2.    "Action" refers to this lawsuit captioned *Mart v. Tactile Systems Technology, Inc., et al.*, No 0:20-cv-02074-NEB-BRT (D. Minn.).

3.    "All," "any" and "each" shall each be construed as encompassing any and all.

4.    "CMS" refers to the Center for Medicare & Medicaid Services.

5.    "Communication" or "communications" means e-mails, text messages, letters (including attachments), or any other transmittal of information (in the form of facts, ideas, inquiries or otherwise).

- 1 -

6.    "Complaint" means the Amended Class Action Complaint (ECF 49), filed on April 19, 2021.

7.    "Concerning" means referring to, relating to, describing, evidencing or constituting.

8.    "Defendants" refers to defendant Tactile and the Individual Defendants (defined below).

9.    "Document" or "documents" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

10.    "Electronically stored information" or "ESI" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "e-mail," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file

- 2 -

4854-3905-2830.v1

or file fragment.  "Electronic data" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

11.     "Employee" refers to any person who at any time acted or purported to act on your behalf or under your supervision, direction or control, including, without limitation, past and current directors, officers, principals, partners, executives, analysts, investment bankers, consultants, advisors, representatives, agents, trustees, independent contractors, assigns, businesses or similar persons or entities.

12.     "Entity" or "entities" shall have the same meaning as "person."

13.     "Identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address, present or last known e-mail address, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

14.     "Identify," with respect to documents, means to give, to the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s) and recipient(s).

4854-3905-2830.v1

15.    "Individual Defendants" refers to Gerald R. Mattys, Lynn L. Blake, Brent A. Moen, Robert J. Folkes, Bryan F. Rishe, William W. Burke, Richard J. Nigon, and Kevin H. Roche.

16.    "Meeting" refers to the contemporaneous presence of any natural persons (including by telephone or by any other electronic means) for any purpose, whether such presence was by chance or prearranged, and whether the meeting was formal or informal, or occurred in connection with some other activity.

17.    "Person" or "persons" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

18.    "Policy" or "policies" means any rule, procedure, practice or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was recognized or followed, explicitly or implicitly, including any practice memoranda or manuals.

19.    The "*qui tam* case" refers to the action captioned *Veterans First medical Supply, LLC v. Tactile Systems Technology, Inc.*, No. 4:18-cv-02871 (S.D. Tex.).

20.    The "VA" refers to the Veterans Administration.

21.    "You" or "your" means the person or entity (both defined above) responding to these requests.

22.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

- 4 -

## II.    INSTRUCTIONS

1.    In responding to these requests, you shall produce all responsive documents that are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, executives, officers, partners, managing agents, agents, employees, accountants or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.    Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and copying by Lead Plaintiff original documents as they are kept in the usual course of business and you shall organize and label them to correspond with the categories in these requests.

3.    In responding to these requests, you shall produce all responsive documents available at the time of production and you shall supplement your responses as required by Fed. R. Civ. P. 26(e).

4.    If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost, (b) destroyed, (c) transferred voluntarily or involuntarily to others, or (d) otherwise disposed of; and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

5.    If you claim any form of privilege or any other objection, whether based on statute, common law or otherwise, as a ground for not producing any requested document,

- 5 -

4854-3905-2830.v1

please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

   (a)    the privilege being asserted;

   (b)    the person on whose behalf the privilege is asserted; and

   (c)    a precise statement of the facts upon which the claim of privilege is based.

Identify any document for which the privilege is claimed, including:

   (a)    its nature, *e.g.*, letter, memorandum, tape, etc.;

   (b)    the date it was prepared;

   (c)    the date the document bears;

   (d)    the date the document was sent;

   (e)    the date it was received;

   (f)    the name of the person who prepared the document;

   (g)    the name(s) of the person(s) who received the document;

   (h)    the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

   (i)    a statement of whom each identified person represented or purported to represent at all relevant times.

   6.    If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

4854-3905-2830.v1

7.      You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 5 and 6 above), regardless of whether you consider the entire document to be relevant or responsive to the requests.

