# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| BRIAN MART, Individually and on Behalf ) of All Others Similarly Situated,  ) <br>  ) <br> Plaintiff,  ) <br>  ) <br> vs.  ) <br>  ) <br> TACTILE SYSTEMS TECHNOLOGY,  ) INC., et al.,  ) <br>  ) <br> Defendants.  ) <br>  ) | Civ. No. 0:20-cv-02074-NEB-BRT |

**DEFENDANTS' JOINT WRITTEN RESPONSE TO REQUESTS FOR PRODUCTION OF DOCUMENTS BY LEAD PLAINTIFF (SET I)**

Defendants, Tactile Systems Technology, Inc. ("Tactile") and Gerald R. Mattys, Lynn L. Blake, Brent A. Moen, Robert J. Folkes, and Bryan F. Rishe ("Remaining Individual Defendants"), for their joint written response to Lead Plaintiff St. Clair County Employees Retirement System's Requests for Production of Documents (Set I) ("Plaintiff's Requests") in the above-captioned action, state as follows:

**CONTROLLING OBJECTIONS**

Defendants object to each of Plaintiff's Requests on the grounds set forth below.

A.       Plaintiff's Requests seek the production of documents containing confidential and proprietary business information and private personal information that Defendants should not have to produce absent a protective order entered by the Court to safeguard the use and disclosure of such information.  When Defendants produce such documents and information, they will be produced pursuant to the protective order entered by the Court on May 20, 2022.

B.      Defendants object to certain of the "Definitions" that are provided in Plaintiff's Requests, as follows:

"Employee": This definition is overly broad, and therefore burdensome and impossible to comply with, in that it includes multiple actors who are not employees of any of the Defendants, including "directors," "principals, partners," and "analysts, investment bankers, consultants, advisors, representatives, agents, trustees, independent contractors, assigns, businesses or similar persons or entities."  In responding to Plaintiff's Requests, Defendants will be guided by the traditional legal meaning of the term "Employees."

"Individual Defendants": This definition includes William W. Burke, Richard J. Nigon, and Kevin H. Roche, but these three individuals are no longer defendants in this action.  They were named as defendants only in Counts II, III, and IV of Plaintiff's Amended Class Action Complaint, and the Court's Order on Defendants' Motion to Dismiss dismissed those counts as to them.  In responding to Plaintiff's Requests, Defendants will consider the term "Individual Defendants," whether used by itself or incorporated in Plaintiff's definition of "Defendants," to mean Remaining Individual Defendants, as defined above.

"Meeting": This definition is overly broad in that it includes any "contemporaneous presence of any natural persons" by any means, for any purpose, and regardless of whether "such presence" was "by chance or prearranged," "formal or informal."  It would not reasonably be possible to understand and respond to any requests based upon this definition.

"Policy" or "policies": This definition is overly broad and vague to the extent it includes any "practice or course of conduct."  Not every practice or course of conduct constitutes a policy, and the term "policy" lacks any precise meaning as defined.  In addition, if these terms

2

are included in the definition, it would result in the need to search for and produce documents that do not relate to any claim or defense, and thus impose undue burden and expense upon Defendants.

C.      Plaintiff's Requests contain purported "Instructions," in particular all or part of the "Instructions" set forth in paragraphs 1, 2, 4, 5, and 6, that are unduly onerous and burdensome, and that attempt to impose obligations upon Defendants in responding to discovery that exceed their obligations under the Federal Rules of Civil Procedure.  Some of the purported "Instructions", such as paragraph 5, also are disguised interrogatories that seek to evade the requirements applicable to interrogatories.  Defendants object to all such purported "Instructions" as being improper, overly broad, unduly onerous and burdensome, and intrusive. In responding to Plaintiff's Requests, Defendants will be guided by the Federal Rules of Civil Procedure and such stipulations as the parties may reach, and not by Plaintiff's purported "Instructions."  Regarding paragraph 5, Defendants will confer with Plaintiff regarding the form and content of privilege logs.  Regarding paragraph 6, for responsive documents of which a portion is subject to a claim of privilege, Defendants will produce the document in redacted form unless it would be impractical to redact the privileged portion(s).

D.      Defendants object to the time period purportedly covered by Plaintiff's Requests, as described in section IV of the Requests, to the extent the time period (i) extends "to the date of the production," which would be more than two years after the end of the class period (May 7, 2018 through June 8, 2020); and (ii) includes documents from outside of the defined time period if such documents "relate to such period," are "necessary for a correct or complete understanding of any document covered by a request," or are "undated and the date of its

3

preparation cannot be determined." In these respects, the time period is overly broad, would impose undue burden and expense upon Defendants, would require Defendants to search for and produce documents that do not relate to any claim or defense, and would impose obligations beyond what Rule 34 of the Federal Rules of Civil Procedure requires. Defendants further state that Plaintiff has conceded in its own responses to Defendants' document requests that only documents from the time period May 7, 2018 to June 8, 2020 are relevant. In responding to Plaintiff's Requests, Defendants respond with respect to and will provide documents and information for the time period January 1, 2018 through September 30, 2020, except that it will reproduce as follows with respect to documents produced in the *qui tam* case (the "Qui Tam Documents"). The majority of the Qui Tam Documents were collected during June 2020; therefore, there will be limited Qui Tam Documents from the period June-September 2020, and Defendants will not re-collect from those same sources to cover the rest of June-September 2020.

