# EXHIBIT 4



faegredrinker.com

**Matthew Kilby**
Partner
Matthew.kilby@faegredrinker.com
+1 612 766 7550 direct

**Faegre Drinker Biddle & Reath** LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
+1 612 766 7000 main
+1 612 766 1600 fax

July 19, 2022

**VIA E-MAIL**

Ashley M. Price
Jessica T. Shinnefield
Nicole Q. Gilliland
Joseph J. Tull
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

June P. Hoidal
Carolyn G. Anderson
Behdad C. Sadeghi
Zimmerman Reed LLP
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

> Re:     *Mart v. Tactile Systems Technology, Inc. et al.*,
>          <u>No. 0:20-cv-02074-NEB-BRT (D. Minn.)</u>

Dear Ms. Price:

This letter is in response to your letter dated June 30, 2022 following up on our meet and confer regarding Lead Plaintiffs' First Set of Requests for Production of Documents ("RFPs") and Defendants' Joint Written Response to Requests for Production of Documents by Lead Plaintiff (Set I) ("Defendants' Joint Written Response"), as well as Ms. Gilliland's email sent July 1, 2022 regarding custodians for ESI searches.

### Defendants' Responses to Lead Plaintiff's RFPs

Your June 30 letter sets forth various issues that we discussed during the meet and confer call held on June 15, 2022.  I address each issue that calls for a response below.

Your letter raised two overarching issues.  First, you noted that certain document custodians that Defendants have proposed for purposes of this case—specifically, Gerald Mattys, Robert Folkes, Brent Moen, and Lynn Blake—were not custodians for purposes of discovery in

-2-

the qui tam case. You requested that Defendants undertake searches of these custodians' files for documents relating to the Key Opinion Leader ("KOL") and contract trainer programs. Defendants will include these four custodians in all the searches we will undertake in connection with responding to Lead Plaintiff's various RFPs, as stated in Defendants' Joint Written Response and this letter. We believe running these various searches will be adequate to identify documents regarding the KOL and contract trainer programs in these custodians' files that are relevant to this case and responsive to Lead Plaintiff's RFPs.

Second, you argued that certain documents should be discoverable notwithstanding that they fall outside the agreed-upon date range of January 1, 2018 through September 30, 2020, because they "may be necessary to understand the context of documents produced within the date range." Defendants cannot agree to that as a blanket rule because it is vague and potentially overbroad and burdensome. Defendants agree, however, to the specific exception you cited as an example (exhibits used in depositions in the qui tam case that pre-date 2018). If you have other specific requests, we will consider them.

Your letter also raised issues specific to several of the RFPs, which I address below.

**RFP No. 1:** In response to your request, Defendants will identify deposition transcripts or witness declarations from the qui tam case that were withheld from Defendants' production in this case and will specify the reason each was withheld. Tactile identifies the deposition transcripts of Jody Allen and Vinay Satwah. We understand that both are subject to the qui tam action's protective order. Allen's contains information he designated as attorneys' eyes only, and Satwah's contains information he designated as confidential.

**RFP No. 2:** As I explained during our meet and confer, Tactile does not track sales referrals by KOLs or contract trainers. The document that you cite in your letter (TACTILE_SECLIT_00052720) does not show otherwise. That document reflects orders by *attendees* of KOL speaking engagements, not referrals made by KOLs. There is nothing surprising or illicit about Tactile confirming through review of program attendees' referrals that its KOL program is educating health care providers and having a positive impact. *See, e.g., United States v. Pfizer, Inc.*, 188 F. Supp. 3d 122, 134-36 (D. Mass. 2016), *aff'd sub nom. United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52 (1st Cir. 2017); *United States v. Celgene Corp.*, 226 F. Supp. 3d 1032, 1055 (C.D. Cal. 2016). Because Tactile does not track KOL or contract trainer sales referrals, Defendants do not have documents responsive to RFP 2(f) or the overlapping request in RFP 7.

**RFP No. 3:** Your letter raises several issues with respect to RFP No. 3. First, there is the issue of geographic scope of discovery concerning the contract trainer program. As I explained during our meet and confer, in the qui tam case discovery concerning certain local aspects of the contract trainer program was limited to Texas. Enclosed with this letter is a copy of the qui tam Court's November 10, 2021 order denying the plaintiff's request for production of nationwide data. This geographic limitation does not mean that the qui tam documents Tactile has re-produced in this case do not contain information about "how the contract trainer program operated nationally." The contract trainer program (and the KOL program) are national programs that operate the same way nationwide. Accordingly, the documents that Tactile has re-

-3-

produced from the qui tam case show how the contract trainer program operated nationally, notwithstanding the geographic limitation used for some documents in the qui tam case.

Your letter correctly notes that the geographic scope limitation applies only to subparts (a), (e), and (h) of RFP No. 3. In response to subparts (a) and (h), Defendants agree to identify contract trainers who were employed or affiliated with the Department of Veteran Affairs ("VA") and what compensation was provided to them during the relevant time period. In response to subpart (e), I can confirm that the same form agreement was used with contract trainers nationwide, and Defendants accept your proposed compromise to produce documents sufficient to show the form agreement across the relevant time period. Upon reasonable inquiry, Defendants believe the documents re-produced from the qui tam case contain such documents.

