# EXHIBIT 8



faegredrinker.com

**Matthew Kilby**
Partner
Matthew.kilby@faegredrinker.com
+1 612 766 7550 direct

**Faegre Drinker Biddle & Reath** LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
+1 612 766 7000 main
+1 612 766 1600 fax

August 25, 2022

**VIA E-MAIL**

Ashley M. Price
Jessica T. Shinnefield
Nicole Q. Gilliland
Joseph J. Tull
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

June P. Hoidal
Carolyn G. Anderson
Behdad C. Sadeghi
Zimmerman Reed LLP
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

> Re:  *Mart v. Tactile Systems Technology, Inc. et al.*,
> <u>No. 0:20-cv-02074-NEB-BRT (D. Minn.)</u>

Dear Ms. Gilliland:

This letter is in response to Lead Plaintiff's discovery letters dated August 19, 2022.

### I.    Response to Plaintiff's Letter Regarding Search Terms and Custodians.

With respect to Request No. 1(f), Defendants are already including Casey, Hansen, and Oberle as custodians.  For Request No. 9, Defendants agree to add Thompson and Stracke as custodians for that request.  Defendants do not agree to add the others you reference.

With respect to search terms for Request No. 4, Defendants accept your new terms but not the proximity connector of 250, which is not proximate.  Defendants are running the following:  ((("compliance" or "audit") w/3 "committee") or "burke" or "nigon" or "roche") w/50 (("KOL" or "key opinion leader" or "medical education") or trainer* or "TAM" or "addressable market" or "AKS" or kickback* or fraud*)).

-2-

With respect to your request that Defendants confirm whether their August 22, 2022 production includes all documents being produced in response to Request Nos. 14, 15, 18, 19, and 20, I can confirm that it does not.

With respect to your request that Defendants add as custodians the people you refer to as "Area Sales Directors" (not all of whom were, however), Defendants decline to do so. Defendants further note that there are currently 40 custodians, and Defendants have already produced more than 70,000 documents from their files.

With respect to Thompson and Stracke, as noted above, Defendants agree to the compromise you proposed.

With respect to Request No. 17, we are not applying search terms because we do not need search terms to locate Board materials. We agree to produce Board minutes and presentations discussing the items listed in your other August 19 letter.

With respect to the final paragraph of this letter, you did not state what document requests or searches you are referencing. As you know, we are running several searches that are designed to return any relevant documents relating to the medical education or contract trainer programs, and we have already produced tens of thousands of documents relating to those programs. The fact that there are no documents substantiating Plaintiff's baseless allegations regarding those programs is evidence that the claims are unfounded (which is why the *qui tam* plaintiff dismissed its lawsuit on the eve of trial for no payment), not that the searches need adjustment.

To resolve any dispute, however, Tactile will run the following search and produce responsive documents from the files of the Individual Defendants in response to Requests No. 2, 3, 6, and 7: (("key opinion leader" or "KOL") or trainer*) w/50 (fraud* or kickback* or "AKS" or audit* or investigat*).

## II.     Response to Plaintiff's Letter Regarding the Scope of Plaintiff's First Set of Document Requests.

With respect to Request Nos. 2 and 7, Defendants are not ignoring the language of the requests. Request No. 2 was patently overbroad as written. It would have required production of any document referencing Tactile's medical education program for any reason, without connection to any allegation of misconduct. Request No. 7 required production only of certain documents concerning quarterly and annual sales revenue in the VA sales channel (there is no CMS sales channel), "including as a result of referrals from the Key Opinion Leader or contract trainer programs." It remains unclear, however, what this statement even means. To the extent Plaintiff continues to insist that Defendants search for and produce all documents responsive to Request No. 2 as written—i.e., every document referencing any aspect of Tactile's medical education program for any purpose—then yes, the parties are at an impasse.

Though neither Request No. 2 or 7 specifically asks for documents showing referrals by speakers or attendees, your letter focuses on documents relating to referrals by those individuals.

-3-

As we previously noted, Defendants already produced documents showing all speakers and attendees, and all prescriptions by health care providers. You haven't said why those documents are not sufficient.

In addition, to resolve any dispute, Defendants will run the following search and produce any responsive documents from the Individual Defendants' files:

> ("key opinion leader" or "KOL" or "speaker" or "attendee" or "medical education") w/50 ("ROI" or "return on investment" or refer*)

Your letter also contains a discussion of certain cases and an OIG press release. As you know, neither your client nor the *qui tam* plaintiff your client copied has shown that Tactile's medical education program bears the hallmarks of speaker programs that amount to unlawful kickbacks. While your letter references "lavish dinners and cocktail receptions," you have yet to identify such events. We look forward to receiving Plaintiff's interrogatory responses detailing all such events at issue.

With respect to Request No. 11, Defendants will not indiscriminately produce all performance evaluations for sales personnel in the VA sales channel. The example from your letter regarding Ms. Gorham only proves this is a pure and improper fishing expedition. There is nothing unlawful about the quoted text. A purpose of medical educational programs is to increase awareness of the effectiveness of Tactile's products, leading to prescriptions. Why you believe that to be unlawful, you do not say.

With respect to Request No. 17, as noted above, we agree to produce Board minutes and presentations discussing the items listed in your August 19 letter.

Finally, both of your August 19, 2022 letters identify a multitude of disputes and propose Informal Dispute Resolution procedures to resolve all of them. Given the breadth of disputes Plaintiff raises, the numerous disputes it purports to reserve its rights regarding, and the importance of these issues, Defendants do not believe the areas of potential dispute are straightforward enough for informal dispute resolution to be appropriate. Should you identify some much narrower dispute appropriate for IDR, we will consider it.

Regards,

*/s/ Matt Kilby*

Matthew Kilby

cc:   Rory F. Collins
      Anderson C. Tuggle