# EXHIBIT 9



faegredrinker.com

**Matthew Kilby**
Partner
Matthew.kilby@faegredrinker.com
+1 612 766 7550 direct

**Faegre Drinker Biddle & Reath** LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
+1 612 766 7000 main
+1 612 766 1600 fax

August 12, 2022

**VIA E-MAIL**

Ashley M. Price
Jessica T. Shinnefield
Nicole Q. Gilliland
Joseph J. Tull
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

June P. Hoidal
Carolyn G. Anderson
Behdad C. Sadeghi
Zimmerman Reed LLP
1100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402

> Re:  *Mart v. Tactile Systems Technology, Inc. et al.*,
>        No. 0:20-cv-02074-NEB-BRT (D. Minn.)

Dear Ms. Gilliland:

This letter is in response to your letter dated July 29, 2022, which was itself in response to my letter dated July 19, 2022 regarding Lead Plaintiff's First Set of Requests for Production of Documents ("RFPs") and Defendants' Joint Written Response to Requests for Production of Documents by Lead Plaintiff (Set I) ("Defendants' Joint Written Response") as well as my July 21, 2022 email regarding custodians. The issues raised in your letter regarding custodians were addressed in our meet and confer on August 10, 2022. I address the outstanding issues regarding Lead Plaintiff's RFPs below.

**RFP No. 1:** In your July 29 letter you requested contact information for counsel for Dr. Vinay Satwah. According to the docket in the *qui tam* case, Dr. Satwah was represented by:

> Jason Storck
> Wilson Sonsini Goodrich & Rosati
> 900 South Capital of Texas Highway

-2-

Austin, TX 78746-5546
(512) 338-5435
jstorck@wsgr.com

As requested, I can confirm that Defendants have produced all witness declarations and their exhibits from the *qui tam* case that my firm has received, and to the best of my knowledge after reasonable inquiry, these are all the witness declarations that were submitted in the *qui tam* case.

**RFP Nos. 2(f) and 7:** RFP No. 2(f) asked for "[d]ocuments and communications concerning tracking Key Opinion Leaders' referrals," and RFP No. 7 sought "[a]ll documents and communications concerning Tactile's reported quarterly and annual revenues and operating income that relate to Flexitouch sales in the VA and CMS sales channels, including as a result of referrals from the Key Opinion Leader or contract trainer programs." In their Joint Written Response, Defendants stated in response to both these requests that Tactile does not track referrals from Key Opinion Leaders ("KOLs") or contract trainers and, thus, Defendants do not have any documents responsive to that part of these requests. Ms. Price's June 30 letter claimed that documents produced by Tactile, such as TACTILE_SECLIT_00052720, "reveal[] that Tactile did track referrals" and asked Defendants to "reconsider" their position on this issue. In my July 19 letter I reconfirmed that Tactile does not track sales referrals by KOLs and explained that TACTILE_SECLIT_00052720 concerns orders by *attendees* of KOL speaking engagements, not referrals made by KOLs.

Your July 29 letter tries to pivot from the actual requests and our prior correspondence, and now focuses on attendees. Plaintiff now asks Defendants to produce "documents that track referrals related to the KOL program – whether they are referrals made by the KOLs themselves, or made by the attendees." Tactile does not track referrals by KOLs (as I have told you repeatedly), and Defendants do not agree to produce documents related to any tracking of referrals by mere attendees of KOL programs. Such documents are outside the scope of what Defendants agreed to produce in response to RFP Nos. 2(f) and 7, and are not relevant to any claim or defense in this action. The Amended Complaint alleges kickbacks were paid to KOLs to influence prescriptions. There are no kickback allegations involving program attendees, nor could there be. Moreover, my July 19 letter cited case law recognizing that analyzing the impact of KOL programs on *attendees'* orders is neither unusual nor illicit, and you have not addressed these cases or provided any contrary authority.

Although prescriptions by KOL program attendees are not relevant, I note that Tactile has produced (1) a list of physicians who prescribed a Tactile device between July 8, 2018 and January 6, 2020 and the number of devices prescribed; and (2) lists of attendees of all KOL programs held during the relevant time period.

**RFP No. 3:** To clarify Defendants' position with respect to RFP Nos. 3(a) and 3(h), Defendants agree to identify on a nationwide basis the contract trainers who were employed or affiliated with the Department of Veteran Affairs ("VA"), and what compensation was provided to them during the relevant time period.

-3-

**RFP No. 5:** This RFP seeks all documents "concerning the VA's and CMS's coverage of Tactile's products." As I stated during our meet and confer and in my July 19 letter, we don't understand what documents Plaintiff is actually seeking through this request. In your July 29 letter, you explained that you believe "[t]o the extent Tactile's sales and marketing efforts, and especially its KOL and contract trainer programs, had any effect on the discourse between the VA and Tactile, or CMS and Tactile, and regarding whether those agencies agreed to cover Flexitouch, is highly relevant."

Upon reasonable investigation, we do not believe that Tactile had communications with VA or CMS during the relevant time period in which the VA or CMS discussed not covering Tactile's products because of kickback concerns regarding Tactile's KOL or contract trainer programs. To the extent that RFP No. 5 seeks a broader universe of documents unrelated to discussions about the KOL or contract trainer programs and coverage of Flexitouch, Defendants stand on their objections.

**RFP No. 6:** In my July 19 letter, I confirmed that "Tactile does not track or monitor marketing 'directed to the CMS.'" Per your request for clarification, Tactile does not track or monitor marketing *or sales efforts* directed to CMS-covered patients.

**RFP No. 9:** Defendants accept your proposal to limit the search for quarterly business reviews ("QBRs") and communications regarding annual sales meetings and QBRs to the agreed-upon custodians. In addition to producing copies of presentations made at annual sales meetings during the relevant time period, Defendants will run searches and produce documents and communications concerning annual sales meetings and QBRs to the extent they reference the KOL or contract trainer programs or Tactile's total addressable market ("TAM").

**RFP No. 11:** This request seeks "[p]erformance evaluations for the sales personnel in Tactile's VA sales channel." While Defendants appreciate Lead Plaintiff's offer to accept evaluations "with private personal information redacted," privacy concerns are only one of the objections that Defendants raised in their Joint Written Response. Defendants also objected to RFP No. 11 on the grounds that it is overly broad, unduly burdensome, and seeks documents and information that do not relate to any claim or defense. Defendants will stand on their objections.

**RFP No. 15:** Defendants are producing documents relating to Tactile's estimates of the TAM for Flexitouch products, as stated in Defendants' Joint Written Response. The documents reflect that Tactile considered multiple factors when estimating the TAM. If Lead Plaintiff has specific questions regarding Tactile's TAM estimates, Lead Plaintiff can ask witnesses those questions.

**RFP No. 17:** Defendants will produce Tactile Board of Director meeting minutes and presentation materials from the relevant time period relating to the SEC filings cited in the Amended Complaint's "False and Misleading Statements" section that also pertain to the four topics stated in my last letter, or Tactile's stock performance in relation to the contract trainer or KOL programs, or compensation for any Defendant.

-4-

**RFP Nos. 22-24:** Defendants accept your proposed compromise. In addition to the items stated in their Joint Written Response and communications regarding Rule 10b5-1 plans of the Individual Defendants, Defendants will produce communications about the Individual Defendants' stock sales during the relevant time period that they are able to locate by searching the Individual Defendants' custodial data.

Regards,

*/s/ Matt Kilby*

Matthew Kilby

cc:     Rory F. Collins
        Anderson C. Tuggle