# EXHIBIT 10
# [Filed Under Seal]

**Robbins Geller Rudman & Dowd LLP**

| | | |
|---|---|---|
| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

Nicole Gilliland
ngilliland@rgrdlaw.com

August 19, 2022

Matthew Kilby
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

> Re:    *Mart v. Tactile Systems Technology, Inc. et al.,*
>          No. 0:20-cv-02074-NEB-BRT (D. Minn.)

Dear Mr. Kilby:

This letter responds to your August 12, 2022, letter and addresses outstanding issues regarding the scope of Lead Plaintiff's First Set of Requests for Production of Documents (the "Requests"). Lead Plaintiff appreciates the progress the parties have made to resolve most of the issues regarding the scope of the Requests. However, we believe the parties have reached an impasse regarding the three issues detailed below, and believe they are ripe for resolution utilizing Magistrate Judge Thorson's Informal Dispute Resolution process. *See* ECF 110 at 9. Please let us know by Monday, August 22, 2022, whether Defendants stand on their refusal to produce the documents requested below, so Lead Plaintiff can seek adjudication of these matters promptly if necessary.

## I.    REQUEST NOS. 2 AND 7

Defendants have refused to produce documents concerning the ROI or referrals generated by KOL program attendees and KOL program speakers. These documents are responsive to Request Nos. 2 and 7, and are highly relevant to Lead Plaintiff's claims. Lead Plaintiff addresses these issues separately below.

### A.    KOL Attendees

Apparently ignoring the plain language of Request Nos. 2 and 7, Defendants have insisted that Lead Plaintiff did not request documents that concern tracking ROI and referrals generated by KOL program attendees. However, Request No. 2 broadly seeks "[a]ll documents and communications concerning Tactile's Key Opinion Leader program." Request No. 7 seeks revenue and income resulting from Flexitouch sales to the VA and CMS, "including as a result of referrals from the Key Opinion Leader or contract trainer programs." Nothing in the plain language of either of these requests limits these requests to only KOL speaker referrals.

**Robbins Geller
Rudman & Dowd** LLP

Matthew Kilby
August 19, 2022
Page 2

Further, documents and communications concerning tracking attendee referrals and ROI are clearly relevant to Lead Plaintiff's claims. As alleged in the Amended Complaint, the OIG Special Fraud alert on speaker programs stated that a "suspect characteristic[]" of speaker programs is when a company selects "speakers or *attendees* based on past or expected revenue that the speakers or *attendees* have or will generate by prescribing or ordering the company's product(s) (*e.g.*, a return on investment analysis is considered in identifying participants)." ECF 49, ¶39; Dep't of Health and Human Services, Office of Inspector General, *Special Fraud Alert: Speaker Programs* https://oig.hhs.gov/documents/special-fraud-alerts/865/SpecialFraudAlertSpeakerPrograms.pdf (Nov. 16, 2020); *see also United States v. Janssen Prods., LP*, 2021 U.S. Dist. LEXIS 243037, at *38-*39 (D.N.J. Dec. 21, 2021) ("a reasonable jury could conclude that one purpose of [defendant's] [s]peaker [p]rograms was to induce the physicians to prescribe more [of defendants' products]" in part because the defendant "tracked the prescriptions of the paid speakers and all *attendees* . . . to monitor the return on investment of its [s]peaker [p]rograms").

The Amended Complaint also includes particularized "kickback allegations involving program attendees" – Defendants' assertion to the contrary notwithstanding. *See, e.g.*:

> Tactile also hosted lavish dinners and extravagant "cocktail receptions" for high-referring health care providers. The dinners were organized by Tactile's marketing department and hosted by salespeople. When determining the event's invitees, the Company identified "warm" leads and accounts that had referred patients before the event. Tactile was also careful not to invite health care providers that it thought may not provide a great return on investment. For example, in one conversation, a Tactile employee stated: "I feel hesitant to have Dr. Satwah or any other MDs fly out to speak to a group which I am not confident will render a great ROI."

ECF 49, ¶41; ¶37 ("Tactile ran a Key Opinion Leader ("KOL") program under which it remunerated healthcare providers to induce them to promote and prescribe its products.").

That Tactile remunerated the attendees with lavish dinners and cocktail receptions further establishes the relevance of documents tracking attendee ROI and referrals, as multiple cases make clear. *See United States ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 517-18 (S.D.N.Y. 2014) (upholding a complaint concerning kickbacks paid to doctors that were either "*attendees* or speakers at lavish . . . speaker events" in part because the doctors "increased their prescriptions for [defendant's] drugs, after *attending* speaker events"); *United States ex rel. Boise v. Cephalon, Inc.*, 2015 U.S. Dist. LEXIS 49341, at *28-*29 (E.D. Pa. Apr. 15, 2015) (upholding allegations that "expensive meals" ""also served as kickbacks to the attendees'"); *Purcell v. Gilead Scis., Inc.*, 439 F. Supp. 3d 388, 392 (E.D. Pa. 2020) (upholding a complaint concerning speaker

4867-8647-7103.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew Kilby
August 19, 2022
Page 3

programs in part because the "sales and marketing team selected paid *invitees* based on data about prescription writing volume and habits").

