# EXHIBIT 19
# [Filed Under Seal]

# In the Matter Of:

## *UNITED STATES v*

*TACTILE SYSTEMS TECHNOLOGY*

---

## *JACKIE GORHAM*

*July 20, 2021*

---



Confidential - Subject to Protective Order

TACTILE_SECLIT_00286287

1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

UNITED STATES EX REL.          )
VETERANS FIRST MEDICAL         )
SUPPLY, LLC,                    )
                               )
          Relator,             )
                               )
     vs.                       ) Civil Action No.
                               ) 4:18-cv-02871
TACTILE SYSTEMS TECHNOLOGY,     )
INC.,                          )
                               )
          Defendant.           )
_____)

VIDEOTAPED DEPOSITION OF

JACKIE GORHAM

SEATTLE, WASHINGTON

TUESDAY, JULY 20, 2021

Reported in Stenotype by:
Cody R. Knacke, RPR, CSR No. 13691
Job No.:  802185

Confidential - Subject to Protective Order

TACTILE_SECLIT_00286288

16

got promoted or not.

Q.   Did you know who the sales associates or associate product specialists were in your area?

A.   Yes.

Q.   And then just to kind of close the loop, there was also a group of people who were working for Tactile who were nonemployee contractors; is that right?

A.   Can you repeat the question?

Q.   There are also, working for Tactile, a group of nonemployee contractors; correct?

MS. HUYSER:  Objection to form.

THE WITNESS:  Correct.

BY MR. HESS:

Q.   The nonemployee contractors who work in the sales area include people like regional sales support personnel?

A.   Correct.

Q.   Other nonemployee contractors are contract trainers?

A.   Correct.

Q.   And another nonemployee contractor role at Tactile would be something called contract trainer plus?

MS. HUYSER:  Objection to form.

Confidential - Subject to Protective Order

TACTILE_SECLIT_00286303

17

THE WITNESS: Correct.

BY MR. HESS:

Q. And you were familiar with all those nonemployee contract roles; correct?

A. Yes.

MS. HUYSER: Objection to form.

BY MR. HESS:

Q. When you worked at Tactile, to whom did you report directly?

A. Bryan Rishe.

Q. Mr. Rishe was the Vice President of Sales?

A. Yes.

Q. Did you report to Mr. Rishe the entire time you were an area director of west?

A. Yes.

Q. When you were a regional manager starting in 2012, to whom did you report?

A. Bryan Rishe.

Q. Was Mr. Rishe the Vice President of Sales at that time too?

A. Yes.

Q. When you were a regional manager did you have an area director like the role that you played when you left Tactile?

A. No.

Confidential - Subject to Protective Order

TACTILE_SECLIT_00286304

18

Q.    So from 2016 until 2021, you were the top sales director for the entire western region of the United States?

MS. HUYSER:  Objection to form.

THE WITNESS:  Yes.

BY MR. HESS:

Q.    Your area of responsibility as area director west included the West Coast; correct?

A.    Mm-hmm.

Q.    The Southwest United States?

A.    Mm-hmm.

Q.    The rocky mountain states?

A.    No.

Q.    The Great Plains?

A.    Yes.

Q.    And then Texas?

A.    Yes.

Q.    Are there any areas I left out?

A.    No.  And some of the territories changed throughout my span of area director.

Q.    When you were area director at west, did you always have responsibility for Texas?

A.    Yes.

Q.    Did you ever supervise Tactile sales staff in other regions of the country like the East Coast

Confidential - Subject to Protective Order

TACTILE_SECLIT_00286305

151

us all.

BY MR. HESS:

Q.   So this is something you can read on paper or the screen here, "need KOL Multiple meetings, MD does not want to lose ability to treat patients by referring a tx that heals wound."

What does that mean?

MS. HUYSER:  Object.  Foundation.

MR. ANDERSON:  Object to the foundation.

Go ahead and answer if you know.

THE WITNESS:  The first part, "need KOL multiple meetings," he should have had a comma. That means he's needing some sort of help in education because he's already had multiple meetings.

I don't know what he means by "the doctor does not want to lose the ability to treat patients by referring a treatment that heals wounds."

BY MR. HESS:

Q.   Let's look at 12162.  This is Dr. Kyle Smith from Tyler, Texas.  And Parker Hertel is the rep, and under notes it says, "NEED KOL MEETING"; right?

A.   Yes.

Q.   So do you remember what the purpose of this

Confidential - Subject to Protective Order

TACTILE_SECLIT_00286438

152

spreadsheet was when you got it from Bjorn and started filling it out with your colleagues?

A.    Yes.   It was a marketing and we got this information, and Bjorn's goal was to basically look at the data that he had and identify where our -- and how potential accounts or how they ranked amongst the doctors and what our efforts had been to tap into those accounts and then what support was needed.

Another part of it was to vet the data.  So you may have a doctor on that spreadsheet that deceased ten years ago but they still show up.  So we spent multiple calls vetting the data, and then of those, that perhaps the rep had already gone in and it was just a roadblock to advise what was needed to open the account.

Q.    Could you also use KOL events to increase the number of referrals from someone who is already referring?

A.    The goal was, when we brought a KOL person in, they would track after that KOL left if our referrals went up.  That was the goal.  We were measured on that.

Q.    And how did you measure whether referrals went up after a KOL speaker came in?

Confidential - Subject to Protective Order

TACTILE_SECLIT_00286439

153

A.    Marketing.

Q.    And how did they do it?

MR. ANDERSON:  Objection.  Foundation.

Go ahead.

MS. HUYSER:  Join.

THE WITNESS:  Just, I mean, they would take whatever doctors showed up and then measured the traction after that, did we get a referral or not.

BY MR. HESS:

Q.    What is the mechanism by which marketing would know whether or not a doctor referred after a KOL event?

A.    They would --

MS. HUYSER:  Objection to form and foundation.

MR. ANDERSON:  Same objection.

Go ahead.

THE WITNESS:  They would track.  They would track it internally if a referral came in.  I don't know how specifically they did it, but they did.

BY MR. HESS:

Q.    Was the doctor identified by a particular number or ID?

MS. HUYSER:  Objection to form. Foundation.

Confidential - Subject to Protective Order

TACTILE_SECLIT_00286440