UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN MART, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>TACTILE SYSTEMS TECHNOLOGY, INC., et al.,<br><br>     Defendants. | Civ. No. 0:20-cv-02074-NEB-DTS<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY |

4894-7602-2836.v1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

III.   ARGUMENT ...................................................................................................... 9

       A.    Legal Standard ......................................................................................... 9

       B.    The Standard Method to Calculate Damages in a Securities Fraud
           Class Action Requires Expert Analysis .......................................................... 9

       C.    The Federal Rules Protect Preliminary Damages Estimates from
           Disclosure ................................................................................................ 16

IV.   CONCLUSION ................................................................................................. 19

4894-7602-2836.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Angley v. UTi Worldwide Inc.*,
  311 F. Supp. 3d 1117 (C.D. Cal. 2018) ..................................................... 10

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) .................................................................................... 14

*Cook v. Rockwell Int'l Corp.*,
  161 F.R.D. 103 (D. Colo. 1995) .......................................................... 15, 16

*Crouse Cartage Co. v. Nat'l Warehouse Inv. Co.*,
  2003 WL 23142182 (S.D. Ind. Jan. 13, 2003) .......................................... 17

*Davita Healthcare Partners, Inc. v. United States*,
  128 Fed. Cl. 584 (2016) ....................................................................... 17, 18

*ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*,
  53 F.3d 186 (8th Cir. 1995) ....................................................................... 15

*FindWhat Inv. Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) ................................................................. 10

*First Health Grp. Corp. v. United Payors & United Providers, Inc*
  1999 WL 515499 (N.D. Ill. July 12, 1999) ................................................ 15

*In re Intuitive Surgical Sec. Litig.*,
  2016 WL 7425926 (N.D. Cal. Dec. 22, 2016) ........................................ 9, 12

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) ................................................................ *passim*

*King v. E.F. Hutton & Co., Inc.*,
  117 F.R.D. 2 (D.D.C. 1987) ................................................................. 13, 14

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  2004 WL 2108410 (N.D. Ill. Sept. 21, 2004) ...................................... *passim*

*Smilovits v. First Solar, Inc.*,
  2019 WL 7282026 (D. Ariz. Dec. 27, 2019) .............................................. 10

*Spring Lake Prok, LLC v. Great Plains Mgmt., LLC.*,
  2021 WL 3051902 (E.D. Mo. Jul. 20, 2021) ........................................ 17, 18

4894-7602-2836.v1

**Page**

*United States ex rel. Tyson v. Amerigroup Ill., Inc.*,
  230 F.R.D. 538 (N.D. Ill. 2005) ................................................................... 16

*United States ex rel. Veterans First Med. Supply LLC, ex rel. v.
  Tactile Med. Sys. Tech., Inc.*,
  No. 4:18-cv-02871 (S.D. Tex.) ................................................................... 3, 4

*Zenith Elects. Corp. v. WH-TV Broadcasting Corp*
  395 F.3d 416 (7th Cir. 2005) ..................................................................... 15

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78 ............................................................................................................... 2
  §78j(b) ......................................................................................... 9, 13, 14, 16
  §78t-1(b)(1) ................................................................................................ 10

Federal Rules of Civil Procedure
  Rule 26(a)(1)(A) ........................................................................................... 7
  Rule 26(a)(2)(B) ........................................................................................... 9
  Rule 26(b)(1) ................................................................................................ 9
  Rule 26(b)(3)(A) ..................................................................................... 9, 16
  Rule 26(b)(3)(A)(ii) .................................................................................... 18
  Rule 26(b)(4) .............................................................................................. 17
  Rule 26(b)(4)(B) ......................................................................................... 17
  Rule 26(b)(4)(C) ..................................................................................... 9, 16
  Rule 26(b)(4)(D) ................................................................................ 9, 11, 16
  Rule 26(f) ................................................................................................. 5, 6

4894-7602-2836.v1

Lead Plaintiff St. Clair County Employees' Retirement System ("St. Clair" or "Lead Plaintiff") brings this response in opposition to Defendants' Motion to Compel Discovery (ECF 114) ("Motion"). Because the arguments in Defendants' Memorandum of Law in Support of Their Motion to Compel Discovery (ECF 116) ("Mem.") ignore basic premises of securities fraud precedent and the Federal Rules of Civil Procedure, their Motion should be denied.[1]

## I.    INTRODUCTION

Demanding that Lead Plaintiff produce information on damages, Defendants' Motion ignores that damages issues in this case are complex and require expert analysis, which will not be completed until January 19, 2023, when expert reports are due under the operative scheduling order. Such a calculation will involve, among other considerations, a statistical and economic analysis to determine how much artificial inflation in Tactile's share price during the Class Period was caused by Defendants' fraud. An expert will conduct that analysis and disclose the conclusions of those calculations and assessments by the deadline to submit written expert reports, which the Court ordered after considering the parties' agreed-to proposal on the litigation schedule.

