UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN MART, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     vs.<br><br>TACTILE SYSTEMS TECHNOLOGY, INC., et al.,<br><br>               Defendants. | Civ. No. 0:20-cv-02074-NEB-DTS<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................... 1

II. LITIGATION HISTORY ......................................................................... 3

III. SETTLEMENT NEGOTIATIONS ............................................................ 5

IV. PROPOSED SETTLEMENT TERMS ....................................................... 6

V. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..................... 7

    A. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ................................................................................................ 10

    B. The Settlement Is the Product of Informed, Arm's-Length Negotiations ........................................................................................ 11

    C. The Proposed Relief Is Adequate ....................................................... 12

        1. The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Further Litigation, Support Preliminary Approval ...................................................... 12

        2. The Remaining Considerations Under Rule 23(e)(2)(C) Support Settlement Approval .......................................... 18

    D. The Settlement Treats All Class Members Equitably .............................. 20

VI. CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE ................................................................................... 21

    A. Rule 23(a)'s Requirements Are Met ................................................... 22

        1. Numerosity Is Satisfied .......................................................... 22

        2. Commonality Is Satisfied ....................................................... 23

        3. Typicality Is Satisfied ............................................................ 24

        4. Adequacy Is Satisfied ............................................................ 24

    B. Rule 23(b)(3)'s Requirements Are Met ............................................... 26

        1. Common Legal and Factual Questions Predominate ................... 26

        2. A Class Action Is Superior to Other Methods of Adjudication ....... 27

4885-1974-2283.v2

**Page**

VII.    THE PROPOSED NOTICE SHOULD BE APPROVED ................................... 28

VIII.   THE PROPOSED SETTLEMENT SCHEDULE ................................................ 29

IX.     CONCLUSION ........................................................................................ 30

4885-1974-2283.v2

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods. v. Windsor,*
  521 U.S. 591 (1997) .................................................................................22, 26

*Amgen v. Conn. Ret. Plans & Tr. Funds,*
  568 U.S. 455 (2013) ....................................................................................... 27

*Anixter v. Home-Stake Prod. Co.,*
  77 F.3d 1215 (10th Cir. 1996) ....................................................................... 16

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.,*
  No. 0:14-cv-00786-ADM-TNL, 2017 WL 2574005
  (D. Minn. June 14, 2017) .........................................................8, 16, 17, 18

*Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.,*
  No. 14-786 ADM-TNL, 2016 WL 4098741
  (D. Minn. July 28, 2016) ............................................................................... 22

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
  603 F.2d 263 (2d Cir. 1979) .......................................................................... 16

*Campbell v. Transgenomic, Inc.,*
  No. 4:17-cv-3021, 2019 WL 3003920
  (D. Neb. July 10, 2019) ................................................................................. 29

*Campbell v. Transgenomic, Inc.,*
  No. 4:17-cv-3021, 2020 WL 2946989
  (D. Neb. June 3, 2020) .................................................................................. 20

*Carlson v. C.H. Robinson Worldwide, Inc.,*
  No. 02-3780-JNE-JJG, 2006 WL 2671105
  (D. Minn. Sept. 18, 2006)............................................................................. 19

*Cheng Jiangchen v. Rentech, Inc.,*
  No. 17-1490-GW(FFMx), 2019 WL 5173771
  (C.D. Cal. Oct. 10, 2019)............................................................................. 20

*City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.,*
  No. 5:12-cv-5162, 2016 WL 5400373
  (W.D. Ark. Sept. 20, 2016).......................................................................22, 23

**Page**

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132-CM-GWG, 2014 WL 1883494
  (S.D.N.Y. May 9, 2014), *aff'd sub nom.*
  *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ............................................... 13

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ........................................................................ 15

*DeBruycker v. PM Beef Holdings, LLC*,
  No. CV-02-3925-MJD-JGL, 2005 WL 681298
  (D. Minn. Mar. 2, 2005) ............................................................................................. 16

*Einhorn v. Axogen, Inc.*,
  42 F.4th 1218 (11th Cir. 2022) ................................................................................... 14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) .................................................................................................... 27

*Första AP-Fonden v. St. Jude Med., Inc.*,
  312 F.R.D. 511 (D. Minn. 2015) ........................................................................... 22, 24

*Fosbre v. Las Vegas Sands Corp.*,
  No. 2:10-cv-00765-APG-GWF, 2017 WL 55878 (D. Nev. Jan. 3, 2017),
  *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las
  Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018) ............................................... 13

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ...................................................................................... 16

*Huyer v. Buckley*,
  849 F.3d 395 (8th Cir. 2017) ...................................................................................... 17

*Huyer v. Wells Fargo & Co.*,
  314 F.R.D. 621 (S.D. Iowa 2016), *aff'd sub nom.*
  *Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017) .......................................................... 17

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
  No. 17-2795-MJD-KMM, 2020 WL 7133805
  (D. Minn. Dec. 4, 2020) .......................................................................................*passim*

4885-1974-2283.v2

**Page**

*In re CenturyLink Sales Pracs. & Sec. Litig.,*
337 F.R.D. 193 (D. Minn. 2020) ......................................................................... 23

*In re CenturyLink Sales Pracs. & Sec. Litig.,*
No. 17-2795-MJD-KMM, 2021 WL 3080960
(D. Minn. July 21, 2021) ................................................................................... 19

*In re E.W. Blanch Holdings, Inc. Sec. Litig.,*
No. 01-258-JNE-JGL, 2003 WL 23335319
(D. Minn. June 16, 2003) .................................................................................. 29

*In re Genworth Fin. Sec. Litig.,*
210 F. Supp. 3d 837
(E.D. Va. 2016) ......................................................................................... 13, 15

*In re Oracle Corp. Sec. Litig.,*
627 F.3d 376 (9th Cir. 2010) ............................................................................ 13

*In re Resideo Techs., Inc., Sec. Litig.,*
No. 19-cv-2863-WMW-BRT, 2022 WL 872909
(D. Minn. Mar. 24, 2022) ............................................................................ 11, 19

*In re Retek Inc. Sec. Litig.,*
236 F.R.D. 431 (D. Minn. 2006) ....................................................................... 25

*In re Retek Inc. Sec. Litig.,*
621 F. Supp. 2d 690 (D. Minn. 2009) ................................................................ 13

*In re St. Jude Med., Inc.,*
425 F.3d 1116 (8th Cir. 2005) .......................................................................... 21

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.,*
716 F.3d 1057 (8th Cir. 2013) ........................................................................ 7, 17

*In re Vivendi Universal, S.A. Sec. Litig.,*
765 F. Supp. 2d 512 (S.D.N.Y. 2011) ............................................................... 16

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,*
364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................ 19

- v -

**Page**

*In re Zurn Pex Plumbing Prods. Liab. Litig.,*
No. 08-MDL-1958-ADM-AJB, 2013 WL 716088
(D. Minn. Feb. 27, 2013) ................................................................... 23

*In re Zurn Pex Plumbing Prods. Liab. Litig.,*
267 F.R.D. 549 (D. Minn. 2010), *aff'd,*
644 F.3d 604 (8th Cir. 2011) ............................................................. 24

