UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------

Brian Mart, et al.,                )   File No. 20-cv-2074
                                   )              (NEB/DTS)
        Plaintiffs,                )
                                   )
v.                                 )
                                   )
Tactile Systems Technology,        )   Courtroom 13W
Inc., et al.,                      )   Minneapolis, Minnesota
                                   )   Wednesday, April 26, 2023
        Defendants.                )   10:00 a.m.
                                   )

------------------------------------------------------------

BEFORE THE HONORABLE NANCY E. BRASEL
UNITED STATES DISTRICT COURT DISTRICT JUDGE
**(MOTIONS HEARING – DOCKET NO. 144)**

APPEARANCES:
 For Plaintiffs:           ROBBINS GELLER RUDMAN & DOWD LLP
                           BY:  ASHLEY M. PRICE
                                ELLEN GUSIKOFF STEWART
                           655 West Broadway, #1900
                           San Diego, California 92101

                           ZIMMERMAN REED LLP
                           BY:  RACHEL KRISTINE TACK
                           80 South Eighth Street, #1100
                           Minneapolis, Minnesota 55402

 For Defendants:           FAEGRE DRINKER BIDDLE & REATH LLP
                           BY:  MATTHEW B. KILBY
                                RORY COLLINS
                           90 South Seventh Street, #2200
                           Minneapolis, Minnesota 55402

 Court Reporter:           RENEE A. ROGGE, RMR-CRR
                           United States District Courthouse
                           300 South Fourth St., Box 1005
                           Minneapolis, Minnesota 55415

    Proceedings recorded by mechanical stenography;
Transcript produced by computer.

**P R O C E E D I N G S**

**IN OPEN COURT**

THE COURT:  We are on the record.  The case number is 20-cv-2074.  It's Brian Mart, et al., versus Tactile Systems Technology.

May I please have appearances, beginning with the plaintiffs.

MS. PRICE:  Good morning, Your Honor.  My name is Ashley Price from Robbins Geller Rudman & Dowd on behalf of the lead plaintiff and the proposed class.

THE COURT:  Good morning.

MS. GUSIKOFF STEWART:  Good morning, Your Honor. Ellen Gusikoff Stewart of Robbins Geller, also on behalf of the lead plaintiff and the class.

THE COURT:  Okay.  Good morning.

MS. TACT:  Good morning, Your Honor.  Rachel Tact from Robbins Geller, also on behalf of lead plaintiffs.

THE COURT:  Good morning.

And for the defense.

MR. KILBY:  Good morning, Your Honor.  Matt Kilby from the Faegre Drinker firm on behalf of the defendants.

THE COURT:  Thank you.  And good morning.

MR. COLLINS:  Rory Collins also from Faegre Drinker on behalf of defendants.

THE COURT:  Good morning to all of you.  Thank you

for your submissions in this case.  We're here on a preliminary approval of a class action settlement.  And so I do have some questions for you.

Just one moment, please.  I'm sorry.  That was a nice time for my iPad to tell me that my passcode needed to change immediately.

So let me, I guess, begin with the plaintiffs on this unopposed motion, because it is an unopposed motion.  So, Ms. Price, would you come to the podium, please.

MS. PRICE:  Absolutely.

THE COURT:  I'll save my questions, if you want to present what you have to present, or I can jump right in, whichever you prefer.

MS. PRICE:  I'm happy to answer your questions.

THE COURT:  Okay.  My biggest question is about the allocation process, which is complex and is requiring an administrator to complete.

One of the things that you have noted is that this process, the procedure for distributing relief, is widely accepted.  And I'm just looking for any examples that you have of this procedure being widely accepted.

MS. PRICE:  Sure, Your Honor.

This is widely accepted, as you noted, in securities fraud litigation where we create a plaintiff allocation based on consultation with our expert in damages.

And he looks at the disclosures and when the inflation from the stock price comes out of the stock price; and then based on that, the claimants will submit, you know, what their purchase date was and the purchase price and then that inflation at the time of purchase, then less the inflation at the time of sale, and that gives you the recognized loss. And so then what happens is the -- everybody submits their claims, and the claims administrator takes a pro rata share of that across the $5 million.

So examples of that, recently in *Patterson*, for example, District of Minnesota, is one place where that has certainly taken place.  There's numerous other recent securities fraud litigations that our firm has settled that follow this same method.

THE COURT:  Okay.  And so I've looked through the paperwork, including the notice of the stipulation of settlement.  And in paragraph 5.8 of Document 47, which is the stipulation of settlement, the document addresses the appeal procedure, if you will, when a claimant may disagree with the claims administrator's decision and may request a review by the court.  And elsewhere I think you're asking the court to reserve jurisdiction to resolve such claims. Not clear to me how that procedure might work and how I might resolve such claims.  I think the language is pretty broad and allows me to do so in equity, which doesn't give

me a lot of direction, and it's not typical at least for me to open, to keep jurisdiction open.

