UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN MART, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> TACTILE SYSTEMS TECHNOLOGY, INC., et al., <br><br> Defendants. | Civ. No. 0:20-cv-02074-NEB-DTS <br><br> <u>CLASS ACTION</u> <br><br> MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |

4854-7768-2032.v2

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .............................................. 3

III.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ............... 3

        A.    The Standards for Final Approval of Class Action Settlements ................... 3

        B.    The Proposed Settlement Satisfies Both Rule 23(e)(2) and the Eighth
              Circuit Requirements .................................................................................. 5

              1.    Lead Plaintiff and Lead Counsel Have Adequately
                    Represented the Class ....................................................................... 6

              2.    The Settlement Was Reached After Arm's-Length
                    Negotiations with the Assistance of an Experienced Mediator ......... 7

              3.    The Settlement Is Fair, Reasonable, and Adequate ........................... 8

                    a.    The Merits of the Claims, Weighed Against the Terms
                          of the Settlement, Support Final Approval of the
                          Settlement ............................................................................... 9

                    b.    The Complexity and Expense of Further Litigation
                          Supports Final Approval of the Settlement ........................... 12

              4.    Defendants' Financial Condition Supports Final Approval of
                    the Settlement ................................................................................. 14

              5.    The Reaction of the Class to Date Supports Final Approval of
                    the Settlement ................................................................................. 14

              6.    All Other Rule 23(e)(2)(C) Factors Are Met .................................. 15

              7.    The Settlement Treats Class Members Equitably Relative to
                    Each Other ...................................................................................... 17

IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
        ADEQUATE ...................................................................................................... 18

V.      THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR
        PURPOSES OF EFFECTUATING THE SETTLEMENT .................................. 20

4854-7768-2032.v2

**Page**

VI.    THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23
AND DUE PROCESS REQUIREMENTS AND IS REASONABLE ................... 21

VII.   CONCLUSION ......................................................................................... 22

4854-7768-2032.v2

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bredthauer v. Lundstrom*,
No. 4:10-CV-3132, 2012 WL 4904422
(D. Neb. Oct. 12, 2012) ................................................................................ 21

*Brehm v. Capital Growth Fin. LLC*,
No. 8:07-CV-254, 2010 WL 481008
(D. Neb. Feb. 4, 2010) ................................................................................... 8

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ........................................................ 14

*Campbell v. Transgenomic, Inc.*,
No. 4:17-CV-3021, 2020 WL 2946989
(D. Neb. June 3, 2020) ............................................................................ 19, 20

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated sub nom. by Goldberger v.
Integrated Res., Inc.*, 209 F.3d. 43 (2d Cir. 2000) ........................................ 5

*DeBruycker v. PM Beef Holdings, LLC*,
No. CV-02-3925, 2005 WL 681298
(D. Minn. Mar. 2, 2005) ............................................................................... 12

*Eisen v. Carlisle & Jaquelin*,
417 U.S. 156 (1974) ...................................................................................... 20

*George v. Uponor Corp.*,
No. 12-249, 2015 WL 5255280
(D. Minn. Sept. 9, 2015) ................................................................................. 3

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) .......................................................................... 5

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...................................................................... 13

*In re AOL Time Warner, Inc.*,
No. 02 Civ. 5575 (SWK), 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006) ................................................................................ 13

4854-7768-2032.v2

**Page**

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
   No. 17-2795, 2020 WL 7133805
   (D. Minn. Dec. 4, 2020) ...................................................................... 3, 8, 12

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
   No. 17-2795, 2021 WL 3080960
   (D. Minn. July 21, 2021) .......................................................................... 5, 16

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs. & Prods. Liab.*
   *Litig.*,
   No. 17-md-02777-EMC, 2019 WL 2554232
   (N.D. Cal. May 3, 2019) .............................................................................. 6

*In re: E.W. Blanch Holdings, Inc. Sec. Litig.*,
   No. 01-258, 2003 WL 23335319
   (D. Minn. June 16, 2003) ............................................................................ 22

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) ..................................................... 9, 11

*In re Resideo Techs., Inc., Sec. Litig.*,
   No. 19-cv-2863, 2022 WL 872909
   (D. Minn. Mar. 24, 2022).............................................................................. 3

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468
   (S.D.N.Y. July 21, 2020) ............................................................................ 17

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
   716 F.3d 1057 (8th Cir. 2013) ................................................................... 3, 8

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
   396 F.3d 922 (8th Cir. 2005) .............................................................. 5, 9, 13

*Klug v. Watts Regul. Co.*,
   No. 8:15-CV-61, 2016 WL 7156478
   (D. Neb. Dec. 7, 2016).............................................................................. 22

*Lechner v. Mut. of Omaha Ins. Co.*,
   No. 8:18-CV-22, 2021 WL 424421
   (D. Neb. Feb. 8, 2021) ............................................................................. 18