8.      The singular of any term includes the plural, and the disjunctive shall include the conjunctive, and vice versa.

## III.   PRODUCTION OF HARD COPY DOCUMENTS AND ESI – FORMAT

Hardcopy documents and ESI shall be produced according to the Stipulation Regarding Discovery of Electronically Stored Information that is entered in this Action.

## IV.   RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from January 1, 2018 to the date of production (the "Relevant Period"), and shall include documents and information that relate to such period, even if dated, prepared, generated, used, published or received outside of the Relevant Period.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## V.   DOCUMENTS REQUESTED

REQUEST NO. 1:

All documents and communications concerning the *qui tam* case, including:

(a)      Documents produced by Tactile in response to document requests served in the *qui tam* case;

- 7 -

4854-3905-2830.v1

(b)    Deposition transcripts and related exhibits;

(c)    Witness declarations and related exhibits;

(d)    Privilege logs produced by Tactile;

(e)    Documents and communications concerning any governmental or regulatory investigation or inquiry related to the *qui tam* case;

(f)    Documents and communications concerning the financial or business impact of the *qui tam* case;

(g)    Documents and communications concerning Mattys's public statements that the *qui tam* case's "allegations are without merit"; and

(h)    Documents concerning any discussion or analysis of the *qui tam* case's impact on Tactile's stock price.

REQUEST NO. 2:

All documents and communications concerning Tactile's Key Opinion Leader program, including:

(a)    Documents sufficient to show the identities of Tactile's Key Opinion Leaders;

(b)    Documents and communications concerning contracts or agreements made between Tactile and its Key Opinion Leaders, including agreements concerning speaking arrangements, consulting arrangements, or participation on Tactile's Scientific Advisory Board;

(c)    Documents and communications concerning Tactile's practices and policies for recruiting, retaining, and terminating its Key Opinion Leaders;

- 8 -

4854-3905-2830.v1

(d)    Documents and communications concerning the budgeting, actual costs, approval, and attendance of the Key Opinion Leader events, meetings, presentations, and programming;

(e)    Documents and communications concerning the oversight of the Key Opinion Leader program;

(f)    Documents and communications concerning tracking Key Opinion Leaders' referrals;

(g)    Documents and communications concerning all monetary and non-monetary compensation provided to the Key Opinion Leaders; and

(h)    Documents and communications concerning the Key Opinion Leader program's compliance or non-compliance with the Anti-Kickback Statute.

REQUEST NO. 3:

All documents and communications concerning Tactile's contract trainers, including:

(a)    Documents and communications identifying contract trainers who were employed by or affiliated with the VA;

(b)    Documents and communications identifying contract trainers who were employed by or affiliated with health care providers, clinics, hospitals, or facilities that prescribed or purchased Flexitouch products and that were reimbursed by CMS;

(c)    Documents and communications concerning referrals for Flexitouch products in the VA or CMS sales channels obtained directly or indirectly by Tactile's contract trainers;

- 9 -

(d)    Documents and communications concerning Tactile's practices and policies for recruiting, retaining, and terminating its contract trainers;

(e)    Documents sufficient to show Tactile's contracts or agreements with its contract trainers;

(f)    Document and communications concerning Tactile's practices and policies for assigning contract trainers to home visits;

(g)    Documents and communications concerning the performance evaluations of Tactile's contract trainers;

(h)    Documents and communications concerning all monetary and non-monetary compensation provided to the contract trainers;

(i)    Documents and communications concerning the deletion of language in Tactile's Form 10-K for the year ended December 31, 2019, stating that Tactile's "trainers are healthcare professionals . . . who we have identified through our sales and marketing interest"; and

(j)    Documents and communications concerning the contract trainer program's compliance or non-compliance with the Anti-Kickback Statute.

REQUEST NO. 4:

All documents and communications concerning Tactile's compliance and audit committees' review and oversight of:

(a)    Tactile's reported revenues, revenue growth, and the reasons therefor;

(b)    The market size for Flexitouch products and Tactile's reported total addressable market; and

- 10 -

4854-3905-2830.v1

(c)    Tactile's Key Opinion Leader program and contract trainer program, including documents or communications concerning any consideration or analysis of whether these programs posed a risk for kickbacks or other fraudulent activity.