E. Defendants object that several of Plaintiff's Requests, including without limitation Request Nos. 1, 2, 3, 4, 15, and 25, include within them multiple requests. They consist of an overly broad main request and multiple subparts. When these subparts are properly counted as separate requests, the total number of Plaintiff's Requests exceeds the limit of 35 document requests set in the Pretrial Scheduling Order. Defendants will not respond to any additional Requests for Production served by Plaintiff without amendment to the Pretrial Scheduling Order. *See, e.g., Patterson Dental Supply, Inc. v. Pace*, 2020 WL 13032915, at *5 (D. Minn. Dec. 21, 2020).

*   *   *

4

Defendants' responses to Plaintiff's Requests are made subject to its objections, and incorporate and reflect those objections.

## RESPONSES TO SPECIFIC REQUESTS

**REQUEST NO. 1:**

All documents and communications concerning the *qui tam* case, including:

(a)    Documents produced by Tactile in response to document requests served in the *qui tam* case;

(b)    Deposition transcripts and related exhibits;

(c)    Witness declarations and related exhibits;

(d)    Privilege logs produced by Tactile;

(e)    Documents and communications concerning any governmental or regulatory investigation or inquiry related to the *qui tam* case;

(f)    Documents and communications concerning the financial or business impact of the *qui tam* case;

(g)    Documents and communications concerning Mattys's public statements that the qui tam case's "allegations are without merit"; and

(h)    Documents concerning any discussion or analysis of the qui tam case's impact on Tactile's stock price.

**RESPONSE:**

Defendants object that the main part of this request is overbroad, unduly burdensome, vague, and seeks documents that do not relate to any claim or defense.  Defendants further object that the subparts of this request constitute eight separate requests for purposes of the limit set by the Pretrial Scheduling Order.  Subject to these objections, Defendants will produce copies of non-privileged documents responsive to the various subparts as follows:

(a)    Tactile will produce copies of Qui Tam Documents, as defined above, that cover the time period January 1, 2018 through September 30, 2020.

(b)    Tactile will produce copies of deposition transcripts from the *qui tam* case to the extent these documents are not protected from disclosure by the *qui tam* plaintiff's or non-party's confidentiality designations pursuant to the protective order in the *qui tam* case.  Tactile also will produce copies of Qui Tam Documents, which upon reasonable inquiry Defendants believe include the *qui tam* deposition exhibits, to the extent not protected from disclosure by the *qui tam* plaintiff's or non-party's confidentiality designations pursuant to the protective order in the *qui tam* case.

(c)    Tactile will produce copies of witness declarations and related exhibits from the *qui tam* case to the extent these documents are not protected from disclosure by the *qui tam* plaintiff's or non-party's confidentiality designations.

(d)    Tactile will produce privilege logs for documents from the time period January 1, 2018 through September 30, 2020 that were withheld based on privilege in the *qui tam* case.

(e)    Tactile will produce copies of any non-privileged documents or communications from January 1, 2018 through September 30, 2020 concerning any governmental or regulatory investigation or inquiry related to the *qui tam* case.

(f)    Defendants object to this subpart of the request on the grounds that "financial or business impact" is vague and overly broad, and that depending upon how it is interpreted, it could be unduly onerous and burdensome, and could be seeking documents that do not relate to any claim or defense.  Defendants will interpret this subpart as seeking documents and communications concerning the effect that the filing and media coverage of the qui tam case had

6

on Tactile's sales or revenue.  With that understanding, Defendants will produce copies of any non-privileged responsive documents that they are able to locate upon a reasonable search of the custodial files of agreed-upon custodians in the manner prescribed in the Stipulation Regarding Discovery of Electronically Stored Information ("ESI Protocol").

(g)     Defendants object to this subpart of the request on the grounds that it is vague and overly broad, and that depending upon how it is interpreted, it could be unduly onerous and burdensome, and could be seeking documents that do not relate to any claim or defense. Defendants will interpret this subpart as seeking documents and communications concerning any guidance provided to Mattys about what to say regarding the *qui tam* case on the 1Q19 analyst call that was held on May 6, 2019 according to the Amended Complaint.  With that understanding, Defendants will produce copies of any non-privileged responsive documents that they are able to locate upon a reasonable search.

(h)     Defendants object to this subpart of the request on the grounds that it is vague and overly broad, and that depending upon how it is interpreted, it could be unduly onerous and burdensome, and could be seeking documents that do not relate to any claim or defense. Defendants will interpret this subpart as seeking documents and communications concerning the effect that the filing and media coverage of the *qui tam* case had on Tactile's stock price.  With that understanding, Defendants will produce copies of any non-privileged responsive documents that they are able to locate upon a reasonable search of the custodial files of agreed-upon custodians in the manner prescribed in the ESI Protocol.

**REQUEST NO. 2:**

All documents and communications concerning Tactile's Key Opinion Leader program, including:

(a)    Documents sufficient to show the identities of Tactile's Key Opinion Leaders;

(b)    Documents and communications concerning contracts or agreements made between Tactile and its Key Opinion Leaders, including agreements concerning speaking arrangements, consulting arrangements, or participation on Tactile's Scientific Advisory Board;

(c)    Documents and communications concerning Tactile's practices and policies for recruiting, retaining, and terminating its Key Opinion Leaders;

(d)    Documents and communications concerning the budgeting, actual costs, approval, and attendance of the Key Opinion Leader events, meetings, presentations, and programming;

(e)    Documents and communications concerning the oversight of the Key Opinion Leader program;

(f)    Documents and communications concerning tracking Key Opinion Leaders' referrals;

(g)    Documents and communications concerning all monetary and non- monetary compensation provided to the Key Opinion Leaders; and

(h)    Documents and communications concerning the Key Opinion Leader program's compliance or non-compliance with the Anti-Kickback Statute.