The second issue you raise with respect to RFP No. 3 is the so-called "CMS sales channel." I explained during our meet and confer that Tactile does not have a "CMS sales channel." While Tactile can total payments made by Medicare, for example (like it can total payments by other payers), there is no Medicare sales channel. As you requested, I reconfirmed that is true.

The third issue you raise with respect to RFP No. 3 is what you describe as "contract trainers' performance evaluations." You cite a quotation from paragraph 44 of the Amended Complaint allegedly taken from a "contract trainer's performance assessment," but you do not identify the source of this quotation. Please do so at your earliest convenience. I have confirmed that Tactile did not conduct performance reviews of contract trainers. Tactile did require annual competency assessments, the purpose of which was to ensure that the contract trainers were knowledgeable about Tactile's products and competent. To resolve any dispute, Tactile would agree to produce these annual competency assessments for contract trainers "who were employed by or affiliated with the VA" during the relevant time period, as you proposed in your June 30 letter.

**RFP No. 5:** This RFP seeks all documents "concerning the VA's and CMS's coverage of Tactile's products." Defendants objected to RFP No. 5 on the grounds that it is vague, overly broad, burdensome, and not related to any claim or defense, and I explained during our meet and confer that we don't understand what documents Plaintiff is actually seeking through this request. Your June 30 letter does not address these issues. It argues that documents "that concern targeting or gaining access to patients covered by the VA and CMS" are relevant, but it fails to explain the connection between such sales and "VA's and CMS's coverage of Tactile's products." Frankly, we don't know what you mean by "covered," or what documents you are seeking.

**RFP No. 6:** As you requested, I have confirmed that Tactile does not track or monitor marketing "directed to the CMS."

**RFP No. 8:** This request seeks documents concerning "the recognition of Tactile's revenue from sales to Medicare patients." Defendants' Joint Written Response noted that this theory was dismissed from the case by the Court's order on Defendants' motion to dismiss. Plaintiffs' argument to the contrary is incorrect. Although the Court held, as your letter notes,

-4-

that there was a fact issue as to whether any false or misleading statements had been alleged (Order at 28-29), the Court did *not* hold plaintiff had adequately alleged that any Defendant acted with scienter as to this claim. In the scienter section of its analysis, the Court concluded only that Plaintiff had sufficiently alleged that certain Defendants acted with scienter in failing "to disclose material information *about the alleged kickback schemes*," and then, separately, for failing to disclose material information about Tactile's total addressable market. (*Id*. at 53.) The Court did not mention the overstatement claims once in its scienter analysis.

This is unsurprising because there are no specific scienter allegations as to this claim in the Amended Complaint. Nor is the claim part-and-parcel of Plaintiffs' overarching "kickback scheme" claim. The Amended Complaint makes clear that, if anything, the overstatement claim relates to Plaintiffs' separate "RAC audit" claim, which the Court also dismissed. (*Compare, e.g*., Am. Compl. ¶ 35 ("Defendants overstated their CMS and VA revenue as the RAC Audit imposed greater scrutiny on submitted claims.") *with* Order at 28 (holding that Plaintiffs "fail[ed] to allege sufficient facts connecting Defendants' knowledge of or access to information about . . . the RAC audits" to actionable misstatements).)

The Medicare revenue-overstatement allegations are no longer part of this case, and Defendants will stand on their objections to RFP No. 8.

**RFP No. 9:** This request seeks presentations from annual sales meetings and quarterly business reviews, and communications regarding the same. Defendants agreed in their Joint Written Response to produce presentations from annual sales meetings from the relevant time period, and objected to producing quarterly business reviews or related communications based on burden and relevance. Upon further investigation, we have determined that producing quarterly business reviews would be very burdensome because there is no central repository of these presentations; the typical practice was for presenters to prepare their own slides and run them from their own laptops. Collecting these presentations would therefore require identifying everyone who presented at the quarterly business reviews during the relevant time period and then searching their custodial files for their presentations. Similarly, collecting communications related to the annual sales meetings or the quarterly business reviews would require searching many custodians' email data. For these reasons, Defendants do not agree to produce a broader scope of documents in response to RFP Nol. 9 than what they said they would in their Joint Written Response.

**RFP No. 11:** This request seeks "[p]erformance evaluations for the sales personnel in Tactile's VA sales channel." As Defendants stated in their Joint Written Response, such performance evaluations include private personal information of Tactile's employees, are not relevant to the claims and defenses at issue, and would be burdensome to produce. Defendants will stand on their objections.

**RFP No. 15:** As requested, we will follow up regarding whether Tactile's total addressable market ("TAM") estimates would intersect with the severity of lymphedema. We will also identify the individuals from "Tactile's leadership team" that Defendants plan to

-5-

include in ESI searches in response to this RFP as part of a separate communication regarding custodians and searches.