By contrast, Defendants' cases cited in your July 19 letter are unpersuasive. Importantly, both cases were decided in 2016—four years before the OIG Special Fraud Alert highlighted that tracking attendee ROI and referrals was "suspect." *See United States v. Pfizer, Inc.*, 188 F. Supp. 3d 122 (D. Mass. 2016); *United States v. Celgene Corp.*, 226 F. Supp. 3d 1032 (C.D. Cal. 2016). Further, neither case involved allegations that the attendees themselves were illicitly remunerated in exchange for referrals, or that the defendants selected attendees based on past referral practices. *See Id.* at 1055 (discussing whether a "speaker program was intended to influence the *speakers'* prescribing decisions.") (emphasis in original); *Pfizer*, 188 F. Supp. 3d at 134-36.

Thus, because Defendants continue to refuse to collect and produce documents regarding the tracking and ROI relating to the KOL event attendees, Lead Plaintiff intends to seek resolution with the Court.

## B.     KOL Speakers

Defendants' repeated statements that they did not track referrals/orders/prescriptions or ROI garnered from KOL speakers do not bear out in the documents produced thus far. *See, e.g.*, ECF 49, ¶37 and TACTILE_SECLIT_00074236 ("Key Opinion Leaders or KOLs are clinicians who have a *high referral rate* to us"); TACTILE_SECLIT_00137689 (listing Dr. Baltazar's 2019 orders); TACTILE_SECLIT_ 00045711 (listing physician referrals over an 18-month period, including referrals by, for example, Doctors Satwah, Melin, and Karni); TACTILE_SECLIT_00236924 (discussing Tactile's "Top Doctor Report" which "shows total referrals . . . by physician"). Thus, Defendants should locate, collect, and produce documents concerning the referrals or ROI obtained from the KOL speakers.

The case law confirms the relevance of these documents to Lead Plaintiff's allegations that Defendants increased their sales in part through kickbacks. *See*, *e.g.*, *Janssen*, 2021 U.S. Dist. LEXIS 243037, at *38-*39 ("a reasonable jury could conclude that one purpose of [defendant's] [s]peaker [p]rograms was to induce the physicians to prescribe more [of defendants' products]" in part because the defendant "tracked the *prescriptions* of the paid *speakers*"); *United States v. Teva Pharm. USA, Inc.*, 2019 U.S. Dist. LEXIS 35148, at *39-*40 (S.D.N.Y. Feb. 27, 2019) (denying defendant's motion for summary judgment "on the grounds that it did not track speakers" in part because "[t]he sales representatives responsible for a given region, as well as their managers, closely tracked *prescriptions* of all health care providers for whom they were responsible, *especially paid speakers*.").

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew Kilby
August 19, 2022
Page 4

Because Defendants appear to be withholding documents based on disingenuous confusion of the words "tracking," "order," "referral," and "prescription," Lead Plaintiff intends to seek resolution of this issue with the Court.

## II.    REQUEST NO. 11

Lead Plaintiff has twice offered to compromise to address Defendants' concerns regarding privacy and burden.   First, Lead Plaintiff offered to narrow this request from performance assessments for all "sales personnel in Tactile's VA sales channel" to performance assessments for the few Tactile employees with the title "VA Government and Accounts Manger."  Second, Lead Plaintiff agreed that Defendants could produce the assessments with private personal information redacted.  As Lead Plaintiff has explained, these documents are highly relevant because they may indicate the VA sales personnel's implementation or assistance in the KOL or contract trainer programs.  For example, Jackie Gorham's 2017 evaluation noted that an area for her "Continued Development" for the upcoming year was to "[p]lan and execute at least 24 KOL speaking events to boost awareness and *create new diagnosers*."    TACTILE_SECLIT_00215624.    Similar observations or directions may be found in this narrow subset of performance assessments that Lead Plaintiff has already agreed would satisfy its Request.  As Defendants have provided no reason why such a production would be burdensome, Lead Plaintiff intends to seek Court intervention on Request No. 11.

## III.    REQUEST NO. 17

Defendants' August 12 letter regarding this Request fails to offer a meaningful proposal.  In the letter, Defendants confusingly agree to produce "Board of Director meeting minutes and presentation materials from the relevant time period *relating to* SEC filings cited in the Amended Complaint's 'False and Misleading Statements' section *that also pertain to* the four topics stated in my last letter, *or* Tactile's stock performance in relation to the contract trainer *or* KOL programs, *or* compensation for any Defendant."

Defendants' proposed compromise is made exceedingly unclear by the above language. For example, it is unclear whether "the four topics stated in my last letter" are meant to apply to the SEC filings themselves or to the Board materials discussing those SEC filings.  It is also unclear whether Defendants are proposing to search for Board materials relating to stock performance and Defendant compensation outside the context of SEC filings.

**Robbins Geller**
**Rudman & Dowd** LLP

Matthew Kilby
August 19, 2022
Page 5

Therefore, to make clear Lead Plaintiff's proposal, we seek the following documents in relation to Request No. 17: Board minutes and presentation material from the relevant time period discussing either:

- TAM;

- the KOL program;

- the contract trainer program;

- the qui tam case;

- the SEC filings cited in the False and Misleading Statements section of the Amended Complaint;

- Tactile's stock performance;

- executive compensation, including stock rewards; or

- insider trading policies.

If this is not acceptable to Defendants, we intend to seek the Court's intervention. Please let us know by Monday, August 22, 2022.

Sincerely,

NICOLE GILLILAND

NG:ydg

cc:    All Counsel of record

4867-8647-7103.v1