Seemingly unhappy with the schedule for expert disclosures to which they agreed, Defendants now insist that Lead Plaintiff produce its damages calculations before such an assessment has even taken place – much less, is due. Defendants ignore the allegations in the Complaint detailing the revelations of Defendants' fraud that caused Tactile's stock price

---

[1]   "Defendants" are Tactile Systems Technology, Inc. ("Tactile"), Gerald Mattys, Lynn Blake, Brent Moen, Robert Folkes, and Bryan Rishe.

- 1 -

to drop, and assert, without basis, that Lead Plaintiff has not explained how Tactile shareholders were harmed. Mem. at 2.[2] Because expert analysis is required to determine by "what amount" the investors were damaged (*id.*), that information is necessarily unavailable in fact discovery, before an expert has performed any analysis or calculations.

Finally, any preliminary damages analysis undertaken by Lead Plaintiff's counsel, whether in consultation with its in-house damages consultant or an outside consulting expert, is attorney work-product, and protected from disclosure under the Federal Rules of Civil Procedure. Lead Plaintiff's counsel uses these preliminary estimates to advise Lead Plaintiff regarding potential losses and assess its case strategy in anticipation of trial. Defendants have not even attempted to establish good cause for the production of such preliminary estimates. Thus, Defendants' Motion to prematurely obtain damages information must be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This class action brings securities fraud violations under the Securities Exchange Act of 1934 ("Exchange Act") against Tactile and several of its officers. As alleged in the Complaint, Defendants made false and misleading statements and omissions, and engaged in a fraudulent course of business, concealing that Defendants implemented various kickback schemes to induce sales of their flagship product, Flexitouch. ¶¶2-5, 35-48, 132. As Defendants reported outsized revenue growth that was aided by their undisclosed kickback schemes, Defendants falsely affirmed their compliance with federal regulations. ¶¶3-4, 36-

---

[2]    The "Complaint" is the Amended Class Action Complaint (ECF 49). All "¶_" or "¶¶_" references herein are to the Complaint.

4894-7602-2836.v1

47, 164, 200.  To reassure investors that such revenue growth could continue, Defendants also falsely overstated their "total addressable market," or "TAM," which they used to describe the size of the market for Flexitouch.  ¶¶58-66, 134, 141, 149, 154, 156, 163, 171, 179, 185, 190.

As a result of Defendants' fraud, Tactile's common stock traded at an inflated share price from May 7, 2018 through June 8, 2020, inclusive (the "Class Period").  ¶¶210-211. Lead Plaintiff and other investors who purchased or acquired Tactile common stock during the Class Period were damaged when the truth regarding Defendants' fraud was revealed through two partial disclosures.  ¶¶212, 215, 217-218.

The first partial disclosure of Defendants' fraud came when an amended complaint filed in a *qui tam* action against Tactile, *United States ex rel. Veterans First Med. Supply LLC, ex rel. v. Tactile Med. Sys. Tech., Inc.*, No. 4:18-cv-02871 (ECF 15) (S.D. Tex.), was unsealed after market hours on March 20, 2019.  ¶¶101, 213.  Although Defendants had previously disclosed the existence of a *qui tam* lawsuit against Tactile, no details of the suit were publicly known and Defendants had insisted that the lawsuit was "without merit." ¶¶93-94, 213.  Once unsealed, however, analysts could read the *qui tam* complaint and wrote reports disclosing specifics on the allegations to the market.  ¶¶102, 213.  These allegations included detailed claims regarding Tactile's kickback schemes – specifically, that Tactile:

> (i)      paid doctors to speak at "Key Opinion Leader" events where speakers and attendees were often treated to cocktails and expensive meals to induce Flexitouch prescriptions; and
>
> (ii)     hired therapists and other medical facility employees as contract trainers to train patients on the Flexitouch system for $150 per training, and that Tactile made

4894-7602-2836.v1

such payments and future assignments to induce the therapists to influence their full-time employers to prescribe Flexitouch.

¶¶37, 39-44, 101.