*Mart v. Tactile Sys. Tech., Inc.,*
595 F. Supp. 3d 788 (D. Minn. 2022) .................................................. 4

*Martin v. Cargill, Inc.,*
295 F.R.D. 380 (D. Minn. 2013) ......................................................... 8

*Peace Officers Annuity & Benefit Fund of Ga. v. DaVita Inc.,*
No. 17-cv-0304-WJM-NRN, 2021 WL 1387110
(D. Colo. Apr. 13, 2021) ................................................................... 20

*Phillips v. Caliber Home Loans, Inc.,*
No. 19-cv-2711-WMW-LIB, 2021 WL 3030648
(D. Minn. July 19, 2021) ............................................... 8, 11, 12, 17

*Plymouth Cnty. Ret. Sys. v. Patterson Cos.,*
No. 0:18-cv-00871-MJD-HB, 2022 WL 2111237
(D. Minn. June 10, 2022) .................................................................. 20

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.,*
No. 0:18-cv-00871-MJD-HB, 2022 WL 2093054
(D. Minn. June 10, 2022) .................................................................. 19

*Plymouth Cty. Ret. Sys. v. Patterson Cos.,*
No. 18-871-MJD-HB, 2020 U.S. Dist. LEXIS 177505
(D. Minn. Sep. 28, 2020) ............................................................*passim*

*Portz v. St. Cloud State Univ.,*
297 F. Supp. 3d 929 (D. Minn. 2018) ................................................ 23

*Ray v. Lundstrom,*
Nos. 8:10 CV 199, 4:10 CV 3177, 8:10 CV 332, 2012 WL 5458425
(D. Neb. Nov. 8, 2012) ...................................................................... 19

4885-1974-2283.v2

**Page**

*Robbins v. Koger Props., Inc.,*
116 F.3d 1441 (11th Cir. 1997) ............................................................ 16

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,*
821 F.3d 992 (8th Cir. 2016) ............................................................ 26

*Smith v. Questar Cap. Corp.,*
No. 12-cv-02669-SRN-TNL, 2015 WL 9860201
(D. Minn. Sept. 11, 2015) ............................................................ 11

*Strathclyde Pension Fund v. Bank OZK,*
No. 4:18-cv-793-DPM, 2021 U.S. Dist. LEXIS 248369
(E.D. Ark. Dec. 30, 2021) ............................................................ 22, 28

*Strathclyde Pension Fund v. Bank OZK,*
No. 4:18-cv-793-DPM, 2022 WL 6325251
(E.D. Ark. Sept. 23, 2022) ............................................................ 20

*Thorpe v. Walter Inv. Mgmt. Corp.,*
No. 1:14-cv-20880-UU, 2016 WL 10518902
(S.D. Fla. Oct. 17, 2016) ............................................................ 17

*Todd v. STAAR Surgical Co.,*
No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183
(C.D. Cal. Oct. 24, 2017) ............................................................ 12

*United States ex rel. Fesenmaier v. The Cameron-Ehlen Grp., Inc.,*
No. 13-cv-3003-WMW-DTS, 2021 WL 101193
(D. Minn. Jan. 12, 2021) ............................................................ 15

*United States v. Teva Pharms. USA, Inc.,*
No. 13-civ-3702-CM, 2019 WL 1245656
(S.D.N.Y. Feb. 27, 2019) ............................................................ 15

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.,*
325 F.R.D. 280 (D. Minn. 2018) ............................................................ *passim*

*Whiteley v. Zynerba Pharm., Inc.,*
No. 19-4959, 2021 U.S. Dist. LEXIS 176101
(E.D. Pa. Sep. 16, 2021) ............................................................ 11

4885-1974-2283.v2

**Page**

*Yarrington v. Solvay Pharms., Inc.,*
   697 F. Supp. 2d 1057 (D. Minn. 2010) ...................................................... 19

*Yarrington v. Solvay Pharms., Inc.,*
   No. 09-CV-2261-RHK-RLE, 2010 WL 11453553
   (D. Minn. Mar. 16, 2010) ....................................................................11, 17

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(7) ............................................................................................. 29


Federal Rules of Civil Procedure
   Rule 23.................................................................................................*passim*
   Rule 23(a) ............................................................................................21, 22
   Rule 23(a)(1).............................................................................................. 22
   Rule 23(a)(2).............................................................................................. 23
   Rule 23(a)(3).............................................................................................. 24
   Rule 23(a)(4).............................................................................................. 24
   Rule 23(b) .................................................................................................. 22
   Rule 23(b)(3).......................................................................................21, 26, 27
   Rule 23(c)(2)(B)......................................................................................... 28
   Rule 23(e) ................................................................................................ 8, 9
   Rule 23(e)(1)(B).................................................................................8, 21, 28
   Rule 23(e)(2) ........................................................................................... 8, 9
   Rule 23(e)(2)(C)......................................................................................... 18
   Rule 23(e)(2)(C)(ii)-(iv) ........................................................................... 18
   Rule 23(e)(2)(D) ........................................................................................ 20
   Rule 23(e)(3)...........................................................................................9, 18

**SECONDARY AUTHORITIES**

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements:*
   *2021 Review and Analysis* (Cornerstone Research 2022)............................. 2

4885-1974-2283.v2

Lead Plaintiff St. Clair County Employees' Retirement System ("Lead Plaintiff") respectfully submits this memorandum of law in support of its unopposed motion for preliminary approval of the proposed settlement of the above-captioned action (the "Action" or "Litigation"), as embodied in the Stipulation of Settlement dated February 28, 2023 (the "Stipulation"), which is being filed concurrently herewith.[1] Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, which provides for the payment of $5 million in cash for the Class's benefit, as it easily satisfies the applicable standards for approval set forth in Rule 23 of the Federal Rules of Civil Procedure.

## I.    INTRODUCTION

After litigating this Action for over two years, Lead Plaintiff and Defendants Tactile Systems Technology, Inc. ("Tactile" or the "Company"), Gerald R. Mattys, Lynn L. Blake, Brent A. Moen, Robert J. Folkes, and Bryan F. Rishe ("Defendants" and, together with Lead Plaintiff, the "Settling Parties") have reached an agreement to resolve this Action for $5 million in exchange for the release of the claims asserted against Defendants. The Settlement terms are contained in the Stipulation. The result is favorable for the Class – a $5 million recovery without the risks, costs, and delays of further litigation, including further fact discovery, expert discovery, class certification, motions for summary judgment, and the uncertainty and risks associated with a lengthy trial and potential subsequent appeals.

The Settlement is the result of Lead Plaintiff's and Lead Counsel's vigorous prosecution of this Litigation for more than two years and is based on their thorough

---

[1]    Unless otherwise noted herein, all capitalized terms have the meanings set forth in the Stipulation; all citations to "¶" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Stipulation; all citations are omitted and all emphasis is added unless otherwise noted.