So can you explain a little bit more about that, if it's been approved by other courts and how it has worked?

MS. PRICE:  Yes, this has been approved by other courts, this exact procedure.

And the process is basically if a claimant finds that the claims administrator has rejected, for whatever reason, their claim, perhaps they haven't given enough information, then there's time to cure the deficiency, or perhaps their claim isn't actually a recognized loss, if, for instance, you know, when they sold, they actually made a gain, if the stock price went up, for instance, so as far as bringing those issues to the court, I believe that that comes in through an objection process and can be heard that way.

THE COURT:  And help me understand under the settlement documents and the settlement procedure when that end date might be, in other words, that I'm not keeping it open, you know, for years.

MS. PRICE:  Right.  So the --

THE COURT:  That gives me some comfort.

MS. PRICE:  Sure, sure.  So the objections will come in before final approval, the final approval hearing, which Your Honor will hopefully set today.

THE COURT:  So the objections to -- no.  I'm talking about if somebody -- I'm talking about after final settlement there's a submission of a claim.  The claims administrator determines you're entitled to X.  Then there's a process to come to the court.

MS. PRICE:  Right.  And --

THE COURT:  That won't happen before the final settlement hearing, will it?

MS. PRICE:  Right, right.  No.

So those claimants who are finding that they are contesting what the claims administrator has found for their losses will then need to bring notice to the court.  And I'm not sure how that --

THE COURT:  What's the time frame for it?

MS. PRICE:  Let me, let me refer to my partner here.

THE COURT:  Yes.  Go ahead.  Actually, why don't you confer with her, and then you can talk to me, and that way we don't have two people arguing.

MS. GUSIKOFF STEWART:  Okay.  I'm happy to just -- can I just answer your question briefly?

THE COURT:  Sure.

MS. GUSIKOFF STEWART:  So through the claims process, the claims administrator looks at claims and determines recognized loss, sends deficiency letters, sends

rejection letters.  The claimants then have 20 days to challenge that deficiency or that rejection.

Obviously, since the goal is to get the whole settlement fund distributed to as many people as possible, we really bend over backwards to make sure that we don't have any challenged claims.

Occasionally, and it doesn't happen often, but occasionally you may have one or two class members who are unsatisfied with, with the result of their claim, either there's -- they haven't bought during the class period or the claims administrator believes that the documentation that they've provided is maybe fraudulent or somehow deficient.  And before we come to the court, we try and work all these things out.

In the many, many years that I've been doing this, I think I've had three, maybe four cases where a claimant will ask -- and as lead counsel, it's our role to bring this dispute to the court with the findings of the claims administrator.  And honestly, Your Honor, unless we really are sure that this claimant doesn't have a valid claim, we're going to try and pay the claim.  And so it will, it will be resolved -- probably this issue would be resolved within a year.

THE COURT:  Okay.  All right.  Thank you.

And I understand this may be -- it is an unlikely

scenario.  I understand that it happens in very few cases.

But because it involves a reservation of jurisdiction, it's

something that caught my eye, in particular, because I'm

focusing on it, because the rest of all of this seems really

non-controversial and well-thought out by all of you, and so

I wanted to focus on that.

In Exhibit 1 there is some discussion of if there

are any individual claims.  I just wanted to confirm that

plaintiffs' counsel has no knowledge of any individual

claims at this time?

MS. PRICE:  No knowledge, Your Honor.

THE COURT:  Okay.  All right.  And the dispute

resolution process that counsel just referred to, how does a

plaintiff get notice of that dispute resolution process?  Is

that just sort of a back and forth with the claims

administrator?

MS. PRICE:  How the claimant gets notice of it?

THE COURT:  Correct.

MS. PRICE:  Correct.  So we would be in

consultation with the claims administrator, who would let us

know that there was an ongoing dispute.  And the claims

administrator would work with that claimant, and we would

also, you know, be involved in that discussion to try to

address whatever issues and try to fix the problem.

THE COURT:  Okay.  So it really -- there isn't

like, there isn't a time frame or any of that.  It's, Please contact the claims administrator or lead counsel if you disagree with any determination made by the claims administrator; If you're dissatisfied, you may ask the court to decide the issue by submitting a written request.  And that's, I think, in the frequently asked questions or in the notice of pendency and proposed settlement of class actions, which is Exhibit 1 or Document 149.

So I guess I'm just confirming there's no more formal process than that?

MS. PRICE:  That's correct, Your Honor.

THE COURT:  Okay.  Who is responsible for the website?  The claims administrator or lead counsel?

MS. PRICE:  The claims administrator puts up the website.  We, of course, are monitoring it and making sure that the information on there is accurate.

THE COURT:  Okay.  And do you prefer the final settlement hearing to be in person here or remote?  What do you think the objectors might prefer?  Do you have a preference?

MS. PRICE:  Well, I don't personally have a preference.

THE COURT:  I guess I'm not asking about your personal schedule.