- iv -

**Page**

*Paxton v. Union Nat'l Bank*,
   688 F.2d 552 (8th Cir. 1982) ........................................................................... 6

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
   No. 17-cv-0304-WJM-NRN, 2021 WL 1387110
   (D. Colo. Apr. 13, 2021) ............................................................................... 19

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ......................................................................... 5

*Phillips v. Caliber Home Loans, Inc.*,
   No. 19-cv-2711, 2021 WL 3030648
   (D. Minn. July 19, 2021) .......................................................................... 7, 12

*Phillips v. Caliber Home Loans, Inc.*,
   No. 19-cv-2711, 2022 WL 832085
   (D. Minn. Mar. 21, 2022) ......................................................................... 8, 12

*Plymouth Cnty. Ret. Sys. v. Patterson Cos.*,
   No. 0:18-cv-00871-MJD-HB, 2022 WL 2111237
   (D. Minn. June 10, 2022) .............................................................................. 19

*Ret. Fund v. Tile Shop Holdings, Inc.*,
   No. 0:14-cv-00786-ADM-TNL, 2017 WL 2574005
   (D. Minn. June 14, 2017) ................................................................................ 3

*Reynolds v. Credit Bureau Servs., Inc.*,
   No. 8:15-CV-168, 2016 WL 389977
   (D. Neb. Feb. 1, 2016) .................................................................................. 21

*Strathclyde Pension Fund v. Bank OZK*,
   No. 4:18-cv-793-DPM, 2022 WL 6325251
   (E.D. Ark. Sept. 23, 2022) ............................................................................ 19

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   695 F. Supp. 2d 521 (E.D. Ky. 2010),
   *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia,*
   *L.L.C.*, 636 F.3d 235 (6th Cir. 2011) .......................................................... 14

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ........................................................................... 4

4854-7768-2032.v2

**Page**

*White v. Nat'l Football League,*
    822 F. Supp. 1389 (D. Minn. 1993),
    *aff'd*, 41 F.3d 402 (8th Cir. 1994) ................................................................ 18

*Yarrington v. Solvay Pharms., Inc.,*
    No. 09-CV-2261, 2010 WL 11453553
    (D. Minn. Mar. 16, 2010) ...................................................................... 4, 12

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4 ........................................................................................................ 22

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................... 4, 18
    Rule 23(a) ................................................................................................... 20
    Rule 23(b)(3) .............................................................................................. 20
    Rule 23(c)(2) ........................................................................................ 20, 22
    Rule 23(e) ................................................................................................ 4, 22
    Rule 23(e)(1)(B) ......................................................................................... 21
    Rule 23(e)(2) .............................................................................................. 4, 5
    Rule 23(e)(2)(A) ........................................................................................... 6
    Rule 23(e)(2)(C) ...................................................................................... 8, 15
    Rule 23(e)(2)(C)(ii)-(iv) ............................................................................. 15
    Rule 23(e)(2)(C)(iv) .................................................................................... 16
    Rule 23(e)(2)(D) ......................................................................................... 17
    Rule 23(e)(3) ..................................................................................... 4, 15, 16

## SECONDARY AUTHORITIES

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements:*
    *2022 Review and Analysis*, Appendix 3 (Cornerstone Research 2023),
    available at https://securities.stanford.edu/research-reports/1996-
    2022/Securities-Class-Action-Settlements-2022-Review-and-
    Analysis.pdf ................................................................................................ 2

## I.    INTRODUCTION

Pursuant to Rule ("Rule") 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff St. Clair County Employees' Retirement System ("Lead Plaintiff"), respectfully submits this memorandum of law in support of its motion for final approval of the $5,000,000 Settlement reached in the above-captioned securities class action (the "Litigation"), and approval of the Plan of Allocation.  The terms of the proposed Settlement are set forth in the Stipulation of Settlement dated February 28, 2023, which was previously filed with the Court ("Stipulation" or "Settlement").  ECF 147.[1]  The Court granted preliminary approval of the Settlement on May 4, 2023 ("Preliminary Approval Order").  ECF 156.

The proposed Settlement provides for the payment of $5 million to investors who purchased or acquired Tactile Systems Technology, Inc. ("Tactile" or the "Company") publicly traded securities between May 7, 2018 and June 8, 2020, inclusive (the "Class Period"), and were damaged thereby.  This is a significant recovery for the Class given that the plaintiff in a *qui tam* action, which brought substantially similar allegations regarding Tactile's improper sales practices, litigated to the eve of trial before determining that it would voluntarily dismiss the case with zero recovery.  By contrast, this favorable result for the Class represents roughly 7% of the estimated aggregate damages in this Litigation

---

[1]    Unless otherwise noted, all terms capitalized herein are defined in the Stipulation or the Declaration of Ashley M. Price in Support of: (I) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) an Award of Attorneys' Fees and Expenses ("Price Decl." or "Price Declaration"), submitted herewith.  All exhibits referenced herein are attached to the Price Declaration.