REQUEST NO. 5:

All documents and communications concerning the VA and CMS's coverage of Tactile's products, including:

(a)    Communications by Tactile with those agencies' payer decision-makers; and

(b)    Contracts or agreements between Tactile and the VA or CMS.

REQUEST NO. 6:

All documents and communications concerning tracking, reporting, monitoring, and analyzing Tactile's sales and marketing efforts directed to Tactile's VA and CMS sales channels.

REQUEST NO. 7:

All documents and communications concerning Tactile's reported quarterly and annual revenues and operating income that relate to Flexitouch sales in the VA and CMS sales channels, including as a result of referrals from the Key Opinion Leader or contract trainer programs.

REQUEST NO. 8:

All documents and communications concerning the recognition of Tactile's revenue from sales to Medicare patients, including:

- 11 -

4854-3905-2830.v1

(a)    Documents and communications concerning Tactile's Medicare reimbursement claims and appeals;

(b)    Documents and communications concerning any implicit price concessions for Flexitouch products sold to patients covered by Medicare; and

(c)    Documents and communications concerning Tactile's Medicare accounts receivable.

REQUEST NO. 9:

All documents and communications concerning the preparation for and presentations at the quarterly business reviews and the annual national sales meetings for the years 2018, 2019, and 2020, including documents and communications concerning revenues, revenue growth, sales strategies, budgeting, quotas, targets, and incentives for the VA and CMS sales channels.

REQUEST NO. 10:

All minutes, transcripts, summaries or reports from the quarterly business reviews and annual national sales meetings for the years 2018, 2019, and 2020.

REQUEST NO. 11:

Performance evaluations for the sales personnel in Tactile's VA sales channel.

REQUEST NO. 12:

All documents and communications concerning Tactile's policies and procedures to address sales practices identified as at risk for fraud or kickbacks, including any measures undertaken to monitor or oversee such at-risk sales practices and the results of such monitoring or oversight.

- 12 -

4854-3905-2830.v1

REQUEST NO. 13:

All documents and communications concerning any internal inquiry, audit, or formal or informal investigation into the sales and marketing efforts directed to the VA and CMS sales channels.

REQUEST NO. 14:

All documents and communications concerning any inquiry, audit, formal or informal investigation, or request for information made by the VA, CMS, the U.S. Department of Justice, or the U.S. Securities and Exchange Commission concerning Tactile's sales and marketing efforts directed toward the VA or CMS.  This request includes all documents provided or produced to those agencies as a result of such inquiry, investigation, audit, or request for information.

REQUEST NO. 15:

Documents and communications concerning Tactile's total addressable market, including:

(a)    Documents and communications assessing the accuracy of the public statements made regarding Tactile's total addressable market or market size for Flexitouch products;

(b)    Documents and communications concerning Tactile's determination that there were 1.1 million lymphedema diagnoses in 2018 and 1.3 million diagnoses in 2019; and

- 13 -

(c)    Documents and communications concerning the determination of coverage for Flexitouch products based on the severity of a patient's lymphedema or chronic venous insufficiency.

REQUEST NO. 16:

Documents and communications concerning Tactile's Chief Medical Officer and Scientific Advisory Board's consideration of the number of lymphedema patients and the market for Flexitouch, including any articles or studies published or drafted by the Chief Medical Officer or members of the Scientific Advisory Board, any monetary or non-monetary compensation received for such articles or studies, and any input, consultation or edits made by any Tactile employee to such article or study.  This request includes Thomas O'Donnell's July 2017 article titled: "Health and economic benefits of advanced pneumatic compression devices in patients with phlebolymphedema."