**RESPONSE:**

Defendants object that the main part of this request is overbroad, unduly burdensome, vague, and seeks documents that do not relate to any claim or defense. Defendants further object that the subparts of this request constitute eight separate requests for purpose of the limit set by the Pretrial Scheduling Order. Subject to these objections, Defendants will produce copies of non-privileged documents responsive to the various subparts as follows:

(a)    Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents sufficient to show the identities of Tactile's Key Opinion Leaders. Therefore, for its

8

response to this request, Tactile will produce copies of Qui Tam Documents.  The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.

(b)  Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications concerning contracts or agreements made between Tactile and its Key Opinion Leaders, to the extent they exist.  Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents.  The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.

(c)  Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications concerning Tactile's practices and policies for recruiting, retaining, and terminating its Key Opinion Leaders, to the extent they exist.  Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents.  The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.

(d)  Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications concerning the budgeting, actual costs, approval, and attendance of the Key Opinion Leader events, meetings, presentations, and programming, to the extent they exist.  Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents.  The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.

(e)  Defendants object to this subpart on the ground that "oversight" is vague and overly broad, and that depending upon how it is interpreted, it could be unduly onerous and

9

burdensome, and could be seeking documents that do not relate to any claim or defense. Defendants will interpret this subpart as seeking documents and communications concerning review of the Key Opinion Leader program for compliance with applicable laws and regulations. With that understanding, and upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain responsive documents and communications, to the extent they exist. Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents. The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.

(f)     Defendants do not have any documents responsive to this subpart because Tactile does not track Key Opinion Leader referrals.

(g)     Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications concerning all monetary and non- monetary compensation provided to the Key Opinion Leaders, to the extent they exist. Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents. The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.

(h)     Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications concerning the Key Opinion Leader program's compliance or non-compliance with the Anti-Kickback Statute, including legal advice sought and obtained about the Key Opinion Leader program for which Tactile waived privilege in the *qui tam* case, to the extent they exist. Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents. The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.

10

**REQUEST NO. 3:**

All documents and communications concerning Tactile's contract trainers, including:

(a) Documents and communications identifying contract trainers who were employed by or affiliated with the VA;

(b) Documents and communications identifying contract trainers who were employed by or affiliated with health care providers, clinics, hospitals, or facilities that prescribed or purchased Flexitouch products and that were reimbursed by CMS;

(c) Documents and communications concerning referrals for Flexitouch products in the VA or CMS sales channels obtained directly or indirectly by Tactile's contract trainers;

(d) Documents and communications concerning Tactile's practices and policies for recruiting, retaining, and terminating its contract trainers;

(e) Documents sufficient to show Tactile's contracts or agreements with its contract trainers;

(f) Document and communications concerning Tactile's practices and policies for assigning contract trainers to home visits;

(g) Documents and communications concerning the performance evaluations of Tactile's contract trainers;

(h) Documents and communications concerning all monetary and non- monetary compensation provided to the contract trainers;

(i) Documents and communications concerning the deletion of language in Tactile's Form 10-K for the year ended December 31, 2019, stating that Tactile's "trainers are healthcare professionals . . . who we have identified through our sales and marketing interest"; and

(j) Documents and communications concerning the contract trainer program's compliance or non-compliance with the Anti-Kickback Statute.

**RESPONSE:**

Defendants object that the main part of this request is overbroad, unduly burdensome, vague, and seeks documents that do not relate to any claim or defense. Defendants further object that the subparts of this request constitute ten separate requests for purpose of the limit set

11

by the Pretrial Scheduling Order.  Subject to these objections, Defendants will produce copies of non-privileged documents responsive to the various subparts as follows:

(a)   Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications identifying contract trainers based in Texas who were employed by or affiliated with the VA.  Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents.  The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.  To the extent this subpart seeks documents concerning contract trainers based outside of Texas, Defendants object on the grounds that the request is overly broad, unduly burdensome, and seeks documents that do not relate to any claim or defense.

(b)   Defendants do not have any documents responsive to this subpart because neither contract trainers, health care providers, clinics, or hospitals were or are reimbursed by CMS for Tactile products or services.  Defendants preserve the objections that they would otherwise have to this request, including that "employed by or affiliated with" is vague and ambiguous and that the request is overly broad and burdensome.

(c)   Tactile does not have any documents responsive to this subpart because it does not look to contract trainers to make referrals and does not track such information.  The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.  Defendants preserve the objections that they would otherwise have to this request, including that "CMS sales channel" is vague and Tactile does not have a "CMS sales channel" as it understands the term.

(d)     Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications sufficient to show Tactile's practices and policies for recruiting, retaining, and terminating its contract trainers.  Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents.  The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.

(e)     Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications sufficient to show Tactile's contracts or agreements with its contract trainers based in Texas.  Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents.  The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.  To the extent this subpart seeks documents concerning contract trainers based outside of Texas, Defendants object on the grounds that the request is overly broad, unduly burdensome, and seeks documents that do not relate to any claim or defense.

(f)     Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications sufficient to show Tactile's practices and policies for assigning contract trainers to home visits.  Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents.  The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.

(g)     Defendants object to this subpart on the grounds that it is overbroad, unduly burdensome, vague, and seeks documents that do not relate to any claim or defense.

(h)     Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications concerning all monetary and non-monetary compensation

13

provided to the contract trainers based in Texas, to the extent such documents exist. Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents. The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people. To the extent this subpart seeks documents concerning contract trainers based outside of Texas, Defendants object on the grounds that the request is overly broad, unduly burdensome, and seeks documents that do not relate to any claim or defense.

(i)    Defendants will produce copies of any non-privileged responsive documents that they are able to locate upon a reasonable search of the custodial files of agreed-upon custodians in the manner prescribed in the ESI Protocol.