**RFP No. 16:** This request seeks documents concerning Tactile's Chief Medical Officer ("CMO") and Scientific Advisory Board's ("SAB") consideration of the number of lymphedema patients and the market for Flexitouch. As stated in their Joint Written Response, Defendants agreed to produce any analyses that were prepared by Tactile's CMO or members of the SAB to show the number of lymphedema patients and the market for Flexitouch, and an article by Tactile's CMO, Thomas O'Donnell, that was referenced in RFP No. 16. Your June 30 letter asks Defendants to also produce (i) responsive communications between the CMO or SAB, on the one hand, and Tactile's Board of Directors or executive leadership, on the other hand; and (ii) documents sufficient to show compensation provided for articles or studies published by the CMO or SAB members. As a compromise, Defendants agree to search Gerald Mattys's email data for communications with the CMO or SAB members responsive to RFP No. 16. Defendants also agree to produce documents sufficient to show special or additional compensation provided, if any, to the CMO or SAB members for any articles or studies they published during the relevant time period relating to the number of lymphedema patients and/or the market for Flexitouch.

**RFP No. 17:** This request broadly seeks "[a]ll documents concerning any Tactile Board of Directors meeting . . . and any committee or sub-committee thereof." Defendants stated in their Joint Written Response that they would produce meeting minutes and presentation materials from the relevant time period that address four topics: (i) the total addressable market for Flexitouch products, (ii) the Key Opinion Leader program, (iii) the contract trainer program, or (iv) the qui tam case. Your June 30 letter asks Defendants to expand the scope of their response to include the following topics: the Board's review and approval of SEC filings and the Board's consideration of Tactile's common stock performance, executive compensation, stock rewards, and insider trading policies. Defendants believe these categories remain overbroad, and Defendants' offer of compromise remains as stated. You never explain why, for example, the Board's review of SEC filings having nothing to do with any alleged wrongdoing in this case would be relevant. We have already agreed to produce Board materials relating to the misconduct alleged.

**RFP No. 21:** Subpart (b) of this request seeks documents concerning Tactile's revenues and revenue growth. Your June 30 letter asks Defendants to agree to produce documents regarding Tactile's auditor's "review and input on the alleged misrepresentations, including Defendants' statements concerning Tactile's revenue growth." Defendants agree to produce such audit-related documents for revenue allegations that remain in the case. As explained above in connection with RFP No. 8, the allegations regarding overstatement of Medicare revenue have been dismissed.

**RFP Nos. 22-24:** For these requests, Defendants agreed to produce certain responsive documents but not all communications related to those documents, as stated in their Joint Written Response. Your June 30 letter asks Defendants to reconsider producing communications, arguing that the scope of the requests "will be significantly narrowed by custodian search terms and time period." Defendants do not agree that applying search terms and limiting the universe

-6-

of communications to the relevant time period will make these requests not overbroad and burdensome.  As a compromise, however, Defendants agree to produce communications regarding Rule 10b5-1 plans of the Individual Defendants (i.e., communications responsive to RFP No. 23) that they are able to locate by searching the Individual Defendants' custodial data.

**RFP No. 26:** As requested, Defendants agree to produce documents relating to Bryan Rishe and Maggie Thompson on the same terms as Gerald Mattys, Robert Folkes, and Lynn Blake.

**RFP No. 28:** This request seeks organizational charts, and your June 30 letter specifically asks for charts that "will provide the organizational structure of the VA sales channel and indicate who oversaw the KOL and contract trainer programs."  Tactile maintains its organizational charts in a "dynamic" form, which means that it may be limited in the charts it has for the time period relevant here.  Nonetheless, Tactile believes it can provide the information requested.

### Plaintiff's Additional Proposed Custodians

In her July 1 email, Ms. Gilliland proposed 12 more custodians for Defendants' ESI searches in addition to the 12 custodians that Defendants initially proposed, and the 30 custodians included in the qui tam production that Defendants already made.  Plaintiffs' 12 additional proposed custodians are:

- Brett Demchuk
- Adam Ferkinhoff
- Greg Seeling
- Andrea Henson
- Angela Neofotistos
- Jill Christensen
- Maggie Thompson
- Megan Mosbek
- Lynn Haspert
- Jackie Gorham
- Jay Stracke
- Bjorn Larsen

Defendants note that Thompson, Mosbek, Haspert, and Gorham were custodians for the qui tam production, meaning you are receiving relevant documents from their files already for the time period at issue.  Defendants do not believe that the other additional proposed custodians are likely to have non-cumulative, relevant documents that aren't already captured by the tens of thousands of documents reproduced from the qui tam case or by documents in the files of the 12 additional custodians we already agreed to here. And Ms. Gilliland's email does not explain why any of them should be included.   If Plaintiff has specific reasons why particular additional individuals would be appropriate custodians, Defendants are willing to meet and confer further regarding this issue.

-7-

Regards,

*/s/ Matt Kilby*

Matthew Kilby

cc:   Rory F. Collins
      Anderson C. Tuggle