Thus, on March 22, 2019, before the market opened, Northland Capital Markets released a report entitled: "Unsealed *qui tam* raises questions. . . ." and noted that the *qui tam* complaint "makes a whole host of allegations against Tactile." ¶¶102, 214. The report laid bare key details from the allegations and commented that: "Suffice it to say, there will be a tug of war for some time moving forward." *Id.* Also on March 22, 2019 and before market hours, Guggenheim issued a report providing its analysis of the *qui tam* allegations. *Id.*

As a result of these disclosures, the price of Tactile's common stock fell 7.5%, from $60.10 per share at its close on March 20, 2019 to $55.57 per share at its close on March 22, 2019. ¶215.

Nevertheless, Defendants continued to publicly emphasize that the *qui tam* suit was "without merit," which maintained the artificial inflation in Tactile's share price, while Defendants continued to report on Tactile's robust revenue growth and addressable market. ¶¶6, 104, 108, 172.

Then, on June 8, 2020, the last day of the Class Period, the second disclosure fully revealing Defendants' fraud came when *Seeking Alpha* published a report entitled: "Strong Sell on Tactile Systems: Bloated Stock Needs Compression Therapy," written by OSS Research. ¶216. In its findings, the *Seeking Alpha* report addressed "the likely true source of Tactile's growth: a kickback arrangement, we believe, is resulting in rampant over-prescribing. Payers including the VA [U.S. Department of Veteran Affairs], are cracking

- 4 -

down and cutting reimbursement to Tactile." Price Decl., Ex. 1 at 1.[3] Moreover, it disclosed that Tactile's TAM was a fraction of the size that Tactile had publicly reported. *Id.*; ¶217.

On this news, Tactile's share price fell 12.8% from the prior trading day's high of $54.21 per share to close at $47.26 per share. *Id.*

Like the other investors who purchased or acquired Tactile shares at artificially inflated prices during the Class Period, Lead Plaintiff suffered an economic loss, *i.e.*, damages, when Tactile's stock price declined following these disclosures. ¶218. In fact, St. Clair, when moving to represent other Tactile shareholders as Lead Plaintiff in this litigation, submitted that its Class Period losses were $65,199.57. ECF 25-3. Based on these losses, the Court found that "[n]o other putative class member claims a larger financial interest" than St. Clair, and appointed St. Clair as Lead Plaintiff. ECF 36 at 3, 6.

After Lead Plaintiff filed the Complaint, Defendants moved to dismiss. *See* ECF 65. The Court largely denied the motion, and discovery followed thereafter. *See* ECF 81.

To prepare the Joint Report Pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule 26.1 (the "Rule 26(f) Report"), the parties met and conferred to discuss various aspects of discovery and case scheduling. *See* ECF 86. Before submission of the Rule 26(f) Report, the parties exchanged drafts and had the opportunity to raise issues concerning the sequencing and scheduling of various aspects of the litigation, including the close of fact discovery and when expert discovery would take place. *Id.* at 4, 6-7. The parties agreed that

---

[3]    All "Price Decl., Ex. __" citations herein are to the Declaration of Ashley M. Price in Support of Lead Plaintiff's Response in Opposition to Defendants' Motion to Compel Discovery.

4894-7602-2836.v1

opening expert reports would be served on or before January 19, 2023, rebuttal expert reports would be served on or before February 16, 2023, and expert discovery would be completed by March 31, 2023.  *Id.* at 6-7.  Moreover, as called for in the model Rule 26(f) Report and Proposed Scheduling Order Form (available at https://www.mnd.uscourts.gov/forms/rule-26f-report-proposed-sched-order-non-patent; *see also* LR 26.1.(2)), Lead Plaintiff specifically identified the experts it anticipated calling, including an expert in the field of "market efficiency, loss causation, and damages."  ECF 86 at 6.

Based on the parties' submission of their Rule 26(f) Report, the Court entered a Pretrial Scheduling Order setting, among other items, the parties agreed-to dates for expert disclosures.  ECF 90 at 5-6; *see also* First Amended Pretrial Scheduling Order (ECF 110) (the "Scheduling Order") at 5-6.

As part of their discovery, Defendants served Interrogatories to the Lead Plaintiff (Set I) and Requests for Production of Documents by Lead Plaintiff (Set I), both of which included requests concerning damages.  *See* Kilby Decl., Exs. D-E (Lead Plaintiff's responses thereto).[4]  Specifically, Defendants' Interrogatory No. 1 sought information regarding Lead Plaintiff's damages calculations, including "how each item of damages is to be computed" and "the amount of . . . damages by item."  Kilby Decl., Ex. D at 5.  Likewise, Defendants' Request for Production No. 14 sought "[a]ll documents that constitute, explain, describe or in any way refer or relate to the damages or other relief" sought in the action,

---

[4]   All "Kilby Decl., Ex. __ " citations herein refer to the exhibits attached to the Declaration of Matthew Kilby in Support of Defendants' Motion to Compel Discovery (ECF 117).