4885-1974-2283.v2

understanding of the relative strengths and weaknesses of the Settling Parties' respective positions. Indeed, at the time of settlement, Lead Plaintiff had: (i) conducted an extensive pre-filing investigation; (ii) responded to a forceful motion to dismiss and orally argued the same; (iii) sought and reviewed roughly 100,000 documents produced by Defendants and third parties; (iv) reviewed and prepared the production of over 600 documents in response to Defendants' document requests to Lead Plaintiff; (v) moved to compel Defendants' production of further documents and responded to Defendants' discovery motion; (vi) served multiple deposition subpoenas; (vii) prepared for depositions; and (viii) taken one deposition. Based upon their experience, their evaluation of the facts and the applicable law, and their recognition of the favorable Settlement Amount, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement merits preliminary approval.

The Settlement is the result of good faith negotiations between the Settling Parties, and it represents an immediate, concrete benefit for the Class.[2] It is particularly noteworthy when considering the substantial risks of either a reduced or no recovery if the litigation continued, because class certification, summary judgment, trial, and any subsequent appeals all presented the possibility that the claims could be narrowed or dismissed. Defendants continued to challenge each element of Lead Plaintiff's claims, as well as Lead Plaintiff's ability to prevail at class certification. In their motion to dismiss briefing and throughout the

---

[2]     As a comparison, the $5 million settlement represents roughly 7% of the estimated aggregate damages in this case, which is larger than the median percentage of total damages for securities class actions settled in the Eighth Circuit in 2021 – the most recent year for which such data is available. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, at 19, Appendix 3 (Cornerstone Research 2022) ("Cornerstone Report"), available at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.

4885-1974-2283.v2

Litigation, Defendants have vigorously denied that they made any false statement, and they argued that they lacked the requisite scienter. Defendants also indicated their intent to vigorously contest class certification, and they challenged Lead Plaintiff's ability to prove loss causation and damages. Had the Court or a jury accepted any one of these arguments, damages would have been dramatically reduced – or even eliminated. Given these obstacles, Lead Plaintiff has secured an excellent recovery on the Class's behalf.

Lead Plaintiff accordingly seeks an order: (i) granting preliminary approval of the proposed Settlement; (ii) approving the form and manner of notifying the Class of the proposed Settlement; (iii) certifying this Action as a class action for settlement purposes; and (iv) setting a hearing date for the Court to consider final approval of the Settlement, the Plan of Allocation of the Net Settlement Fund, and Lead Counsel's application for an award of attorneys' fees and expenses and a schedule for various deadlines relevant thereto ("Preliminary Approval Order").

## II.   LITIGATION HISTORY

This action was first filed on September 29, 2020. ECF 1. On February 1, 2021, the Court appointed Lead Plaintiff and approved Lead Plaintiff's selection of Robbins Geller as Lead Counsel. ECF 36. On April 19, 2021, Lead Plaintiff filed its Amended Class Action Complaint (the "Complaint") (ECF 49), which alleged violations of the federal securities laws in connection with material misstatements and omissions regarding Tactile's reported revenue growth of its flagship product, an advanced pneumatic compression device called Flexitouch, and particularly, in its sales to patients covered by federal healthcare programs, such as the Department of Veteran Affairs ("VA") and the Center for Medicare & Medicaid

- 3 -

Services ("CMS").  As alleged in the Complaint, Defendants failed to disclose that illegal sales practices had contributed to Tactile's reported revenue growth, and thus, that its revenue growth was unsustainable.  Specifically, the Complaint alleged that these sales practices involved (i) kickback schemes with health care professionals in violation of the federal Anti-Kickback Statute ("AKS") and (ii) false reimbursement claims to the VA and CMS in violation of the False Claims Act ("FCA").[3]  The Complaint also alleged that Defendants, to assure investors that Tactile's revenue growth could continue, had falsely inflated the market size, or total addressable market ("TAM"), for Flexitouch in their representations to investors.  As the Complaint further alleged, while Tactile's stock traded at inflated prices, several Individual Defendants capitalized on their fraud by making insider sales of their Tactile shares.

After Lead Plaintiff filed the Complaint, the parties fully briefed Defendants' motion to dismiss.  ECF 63, 71, and 74.  After having heard oral argument on the issues raised, on March 31, 2022, the Court granted in part and denied in part Defendants' motion.  ECF 81. See *Mart v. Tactile Sys. Tech., Inc.*, 595 F. Supp. 3d 788 (D. Minn. 2022).  The Court dismissed various claims and defendants, but upheld allegations of: (i) misstatements concerning Tactile's TAM; (ii) misstatements related to Tactile's illegal sales practices and revenue growth; (iii) scheme liability against Defendants Mattys, Folkes, and Rishe; (iv) 20A insider trading against Defendant Rishe; and (v) control person liability against Defendants Mattys, Blake, Moen, Folkes, and Rishe.  *See id.*  On June 1, 2022, Defendants filed their

---

[3]     When Lead Plaintiff filed the Complaint, there was also an active *qui tam* case based on similar AKS and FCA claims brought against Tactile: *United States ex rel. Veterans First Med. Supply, LLC v. Tactile Med. Sys. Tech., Inc.*, No. 4:18-cv-02871 (S.D. Tex.) (the "*Qui Tam* Action").

- 4 -

answers to the Complaint, denied all material surviving allegations, and asserted multiple affirmative defenses.  ECF 100-105.

From approximately April 2022 through October 2022, the parties engaged in extensive discovery.  Among other things, Lead Plaintiff propounded and responded to numerous document requests and interrogatories, served multiple non-party subpoenas, obtained and reviewed nearly 100,000 documents produced by Defendants and third parties, and reviewed and produced over 600 documents to Defendants.  In addition, the parties sent and received numerous letters concerning their document productions and engaged in numerous meet and confer conferences to discuss significant and highly disputed discovery issues.  The parties also drafted and filed discovery motions concerning their respective document productions.  Lead Plaintiff drafted and served multiple deposition subpoenas, prepared for several depositions, and took one deposition.

## III.    SETTLEMENT NEGOTIATIONS

On October 18, 2022, the parties participated in a voluntary and confidential all-day mediation session with widely recognized and experienced mediator Michelle Yoshida, Esq., of Phillips ADR Enterprises.  Before the mediation, the parties submitted detailed mediation briefs, engaged in pre-mediation calls with Ms. Yoshida, and reviewed and prepared responses to Ms. Yoshida's pre-mediation inquiries.  The mediation began at approximately 7 a.m. PDT and concluded at approximately 7:30 p.m. PDT.

The parties did not come to a resolution during the mediation, however, and continued negotiating over the coming days until October 27, 2022, when the parties agreed-in-principle to settle the case for $5 million.  On November 18 and 20, 2022, the Settling Parties

4885-1974-2283.v2

entered into a binding Memorandum of Understanding to settle the Action in its entirety. The parties spent the subsequent months negotiating the specific terms of the Settlement set forth in the Stipulation and accompanying exhibits. The Stipulation was executed by the Settling Parties on February 28, 2023.

## IV.    PROPOSED SETTLEMENT TERMS

The proposed Settlement, if approved, will resolve this Action in its entirety and provides that Defendants will pay or cause to be paid $5,000,000.00 into an Escrow Account for the Class's benefit. The full terms and conditions of the Settlement are set forth in the Stipulation.

Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund. ¶2.10. Lead Plaintiff proposes that a nationally recognized class action settlement administrator, Gilardi & Co. LLC, be appointed here to oversee notice and administration. The Notice provides that in connection with their request for final approval of the Settlement, counsel for Lead Plaintiff will move for an award of attorneys' fees for all Plaintiff's Counsel in an amount not to exceed 30% of the Settlement Amount, and litigation expenses in an amount not to exceed $139,000.00, plus interest accrued on both amounts at the same rate earned by the Settlement Fund. The Notice explains that these fees, expenses, and awards shall be paid from the Settlement Fund.

Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount – the Net Settlement Fund – shall be distributed pursuant to the Court-approved Plan

of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00. Any amount remaining following the distribution as a result of uncashed or returned checks shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Class Members equitably based on the timing of their Tactile stock purchases, acquisitions, and sales. The proposed Plan of Allocation, which is set forth in the Notice, is similar to plans of allocation approved in numerous other securities class actions.

In exchange for the benefits provided under the Stipulation, Class Members and the Releasing Plaintiff Parties will release any and all claims against Defendants and the Released Defendant Parties which arise out of or relate in any way to: (i) the purchase, acquisition, sale, or disposition of Tactile publicly traded securities purchased or acquired by Lead Plaintiff or any other Class Member during the period between May 7, 2018 and June 8, 2020, inclusive; and (ii) any of the allegations, acts, transactions, facts, matters, occurrences, disclosures, statements, filings, representations, omissions, or events that were or could have been alleged or asserted in the Litigation.

The proposed Settlement is an excellent recovery on the claims asserted in this Litigation, and is in all respects fair, reasonable, adequate, and in the Class's best interests.

## V.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

In the Eighth Circuit, "settlement agreement[s] [are] 'presumptively valid.'" *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013); *see also In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 17-2795-MJD-KMM, 2020 WL 7133805, at *6 (D. Minn. Dec. 4, 2020) ("strong public policy favors agreements, and courts should approach them with a presumption in their favor"). "The policy in federal

- 7 -

court of favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 0:14-cv-00786-ADM-TNL, 2017 WL 2574005, at *2 (D. Minn. June 14, 2017).

Under Federal Rule of Civil Procedure 23(e), a class action settlement must be approved by the trial court. *See* Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the [C]ourt's approval."). Class action settlement approval is a two-step process. *See Phillips v. Caliber Home Loans, Inc.*, No. 19-cv-2711-WMW-LIB, 2021 WL 3030648, at *5 (D. Minn. July 19, 2021). At the first step – preliminary approval – the court "' . . . makes preliminary determinations with respect to the fairness of the settlement terms, approves the means of notice to class members, and sets the date for that final hearing.'" *Id.* The court "'need not review the settlement in detail . . . instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval.'" *Id.* at *5-*6; *see also Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) ("At the preliminary-approval stage, 'the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies.'").

Under Rule 23(e)(1)(B), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides:

- 8 -

(2) ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[4]

As detailed below, the facts and circumstances concerning the Settlement readily satisfy Rule 23(e)(2), as well as the Eighth Circuit's factors, and the Settlement warrants preliminary approval.[5]

---

[4]    While the 2018 amendment to Rule 23(e) provided factors for district courts to assess in evaluating fairness, reasonableness, and adequacy, the "goal of this amendment [was] not to displace any [circuit's unique] factor[s]." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendment.

[5]    At final approval, the Court will also consider the Eighth Circuit's longstanding approval factors, which overlap with those in Rule 23(e)(2): "'(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.'" *CenturyLink,* 2020 WL 7133805, at *6.

**A.** **Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

Lead Plaintiff and Lead Counsel have diligently prosecuted this Action by, among other things: (i) conducting an exhaustive pre-filing investigation; (ii) drafting the detailed Complaint; (iii) opposing Defendants' motion to dismiss and preparing oral argument on Defendants' motion to dismiss; (iv) engaging in extensive fact discovery, including drafting and opposing discovery motions, reviewing roughly 100,000 documents produced to Lead Plaintiff, and preparing for depositions; and (v) participating in the case's mediation and settlement. Lead Plaintiff has demonstrated its ability and willingness to pursue the Litigation on the Class's behalf through its active involvement in the Litigation and in approving the Settlement. Further, as discussed below, Lead Plaintiff's interests align with the Class's interests. *See CenturyLink, 2020 WL 7133805, at *6* (finding class representatives adequately represented the class because "[t]he Class Representatives share[d] the same interests as absent Class Members, assert[ed] the same claims, and share[d] the same injuries").

Lead Plaintiff also retained Class Counsel that has significant experience prosecuting complex class actions. *See, e.g.*, *Plymouth Cty. Ret. Sys. v. Patterson Cos.*, No. 18-871-MJD-HB, 2020 U.S. Dist. LEXIS 177505, at *23 (D. Minn. Sep. 28, 2020) (noting that Robbins Geller and co-counsel "are highly qualified and have extensive experience in securities class action litigation[,] . . . are experienced in leading large securities class actions" and "have demonstrated diligence and expertise in their work in this case").

- 10 -

**B.    The Settlement Is the Product of Informed, Arm's-Length Negotiations**

When a "settlement [is] negotiated at arms' length between experienced and sophisticated counsel," there is a "presumption that it is fair and reasonable." *Phillips*, 2021 WL 3030648, at *6. In the settlement context, "'the recommendation of experienced counsel is entitled to great weight.'" *Yarrington v. Solvay Pharms., Inc.*, No. 09-CV-2261-RHK-RLE, 2010 WL 11453553, at *7 (D. Minn. Mar. 16, 2010). This is especially so when counsel knows "the strengths and weaknesses of their claims at the time of the settlement negotiations based on extensive investigation, research, discovery, and litigation." *In re Resideo Techs., Inc., Sec. Litig.*, No. 19-cv-2863-WMW-BRT, 2022 WL 872909, at *2 (D. Minn. Mar. 24, 2022). Moreover, the utilization of "an experienced mediator" during settlement negotiations supports a finding that the settlement is reasonable and should be approved. *CenturyLink*, 2020 WL 7133805, at *6; *see also Smith v. Questar Cap. Corp.*, No. 12-cv-02669-SRN-TNL, 2015 WL 9860201, at *3 (D. Minn. Sept. 11, 2015) (mediation before a professional mediator demonstrated "no evidence of collusion").

Here, as noted above, the proposed Settlement follows extensive, hard-fought litigation, including investigating and drafting the Complaint, thoroughly researching and responding to Defendants' motion to dismiss, pursuing discovery (including litigating multiple discovery disputes), reviewing hundreds of thousands of pages of documents, and engaging in arm's-length settlement negotiations. The Settlement was achieved only after a mediation with "nationally recognized mediator, Michelle Yoshida, Esq. of Phillips ADR Enterprises," who has served as a mediator in numerous shareholder actions. *Whiteley v.*

*Zynerba Pharm., Inc.*, No. 19-4959, 2021 U.S. Dist. LEXIS 176101, at \*45 (E.D. Pa. Sep. 16, 2021). For the mediation, Lead Counsel and Defendants' Counsel prepared and presented arguments on the case's merits, taking into account the extensive evidence that had been obtained during discovery. The parties also discussed issues related to liability, insurance coverage, and damages.