MS. PRICE:  On behalf of the class, I think that,

you know, a Zoom conference is probably the easiest for objectors, wherever they may be in the country, to participate, if they would like to.

THE COURT:  Okay.  The other question --

MS. PRICE:  And I'm sorry to interrupt, but we're happy to do it in person and happy to come before you and then have a Zoom option for, you know, whoever would like to appear.

THE COURT:  Right.  I haven't quite figured out a hybrid model yet.  So if we do it by Zoom, I think we'll have everyone by Zoom.  And it makes sense to me that the objectors would -- that provides them with easier access.

As to the notice of pendency and proposed settlement of class action -- again, that's Document 149 -- the objections you have going to the clerk of court.  And I assume that's because you want to make sure that they're filed?

MS. PRICE:  That's correct.

THE COURT:  I think it's actually better to have them go to my chambers --

MS. PRICE:  Okay.

THE COURT:  -- simply because we'll be able to tell better, in the event of a vaguely written objection that doesn't maybe have the case name or the number on it, we'll be able to tell what it pertains to maybe better than

the clerk's office.  So I think I would change that --

MS. PRICE:  Sure.

THE COURT:  -- to be my chambers so that it comes to our attention.  And we'll ensure, of course, that it gets filed.

MS. PRICE:  We'll make that change.

THE COURT:  The other change I would ask you to do or ask to make is in that same paragraph, which is paragraph 16, is to place the case number.  So it says, If you wish to comment on or object to the proposed settlement in the Tactile security settlement, comma, case number, to --

MS. PRICE:  Okay.

THE COURT:  Again, I don't expect everybody to follow that, but we might as well make sure that we're giving good direction, and that just, again, allows us to mitigate against any objection being lost.

MS. PRICE:  That makes sense.

THE COURT:  That's all the questions that I have right now.

Let me just ask, Mr. Kilby, if you want to come forward and respond to any of the questions that I had for Ms. Price or add anything in yourself.

MR. KILBY:  Thank you very much, Your Honor.  Matt Kilby on behalf of the defendants.

And I do not have anything to add to the answers that they've given.  We have considered the method of allocation between the claim and class members and have reviewed the -- and there's an inflation chart in one of the exhibits; and while we didn't have our own expert look at that, it looked reasonable to us and we didn't have any, of course, have any objection to it.  And we do understand the process, and we understand that it's been used in other cases.

With respect to the court's, you know, retention of jurisdiction to answer any objection -- not objections, but disputes that come out of the claim process, we don't, of course, have any objection to the court retaining jurisdiction to do that so long as that the case will be dismissed with prejudice after the final hearing.

THE COURT:  All right.  Thank you.

MR. KILBY:  Thank you, Your Honor.

THE COURT:  We had targeted a final hearing date. I don't think I wrote it down.

Ms. Wegner, what have we targeted?

COURTROOM DEPUTY:  We were looking at August 23rd.

THE COURT:  August 23rd.  How does that look for everybody?

MS. PRICE:  That's fine for plaintiffs, Your Honor.  Thank you.

THE COURT:  For defense?

MR. KILBY:  That's, that's also fine for defendants, Your Honor.

THE COURT:  All right.  And I think it does make sense -- I actually am not a -- I prefer to have my hearings in person, which is why you're here, and I appreciate the fact that you're here; but given the flexibility that we now have and the ease in which objectors could dial in, I think it makes more sense to have it by Zoom.  And so I think I'd prefer to, for this purpose, to use video conferencing instead of in person.  Again, that is not my, not my practice, but it strikes me that this is a wise use of it.

All right.  So you may put that date --

What time did we say?

COURTROOM DEPUTY:  10:00.

THE COURT:  10:00?

COURTROOM DEPUTY:  Yes.

THE COURT:  You may put that date in your notice.

And I have a proposed -- or I have an order, a draft order ready to go, and it should be -- I should issue it within the week, but I intend to approve it, and we'll get that issued for you.

And if you have any questions or if the court has tweaked something that you think is not appropriate, you are certainly welcome to call and talk to me about that.  We can

have an off-the-record status conference on that issue.  But I appreciate your work in settling the case and coming here to argue before me and answer the questions that I have.

And, again, it's been an interesting case, and I know it was not probably easy to settle, but that probably makes it a better settlement, but I do find that it is fair. And I know both, both sides have worked hard to resolve it fairly for both the defendants and the class members.  So thank you.

Anything further to come before the court? Ms. Price?

MS. PRICE:  No, Your Honor.  Thank you.

THE COURT:  Mr. Kilby?

MR. KILBY:  Nothing, Your Honor.  Thank you for your time this morning.

THE COURT:  Thank you.

All right.  We're adjourned.

THE CLERK:  All rise.

(Court adjourned at 10:17 a.m., 04-26-2023.)

*  *  *

I, Renee A. Rogge, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Certified by:  /s/Renee A. Rogge
                Renee A. Rogge, RMR-CRR