- 1 -

– an amount larger than the median percentage of total damages for securities class actions settled in the Eighth Circuit between 2013 and 2022. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis*, at 19, Appendix 3 (Cornerstone Research 2023) ("Cornerstone Report"), available at https://securities.stanford.edu/research-reports/1996-2022/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.

Further confirming the fairness of the proposed Settlement is the fact that, to date, there have been no objections to the Settlement or the Plan of Allocation. Over 22,000 copies of the Notice have been sent to potential Class Members and nominees and notice was published in *The Wall Street Journal*, transmitted over a national newswire service, and posted along with other relevant settlement documents on a website created for this Settlement. *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Gilardi Decl."), ¶¶11-12, 14. Price Decl., Ex. B.

Finally, Lead Counsel, with substantial experience successfully prosecuting securities class actions, and Lead Plaintiff, which actively and faithfully oversaw this Litigation for two years in accordance with its duties to the Class, have concluded that the proposed Settlement and proposed Plan of Allocation are fair, reasonable, and adequate, and in the best interests of the Class. Accordingly, for the reasons set forth herein and in the accompanying Price Declaration, the proposed Settlement and proposed Plan of Allocation warrant the Court's approval.

4854-7768-2032.v2

## II.   FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Price Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Plaintiff and Lead Counsel during the course of the Litigation, and the factors bearing on the approval of the Settlement and Plan of Allocation.

## III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.   The Standards for Final Approval of Class Action Settlements

Voluntary resolution through settlement is favored. *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 0:14-cv-00786-ADM-TNL, 2017 WL 2574005, at *2 (D. Minn. June 14, 2017); *George v. Uponor Corp.*, No. 12-249 (ADM/JJK), 2015 WL 5255280, at *6 (D. Minn. Sept. 9, 2015) ("'The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context.'").[2] In the Eighth Circuit, "'strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.'" *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 17-2795 (MJD/KMM), 2020 WL 7133805, at *6 (D. Minn. Dec. 4, 2020) ("*CenturyLink I*"); *see also In re Resideo Techs., Inc., Sec. Litig.*, No. 19-cv-2863 (WMW/BRT), 2022 WL 872909, at *1 (D. Minn. Mar. 24, 2022) ("A class-action settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). Indeed, "[t]he

---

[2]   All citations are omitted and emphasis is added throughout unless otherwise noted.

presumption in favor of such settlements reflects courts' understandings that vigorous negotiations between experienced counsel protect against collusion and advance the fairness concerns underlying Rule 23(e)." *Yarrington v. Solvay Pharms., Inc.*, No. 09-CV-2261 (RHK/RLE), 2010 WL 11453553, at *7 (D. Minn. Mar. 16, 2010).

Pursuant to Rule 23, a court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) directs the court to consider whether:[3]

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Eighth Circuit has also established four factors which overlap with those in Rule 23(e)(2) for determining whether a proposed settlement is fair, reasonable, and adequate: "the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th

---

[3]    Amended Rule 23(e) identifies specific factors for district courts to assess in evaluating fairness, reasonableness, and adequacy. The "goal of this amendment is not to displace any [of the circuit's unique] factor[s]." Fed. R. Civ. P. 23(e)(2) (Advisory Committee Notes to 2018 Amendments, Subdivision (e)(2)).

4854-7768-2032.v2

Cir. 1988).  An analysis of the relevant factors weighs unequivocally in favor of granting final approval of the Settlement.

In exercising its discretion, the court's examination is limited to determining that the settlement agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned.  *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (judges should not substitute their judgment for that of the litigants); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) ("'neither the trial court in approving the settlement nor this Court in reviewing [the] approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute'") (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974), *abrogated sub nom. by Goldberger v. Integrated Res., Inc.*, 209 F.3d. 43 (2d Cir. 2000)).  "'The district court need not make a detailed investigation consonant with trying the case; it must, however, provide the appellate court with a basis for determining that its decision rests on well-reasoned conclusions and is not mere boilerplate.'" *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 17-2795 (MJD/KMM), 2021 WL 3080960, at *5 (D. Minn. July 21, 2021) ("*CenturyLink II*") (citing *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005)).

**B.  The Proposed Settlement Satisfies Both Rule 23(e)(2) and the Eighth Circuit Requirements**

As acknowledged by the Preliminary Approval Order, Lead Plaintiff has met all of the requirements imposed by Rule 23(e)(2).  ECF 156 at 5 ("the Court finds that the

proposed settlement is likely to satisfy [the Rule 23(e)(2)] requirements"). Courts analyzing the Rule 23(e)(2) factors have noted that satisfaction of these factors is virtually assured where, as here, little has changed between preliminary approval and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"). Applying these criteria and the requirements under Eighth Circuit jurisprudence warrants this Court's final approval.