REQUEST NO. 17:

All documents concerning any Tactile Board of Directors meeting (whether formal or informal and including committee meetings of the Board of Directors), and any committee or sub-committee thereof (*e.g.*, audit committee, compliance and reimbursement committee, nominating and corporate governance committee, compensation and organization committee, etc.), including board packages, financial closing packages, meeting minutes, exhibits, agendas, memoranda, resolutions, whether adopted or discussed, notes, reports and presentations, as well as all documents and communications concerning any action of Tactile's Board of Directors by written consent.

- 14 -

4854-3905-2830.v1

REQUEST NO. 18:

All documents and communications concerning drafts of Tactile's Forms 10-K, Forms 10-Q, Forms 8-K, quarterly and annual earnings press releases, financial analyst conference call scripts or presentations, containing the false and misleading statements alleged in ¶¶133-208 of the Complaint.  This request includes any meeting minutes, reports, memoranda, analyses or notes concerning such filings or issuances.

REQUEST NO. 19:

All documents concerning any communications, conference calls, presentations or meetings with any Tactile shareholders, financial analysts, institutional investors, financial publications, news reporters, journalists or investment bankers concerning Tactile's revenue growth and performance, Tactile's VA and CMS sales channels, Tactile's Key Opinion Leader program or contract trainer program, Flexitouch's market size, or the *qui tam* case.

REQUEST NO. 20:

All documents and communications concerning any analysis of whether any of Tactile's sales practices directed toward the VA and CMS sales channels, including the Key Opinion Leader and contract trainer programs, could be considered a known trend or uncertainty that could have a material unfavorable impact on Tactile's net sales, revenues, or income from continuing operations.

REQUEST NO. 21:

All documents and communications concerning any review, inquiry, investigation, or audit undertaken by Tactile's external auditor in regards to:

> (a)    Tactile's sales practices in its VA and CMS sales channels;

(b)      Tactile's revenues and revenue growth;

(c)      Tactile's revenue recognition for sales to Medicare patients, Medicare reimbursement claims and Medicare accounts receivable;

(d)      Tactile's total addressable market or market size;

(e)      Tactile insiders' purchases, acquisitions, and sales of Tactile stock, including any Rule 10b5-1 plans; and

(f)      Tactile's compliance with the Anti-Kickback Statute, the Stark Law, and Item 303(a) of Regulation S-K.

This request includes engagement agreements to provide auditing services and documents reflecting the performance of those services.

REQUEST NO. 22:

All documents and communications concerning the Individual Defendants' holdings and transactions in Tactile stock or stock options.

REQUEST NO. 23:

All documents and communications concerning any Rule 10b5-1 or other similar trading plans of the Individual Defendants that were in place or enacted during the Relevant Period, including any modifications made thereto.

REQUEST NO. 24:

All documents and communications concerning incentive or performance-based awards, including Tactile stock options, made to the Individual Defendants.

- 16 -

REQUEST NO. 25:

Documents and communications concerning the price and market for Tactile common stock, including:

(a)    Documents and communications concerning the efficiency in the market for Tactile common stock;

(b)    Documents and communications concerning price movements in Tactile's common stock; and

(c)    Documents and communications concerning the reason for the price declines in Tactile's common stock on March 21-22, 2019 and on June 8, 2020.

REQUEST NO. 26:

All documents and communications concerning the resignation, termination, demotion, removal from office or change in job title of any of Tactile's directors, officers or executives.

REQUEST NO. 27:

A copy of any insider trading, code of business conduct and ethics or corporate disclosure policies or procedures in place at Tactile, and all documents and communications concerning compliance with or violations of any of those policies or procedures.

REQUEST NO. 28:

Documents, including organizational charts, sufficient to describe the organizational structure of Tactile.

4854-3905-2830.v1

REQUEST NO. 29:

All documents and communications supporting or concerning any of Defendants'

affirmative and other defenses set forth in their Answer to the Complaint, due to be filed on

June 1, 2022.

REQUEST NO. 30:

All documents produced to Defendants by any person in response to a subpoena

issued pursuant to Fed. R. Civ. P. 45 in this Action, as well as all communications

accompanying that document production.

REQUEST NO. 31:

Insurance policies and indemnification agreements that may provide coverage for any

liability arising in connection with this Action, including any director and officer policies,

errors and omissions, policies, general liability policies, or any insurance policies maintained

by the Individual Defendants.