(j)    Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications concerning the contract trainer program's compliance or non-compliance with the Anti-Kickback Statute, including legal advice sought and obtained about the contract trainer program for which Tactile waived privilege in the *qui tam* case, to the extent they exist. Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents. The Remaining Individual Defendants do not have any additional responsive documents that they hold as private people.

**REQUEST NO. 4:**

All documents and communications concerning Tactile's compliance and audit committees' review and oversight of:

(a)    Tactile's reported revenues, revenue growth, and the reasons therefor;

(b)    The market size for Flexitouch products and Tactile's reported total addressable market; and

14

(c)    Tactile's Key Opinion Leader program and contract trainer program, including documents or communications concerning any consideration or analysis of whether these programs posed a risk for kickbacks or other fraudulent activity.

**RESPONSE:**

Defendants object that this request is overbroad, unduly burdensome, vague, and seeks documents that do not relate to any claim or defense.  Defendants further object that the subparts of this request constitute three separate requests for purpose of the limit set by the Pretrial Scheduling Order.  Subject to these objections, and with the understanding that this request is referencing committees of the Tactile Board of Directors, Defendants will produce copies of non-privileged documents responsive to the various subparts as follows:

(a)    Defendants will produce copies of non-privileged documents responsive to this subpart to the extent that they address or discuss whether the Key Opinion Leader or contract trainer program contribute to reported revenues or revenue growth.  To the extent this subpart seeks the production of any different or additional documents, Defendants object on the grounds that it seeks documents that do not relate to any claim or defense.

(b)    Defendants will produce copies of non-privileged documents responsive to this subpart.

(c)    Defendants will produce copies of non-privileged documents responsive to this subpart.

**REQUEST NO. 5:**

All documents and communications concerning the VA and CMS's coverage of Tactile's products, including:

(a)    Communications by Tactile with those agencies' payer decision-makers; and

(b)    Contracts or agreements between Tactile and the VA or CMS.

15

**RESPONSE:**

Defendants object to this request on the grounds that it is vague, overly broad and burdensome, and seeks documents that do not relate to any claim or defense.

**REQUEST NO. 6:**

All documents and communications concerning tracking, reporting, monitoring, and analyzing Tactile's sales and marketing efforts directed to Tactile's VA and CMS sales channels.

**RESPONSE:**

Defendants object to this request on the grounds that the terms "directed to" and "CMS sales channel" are vague and ambiguous. Tactile does not use the term "CMS sales channel" and does not know what the phrase means, but interpreting the phrase according to the plain meaning of the words, Tactile does not have any documents responsive to this part of this request because Tactile does not undertake sales or marketing activities directed to a "CMS sales channel."

Upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications concerning tracking, reporting, monitoring, and analyzing Tactile's sales and marketing efforts directed to Tactile's VA sales channels. Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents.

To the extent that this request seeks a broader range of documents, Defendants object on the grounds that it is overly broad, unduly onerous and burdensome, and seeks documents that do not relate to any claim or defense.

**REQUEST NO. 7:**

16

All documents and communications concerning Tactile's reported quarterly and annual revenues and operating income that relate to Flexitouch sales in the VA and CMS sales channels, including as a result of referrals from the Key Opinion Leader or contract trainer programs.

**RESPONSE:**

Defendants object to this request on the ground that the term "CMS sales channel" is vague and ambiguous. Tactile does not use the term "CMS sales channel" and does not know what the phrase means, but interpreting the phrase according to the plain meaning of the words, Tactile does not have any documents responsive to that part of this request because Tactile does not undertake sales or marketing activities directed to a "CMS sales channel."

Defendants will produce copies of Tactile's SEC filings that contain the requested information regarding quarterly and annual revenues. Tactile does not track sales referrals from Key Opinion Leaders or contract trainers, and thus Defendants do not have any documents responsive to that part of the request.

To the extent that this request seeks a broader range of documents, Defendants object to it on the grounds that it is overly broad, unduly onerous and burdensome, and seeks documents that do not relate to any claim or defense.

**REQUEST NO. 8:**

All documents and communications concerning the recognition of Tactile's revenue from sales to Medicare patients, including:

(a)   Documents and communications concerning Tactile's Medicare reimbursement claims and appeals;

(b)   Documents and communications concerning any implicit price concessions for Flexitouch products sold to patients covered by Medicare; and

(c)   Documents and communications concerning Tactile's Medicare accounts receivable.

**RESPONSE:**

Defendants object to this request on the grounds that it relates to theories that have been dismissed from the case; it seeks documents that do not relate to any remaining claims or defenses; and it is vague, overly broad, and burdensome.

**REQUEST NO. 9:**

All documents and communications concerning the preparation for and presentations at the quarterly business reviews and the annual national sales meetings for the years 2018, 2019, and 2020, including documents and communications concerning revenues, revenue growth, sales strategies, budgeting, quotas, targets, and incentives for the VA and CMS sales channels.

**RESPONSE:**

Defendants object to this request on the ground that the term "CMS sales channel" is vague and ambiguous.  Tactile does not use the term "CMS sales channel" and does not know what the phrase means, but interpreting the phrase according to the plain meaning of the words, Tactile does not have any documents responsive to that part of this request because Tactile does not undertake sales or marketing activities directed to a "CMS sales channel."

Defendants will produce copies of presentations made at annual sales meetings about sales strategies, targets, quotas, budgeting, compensation, or revenues from the time period January 1, 2018 through September 30, 2020.  Defendants object to producing a broader range of documents on the grounds that the request is overly broad, unduly onerous and burdensome, and seeks documents that do not relate to any claim or defense.