4894-7602-2836.v1

including all documents describing the "method of calculating your alleged damages." Kilby Decl., Ex. E at 20.

On May 4, 2022, Lead Plaintiff timely served its Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A) (the "Initial Disclosures"). Kilby Decl., Ex. C. Lead Plaintiff's Initial Disclosures informed Defendants that the "calculation of damages in this action requires expert testimony and discovery" and that Lead Plaintiff would provide the expert opinion on damages "at the time set forth in the operative scheduling order." *Id.* at 12.

On May 31, 2022, Lead Plaintiff timely served its responses and objections to Defendants' discovery requests. Kilby Decl., Exs. D-E. For each of Defendants' requests concerning damages, Lead Plaintiff objected that, among other issues, the requests prematurely sought expert testimony or opinions, which are not required to be disclosed until January 19, 2023. Kilby Decl., Ex. D at 5-6; Kilby Decl., Ex. E at 20-21; *see also* ECF 90 at 5-6; Scheduling Order at 5-6. Lead Plaintiff also objected to the requests for seeking documents or information protected by privilege, including the work-product doctrine. Kilby Decl., Ex. D at 5-6; Kilby Decl., Ex. E at 20-21. Lead Plaintiff further objected to the requests as seeking contention discovery that is premature at this stage of the litigation. *Id.* Lead Plaintiff responded, however, that information concerning damages would be disclosed on or before January 19, 2023, the date when Lead Plaintiff's expert disclosures are due, including that of Lead Plaintiff's expert on "market efficiency, loss causation, and damages." *Id.*; ECF 90 at 5; Scheduling Order at 5.

4894-7602-2836.v1

The parties conferred on Lead Plaintiff's responses, and on July 25, 2022, Lead Plaintiff wrote a letter to Defendants explaining why information on damages in a securities fraud class action is premature before expert discovery. Kilby Decl., Ex. B. Specifically, Lead Plaintiff detailed that Defendants' discovery requests would likely require "an event study to assess any statistically significant movements in Tactile's stock price, and a quantification of such price movements caused by Tactile-specific news. That quantification generally allows an expert to determine the per-share artificial inflation in Tactile's stock caused by Defendants' fraud." *Id.*

On August 1, 2022, Lead Plaintiff substantially completed its production of documents pursuant to Defendants' requests based on the scope and search parameters to which the parties had agreed. Included in Lead Plaintiff's production were documents detailing Lead Plaintiff's purchases and sales of Tactile common stock, as well as its losses on its Tactile investment during the Class Period.

Lead Plaintiff received no response to its July 25 letter – not a request for further written explanation, case law, or a meet-and-confer discussion. Then, on August 30, 2022 – notably after Lead Plaintiff stated its intention to move to compel on the various deficiencies in Defendants' production – Defendants informed Lead Plaintiff that they intended to move to compel with respect to Defendants' Interrogatory No. 1 and Request for Production No. 14. Price Decl., Ex. 2 at 1. Defendants filed the instant Motion, which should be denied in its entirety for the reasons stated below.

4894-7602-2836.v1

## III.   ARGUMENT

### A.   Legal Standard

Federal Rule of Civil Procedure 26 ("Rule 26") broadly permits discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Rule 26's breadth, however, is limited by its own provision.  For instance, to protect attorney work-product, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).

Likewise protected from disclosure are communications (with certain enumerated exceptions) between a party and an expert witness required to provide a report under Rule 26(a)(2)(B).  Fed. R. Civ. P. 26(b)(4)(C).  Moreover, the Federal Rules of Civil Procedure ordinarily bar discovery of "facts known or opinions held by an expert who has been retained . . . in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  Fed. R. Civ. P. 26(b)(4)(D).