After intensive back-and-forth negotiations, the Settling Parties reached an agreement to settle the Litigation for $5 million. The negotiations were at all times adversarial and produced a result that is certainly in the Class's best interests. Under these circumstances, a presumption of fairness attaches to the proposed Settlement. *See, e.g.*, *Phillips*, 2021 WL 3030648, at \*6; *CenturyLink*, 2020 WL 7133805, at \*6 (approving settlement reached "at a stage in the litigation in which the parties understood the strengths and weakness of their case"); *Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183, at \*6 (C.D. Cal. Oct. 24, 2017) (finding a settlement was the product of informed, arm's-length negotiations in part because it was "conducted with the help of experienced mediator Michelle Yoshida of Phillips ADR").

### C. The Proposed Relief Is Adequate

#### 1. The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Further Litigation, Support Preliminary Approval

"'The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced

- 12 -

against the amount offered in settlement.'" *CenturyLink*, 2020 WL 7133805, at \*6.[6]  Here,

"[t]he merits of Plaintiff['s] case weighed against the terms of the Settlement and the

complexity and expense of further litigation weigh in favor of approval."  *Id.* at \*7.

Courts have "'long recognize[d]' that securities class actions, like this case, are

'notably difficult and notoriously uncertain' to litigate." *City of Providence v. Aeropostale,*

*Inc.*, No. 11 Civ. 7132-CM-GWG, 2014 WL 1883494, at \*5 (S.D.N.Y. May 9, 2014), *aff'd*

*sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  Indeed, complex securities

fraud class actions present a myriad of risks that a plaintiff must overcome to ultimately

secure a recovery.  *See*, *e.g.*, *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D.

Va. 2016) ("securities fraud cases require significant showings of fact in order to prevail

before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation

are notoriously difficult to establish'").  While Lead Plaintiff remains confident in its ability

to ultimately prove the alleged claims, further litigation – including class certification,

summary judgment, and trial – is always a risky proposition.

To recover without settlement, Lead Plaintiff would be required to prove each element

of its claims, while Defendants would need to succeed on only one defense to defeat the

entire Litigation.[7]  Defendants continued to deny all of Lead Plaintiff's allegations, and they

---

[6]    Consistent with Rule 23's instruction to consider "the costs, risks, and delay of trial and appeal," courts in this Circuit evaluate "'the merits of the plaintiff's case weighed against the terms of the settlement'" and "'the complexity and expense of further litigation.'" *Id.*

[7]    *See, e.g.*, *In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 709 (D. Minn. 2009) (granting summary judgment in a securities action where plaintiffs failed to present evidence of loss causation); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2017 WL 55878, at \*28 (D. Nev.

- 13 -

presented strong arguments regarding Lead Plaintiff's ability to prove falsity, materiality, scienter, loss causation, and damages. Defendants also challenged Lead Plaintiff's ability to prove the underlying AKS and FCA violations, and they would have challenged class certification.

First, Defendants argued that their statements related to the illegal sales practices were not materially false or misleading because Lead Plaintiff could not prove that Defendants actually engaged in illegal sales practices. Defendants also argued that statements about Tactile's compliance with the law were non-actionable opinion statements, and that their TAM estimates were supported by claims data and were forward-looking statements protected by the PSLRA's "safe harbor" under 15 U.S.C. §78u-5.[8]

Second, Defendants contested scienter, arguing that Lead Plaintiff could not establish that Defendants knew or recklessly disregarded that Tactile's sales practices violated the AKS and FCA. Moreover, Defendants asserted that Tactile maintained an active compliance program to ensure its interactions with health care professionals did not violate federal statutes and regulations. Defendants also argued that Lead Plaintiff could not establish scienter in relation to the TAM statements because the statements were supported by claims data.

---

Jan. 3, 2017) (granting summary judgment in a securities action due to, among other things, lack of falsity and scienter), *aff'd sub nom. Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018).

[8]   Defendants in another securities case recently prevailed on similar arguments about their market-size statements. *See Einhorn v. Axogen, Inc.*, 42 F.4th 1218, 1223 (11th Cir. 2022) (holding that a market-size estimate was a forward-looking statement protected by the PSLRA's safe harbor).

Even if Lead Plaintiff ultimately prevailed in proving falsity and scienter, it would have faced the considerable risks and expense involved in establishing loss causation and damages. *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 841-42 ("[P]laintiffs at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony. . . . The high risk faced by taking the case to a jury verdict demonstrates the adequacy of this . . . settlement."). Defendants contested both loss causation and damages, and the parties would have expended significant time and resources on expert discovery on loss causation and damages. *Cohn v. Nelson*, 375 F. Supp. 2d 844, 858-59 (E.D. Mo. 2005) ("Courts routinely acknowledge the difficulty in proving damages, particularly in the securities context, where reliance on experts is often necessary. . . . Establishing damages would require extensive, costly and complex expert testimony.").[9]

While securities cases themselves are notoriously challenging to litigate, this case's complexity was compounded by having to establish underlying violations of the AKS and FCA – both of which have their own complex requirements. *See United States ex rel. Fesenmaier v. The Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003-WMW-DTS, 2021 WL 101193 (D. Minn. Jan. 12, 2021) (discussing the complexities of multiple elements of the AKS and FCA); *United States v. Teva Pharms. USA, Inc.*, No. 13-civ-3702-CM, 2019 WL 1245656 (S.D.N.Y. Feb. 27, 2019) (same).

---

[9] Defendants also challenged Lead Plaintiff's ability to prevail at class certification, which presented another risk to Lead Plaintiff and the Class.

- 15 -

4885-1974-2283.v2

The risks presented by the AKS and FCA allegations were heightened by the fact that the plaintiff in the *Qui Tam* Action had litigated substantially similar claims against Defendants through discovery and summary judgment, and on the eve of trial, had voluntarily dismissed its claims with no recovery. *See United States ex rel. Veterans First Medical Supply, LLC v. Tactile Med. Sys. Tech., Inc.*, No. 4:18-cv-02871 (S.D. Tex.), ECFs 293-296. Defendants repeatedly referenced the *Qui Tam* Action's dismissal and vigorously argued that because the *Qui Tam* Action's plaintiff could not prove the AKS and FCA violations after over three years of hard-fought litigation, neither could Lead Plaintiff.

While Lead Plaintiff believes it had strong counterarguments on all of these points, the fact remains that at three separate junctures – class certification, summary judgment, and trial – the court or a jury could have found Defendants' arguments persuasive, which would have eliminated or significantly reduced recoverable damages. *See [DeBruycker v. PM Beef Holdings, LLC](#), No. CV-02-3925-MJD-JGL, 2005 WL 681298, at \*1 (D. Minn. Mar. 2, 2005)* (defendants' advancement of arguments that "if successful, would have reduced Plaintiffs' ultimate recovery" justified the settlement); *[Tile Shop](#), 2017 WL 2574005, at \*3* (granting preliminary settlement approval where "[t]he merits of Plaintiffs' case were strong but were not without considerable challenges").[10] Furthermore, "without settlement, the case

---

[10]    *See also [Glickenhaus & Co. v. Household Int'l, Inc.](#), 787 F.3d 408 (7th Cir. 2015)* (major portion of plaintiffs' verdict reversed on appeal); *[Robbins v. Koger Props., Inc.](#), 116 F.3d 1441 (11th Cir. 1997)* (reversing jury verdict of $81 million for plaintiffs*)*; *[In re Vivendi Universal, S.A. Sec. Litig.](#), 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011)* (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares); *[Anixter v. Home-Stake Prod. Co.](#), 77 F.3d 1215 (10th Cir. 1996)* (overturning plaintiffs' verdict obtained after two decades of litigation); *[Berkey Photo, Inc. v. Eastman Kodak Co.](#), 603 F.2d 263 (2d Cir. 1979)* (reversing $87 million judgment after trial).