### 1. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

To determine whether the "class representatives and class counsel have adequately represented the class" pursuant to Fed. R. Civ. P. 23(e)(2)(A), the Court must ascertain whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

At every stage of the Litigation, Lead Plaintiff and Lead Counsel have adequately represented the Class. Here, there is no conflict between Lead Plaintiff and the Class, and as this Court previously found, Lead Plaintiff's interests in this case are directly aligned with those of the other Class Members. ECF 156 at 6.

Lead Plaintiff also retained capable and experienced lawyers. The record reflects that Lead Plaintiff and Lead Counsel have diligently prosecuted this Litigation by, among

other things: conducting a thorough pre-trial investigation into the Class's claims; drafting a detailed amended complaint; opposing and largely defeating Defendants' motion to dismiss; conducting extensive fact discovery, including obtaining and reviewing nearly 100,000 documents, or over 1.2 million pages, produced by Defendants and third parties; diligently responding to discovery requests propounded by Defendants; conducting one fact deposition and preparing for multiple other depositions; litigating and briefing discovery disputes; and negotiating this proposed Settlement with the assistance of Michelle Yoshida, Esq., a well-known and experienced mediator.  *See generally* Price Declaration.  Lead Plaintiff and Lead Counsel stood ready to, and at all times did, advocate for the best interests of the Class.

### 2. The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator

When a "[s]ettlement was negotiated at arms' length between experienced and sophisticated counsel, . . . [there is a] presumption that it is fair and reasonable." *Phillips v. Caliber Home Loans, Inc.*, No. 19-cv-2711 (WMW/LIB), 2021 WL 3030648, at *6 (D. Minn. July 19, 2021) ("*Phillips I*").  Here, the parties, in consultation with client representatives, engaged in a full-day mediation session with Ms. Yoshida in October 2022. In preparation for the mediation, both sides submitted and exchanged mediation briefs in support of their respective positions.  Ms. Yoshida held separate pre-mediation discussions with the parties to probe the parties' positions on the strengths of the claims and defenses, the anticipated challenges of further litigation, and the estimated damages to the Class. Then, throughout the day-long mediation, both sides engaged in detailed, substantive

- 7 -

discussions with Ms. Yoshida, each advancing its perceived strengths and weaknesses of the Litigation. The mediation concluded without a resolution of the case. Over the following days, the parties continued to negotiate through Ms. Yoshida, and ultimately resolved the case for $5 million. Price Decl., ¶¶44-45. At all times, the negotiations were hard fought and at arm's length. *See CenturyLink I*, 2020 WL 7133805, at *6 (the utilization of "an experienced mediator" during settlement negotiations supports a finding that the settlement is reasonable and should be approved); *Phillips v. Caliber Home Loans, Inc.*, No. 19-cv-2711 (WMW/LIB), 2022 WL 832085, at *2 (D. Minn. Mar. 21, 2022) (settlement approved where the parties "participated in a full-day mediation session") ("*Phillips II*").

Because the Litigation had reached an advanced stage of fact discovery, the Settling Parties had a thorough understanding of their claims' respective strengths and weaknesses when engaging in substantive, arm's-length mediation. *See, e.g.*, *Brehm v. Capital Growth Fin. LLC*, No. 8:07-CV-254, 2010 WL 481008, at *2 (D. Neb. Feb. 4, 2010) (noting that considerations when approving a settlement include "whether a skilled mediator was involved" and "the settlement's timing, including whether discovery proceeded to the point where all parties were fully aware of the merits"); *CenturyLink I*, 2020 WL 7133805, at *6 (approving settlement reached "at a stage in the litigation in which the parties understood the strengths and weakness of their case").

### 3.    The Settlement Is Fair, Reasonable, and Adequate

Under Rule 23(e)(2)(C), in determining whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," courts

4854-7768-2032.v2

consider "'the merits of the plaintiff's case[] weighed against the terms of the settlement'" and "'the complexity and expense of further litigation.'" *Uponor,* 716 F.3d at 1063; *CenturyLink I,* 2020 WL 7133805, at *6. As set forth below, the record demonstrates that these factors weigh in favor of approval.

> **a.** **The Merits of the Claims, Weighed Against the Terms of the Settlement, Support Final Approval of the Settlement**

"The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Wireless,* 396 F.3d at 933. Courts have long recognized that securities fraud class actions such as this one present a myriad of risks that a plaintiff must overcome to ultimately secure a recovery. *See, e.g., In re Genworth Fin. Sec. Litig.,* 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) ("[S]ecurities fraud cases require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish.'").