DATED:  April 29, 2022                    ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          JESSICA T. SHINNEFIELD
                                          (admitted *pro hac vice*)
                                          ASHLEY M. PRICE
                                          (admitted *pro hac vice*)
                                          NICOLE Q. GILLILAND
                                          (admitted *pro hac vice*)


                                          _____
                                              ASHLEY M. PRICE

- 18 -

4854-3905-2830.v1

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jshinnefield@rgrdlaw.com
aprice@rgrdlaw.com
ngilliland@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiff

ZIMMERMAN REED LLP
CAROLYN G. ANDERSON, MN 275712
JUNE P. HOIDAL, MN 033330X
BEHDAD C. SADEGHI, MN 393374
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: 612/341-0400
612/341-0844 (fax)
Carolyn.Anderson@zimmreed.com
June.Hoidal@zimmreed.com
Behdad.Sadeghi@zimmreed.com

Local Counsel

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE (admitted *Pro Hac Vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: 510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

- 19 -

4854-3905-2830.v1

- 20 -

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com

Counsel for Plaintiff Brian Mart

## DECLARATION OF SERVICE BY EMAIL

I, Mara Waligurski, not a party to the within action, hereby declare that on April 29, 2022, I served the attached LEAD PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS on the parties in the within action by email addressed as follows:

## COUNSEL FOR PLAINTIFFS:

| NAME | FIRM | EMAIL |
|---|---|---|
| Jessica T. Shinnefield<br>Ashley M. Price<br>Nicole Q. Gilliland | ROBBINS GELLER<br>RUDMAN & DOWD LLP<br>655 West Broadway<br>Suite 1900<br>San Diego, CA  92101<br>Telephone:  619/231-1058<br>619/231-7423 (fax) | jshinnefield@rgrdlaw.com<br>aprice@rgrdlaw.com<br>ngilliland@rgrdlaw.com |
| Carolyn G. Anderson<br>June P. Hoidal<br>Behdad C. Sadeghi | ZIMMERMAN REED LLP<br>1100 IDS Center<br>80 South 8th Street<br>Minneapolis, MN  55402<br>Telephone:  612/341-0400<br>612/341-0844 (fax) | Carolyn.Anderson@zimmreed.com<br>June.Hoidal@zimmreed.com<br>Behdad.Sadeghi@zimmreed.com |
| Thomas C. Michaud | VANOVERBEKE,<br>MICHAUD & TIMMONY,<br>P.C.<br>79 Alfred Street<br>Detroit, MI  48201<br>Telephone:  313/578-1200<br>313/578-1201 (fax) | tmichaud@vmtlaw.com |
| Reed R. Kathrein<br>Lucas E. Gilmore | HAGENS BERMAN<br>SOBOL SHAPIRO LLP<br>715 Hearst Avenue<br>Suite 202<br>Berkeley, CA  94710<br>Telephone:  510/725-3000<br>510/725-3001 (fax) | reed@hbsslaw.com<br>lucasg@hbsslaw.com |

4854-3905-2830.v1

| Steve W. Berman | HAGENS BERMAN SOBOL SHAPIRO LLP 1301 Second Avenue Suite 2000 Seattle, WA  98101 Telephone:  206/623-7292 206/623-0594 (fax) | steve@hbsslaw.com |

**COUNSEL FOR DEFENDANTS:**

| NAME | FIRM | EMAIL |
| --- | --- | --- |
| Wendy J. Wildung Matthew Kilby Anderson C. Tuggle | FAEGRE DRINKER BIDDLE & REATH LLP 2200 Wells Fargo Center 99 South Seventh Street Minneapolis, MN  55402 Telephone:  612/766-7000 | wendy.wildung@faegredrinker.com matthew.kilby@faegredrinker.com anderson.tuggle@faegredrinker.com |

I declare under penalty of perjury that the foregoing is true and correct.  Executed on April 29, 2022, at San Diego, California.

MARA WALIGURSKI

4854-3905-2830.v1