**REQUEST NO. 10:**

All minutes, transcripts, summaries or reports from the quarterly business reviews and annual national sales meetings for the years 2018, 2019, and 2020.

**RESPONSE:**

18

Defendants do not have any documents that would be responsive to this request. Defendants preserve the objections that they would otherwise have to this request, including that it is vague, overly broad and seeks documents that do not relate to any claim or defense.

**REQUEST NO. 11:**

Performance evaluations for the sales personnel in Tactile's VA sales channel.

**RESPONSE:**

Defendants object to this request on the grounds that it is overly broad, is unduly onerous and burdensome, seeks private personal information, and seeks documents and information that do not relate to any claim or defense.

**REQUEST NO. 12:**

All documents and communications concerning Tactile's policies and procedures to address sales practices identified as at risk for fraud or kickbacks, including any measures undertaken to monitor or oversee such at-risk sales practices and the results of such monitoring or oversight.

**RESPONSE:**

Defendants object to this request to the extent it seeks production of privileged attorney-client communications and work product. Defendants are not waiving any privilege except as to the scope of documents referenced in response to Requests 2(h) and 3(j) above. Subject to this objection, and upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain Tactile's policies relevant to the Key Opinion Leader and contract trainer programs, to the extent they exist. Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents.

19

Defendants object to producing a broader range of documents on the grounds that the request is overly broad, unduly onerous and burdensome, and seeks documents that do not relate to any claim or defense.

**REQUEST NO. 13:**

All documents and communications concerning any internal inquiry, audit, or formal or informal investigation into the sales and marketing efforts directed to the VA and CMS sales channels.

**RESPONSE:**

Defendants object to this request to the extent it seeks production of privileged attorney-client communications and work product.  Defendants are not waiving any privilege except as to the scope of documents referenced in response to Requests 2(h) and 3(j) above.

Defendants also object to this request on the ground that the term "CMS sales channel" is vague and ambiguous.  Tactile does not use the term "CMS sales channel" and does not know what the phrase means, but interpreting the phrase according to the plain meaning of the words, Tactile does not have any documents responsive to that part of this request because Tactile does not undertake sales or marketing activities directed to a "CMS sales channel."

Subject to these objections, and upon reasonable inquiry, Defendants believe that the Qui Tam Documents contain documents and communications showing internal inquiries, audits, or formal or informal investigations into the Key Opinion Leader and contract trainer programs, to the extent they exist.  Therefore, for its response to this request, Tactile will produce copies of Qui Tam Documents.

Defendants object to producing a broader range of documents on the grounds that the request is overly broad, unduly onerous and burdensome, and seeks documents that do not relate to any claim or defense.

**REQUEST NO. 14:**

All documents and communications concerning any inquiry, audit, formal or informal investigation, or request for information made by the VA, CMS, the U.S. Department of Justice, or the U.S. Securities and Exchange Commission concerning Tactile's sales and marketing efforts directed toward the VA or CMS. This request includes all documents provided or produced to those agencies as a result of such inquiry, investigation, audit, or request for information.

**RESPONSE:**

Defendants object to this request to the extent it seeks production of privileged attorney-client communications and work product. Defendants are not waiving any privilege except as to the scope of documents referenced in response to Requests 2(h) and 3(j) above. Defendants also object to this request on the grounds that the phrase "Tactile's sales and marketing efforts directed toward the VA or CMS" is vague and overly broad, and that depending upon how it is interpreted, the request could be unduly onerous and burdensome, and could be seeking documents that do not relate to any claim or defense, or relate to allegations that have been dismissed. Defendants will interpret this phrase as limited to Tactile's Key Opinion Leader and contract trainer programs. With that understanding, Defendants will produce copies of non-privileged documents responsive to this request, to the extent such documents exist and can be located after a reasonable search.

**REQUEST NO. 15:**

Documents and communications concerning Tactile's total addressable market, including:

21

(a)    Documents and communications assessing the accuracy of the public statements made regarding Tactile's total addressable market or market size for Flexitouch products;

(b)    Documents and communications concerning Tactile's determination that there were 1.1 million lymphedema diagnoses in 2018 and 1.3 million diagnoses in 2019; and

(c)    Documents and communications concerning the determination of coverage for Flexitouch products based on the severity of a patient's lymphedema or chronic venous insufficiency.

**RESPONSE:**

Defendants object that the main part of this request is overbroad, unduly burdensome, vague, and seeks documents that do not relate to any claim or defense. Defendants further object that the subparts of this request constitute three separate requests for purpose of the limit set by the Pretrial Scheduling Order. Subject to these objections, Defendants will produce copies of non-privileged documents responsive to the various subparts as follows:

(a)    Defendants will produce copies of documents showing Tactile's estimates of the total addressable market for Flexitouch products and communications among Tactile's executive leadership team regarding same that they are able to locate upon a reasonable search, as prescribed in the ESI Protocol. Defendants object to producing a broader range of documents on the grounds that the request is vague in its use of the phrase "market size"; is overly broad, unduly onerous and burdensome; and seeks documents that do not relate to any claim or defense.

(b)    Defendants will produce copies of documents showing Tactile's estimates of lymphedema diagnoses and communications among Tactile's leadership team regarding same that they are able to locate upon a reasonable search, as prescribed in the ESI Protocol. Defendants object to producing a broader range of documents on the grounds that the request is

22

vague in its use of the phrase "market size"; is overly broad, unduly onerous and burdensome; and seeks documents that do not relate to any claim or defense.