### B.   The Standard Method to Calculate Damages in a Securities Fraud Class Action Requires Expert Analysis

The "standard approach used for calculating damages in Section 10(b) securities cases" measures damages as the "'artificial inflation per share at the time of purchase less the artificial inflation at the time of sale (or, if the share is not sold before full revelation of the fraud, the artificial inflation at the time of purchase, subject to the [Private Securities Litigation Reform Act's] "90-day lookback" provision.'"  *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *17 (N.D. Cal. Dec. 22, 2016).  This "accepted method for

- 9 -

4894-7602-2836.v1

calculating damages in securities fraud class actions" is known as "the event study/out of pocket method." *Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1129 & n.20 (C.D. Cal. 2018) (collecting cases).[5]

Under this method, "'standard operating procedure in federal securities litigation'" consists of calling on an expert to "perform[] an event study to determine whether, and the extent to which, [a defendant's] stock price was artificially high (*i.e.*, inflated) during the Class Period." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 253 (2d Cir. 2016); *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1313 (11th Cir. 2011) (an event study "'is a statistical regression analysis'" that is "'used routinely'" "'to determine whether the release of particular information has a significant effect on a company's stock price'"); *Smilovits v. First Solar, Inc.*, 2019 WL 7282026, at *5 (D. Ariz. Dec. 27, 2019) ("[e]vent studies are widely accepted" for assessing the artificial inflation caused by defendant's fraud and determining "that corrective disclosures caused stock price declines resulting in investor losses"). The event study is used to "'disentangle[s] the effects of two types of information on stock prices – information that is specific to the firm under question . . . and information that is likely to affect stock prices marketwide.'" *Vivendi*, 838 F.3d at 253. With an event study, an expert can assess "whether, and the extent to which, the release of certain information caused a stock price to fall." *Id.* "This, in turn, allows an expert to make inferences about the degree to which the company's stock price may have been artificially

---

[5]  Damages arising from the upheld §20A claim against individual defendant Bryan Rishe is a simple matter of following the statute: "The total amount of damages . . . shall not exceed the profit gained . . . in the transaction or transactions that are the subject of the violation." 15 U.S.C. §78t-1(b)(1); *see also* ¶234.

inflated on the basis of the market's misconception as to the truth prior to the release of that information." *Id.* at 253-54.

Undertaking such an analysis falls squarely in the realm of an expert. As another court concluded when considering a motion to compel similar to Defendants' Motion here: "damages in securities fraud cases are generally an issue addressed by experts." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2004 WL 2108410, at *1 (N.D. Ill. Sept. 21, 2004). In that case, defendants moved to compel plaintiffs "to provide the amount of their claimed damages, a computation on which their damages claims are based, and all evidence on which their damages claim is based," or else be precluded from addressing damages in future briefing on class certification. *Id.* at *1. But the court found that defendants' position was "overreaching" and held that it was "unreasonable" to compel discovery on a damages formula "in a securities fraud action where expert analysis is undoubtedly necessary." *Id.* at *2. It further noted that "[d]efendants have received the basic information – they know plaintiffs' general theory of damages (and likely should have known the theory without a written submission) and have documents demonstrating plaintiffs' purchases and sales of the [defendant's] securities." *Id.* Finally, the court held that any preliminary damages calculations possessed by plaintiff were the calculations of non-testifying experts, and thus were protected from disclosure under Rule 26(b)(4)(D). *Id.*

No different result should be found here. As in *Household*, this case is a securities fraud class action where damages will require expert analysis. As negotiated by the parties, Lead Plaintiff's expert opinions on loss causation and damages will be disclosed on January 19, 2023. *See* ECF 86 at 6; Scheduling Order at 5. Thereafter, Defendants will have the

- 11 -

opportunity to depose Lead Plaintiff's expert about the findings and calculations in his or her expert report. And as discussed further below, to the extent Lead Plaintiff has preliminary damages calculations, they are work product or "calculations of non-testifying experts," and not discoverable. *Household*, 2004 WL 2108410, at *2.

Moreover, Defendants already "have received the basic information" (*id.*), including: (i) Lead Plaintiff's submission of its Class Period losses (ECF 25-3); (ii) detailed allegations in the Complaint regarding the disclosures that revealed Defendants' fraud and caused Tactile stock to drop as the artificial inflation was released, resulting in losses to Tactile shareholders (¶¶101-103, 116, 121-122, 210-218); (iii) documents from Lead Plaintiff's production identifying purchases and sales of Tactile stock, and evidencing Lead Plaintiff's Class Period losses; and (iv) a general description of the damages methodology Lead Plaintiff anticipates its expert will use, consistent with the case law on event study methodology (Kilby Decl., Ex. B; *see, e.g.*, *Vivendi*, 838 F.3d at 253; *Intuitive Surgical*, 2016 WL 7425926, at *17).[6]

Despite receiving this information, Defendants nevertheless contend that they "will be severely prejudiced if they are unable to conduct any fact discovery regarding Plaintiff's

---

[6]  Defendants' assertion that there is "no basis" to think that Lead Plaintiff suffered a loss disregards the evidence, including St. Clair's submissions when moving to be appointed Lead Plaintiff. Mem. at 5; ECF 24-25. Defendants further appear to misunderstand that the losses were caused when news of the fraud was disclosed; securities fraud damages are not calculated based on what "would eventually harm shareholders." *See* Mem. at 5.