4885-1974-2283.v2

would "'likely drag on for years, [and] require the expenditure of millions of dollars, all the while class members would receive nothing.'"" *Yarrington*, 2010 WL 11453553, at *9; *see also Phillips*, 2021 WL 3030648, at *6 ("continued litigation likely would take several years to resolve").

Even if successful at trial, Lead Plaintiff may have recovered an amount less than this Settlement. Accordingly, the $5 million recovery here is a favorable result. *See, e.g., Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 627 (S.D. Iowa 2016) ("[t]he settlement fund ensures that class members will receive an adequate percentage of their damages and mitigates the risk inherent in taking these legal claims to trial"), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017); *Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017); *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (approving securities settlement representing 5.5% of likely recoverable damages).

Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Litigation through trial and likely appeals, the $5 million Settlement at this juncture is a strong recovery that is in the Class's best interests.[11]

---

[11] Defendants' financial condition also supports the Settlement here because Defendants are financially able to fund the Settlement, and the Settlement is near Defendants' available insurance maximum. *See Tile Shop*, 2017 WL 2574005, at *3 (finding that defendants' financial condition supported settlement because "[d]efendants have the financial ability to comply with the terms of the Settlement Agreement. And, even if Defendants could pay a sum larger than the Settlement Amount, this does not fatally impair the reasonableness of the Settlement."); *Uponor*, 716 F.3d at 1063 (upholding finding that defendants' "financial condition . . . also favored approval since . . . class counsel had considered 'insurance coverage, the effect of previous claims paid, and . . . coverage defenses in negotiating settlement terms'").

- 17 -

4885-1974-2283.v2

### 2.    The Remaining Considerations Under Rule 23(e)(2)(C) Support Settlement Approval

Under Rule 23(e)(2)(C), courts also assess "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval.

First, Lead Plaintiff proposes widely accepted, effective procedures for distributing relief to the Class. Gilardi, the proposed Claims Administrator, will process claims under Lead Counsel's guidance, allow Claimants an opportunity to cure any deficiencies in their Claims, request the Court to review a denial of their Claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation) after Court approval.[12]    This method of claims processing is standard in securities class action settlements and has long been found effective.

Second, as disclosed in the Notice, Lead Counsel will be applying for an award of fees in an amount not to exceed 30% of the common fund and litigation expenses in an amount not to exceed $139,000.00, plus interest on those amounts at the same rate as earned by the Settlement Fund. The proposed attorneys' fees and expenses are reasonable in light of the work performed and are well within the range of fees and expenses that are regularly awarded in securities class actions and other class actions in this Circuit. *See, e.g., In re*

---

[12]    Gilardi has acted as the claims administrator in many notable complex class actions, including several in this District. *See, e.g., In re Medtronic, Inc.*, No. 0:13-cv-01686-MJD-KMM; *Beaver Cnty. Emps' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 0:14-cv-00786-ADM-TNL; *In re St. Jude Medical, Inc. Sec. Litig.*, No. 0:10-cv-00851-SR-TNL.

4885-1974-2283.v2

*Uniti Group Inc. Sec. Litig.*, Master File No. 4:19-cv-00756-BSM (ECF 143) (E.D. Ark. Nov. 7, 2022) (approving fee of 30% of settlement fund in securities class action); *Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, No. 0:18-cv-00871-MJD-HB, 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (awarding 33-1/3% of $63 million settlement); *Ray v. Lundstrom*, Nos. 8:10 CV 199, 4:10 CV 3177, 8:10 CV 332, 2012 WL 5458425, at *4 (D. Neb. Nov. 8, 2012) (approving fee award of 33.3% on $3.1 million settlement); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (33% fee was "in line with the range of fees approved by the Eighth Circuit"); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. 02-3780-JNE-JJG, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (because a $15 million settlement represented "significant monetary relief," a 35.5% "fee [was] within the range established by other cases" and therefore "reasonable and appropriate"); *Resideo Techs.*, 2022 WL 872909, at *7 ("'Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation.'"); *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 17-2795-MJD-KMM, 2021 WL 3080960, at *11-*12 (D. Minn. July 21, 2021) (approving reimbursement of $888,775.83 in litigation expenses); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 999-1000 (D. Minn. 2005) (approving reimbursement of $481,422.94 in litigation expenses).

Third, the Settling Parties entered into a standard Supplemental Agreement pursuant to which Defendants may terminate the Settlement if requests for exclusion from the Class reach a certain threshold – generally called a "blow provision." *See* ¶7.3. Blow provisions: (i) are standard in securities class action settlements; (ii) are kept confidential to prevent

- 19 -

4885-1974-2283.v2

objectors from threatening to trigger the blow provision to obtain self-interested payments at the Class's expense; and (iii) do not negatively impact fairness.  *See Cheng Jiangchen v. Rentech, Inc.*, No. 17-1490-GW(FFMx), 2019 WL 5173771, at \*7 (C.D. Cal. Oct. 10, 2019).

### D.    The Settlement Treats All Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat either Lead Plaintiff or any other Class Member preferentially.

As set forth in the Stipulation and the Notice, under the proposed Plan of Allocation, which was developed in consultation with Lead Plaintiff's damages expert, Authorized Claimants shall receive their *pro rata* share of the Net Settlement Fund based upon their recognized claim compared to the total recognized claims of all Authorized Claimants (as set forth in the Plan of Allocation contained in the Notice attached to the Stipulation as Exhibit A-1).  The Plan of Allocation is substantially similar to other plans approved in securities class actions throughout this Circuit and across the country.  *See, e.g.*, *Plymouth Cnty. Ret. Sys. v. Patterson Cos.*, No. 0:18-cv-00871-MJD-HB, 2022 WL 2111237, at \*1 (D. Minn. June 10, 2022); *Uniti*, Master File No. 4:19-cv-00756-BSM (ECF 144) (E.D. Ark. Nov. 7, 2022); *Strathclyde Pension Fund v. Bank OZK*, No. 4:18-cv-793-DPM, 2022 WL 6325251, at \*2 (E.D. Ark. Sept. 23, 2022); *Peace Officers Annuity & Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-0304-WJM-NRN, 2021 WL 1387110, at \*5 (D. Colo. Apr. 13, 2021) (approving plan of allocation based on same considerations); *Campbell v. Transgenomic, Inc.*, No. 4:17-cv-3021, 2020 WL 2946989, at \*5 (D. Neb. June 3, 2020) (finding "formula

- 20 -

for the calculation of the claims of the authorized claimants" was "a fair and reasonable basis upon which to allocate the proceeds of the settlement fund"). Accordingly, consideration of all factors supports preliminary approval of the Settlement.[13]

## VI.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

When determining whether a settlement should be preliminarily approved, courts also consider whether they will "likely be able to" certify the class for settlement purposes. *See* Fed. R. Civ. P. 23(e)(1)(B). The proposed Class, which has been stipulated to by the Settling Parties, consists of:

> all Persons who purchased or otherwise acquired Tactile publicly traded securities during the period from May 7, 2018 through June 8, 2020, inclusive, and who were damaged thereby.[14]

As demonstrated below, because all of Rule 23(a)'s and 23(b)(3)'s requirements are satisfied, the court will "likely be able to" certify the Class at final approval. *See In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (explaining that class certification

---

[13]   The fourth factor that courts in the Eighth Circuit examine – "the reaction of the Class to the Settlement," – is inapplicable at the preliminary approval stage because the Class has not yet had the opportunity to comment on the Settlement. This factor will be analyzed in connection with final approval, after notice of the Settlement has been disseminated to the Class and Class Members have had an opportunity to assess the Settlement and comment on it.