In this Litigation, Lead Plaintiff alleged that Defendants violated federal securities laws because Defendants engaged in fraudulent schemes and misconduct, and/or made materially false and misleading statements and omissions, concealing from investors that: (i) to induce sales growth of Tactile's advanced pneumatic compression device, Flexitouch, Tactile engaged in illicit sales and marketing activities involving kickback schemes and the submission of false claims to the VA and CMS in violation of the AKS and FCA; (ii) Tactile's revenues were in part the product of unlawful conduct and were thus unsustainable; (iii) Tactile overstated its revenue from the VA and the CMS; (iv) while

- 9 -

Tactile publicly touted a $4 billion plus to $5 billion plus market opportunity for Flexitouch, in truth, its TAM was at least three times smaller; (v) because of the Company's engagement in kickback schemes, Tactile was not in compliance with federal laws and regulations, contrary to its public representations; and (vi) the *Qui Tam* Action had merit. The Complaint further alleged that as these deceptions were ongoing, Company-insiders engaged in millions of dollars-worth of insider trading. The Complaint alleged that Tactile's stock price was artificially inflated throughout the Class Period due to Defendants' alleged materially false and misleading statements and omissions and/or their fraudulent schemes, and that shareholders were harmed when the truth about that fraud was disclosed. Price Decl., ¶18.

Despite Lead Plaintiff's belief that its claims were meritorious, there were significant risks to proceeding, especially with respect to establishing falsity and/or scheme, scienter, loss causation, and damages. *Id*., ¶¶8-10, 53-54.

Defendants had forcefully contended and would continue to argue that Lead Plaintiff could not establish that Defendants made any materially misleading statements or omissions, or that they had conducted fraudulent schemes. *See* ECF 65. Defendants repeatedly asserted that their sales and marketing practices had not violated the AKS and FCA, and that these sales practices were proper and compliant with the law. As evidence that the claims alleging Tactile's payments of illegal kickbacks were meritless, Defendants persistently pointed to the voluntary dismissal of the *Qui Tam* Action. Thus, they argued that Lead Plaintiff could not prove that Defendants' statements regarding Tactile's revenue growth, Tactile's compliance with the law, or the merits of the *Qui Tam* Action were false

- 10 -

4854-7768-2032.v2

or misleading. Defendants have also maintained that their statements about Tactile's market size were not false since they were forward-looking estimates that Defendants warned could be incorrect. Because Defendants asserted that their sales practices were proper, they argued that Lead Plaintiff could not make a showing that the Individual Defendants had the requisite scienter. To further negate an inference of scienter, the Individual Defendants asserted that their insider sales were not suspicious by pointing to their Rule 10b5-1 plans. Price Decl., ¶¶8, 20, 53.

Even if Lead Plaintiff ultimately prevailed in proving falsity, scheme, and scienter, this Litigation would have involved significant risks with respect to establishing loss causation and damages. *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 841-42 ("[P]laintiffs at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony . . . . The high risk faced by taking the case to a jury verdict demonstrates the adequacy of this . . . settlement."). The first alleged disclosure causing Lead Plaintiff's loss came after an amended complaint in the *Qui Tam* Action was unsealed on March 20, 2019, but because it took market analysts two days to publish reports regarding the complaint, Lead Plaintiff faced challenges relating to whether the news had in fact caused Tactile's stock to decline. Regarding the second alleged disclosure causing a decline in Tactile's stock price, Lead Plaintiff anticipated challenges that the disclosure, arising from a short-seller's report, was not corrective because it reported on purportedly already-public information, including details alleged in the *Qui Tam* Action. Price Decl., ¶9. To prove loss causation and calculate classwide damages would entail the assistance (and expense) of an expert, who in all

- 11 -

likelihood, would be challenged by the competing opinions of Defendants' expert(s).  Such an anticipated "battle of the experts" increased the risk and uncertainty of Lead Plaintiff's ability to withstand summary judgment and prove all the elements of its claims at trial. ¶¶9, 54.

While Lead Plaintiff believes it had strong counterarguments on all of these points, at bottom, the fact remains that the Court at summary judgment or the jury at trial could have found such arguments persuasive, thereby significantly reducing or even completely eliminating recoverable damages.  *See, e.g.*, *DeBruycker v. PM Beef Holdings, LLC*, No. CV-02-3925 (MJD/JGL), 2005 WL 681298, at \*1 (D. Minn. Mar. 2, 2005) (defendants' advancement of arguments that "if successful, would have reduced [Lead Plaintiff's] ultimate recovery" justified the settlement).  Furthermore, Lead Plaintiff anticipated Defendants to strenuously challenge Lead Plaintiff's motion for class certification.  Thus, "without settlement, the case would """likely drag on for years, [and] require the expenditure of millions of dollars, all the while class members would receive nothing.""" *Yarrington*, 2010 WL 11453553, at \*9; *see also* *Phillips I*, 2021 WL 3030648, at \*6 ("continued litigation likely would take several years to resolve").