(c)     Defendants object to this subpart of the request on the grounds that it relates to theories that have been dismissed from the case; it seeks documents that are not relevant to any remaining claims or defenses, or likely to lead to the discovery of admissible evidence; and it is vague, overly broad, and burdensome.

**REQUEST NO. 16:**

Documents and communications concerning Tactile's Chief Medical Officer and Scientific Advisory Board's consideration of the number of lymphedema patients and the market for Flexitouch, including any articles or studies published or drafted by the Chief Medical Officer or members of the Scientific Advisory Board, any monetary or non- monetary compensation received for such articles or studies, and any input, consultation or edits made by any Tactile employee to such article or study. This request includes Thomas O'Donnell's July 2017 article titled: "Health and economic benefits of advanced pneumatic compression devices in patients with phlebolymphedema."

**RESPONSE:**

Defendants object to this request on the ground that it actually constitutes two separate requests, to the extent the article by Thomas O'Donnell that is referenced in the last sentence is not reasonably encompassed by the main part of the request seeking documents and communications "concerning Tactile's Chief Medical Officer and Scientific Advisory Board's consideration of the number of lymphedema patients and the market for Flexitouch." Subject to this objection, Defendants will produce copies of (i) any analyses within their possession that were prepared by Tactile's Chief Medical Officer or members of the Scientific Advisory Board to show the number of lymphedema patients and the market for Flexitouch, and (ii) the referenced article by Thomas O'Donnell (which was published in June 2018 – *see* PubMed ID

23

29914829), that Defendants are able to locate upon a reasonable search, as prescribed by the ESI Protocol.

To the extent that this request seeks a broader range of documents, Defendants object to it on the grounds that it is overly broad, unduly onerous and burdensome, and seeks documents that do not relate to any claim or defense.

## REQUEST NO. 17:

All documents concerning any Tactile Board of Directors meeting (whether formal or informal and including committee meetings of the Board of Directors), and any committee or sub-committee thereof (*e.g.*, audit committee, compliance and reimbursement committee, nominating and corporate governance committee, compensation and organization committee, etc.), including board packages, financial closing packages, meeting minutes, exhibits, agendas, memoranda, resolutions, whether adopted or discussed, notes, reports and presentations, as well as all documents and communications concerning any action of Tactile's Board of Directors by written consent.

## RESPONSE:

Defendants will produce copies of non-privileged minutes and presentation materials from meetings of the Tactile Board of Directors and committees or subcommittees thereof for the time period January 1, 2018 through September 30, 2020 that address (i) the total addressable market for Flexitouch products, (ii) the Key Opinion Leader program, (iii) the contract trainer program, or (iv) the *qui tam* case.

To the extent that this request seeks a broader range of documents, Defendants object to it on the grounds that it is overly broad, unduly onerous and burdensome; seeks production of documents that do not relate to any claim or defense; and seeks production of privileged attorney-client communications and work product.

## REQUEST NO. 18:

All documents and communications concerning drafts of Tactile's Forms 10-K, Forms 10-Q, Forms 8-K, quarterly and annual earnings press releases, financial analyst conference call scripts or presentations, containing the false and misleading statements alleged in ¶¶133- 208 of the Complaint. This request includes any meeting minutes, reports, memoranda, analyses or notes concerning such filings or issuances.

**RESPONSE:**

Defendants will produce copies of non-privileged documents responsive to this request that relate to the remaining claims or defenses that they are able to locate upon a reasonable search, as prescribed by the ESI Protocol.

To the extent this request seeks documents concerning allegations, conduct, or statements that have been dismissed from the case, Defendants object on the grounds that the request is overly broad and burdensome, and seeks documents that are not relevant to any remaining claims or defenses, or likely to lead to the discovery of admissible evidence.

**REQUEST NO. 19:**

All documents concerning any communications, conference calls, presentations or meetings with any Tactile shareholders, financial analysts, institutional investors, financial publications, news reporters, journalists or investment bankers concerning Tactile's revenue growth and performance, Tactile's VA and CMS sales channels, Tactile's Key Opinion Leader program or contract trainer program, Flexitouch's market size, or the *qui tam* case.

**RESPONSE:**

Defendants object to this request as overly broad and burdensome in that it seeks documents concerning communications with "any Tactile shareholders," which includes all Tactile directors and officers and many Tactile employees. Defendants object to producing and will not produce communications among people who happen to be Tactile shareholders but who are involved in a communication in some other capacity, e.g., in their role as a Tactile director, officer, or employee.

25

Defendants also object to this request on the ground that the term "CMS sales channel" is vague and ambiguous. Tactile does not use the term "CMS sales channel" and does not know what the phrase means, but interpreting the phrase according to the plain meaning of the words, Tactile does not have any documents responsive to this part of this request because Tactile does not undertake sales or marketing activities directed to a "CMS sales channel."

Subject to these objections, Defendants will produce copies of documents responsive to this request concerning (i) the total addressable market for Flexitouch products, (ii) the Key Opinion Leader program, (iii) the contract trainer program, or (iv) the *qui tam* case, that they are able to locate upon a reasonable search of the custodial files of agreed-upon custodians in the manner prescribed in the ESI Protocol.

**REQUEST NO. 20:**

All documents and communications concerning any analysis of whether any of Tactile's sales practices directed toward the VA and CMS sales channels, including the Key Opinion Leader and contract trainer programs, could be considered a known trend or uncertainty that could have a material unfavorable impact on Tactile's net sales, revenues, or income from continuing operations.

**RESPONSE:**

Defendants object to this request on the ground that it assumes the Key Opinion Leader program and contract trainer program were "directed toward" the "VA and CMS sales channels," when in fact this is not true—these programs are part of Tactile's general practices and are not "directed toward" particular sales channels.