- 12 -

damages theory." Mem. at 10.[7]  Yet, Defendants fail to articulate what further fact discovery would be required given that Lead Plaintiff has plainly stated its damages will be determined by an expert at the appropriate time.   Moreover, the Scheduling Order provides an opportunity for Defendants to submit a rebuttal expert report and conduct expert discovery to test the conclusions of Lead Plaintiff's damages expert.  Scheduling Order at 5.  Thus, like defendants' motion in *Household*, which provides persuasive authority regarding discovery on §10(b) damages, Defendants' Motion seeks premature expert analysis and opinion, and should accordingly be denied.

Defendants' authority, by contrast, provides no basis to depart from the "'standard operating procedure in federal securities litigation.'"  *Vivendi*, 838 F.3d at 253.   In fact, Defendants did not support their argument with one single opinion in which a motion to compel a plaintiff's damages analysis prior to expert disclosures was granted in a securities fraud class action.  *See* Mem. at 8-11.  The only case Defendants cited involving securities fraud violations is *King v. E.F. Hutton & Co., Inc.*, 117 F.R.D. 2 (D.D.C. 1987), but it is readily distinguishable because, unlike here, the damages sought in that case were not based on the artificial inflation in the stock price.  *See* Mem. at 8-9.  There, plaintiffs alleged that

---

[7]   Defendants' complaint that Lead Plaintiff's failure to provide a damages amount results in an inability to assess the proportionality of Lead Plaintiff's discovery requests is overwrought.  Mem. at 11 n.2.  Defendants' fraud transpired for nearly two years, and each partial disclosure resulted in a significant decline in Tactile stock price, harming hundreds, if not thousands, of investors.  ¶¶215, 217, 282.  Thus, and as further explained in Lead Plaintiff's own motion to compel, ECF 124, proportionality is well-satisfied.

Defendants' suggestion that they will be "hamstrung" at a scheduled mediation is equally unfounded (Mem. at 11 n.2), as any settlement discussions regarding the parties' views on liability and damages will operate under a mediator's privilege, and need not require formal discovery.

4894-7602-2836.v1

defendants had engaged in excessive trading, or churning, of their trust account to illegally generate brokerage commissions. *King*, 117 F.R.D. at 3. The court there explained that defendants sought "information personal to the plaintiffs themselves as to what dates each of them became aware of each loss, including how they concluded it was a loss and that it was due to the wrongful conduct of their stockbroker." *Id.* at 6. Such information could not be gained by the "testimony of an expert on how the claimed losses have been calculated," but rather went to determining the "state of mind factor," as the court put it, regarding the level of plaintiffs' sophistication and plaintiffs' understanding of whether the accounts were "discretionary" or "nondiscretionary." Such individualized, "state of mind" information is far from being at issue in determining classwide damages based on artificial inflation in the share price, as required in this case. *See, e.g.*, *Vivendi*, 838 F.3d at 253; *see also Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988) ("where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed"). Moreover, as opposed to the *King* plaintiffs, who had not substantiated "some factual basis for concluding they had sustained losses at the time the complaint was filed," (*King*, 117 F.R.D. at 5), St. Clair did indicate its losses when moving for appointment as Lead Plaintiff and has provided to Defendants documents detailing its purchases and sales of Tactile common stock, as well as its losses on its Tactile investment during the Class Period. *See* ECF 24, 25-3.