[14]   Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of each Defendant; (iii) any Person who was an officer or director of Tactile during the Class Period; (iv) any entity in which any Defendant has or had a controlling interest; (v) any corporate parent and/or affiliate of Tactile; and (vi) the legal representatives, heirs, successors-in-interest, or assigns of any such excluded Person. Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely requests exclusion in accordance with the requirements set by the Court.

requires a showing that all of the requirements under Rule 23(a) and one of the three subsections of Rule 23(b) are satisfied).[15]

## A.   Rule 23(a)'s Requirements Are Met

Rule 23(a) requires Lead Plaintiff to demonstrate that the proposed Class meets the prerequisites of numerosity, commonality, typicality, and adequacy.  *See* Fed. R. Civ. P. 23(a); *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997); *Medtronic*, 325 F.R.D. at 286. Here, the proposed Class readily satisfies each Rule 23(a) prerequisite.

### 1.   Numerosity Is Satisfied

Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  The "numerosity requirement is generally satisfied in class actions involving nationally traded securities." *Medtronic*, 325 F.R.D. at 286; *Wal-Mart*, 2016 WL 5400373 at *4.

Numerosity is established here, as Tactile common stock traded on the NASDAQ under the symbol "TCMD" with more than 19 million shares outstanding as of April 30, 2020, and hundreds of thousands of shares traded hands daily during the Class Period.  *See Patterson, 2020 U.S. Dist. LEXIS 177505, at *12* ("numerosity has been met because Patterson common stock is traded on the NASDAQ"); *Wal-Mart*, 2016 WL 5400373, at *4

---

[15]    Courts in this Circuit routinely certify securities fraud class actions.  *See, e.g.*, *Strathclyde Pension Fund v. Bank OZK*, No. 4:18-cv-793-DPM, 2021 U.S. Dist. LEXIS 248369 (E.D. Ark. Dec. 30, 2021); *Patterson*, 2020 U.S. Dist. LEXIS 177505, at *46-*49; *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 296 (D. Minn. 2018); *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 5:12-cv-5162, 2016 WL 5400373, at *8 (W.D. Ark. Sept. 20, 2016); *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 14-786 ADM-TNL, 2016 WL 4098741, at *15 (D. Minn. July 28, 2016); *Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 522-23 (D. Minn. 2015).

4885-1974-2283.v2

(numerosity satisfied where nationally traded securities are involved); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958-ADM-JB, 2013 WL 716088, at *3 (D. Minn. Feb. 27, 2013) (citing cases certifying classes with 20, 40, and 48 members).

### 2.   Commonality Is Satisfied

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "Commonality is easily satisfied in securities cases." *Medtronic*, 325 F.R.D. 280 at 286.  Further, commonality does "not require[] that every question of law or fact be common to every member of the class." *Wal-Mart*, 2016 WL 5400373, at *4. Rather, "[a] single common question" will do. *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 945 (D. Minn. 2018).   "'In securities fraud class actions, questions of misrepresentation, materiality and scienter are the paradigmatic common question[s] of law or fact.'" *Patterson*, 2020 U.S. Dist. LEXIS 177505, at *12 (alteration in original).

Here, all members of the proposed Class

> share issues in the case that involve identical claims and common evidence, including: (1) whether Defendants engaged in a scheme to defraud; (2) whether Defendants knowingly or recklessly made material misrepresentations or omitted material information in their public statements; (3) whether the price of [Tactile] common stock [was] artificially inflated during the class period; and (4) the extent of damages sustained by Class members and the appropriate measure of damages.

*Wal-Mart*, 2016 WL 5400373, at *4.  Indeed, nearly every issue to be decided in the case will be based on identical claims and common evidence, which satisfies the commonality requirement.  *See, e.g.*, *Patterson*, 2020 U.S. Dist. LEXIS 177505, at *12-*13; *In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 202 (D. Minn. 2020).

- 23 -

### 3.   Typicality Is Satisfied

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

> "The burden is fairly easily met so long as other class members have claims similar to the named plaintiff.  Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."

Centurylink, 2020 WL 7133805, at *14.  Typicality is "'satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'"  In re Zurn Pex Plumbing Prods. Liab. Litig., 267 F.R.D. 549, 559 (D. Minn. 2010), aff'd, 644 F.3d 604 (8th Cir. 2011).

> Here, Lead Plaintiff
>
> like Class members, purchased [Tactile's] publicly traded securities during the Class Period at prices allegedly artificially inflated by Defendants' misrepresentations.   [Lead] Plaintiff[] further assert[s] that, like Class members, [it was] then damaged when the price of those publicly traded securities declined after public disclosure of Defendants' fraud.  [Lead] Plaintiff[] [has] claims that are typical of the claims of the Class, bring[s] claims under the same federal securities law, and seek[s] the same relief as other Class members; thus, the typicality requirement is satisfied.

Patterson, 2020 U.S. Dist. LEXIS 177505, at *13-*14; see also Medtronic, 325 F.R.D. at 286; Första, 312 F.R.D. at 515-16.

### 4.   Adequacy Is Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy analysis involves two questions: (i) whether the class representatives have common interests with class

- 24 -

members, and (ii) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel. *Medtronic*, 325 F.R.D. 280 at 286-87.

Adequacy is satisfied here. Lead Plaintiff is an investor whose interests are directly aligned with those of the Class based upon purchases of Tactile common stock during the Class Period and the losses suffered as a result of Defendants' fraud. Lead Plaintiff has also demonstrated a willingness and ability to take an active role in the Action to protect the Class's interests. To date, Lead Plaintiff has, among other things, retained experienced counsel, reviewed pleadings and other documents, actively participated in the discovery process by producing documents and responding to interrogatories, participated in discussions with counsel regarding case strategy and significant case events, and supervised the parties' mediation efforts. *See Patterson*, 2020 U.S. Dist. LEXIS 177505, at *19 (holding adequacy satisfied where lead plaintiff, like other class members, sought damages based on stock purchases following defendants' misrepresentations and were "the type of 'large, institutional lead plaintiff[s] envisioned by Congress when the PSLRA was enacted'") (alteration in original); *CenturyLink*, 2020 WL 7133805, at *15 (holding adequacy satisfied where plaintiffs "vigorously prosecuted the interests of the Settlement Class through qualified and experienced counsel and have successfully obtained substantial relief for injuries").