### b.      The Complexity and Expense of Further Litigation Supports Final Approval of the Settlement

Courts have consistently recognized that the complexity, expense, and likely duration of the litigation are critical factors in evaluating the reasonableness of a settlement, especially when the settlement being evaluated is a securities class action.  *See, e.g.*, *Phillips II*, 2022 WL 832085, at \*3 ("'many of the immediate and tangible benefits' of

- 12 -

settlement would be lost through continued litigation, making the proposed settlement 'an attractive resolution' of the case"); *CenturyLink I*, 2020 WL 7133805, at *7 ("even if [Lead Plaintiff] were successful, the . . . costs and risks of continued litigation in such a large, complex case would be significant"). This case, with numerous intricate legal and factual issues – including those related to the securities fraud elements of falsity and/or scheme, scienter, loss causation, and damages, as well as the underlying violations of the AKS and FCA – was no exception.

Without a settlement, this case would require the expenditure of substantial additional time and money, "'all the while class members would receive nothing.'" *Wireless*, 396 F.3d at 933. Assuming the Court certified the Class, and Lead Plaintiff successfully defeated Defendants' likely motions for summary judgment and to exclude Lead Plaintiff's loss causation and damages expert, a trial in this case could take weeks and would be a laborious undertaking for the Court and jurors. *See In re AOL Time Warner, Inc.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) (due to its "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials"). And even if Lead Plaintiff prevailed at trial, post-trial motions and appeals certainly would follow, during which time the Class would receive no distribution of any damages awarded. In addition, a post-trial motion or an appeal of any favorable verdict would carry the risk of reversal, in which case the Class would receive no recovery at all – ever. *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming a lower court ruling that granted defendants' motion for judgment as a matter of law based on plaintiff's failure to prove loss causation,

- 13 -

thereby overturning a jury verdict in plaintiff's favor).  Accordingly, analysis of this factor supports final approval of the Settlement.

### 4. Defendants' Financial Condition Supports Final Approval of the Settlement

Defendants have mounted a vigorous defense for years, and the funds available to satisfy a settlement or judgment were being depleted by defense and litigation costs – and would continue to be expended the longer the Litigation continued.  Accordingly, this factor weighs in support of final approval of the Settlement.

### 5. The Reaction of the Class to Date Supports Final Approval of the Settlement

Pursuant to this Court's Preliminary Approval Order, the Court-approved Notice and Proof of Claim and Release were mailed to potential Class Members who could be identified with reasonable effort and the Summary Notice was published in *The Wall Street Journal*, and transmitted over *Business Wire*.  Gilardi Decl., ¶¶5-12.  The Notice advises the Class of the terms of the Settlement and the Plan of Allocation as well as the procedure and deadline for filing objections.  As of July 13, 2023, over 22,000 Notices and Proofs of Claim and Release have been mailed to potential Class Members and nominees.  *Id.*, ¶11.

The objection deadline is August 2, 2023, and to date, no objections have been received to the Settlement, the Plan of Allocation, or Lead Counsel's request for an award of attorneys' fees and expenses.  There have been no requests for exclusion from the Class.  *See id.*, ¶16.[4]

---

[4]   Even if there are objection(s), "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement."  *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).  "'A certain number of . . .

- 14 -

### 6.      All Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of: (a) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (b) "the terms of any proposed award of attorney's fees, including timing of payment"; and (c) "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors support approval of the Settlement or are neutral and do not suggest any basis for inadequacy of the Settlement.

First, the procedures for processing Class Members' claims and distributing the proceeds of the Settlement to eligible claimants in this case are well-established, effective methods that have been widely used in securities class-action litigation. The proceeds of the Settlement will be distributed on a *pro rata* basis to Class Members who submit eligible Proofs of Claim and Release with required documentation to the Court-appointed Claims Administrator, Gilardi & Co. LLC ("Gilardi"). Gilardi will provide claimants with an opportunity to cure any deficiencies in their claims or request review by the Court of a claim denial and will mail or wire eligible claimants their *pro rata* share upon completion of the claims process.

After the Effective Date of the Settlement, in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the

---

objections are to be expected in a class action . . . ."" *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

- 15 -

4854-7768-2032.v2

Court as may be necessary or as circumstances may require, the Net Settlement Fund will be distributed to Authorized Claimants. If there is any balance remaining in the Net Settlement Fund after the initial distribution, and it would be feasible and economical to conduct a further distribution, Gilardi will conduct a further distribution of remaining funds among Authorized Claimants who have cashed their initial checks. Any *de minimis* balance that still remains after re-distributions and after payment of outstanding expenses and Taxes, if any, shall be contributed to one or more non-profit and non-sectarian organizations unaffiliated with any party or their counsel. *See* Stipulation (ECF 147 at ¶5.10).