Defendants also object to this request on the ground that the term "CMS sales channel" is vague and ambiguous. Tactile does not use the term "CMS sales channel" and does not know what the phrase means, but interpreting the phrase according to the plain meaning of the words,

26

Tactile does not have any documents responsive to this part of this request because Tactile does not undertake sales or marketing activities directed to a "CMS sales channel."

Defendants will produce copies of any non-privileged responsive documents that they are able to locate upon a reasonable search of the custodial files of agreed-upon custodians in the manner prescribed in the ESI Protocol.

**REQUEST NO. 21:**

All documents and communications concerning any review, inquiry, investigation, or audit undertaken by Tactile's external auditor in regards to:

(a)     Tactile's sales practices in its VA and CMS sales channels;

(b)     Tactile's revenues and revenue growth;

(c)     Tactile's revenue recognition for sales to Medicare patients, Medicare reimbursement claims and Medicare accounts receivable;

(d)     Tactile's total addressable market or market size;

(e)     Tactile insiders' purchases, acquisitions, and sales of Tactile stock, including any Rule 10b5-1 plans; and

(f)     Tactile's compliance with the Anti-Kickback Statute, the Stark Law, and Item 303(a) of Regulation S-K.

This request includes engagement agreements to provide auditing services and documents reflecting the performance of those services.

**RESPONSE:**

Defendants object that the subparts of this request constitute six separate requests for purpose of the limit set by the Pretrial Scheduling Order.  Defendants further object to this request on the ground that it is overly broad, unduly burdensome, and seeks documents that are not relevant to any remaining claims or defenses, or likely to lead to the discovery of admissible evidence, in that it seeks "documents reflecting the performance of" auditing services.  Subject

to these objections, Defendants will produce copies of engagement agreements to provide auditing services, and copies of non-privileged documents responsive to the various subparts as follows:

(a)    Defendants object to this subpart on the ground that the term "CMS sales channel" is vague and ambiguous.  Tactile does not use the term "CMS sales channel" and does not know what the phrase means, but interpreting the phrase according to the plain meaning of the words, Tactile does not have any documents responsive to this part of this request because Tactile does not undertake sales or marketing activities directed to a "CMS sales channel."  Defendants will produce copies of non-privileged responsive documents addressing the VA sales channel, to the extent such documents exist.

(b)    Defendants object to this subpart because the phrase "revenues and revenue growth" is overly broad and vague, and depending upon how it is interpreted, it could be unduly onerous and burdensome, and could be seeking documents that do not relate to any claim or defense.

(c)    Defendants object to this subpart on the grounds that it relates to theories that have been dismissed from the case; it seeks documents that are not relevant to any remaining claims or defenses, or likely to lead to the discovery of admissible evidence; and it is vague, overly broad, and burdensome.

(d)    Defendants will produce copies of non-privileged responsive documents addressing the total addressable market for Flexitouch products that Tactile generated during the time period from January 1, 2018 through September 30, 2020.  Defendants object to producing a broader range of documents on the grounds that this subpart is vague in its use of the phrase

"market size"; is overly broad, unduly onerous and burdensome; and seeks documents that do not relate to any claim or defense.

(e)     Defendants will produce copies of documents sufficient to show transactions in Tactile stock by the Remaining Individual Defendants.  Defendants object to producing a broader range of documents on the grounds that this subpart is vague in its use of the phrase "Tactile insiders"; is unduly onerous and burdensome; and seeks documents that are not relevant to any remaining claim or defense, or likely to lead to the discovery of admissible evidence.

(f)     Defendants object that this subpart seeks production of privileged attorney-client communications and work product.  Defendants are not waiving any privilege except as to the scope of documents referenced in response to Requests 2(h) and 3(j) above.  Subject to this objection, Defendants will produce copies of non-privileged responsive documents addressing the Key Opinion Leader program or contract trainer program.

**REQUEST NO. 22:**

All documents and communications concerning the Individual Defendants' holdings and transactions in Tactile stock or stock options.

**RESPONSE:**

Defendants incorporate their controlling objection, above, to Plaintiff's definition of "Individual Defendants."  Subject to that objection, Defendants will produce copies of documents sufficient to show transactions in Tactile stock by the Remaining Individual Defendants during the time period January 1, 2018 through September 30, 2020.

To the extent that this request seeks a broader range of documents, Defendants object to the request on the grounds that it is overly broad and vague in its use of the term "holdings"; is

29

unduly onerous and burdensome; and seeks documents that are not relevant to any remaining claim or defense, or likely to lead to the discovery of admissible evidence.

**REQUEST NO. 23:**

All documents and communications concerning any Rule 10b5-1 or other similar trading plans of the Individual Defendants that were in place or enacted during the Relevant Period, including any modifications made thereto.

**RESPONSE:**

Defendants incorporate their controlling objection, above, to Plaintiff's definition of "Individual Defendants."  Subject to that objection, Defendants will produce copies of any Rule 10b5-1 plans for the Remaining Individual Defendants for the time period January 1, 2018 through September 30, 2020.

To the extent that this request seeks a broader range of documents, Defendants object to the request on the grounds that it is overly broad, unduly onerous and burdensome, and seeks documents that are not relevant to any claim or defense, not likely to lead to the discovery of admissible evidence, and not proportionate to the claims at issue in the case.

**REQUEST NO. 24:**

All documents and communications concerning incentive or performance-based awards, including Tactile stock options, made to the Individual Defendants.

**RESPONSE:**

Defendants will produce copies of documents sufficient to show incentive or performance-based awards provided to the Remaining Individual Defendants during the time period January 1, 2018 through September 30, 2020.