None of the other cases Defendants cite are instructive regarding the question of when information concerning §10(b) damages, which requires determination by an expert, should take place, particularly given the operative Scheduling Order. Mem. at 9; Scheduling Order

- 14 -

4894-7602-2836.v1

at 5. And none of them come close to supporting Defendants' "overreaching" suggestion that damages evidence should be barred from presentation at trial if not provided in fact discovery. *See* Mem. at 9; *c.f. Household*, 2004 WL 2108410, at *2. For example, in *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, a case concerning petroleum contamination, the plaintiff decided "well after the trial court's deadline for submitting expert witness affidavits," that it would "switch the basis for its alleged damages," resulting in the court's exclusion of that expert evidence. 53 F.3d 186, 189-190 (8th Cir. 1995). Likewise, in *First Health Grp. Corp. v. United Payors & United Providers, Inc.*, the court excluded plaintiff's damages claims when plaintiff defied a court order and delayed nearly four months following the court's deadline to supplement its response to a contention interrogatory on the damages claimed, at which point it added three significant additional damages claims that would have required, according to defendants' conservative estimate, 17 additional depositions. 1999 WL 515499, at *1 (N.D. Ill. July 12, 1999). And in *Zenith Elects. Corp. v. WH-TV Broadcasting Corp.*, a breach of contract case involving outdated cable boxes, a plaintiff chose to pursue a damages theory based on an expert's opinions of lost profits stemming from the cable boxes that defendants failed to provide, instead of a theory based on the losses from the defective cable boxes that defendants did provide. 395 F.3d 416, 418 (7th Cir. 2005). Thus, plaintiff there did not respond to a contention interrogatory on the latter theory, so when its expert was excluded, plaintiff was left with no evidence of damages. *Id.* at 418-19. Notably, unlike here, the parties in *Zenith* had engaged in expert discovery and briefed summary judgment when the court made its ruling to exclude expert evidence. *Id.* at 418. Finally, *Cook v. Rockwell Int'l Corp.* did not involve damages

- 15 -

at all, but the identification of hazardous substances that plaintiffs argued caused harm in a

reconstruction project.  161 F.R.D. 103, 105 (D. Colo. 1995).

None of these cases cited by Defendants provide any justification for ignoring the

Scheduling Order entered in this case and compelling Lead Plaintiff to respond to discovery

requests on damages that require expert analysis and opinion.[8]  Importantly, Defendants'

cases were at different procedural postures from this case, and none involved securities fraud

damages under §10(b) of the Exchange Act.  Having ignored the standard operating

procedure for providing evidence of securities fraud damages, as well as the agreed-to

schedule for expert disclosures in this case, Defendants' Motion should be denied.

### C.    The Federal Rules Protect Preliminary Damages Estimates from Disclosure

The Federal Rules of Civil Procedure provide that attorney work-product, most

communications with a testifying expert, and opinions held by experts who are not expected

be called to testify, are generally protected from disclosure. Fed. R. Civ. P. 26(b)(3)(A),

(4)(C)-(D); *see also* Notes of Advisory Committee on 1993 Amendment (the obligation to

disclose the calculation of damages in the initial disclosures "applies only with respect to

---

[8]    Defendants' assertion that Interrogatory No. 1 – which Defendants do not dispute is a contention interrogatory – should nevertheless be answered merely because Defendants have made their document production, likewise fails because the Interrogatory requires expert opinion that is premature at this time.  Mem. at 10.  Nor does Defendants' case, *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, 230 F.R.D. 538 (N.D. Ill. 2005), aid their argument.  There, the court considered whether to grant plaintiff's motion to compel defendants' damages theories.  *Id.* at 540.  The court noted that the parties "had a right to expect" that once discovery deadlines were set, they would be honored."  *Id.* at 545.  Thus, defendant "was entitled to rely on the discovery schedule and assume it would not have to craft a damages theory until expert discovery."  *Id.*

documents then reasonably available to [the party] and not privileged or protected as work product").

These rules are directly applicable here. Any damage estimate that Lead Plaintiff possesses is preliminary, was not calculated using event study regression analysis, and was formed either in consultation with Lead Plaintiff's in-house damages consultant or an outside consulting expert for the purpose of advising its client and assessing case strategy in anticipation of litigation and trial. Lead Plaintiff has not yet decided who its testifying expert will be for market efficiency, loss causation, and damages, and that disclosure need not take place until January 19, 2023. Thus, under these circumstances, courts deny motions to compel preliminary damages estimates. *See, e.g.*, *Household*, 2004 WL 2108410, at *2 ("To the extent plaintiffs have preliminary damages calculations, those are the calculations of non-testifying experts, and thus need not be disclosed under Rule 26(b)(4) of the Federal Rules of Civil Procedure."); *Crouse Cartage Co. v. Nat'l Warehouse Inv. Co.*, 2003 WL 23142182, at *3 (S.D. Ind. Jan. 13, 2003) (denying motion to compel initial disclosure responses regarding a real estate broker's rough market analysis for damages because it was afforded the protection of a non-testifying expert under Rule 26(b)(4)(B)); *see also Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 591 (2016) (finding that an expert's preliminary analysis is "work product whether viewed as a 'preliminary expert opinion' or as a communication from expert to counsel reflecting their joint effort to develop strategy").