Moreover, Lead Counsel is qualified, experienced, and capable of vigorously prosecuting this Action. *See In re Retek Inc. Sec. Litig.*, 236 F.R.D. 431, 436 (D. Minn. 2006) (adequacy found where lead counsel has "proven track records in the prosecution of complex class actions within this judicial district and elsewhere"); *Medtronic*, 325 F.R.D.

- 25 -

280 at 287 ("Plaintiffs' counsel – lawyers from Robbins Geller Rudman & Dowd LLP and [their co-counsel] – is well-qualified to serve as class counsel in this case."); *Patterson*, 2020 U.S. Dist. LEXIS 177505, at *23 (noting that Robbins Geller and co-counsel "are highly qualified and have extensive experience in securities class action litigation. As demonstrated by the law firms' submissions, [co-counsel] and Robbins Geller are experienced in leading large securities class actions and have obtained substantial recoveries for plaintiffs in such lawsuits. Both firms have demonstrated diligence and expertise in their work in this case."). Lead Plaintiff and Lead Counsel have adequately represented the Class.

**B.      Rule 23(b)(3)'s Requirements Are Met**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.      Common Legal and Factual Questions Predominate**

The Supreme Court has held that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625; *accord Patterson*, 2020 U.S. Dist. LEXIS 177505, at *24. "'At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence.'" *CenturyLink*, 2020 WL 7133805, at *15 (citing *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016)). "Common questions need only predominate; they need not be dispositive of the litigation." *Medtronic*, 325 F.R.D. 280 at 287.

4885-1974-2283.v2

Here, common questions clearly predominate over individual questions because Defendants' alleged misstatements and omissions affected all Class Members in the same manner: Lead Plaintiff and the Class purchased Tactile securities at an artificially inflated price, and then suffered losses when the corrective disclosures caused Tactile's stock price to decline. Indeed, it is well established that materiality, falsity, and loss causation are paradigmatic common questions. *See, e.g.*, *Amgen v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 467, 475 (2013) ("materiality is a 'common questio[n]' for purposes of Rule 23(b)(3)" and "this Court has held that loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified") (alteration in original); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (holding that plaintiff need not prove loss causation at class certification).

### 2.    A Class Action Is Superior to Other Methods of Adjudication

Finally, Rule 23 asks whether class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Four factors govern analysis of the superiority requirement: (i) the interests of class members in individually controlling the prosecution of separate actions; (ii) whether other litigation has commenced; (iii) the desirability or undesirability of concentrating litigation in a particular forum; and (iv) the likely difficulties in managing a class action.

As is universally recognized, "[s]ecurities cases easily satisfy Rule 23(b)(3)'s superiority requirement." *Medtronic*, 325 F.R.D. at 290. This Action is no different. First,

- 27 -

there is "no reason to believe that the class members have any interest in individually controlling the prosecution of separate actions," particularly as "the cost and complexity of securities actions often prevent individual shareholders from bringing [their] claims." _Id._ at 290. Second, Lead Plaintiff is "not aware of any other litigation begun by class members." _Id._ Third, "concentrating the litigation in this case is desirable to promote judicial efficiency by resolving the complaints of thousands of shareholders in one case." _Id._ And finally, this case does not "present[] any likely difficulties that would make a class action inferior to individual adjudication"; rather, "due to the large number of possible class members – a class action is necessary to avoid potentially crowding the docket with thousands of similar cases." _Id._; _accord Patterson_, 2020 U.S. Dist. LEXIS 177505, at *44-*45; _Bank OZK_, 2021 U.S. Dist. LEXIS 248369, at *3.

## VII.   THE PROPOSED NOTICE SHOULD BE APPROVED

Under Rule 23, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

As outlined in the agreed-upon proposed Preliminary Approval Order, if the Court grants preliminary approval, Lead Counsel will cause the Claims Administrator to notify Class Members of the Settlement by mailing the Notice and Proof of Claim and Release form ("Claim Form") to all persons and entities who can be identified with reasonable effort. The Notice will advise Class Members of:  (i) the pendency of the class action; (ii) the

- 28 -

essential terms of the Settlement; and (iii) information regarding Lead Counsel's motion for attorneys' fees and expenses. The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures and deadlines for submitting a Claim Form, for requesting exclusion from the Class, and for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and expenses. The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over a national newswire service, and to post a copy of the Notice and Claim Form and other relevant settlement documents on a website to be created for this Settlement.

Thus, the form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7). *See In re E.W. Blanch Holdings, Inc. Sec. Litig.*, No. 01-258-JNE-JGL, 2003 WL 23335319, at *1 (D. Minn. June 16, 2003) (approving similar notice program). The Notice and Summary Notice are "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Campbell v. Transgenomic, Inc.*, No. 4:17-cv-3021, 2019 WL 3003920, at *2 (D. Neb. July 10, 2019).

## VIII.   THE PROPOSED SETTLEMENT SCHEDULE

The Settling Parties respectfully propose the following schedule for the Court's consideration, which is also set forth in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for mailing the Notice to Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") (*see* ¶11) | No later than 21 calendar days after entry of the Preliminary Approval |

|  | Order |
|---|---|
| Deadline to publish the Summary Notice (*see* ¶12) | No later than 7 calendar days after the Notice Date |
| Deadline for Lead Counsel to file papers in support of final approval and application for fees and expenses (*see* ¶26) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (*see* ¶¶20, 22) | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (*see* ¶26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting proof of the mailing of the Notice to Class Members and publication of the Summary Notice (*see* ¶13) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (*see* ¶6) | At least 100 calendar days after the filing of this Motion, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms (*see* ¶18) | No later than 90 calendar days after the Notice Date |

## IX.    CONCLUSION

Lead Plaintiff respectfully requests that the Court grant preliminary approval of the

Settlement and enter the accompanying Preliminary Approval Order.

DATED:  February 28, 2023                    ROBBINS GELLER RUDMAN
                                                              & DOWD LLP
                                                         JESSICA T. SHINNEFIELD
                                                         (admitted *pro hac vice*)
                                                         ASHLEY M. PRICE
                                                         (admitted *pro hac vice*)
                                                         NICOLE Q. GILLILAND
                                                         (admitted *pro hac vice*)
                                                         JOSEPH J. TULL
                                                         (admitted *pro hac vice*)


                                                                s/ Ashley M. Price
                                                         ASHLEY M. PRICE

- 30 -

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jshinnefield@rgrdlaw.com
aprice@rgrdlaw.com
ngilliland@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD &
 TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiff

ZIMMERMAN REED LLP
CAROLYN G. ANDERSON, MN 275712
JUNE P. HOIDAL, MN 033330X
BEHDAD C. SADEGHI, MN 393374
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: 612/341-0400
612/341-0844 (fax)
Carolyn.Anderson@zimmreed.com
June.Hoidal@zimmreed.com
Behdad.Sadeghi@zimmreed.com

Local Counsel

- 31 -

4885-1974-2283.v2

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
(admitted *pro hac vice*)
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com

Counsel for Plaintiff Brian Mart

- 32 -

4885-1974-2283.v2