The relief provided for the Class is also adequate when the terms of the proposed award of attorneys' fees are taken into account. As discussed in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, the proposed attorneys' fees of 30% of the Settlement Fund, to be paid upon approval by the Court, are reasonable in light of the efforts of Lead Counsel and the risks in the Litigation. Moreover, approval of attorneys' fees is entirely separate from approval of the Settlement in this case, and neither Lead Plaintiff nor Lead Counsel may terminate the Settlement based on any ruling with respect to attorneys' fees. *See* Stipulation, ¶6.4.

Courts must also consider the fairness of a proposed settlement in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the only agreements between the Settling Parties concerning the Settlement are the Memorandum of Understanding memorializing the agreement in

- 16 -

principle, the Stipulation, and the parties' confidential Supplemental Agreement, which sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Class exceed a certain specified threshold. *See* Stipulation, ¶7.3. This does not weigh against approval. *CenturyLink II,* 2021 WL 3080960, at *7 ("The Court routinely approves class action settlements when there is a confidential agreement allowing the defendant to terminate the settlement if a particular threshold of class members opt out. The existence of such an agreement does not weigh against approval."); *see also In re Signet Jewelers Ltd. Sec. Litig.,* No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) ("This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."). As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Class.

### 7.    The Settlement Treats Class Members Equitably Relative to Each Other

The proposed Settlement treats Members of the Class equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). As discussed below, pursuant to the Plan of Allocation, eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery based on their purchases or acquisitions of Tactile securities during the Class Period. Lead Plaintiff will receive the same type of *pro rata* recovery as all other Class Members.

4854-7768-2032.v2

Each of the above factors fully supports a finding that the Settlement is fair, reasonable, and adequate, and therefore deserves this Court's final approval.

## IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

Lead Counsel also seeks approval of the Plan of Allocation.  The Plan of Allocation is set forth in the Notice mailed to Class Members and provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Proof of Claim and Release.

Assessment of a plan of allocation in a class action under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable.  *See Lechner v. Mut. of Omaha Ins. Co.*, No. 8:18-CV-22, 2021 WL 424421, at *4 (D. Neb. Feb. 8, 2021) ("The Plan of Allocation for the Settlement Fund is approved as fair, reasonable, and adequate.").

The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible class members.  An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.  *White v. Nat'l Football League*, 822 F. Supp. 1389, 1420 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994).

Here, the Plan of Allocation, which was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members who submit valid Proofs of Claim and Release.  In developing the Plan of Allocation, Lead Plaintiff's damages expert calculated

- 18 -

the amount of estimated artificial inflation in the prices of Tactile's securities during the Class Period that allegedly was caused by Defendants' alleged false and misleading statements and omissions and/or schemes. Lead Plaintiff's expert did so by considering the price changes in Tactile's securities in reaction to the public disclosures that allegedly corrected the fraudulent statements, omissions, or schemes, adjusting the price change for factors that were attributable to market forces, and for non-fraud related Company-specific information. Price Decl., ¶¶14, 64.

Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the proceeds among Class Members who submit valid Proofs of Claim and Release and, thus, it should be approved. Significantly, no one has objected to the Plan of Allocation. Courts routinely approve substantially similar methods of distributing recoveries in securities class actions such as this one, and Lead Plaintiff respectfully submits that this Court should approve the Plan of Allocation submitted here. *See, e.g.*, *Plymouth Cnty. Ret. Sys. v. Patterson Cos.*, No. 0:18-cv-00871-MJD-HB, 2022 WL 2111237, at \*1 (D. Minn. June 10, 2022); *Uniti*, Master File No. 4:19-cv-00756-BSM (ECF 144) (E.D. Ark. Nov. 7, 2022); *Strathclyde Pension Fund v. Bank OZK*, No. 4:18-cv-793-DPM, 2022 WL 6325251, at \*2 (E.D. Ark. Sept. 23, 2022); *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, No. 17-cv-0304-WJM-NRN, 2021 WL 1387110, at \*5 (D. Colo. Apr. 13, 2021) (approving as fair and reasonable a similar plan); *Campbell v. Transgenomic, Inc.*, No. 4:17-CV-3021, 2020 WL 2946989, at \*5 (D. Neb. June 3, 2020) (finding "formula for the calculation of the claims of the authorized claimants" was "a fair and reasonable basis upon which to allocate the proceeds of the settlement fund").

- 19 -

4854-7768-2032.v2

## V.   THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In its motion for preliminary approval of the Settlement, Lead Plaintiff requested that the Court certify the Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Class Members to object to the Settlement, request exclusion from the Class, or submit Proofs of Claim and Release, could be issued. ECF 146 at §VI. In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Court found that Lead Plaintiff had met the requirements for certification of the Class for purposes of the Settlement. ECF 156 at 10-15. Specifically, in the Preliminary Approval Order, the Court preliminarily certified a class of "all Persons who purchased or otherwise acquired Tactile publicly traded securities during the period from May 7, 2018, through June 8, 2020, inclusive, and who were damaged thereby." *Id.* at 17. In addition, the Court preliminarily certified Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel. *Id.* at 18.