To the extent that this request seeks a broader range of documents, Defendants object to the request on the grounds that it is overly broad, unduly onerous and burdensome, and seeks

documents that are not relevant to any claim or defense, not likely to lead to the discovery of admissible evidence, and not proportionate to the claims at issue in the case.

**REQUEST NO. 25:**

Documents and communications concerning the price and market for Tactile common stock, including:

(a)     Documents and communications concerning the efficiency in the market for Tactile common stock;

(b)     Documents and communications concerning price movements in Tactile's common stock; and

(c)     Documents and communications concerning the reason for the price declines in Tactile's common stock on March 21-22, 2019 and on June 8, 2020.

**RESPONSE:**

Defendants object that the main part of this request is overbroad, unduly burdensome, vague, and seeks documents that do not relate to any claim or defense.  Defendants further object that the subparts of this request constitute three separate requests for purpose of the limit set by the Pretrial Scheduling Order.  Subject to these objections, Defendants will produce copies of non-privileged documents responsive to the various subparts as follows:

(a)     Defendants object to this subpart on the ground that the phrase "efficiency in the market" is vague and ambiguous, and that depending upon how the phrase is interpreted, it could be unduly onerous and burdensome, and could be seeking documents that do not relate to any claim or defense.  Subject to this objection, Defendants will produce copies of any non-privileged responsive documents that they are able to locate upon a reasonable search of the custodial files of agreed-upon custodians in the manner prescribed in the ESI Protocol.

31

(b)    Defendants will produce copies of any non-privileged responsive documents concerning price movements in Tactile's common stock relating to (i) the total addressable market for Flexitouch products, (ii) the Key Opinion Leader program, (iii) the contract trainer program, or (iv) the *qui tam* case, that they are able to locate upon a reasonable search of the custodial files of agreed-upon custodians in the manner prescribed in the ESI Protocol.

(c)    Defendants will produce copies of any non-privileged responsive documents that they are able to locate upon a reasonable search of the custodial files of agreed-upon custodians in the manner prescribed in the ESI Protocol.

**REQUEST NO. 26:**

All documents and communications concerning the resignation, termination, demotion, removal from office or change in job title of any of Tactile's directors, officers or executives.

**RESPONSE:**

Defendants will produce copies of non-privileged documents sufficient to show any resignation, termination, demotion, removal from office or change in job title for Gerald Mattys, Robert Folkes, and Lynn Blake.

Defendants object to producing a broader range of documents on the grounds that the request is overly broad, unduly onerous and burdensome, and seeks documents that are not relevant to any claim or defense, not likely to lead to the discovery of admissible evidence, and not proportionate to the claims at issue in the case.

**REQUEST NO. 27:**

A copy of any insider trading, code of business conduct and ethics or corporate disclosure policies or procedures in place at Tactile, and all documents and communications concerning compliance with or violations of any of those policies or procedures.

**RESPONSE:**

32

Defendants object to this request on the ground that "corporate disclosure" is vague and ambiguous. For their response to this request, Defendants will interpret "corporate disclosure" to mean disclosure to investors. With that understanding, Defendants will produce copies of responsive policies and of any non-privileged documents showing violations of those policies, if any, by the Remaining Individual Defendants.

Defendants object to producing a broader range of documents on the grounds that the request is overly broad, unduly onerous and burdensome, and seeks documents that are not relevant to any claim or defense, not likely to lead to the discovery of admissible evidence, and not proportionate to the claims at issue in the case.

**REQUEST NO. 28:**

Documents, including organizational charts, sufficient to describe the organizational structure of Tactile.

**RESPONSE:**

Defendants object to this request on the ground that "organizational structure" is vague and ambiguous. For their response to this request, Defendants will interpret the request as seeking information about Tactile's internal organizational structure. With that understanding, Defendants will produce copies of documents sufficient to show or describe Tactile's internal organizational structure at the senior management level and above for the time period January 1, 2018 through September 30, 2020, to the extent such documents exist and can be located after a reasonable search.

**REQUEST NO. 29:**

33

All documents and communications supporting or concerning any of Defendants' affirmative and other defenses set forth in their Answer to the Complaint, due to be filed on June 1, 2022.

**RESPONSE:**

Defendants will produce copies of non-privileged documents responsive to this request.

**REQUEST NO. 30:**

All documents produced to Defendants by any person in response to a subpoena issued pursuant to Fed. R. Civ. P. 45 in this Action, as well as all communications accompanying that document production.

**RESPONSE:**

Defendants will produce copies of non-privileged documents responsive to this request.

**REQUEST NO. 31:**

Insurance policies and indemnification agreements that may provide coverage for any liability arising in connection with this Action, including any director and officer policies, errors and omissions, policies, general liability policies, or any insurance policies maintained by the Individual Defendants.

**RESPONSE:**

Defendants incorporate their controlling objection, above, to Plaintiff's definition of

"Individual Defendants."  Subject to that objection, Defendants will produce copies of non-

privileged documents responsive to this request.

Dated: June 7, 2022.                                  **FAEGRE DRINKER BIDDLE &**
                                                      **REATH LLP**

                                                       */s/ Matthew Kilby*
                                                      Wendy J. Wildung (#117055)
                                                      Matthew Kilby (#0335083)
                                                      Rory F. Collins (#0397415)
                                                      Anderson C. Tuggle (#0400277)
                                                      2200 Wells Fargo Center

34

90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
wendy.wildung@faegredrinker.com
matthew.kilby@faegredrinker.com
rory.collins@faegredrinker.com
anderson.tuggle@faegredrinker.com

*Attorneys for Defendants*

35