For example, in *Spring Lake Prok, LLC v. Great Plains Mgmt., LLC*, plaintiff moved to compel discovery on the damages of defendant's counterclaim. 2021 WL 3051902, at *3 (E.D. Mo. Jul. 20, 2021). As the court there explained, defendant had not refused to disclose

- 17 -

the information sought, but was "waiting to do so until its damages expert has formulated an opinion." *Id.* Crediting defendant's argument that defendant did "not know on what documents [its] expert will rely and that a premature response threatens the disclosure of protected work product and mental impressions relating to counsel's preliminary damages calculations," the court denied plaintiff's motion. *Id.* As is Lead Plaintiff's position here, the court in *Spring Lake* found that defendant was "not withholding the amount or calculation of damages, it merely assert[ed] that because the calculation requires an expert opinion, the information will be produced at the expert report deadline." *Id.*

Thus, at this stage of the litigation, any information regarding damages are preliminary and protected from disclosure because they are Lead Plaintiff's counsel's work-product and formed in consultation with counsel's in-house damages consultant or its consulting expert. Moreover, Defendants have not even attempted to establish that they "cannot, without undue hardship, obtain" their own estimate of damages – which they could do by analyzing the alleged stock drops and conducting their own event study analysis. Fed. R. Civ. P. 26(b)(3)(A)(ii). Having offered no reasonable justification to compel Lead Plaintiff's disclosure of its work product, Defendants' Motion must be denied.

- 18 -

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

DATED:  September 21, 2022

ROBBINS GELLER RUDMAN
   & DOWD LLP
JESSICA T. SHINNEFIELD
(admitted *pro hac vice*)
ASHLEY M. PRICE
(admitted *pro hac vice*)
NICOLE Q. GILLILAND
(admitted *pro hac vice*)
JOSEPH J. TULL
(admitted *pro hac vice*)


                    s/ Ashley M. Price
                  ASHLEY M. PRICE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jshinnefield@rgrdlaw.com
aprice@rgrdlaw.com
ngilliland@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD &
   TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiff

- 19 -

4894-7602-2836.v1

ZIMMERMAN REED LLP
CAROLYN G. ANDERSON, MN 275712
JUNE P. HOIDAL, MN 033330X
BEHDAD C. SADEGHI, MN 393374
1100 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
Telephone:  612/341-0400
612/341-0844 (fax)
Carolyn.Anderson@zimmreed.com
June.Hoidal@zimmreed.com
Behdad.Sadeghi@zimmreed.com

Local Counsel

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
(admitted *pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com

Counsel for Plaintiff Brian Mart

- 20 -

4894-7602-2836.v1

# Mailing Information for a Case 0:20-cv-02074-NEB-DTS Mart et al v. Tactile Systems Technology, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Carolyn G Anderson**
  carolyn.anderson@zimmreed.com,karen.colt@zimmreed.com

- **Rory Collins**
  rory.collins@faegredrinker.com,katie.daubenmeyer@faegredrinker.com

- **Nicole Quaid Gilliland**
  ngilliland@rgrdlaw.com

- **Lucas Gilmore**
  lucasg@hbsslaw.com,sf_filings@hbsslaw.com

- **Daniel E Gustafson**
  dgustafson@gustafsongluek.com,mmorgan@gustafsongluek.com

- **Daniel C Hedlund**
  dhedlund@gustafsongluek.com

- **June Pineda Hoidal**
  june.hoidal@zimmreed.com,julianne.vannorman@zimmreed.com

- **Matthew B Kilby**
  matthew.kilby@faegredrinker.com,terrilyn.storlien@faegredrinker.com

- **Ashley M Price**
  aprice@rgrdlaw.com,CReis@ecf.courtdrive.com,e_file_SD@rgrdlaw.com,creis@rgrdlaw.com

- **Behdad C Sadeghi**
  behdad.sadeghi@zimmreed.com,leslie.harms@zimmreed.com

- **Jessica Shinnefield**
  jshinnefield@rgrdlaw.com,e_file_SD@rgrdlaw.com,JShinnefield@ecf.courtdrive.com,mwaligurski@rgrdlaw.com

- **Anderson Tuggle**
  anderson.tuggle@faegredrinker.com,mimi.dilorenzo@faegredrinker.com

- **Joseph J. Tull**
  jtull@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)