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Class for settlement purposes. Thus, for all the reasons stated in Lead Plaintiff's motion for preliminary approval (incorporated herein by reference), Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying out the Settlement pursuant to Federal Rules of Civil Procedure 23(a) and

4854-7768-2032.v2

23(b)(3), and appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel.

## VI.     THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS AND IS REASONABLE

Rule 23(c)(2) requires the "'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Eisen v. Carlisle & Jaquelin*, 417 U.S. 156, 173 n.11 (1974) (class notice designed to fulfill due process requirements). "The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." Fed. R. Civ. P. 23(e)(1)(B). The standard for measuring the adequacy of a class action settlement notice is reasonableness. *Bredthauer v. Lundstrom*, No. 4:10-CV-3132, 2012 WL 4904422, at *3 (D. Neb. Oct. 12, 2012); *Reynolds v. Credit Bureau Servs., Inc.*, No. 8:15-CV-168, 2016 WL 389977, at *5 (D. Neb. Feb. 1, 2016) (stating notice is adequate if "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'").

Here, in accordance with the Preliminary Approval Order, beginning on May 25, 2023, the Claims Administrator caused the Notice and Proof of Claim and Release to be mailed to potential Class Members and their nominees. Gilardi Decl., ¶¶5-10. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*. *Id.*, ¶12. As of July 13, 2023, over 22,000 copies of the Notice have been mailed to potential Class Members and nominees. *Id.*, ¶11. The Notice contains a description of the claims asserted, the Settlement, the Plan of Allocation, and Class

- 21 -

4854-7768-2032.v2

Members' rights to participate in and object to the Settlement or the fees and expenses that Lead Counsel intend to request, or to exclude themselves from the Class. Information regarding the Settlement, including downloadable copies of the Notice and Proof of Claim and Release, was also posted on a website devoted solely to the administration of the Settlement: www.TactileSecuritiesSettlement.com. *Id.*, ¶14.

The notice program, approved by the Court, which combined an individual, mailed Notice and Proof of Claim and Release to all potential Class Members and nominees who could be identified with reasonable effort, and a Summary Notice published in a preeminent business publication and on a dedicated website, contained all of the information required by §21D(a)(7) of the PSLRA, and is adequate to meet the due process and Rules 23(c)(2) and (e) requirements for providing notice to the Class. *In re: E.W. Blanch Holdings, Inc. Sec. Litig.*, No. 01-258 (JNE/JGL), 2003 WL 23335319, at *1 (D. Minn. June 16, 2003) (approving similar notice program); *Klug v. Watts Regul. Co.*, No. 8:15-CV-61, 2016 WL 7156478, at *7 (D. Neb. Dec. 7, 2016) (finding that "the combination of the summary postcard notice delivered by mail and the reference to a website that contains the complete notice, the claim form, the proposed settlement agreement, and other case information, is the best notice practicable under the circumstances").

## VII. CONCLUSION

Lead Plaintiff was prepared to bring this case to trial and believe that it would have won, but trial, and even litigating to that point, was certainly fraught with risk. As detailed herein, this $5,000,000 Settlement is an excellent result for the Class, and the product of

- 22 -

extensive litigation efforts and settlement negotiations, and it avoids the considerable risk, expense, and delay if the Litigation were to continue.  In addition, the Plan of Allocation will result in a fair and reasonable distribution of the proceeds.  Therefore, Lead Plaintiff respectfully requests that this Court approve the Settlement of this Litigation and the Plan of Allocation as fair, reasonable, and adequate.

DATED:  July 19, 2023

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
(admitted *pro hac vice*)
JESSICA T. SHINNEFIELD
(admitted *pro hac vice*)
ASHLEY M. PRICE
(admitted *pro hac vice*)
NICOLE Q. GILLILAND
(admitted *pro hac vice*)
JOSEPH J. TULL
(admitted *pro hac vice*)


s/ Ashley M. Price
ASHLEY M. PRICE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
jshinnefield@rgrdlaw.com
aprice@rgrdlaw.com
ngilliland@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 23 -

4854-7768-2032.v2

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiff

ZIMMERMAN REED LLP
CAROLYN G. ANDERSON, MN 275712
JUNE P. HOIDAL, MN 033330X
BEHDAD C. SADEGHI, MN 393374
1100 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
Telephone:  612/341-0400
612/341-0844 (fax)
Carolyn.Anderson@zimmreed.com
June.Hoidal@zimmreed.com
Behdad.Sadeghi@zimmreed.com

Local Counsel

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
(admitted *pro hac vice*)
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com

- 24 -

- 25 -

Counsel for Plaintiff Brian Mart

4854-7768-2032.v2