UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| BRIAN MART, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> TACTILE SYSTEMS TECHNOLOGY, INC., et al., <br><br> Defendants. | Civ. No. 0:20-cv-02074-NEB-DTS <br><br> <u>CLASS ACTION</u> <br><br> MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES |

4885-0255-8576.v2

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   HISTORY OF LITIGATION ........................................................................ 5

III.  THE LEGAL STANDARD GOVERNING THE AWARD OF
      ATTORNEYS' FEES ..................................................................................... 5

      A.   The Percentage-of-the-Fund Recovered Is the Preferred Approach
           for Awarding Attorneys' Fees in Common Fund Cases ............................ 5

      B.   Consideration of Relevant Factors Supports the Fee Requested ................. 7

           1.   The Benefit Conferred on the Class Supports a 30% Fee ................. 7

           2.   The Risks to Which Lead Counsel Was Exposed Supports the
                Requested Fee ................................................................................. 9

           3.   The Difficulty and Novelty of the Legal and Factual Issues of
                the Case Support the Requested Fee ................................................. 11

           4.   The Skill of the Lawyers Involved Supports the Fee Request ......... 16

           5.   Time and Effort Required Support the Fee Award .......................... 17

           6.   The Positive Reaction of the Class to Date ..................................... 19

           7.   The Fee Requested Reflects the Market Rate in Similar
                Complex Contingent Litigation........................................................ 20

IV.   COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED
      FOR THE CLASS ........................................................................................ 22

V.    CONCLUSION ............................................................................................. 23

4885-0255-8576.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ala. Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...................................................................... 2

*Blum v. Stenson*,
465 U.S. 886 (1984) .................................................................................... 21

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ...................................................................................... 5

*Campbell v. Transgenomic, Inc.*,
No. 4:17-CV-3021, 2020 WL 2946989
(D. Neb. June 3, 2020) ............................................................................... 20

*Carlson v. C.H. Robinson Worldwide, Inc.*,
No. CIV 02-3780, 2006 WL 2671105
(D. Minn. Sept. 18, 2006) ........................................................................... 20

*Cent. R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885) ...................................................................................... 5

*Guevoura Fund Ltd. v. Sillerman*,
No. 1:15-cv-07192-CM, 2019 WL 6889901
(S.D.N.Y. Dec. 18, 2019) .............................................................................. 9

*Hayes v. Harmony Gold Mining Co.*,
No. 08 Civ. 03653(BSJ)(MHD), 2011 WL 6019219
(S.D.N.Y. Dec. 2, 2011),
*aff'd*, 509 F. App'x 21 (2d Cir. 2013) ........................................................ 20

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071(RJH), 2005 WL 2757792
(S.D.N.Y. Oct. 24, 2005) ............................................................................ 20

*Huyer v. Buckley*,
849 F.3d 395 (8th Cir. 2017) ...................................................................... 18

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010) ........................................................ 10

4885-0255-8576.v2

**Page**

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
   MDL No. 17-2795, 2020 WL 7133805
   (D. Minn. Dec. 4, 2020) ...............................................................................*passim*

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) ........................................................ 11

*In re Ikon Office Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000).............................................................. 12, 21

*In re St. Jude Med., Inc. Sec. Litig.*,
   No. 0:10-cv-00851-SRN-TNL, 2015 WL 13647530
   (D. Minn. June 12, 2015) ........................................................................ 20

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   892 F.3d 968 (8th Cir. 2018) ................................................................... 18

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ........................................................ 6, 19, 20

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)................................................... 6, 7, 9

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974),
   *abrogated sub. nom. by Blanchard v. Bergeron*, 489 U.S. 87 (1989) ...................... 6, 7

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ..................................................................... 5

*Khoday v. Symantec Corp.*,
   No. 11-cv-180, 2016 WL 1637039
   (D. Minn. Apr. 6, 2016) ...............................................................................*passim*

*Lea v. Tal Educ. Grp.*,
   No. 18-CV-5480 (KHP), 2021 WL 5578665
   (S.D.N.Y. Nov. 30, 2021) ......................................................................... 9

*Luman v. Anderson*,
   No. 4:08-cv-00514-HFS, slip op. (W.D. Mo. July 23, 2013).................................... 20

4885-0255-8576.v2

**Page**

*Matter of Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ................................................................ 6, 21

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010) .............................................................................. 10

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ................................................................. 6

*Phillips v. Caliber Home Loans, Inc.*,
    No. 19-cv-2711, 2022 WL 832085
    (D. Minn. Mar. 21, 2022) .................................................................... 6, 16

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*,
    No. 0:18-cv-00871-MJD-HB, 2022 WL 2093054
    (D. Minn. June 10, 2022) ........................................................................ 19

*Public Pension Grp. v. KV Pharm. Co.*,
    No. 4:08-cv-1859 (CEJ), slip op.
    (E.D. Mo. Apr. 23, 2014) ....................................................................... 20

*Ray v. Lundstrom*,
    No. 8:10-CV-199, 2012 WL 5458425
    (D. Neb. Nov. 8, 2012) ........................................................................... 20

*Ret. Sys. v. Walmart Stores, Inc.*,
    No. 5:12-cv-5162, 2019 WL 1529517
    (W.D. Ark. Apr. 8, 2019) ....................................................................... 20

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................... 15

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    No. 1:14-cv-20880-UU, 2016 WL 10518902
    (S.D. Fla. Oct. 17, 2016) .................................................................... 12, 16

*Trs. v. Greenough*,
    105 U.S. 527 (1881) ................................................................................ 5

4885-0255-8576.v2

**Page**

*United States ex rel. Fesenmaier v. The Cameron-Ehlen Grp., Inc.*,
  No. 13-cv-3003, 2021 WL 101193
  (D. Minn. Jan. 12, 2021) ...................................................................................... 13

*United States v. Teva Pharms. USA, Inc.*,
  No. 13 Civ. 3702 (CM), 2019 WL 1245656
  (S.D.N.Y. Feb. 27, 2019) ..................................................................................... 14

*W. Wash. Laborers-Emp'rs Pension Tr. v. Panera Bread Co.*,
  No. 4:08-cv-00120-ERW, slip op.
  (E.D. Mo. June 22, 2011) ..................................................................................... 20

*Yarrington v. Solvay Pharms., Inc.*,
  697 F. Supp. 2d 1057 (D. Minn. 2010) ................................................... 16, 18, 19, 21

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78j(b) ............................................................................................................ 10, 12
  §78t(a) ............................................................................................................ 10, 12
  §78t-1 ........................................................................................................ 10, 12, 13
  §78u-4(a)(6) ........................................................................................................... 1

42 U.S.C.
  §1320a-7b.............................................................................................................. 10

## SECONDARY AUTHORITIES

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements:*
  *2022 Review and Analysis*, Appendix 3 (Cornerstone Research 2023),
  available at https://securities.stanford.edu/research-reports/1996-
  2022/Securities-Class-Action-Settlements-2022-Review-and-
  Analysis.pdf ......................................................................................................... 8

4885-0255-8576.v2

Pursuant to Rule ("Rule") 23(h) of the Federal Rules of Civil Procedure, Court-appointed Lead Counsel Robbins Geller Rudman & Dowd LLP ("Lead Counsel") respectfully submits this Memorandum of Law in Support of its Motion for: (i) an award of attorneys' fees to Plaintiff's Counsel[1] of 30% of the Settlement Fund; and (ii) payment of Plaintiff's Counsel's expenses.

## I.    INTRODUCTION

After over two years of hard-fought litigation, all on a contingent basis and with no guarantee of ever being paid, Lead Counsel obtained a $5 million settlement on behalf of the Class.  The Settlement is a highly favorable result and was achieved through the skill, unabated hard work, and effective advocacy of Lead Counsel.  As compensation for its efforts in achieving this result, Lead Counsel seeks, on behalf of Plaintiff's Counsel, an award of attorneys' fees of 30% of the Settlement Amount, plus expenses incurred in prosecuting the Litigation in the amount of $123,248.81, plus interest on these amounts at the same rate and for the same period as that earned by the Settlement Fund.[2]

The requested attorneys' fees are warranted in light of the highly favorable recovery obtained for the Class, the extensive efforts of counsel in obtaining this result, and the

---

[1]    All capitalized terms used herein have the meanings assigned to them in the Stipulation of Settlement, dated February 28, 2023 ("Stipulation") (ECF 147) or in the Declaration of Ashley M. Price in Support of: (I) Final Approval of Class Action Settlement and Approval Plan of Allocation, and (II) an Award of Attorneys' Fees and Expenses ("Price Declaration" or "Price Decl."), submitted herewith.  All exhibits referenced herein are attached to the Price Declaration.

[2]    Under the PSLRA, fees and expenses awarded to counsel for the class include "prejudgment interest actually paid to the class."  15 U.S.C. §78u-4(a)(6).

- 1 -

significant risks in bringing and prosecuting this Litigation. Defendants mounted a resilient defense throughout the Litigation, raising numerous legal and factual obstacles at motion to dismiss and in discovery. Nevertheless, Lead Counsel overcame these hurdles to successfully oppose Defendants' motion to dismiss and, despite their objections, secure the production of thousands of Defendants' documents, permitting Lead Counsel to develop the merits of the case and ultimately negotiate a successful outcome on behalf of the Class.

The Litigation is subject to the provisions of the PSLRA and therefore was extremely risky and difficult from the outset. The effect of the PSLRA is to make it more difficult for investors to bring and successfully resolve securities class actions. "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Ala. Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Despite these risks, Lead Counsel undertook representation of the Class on a contingent fee basis.

In addition to these risks, the investigation, prosecution, and settlement of this Litigation required great skill and an extensive effort by Lead Counsel. Lead Counsel marshalled considerable resources and committed substantial amounts of time and expenses to prosecute the Litigation. As set forth in more detail in the Price Declaration submitted herewith, Lead Counsel, among other things: (i) conducted a thorough pre-trial investigation into the Class's claims; (ii) drafted a detailed amended complaint; (iii) successfully opposed Defendants' motion to dismiss; (iv) engaged in extensive fact discovery including requesting, negotiating for and reviewing over 1.2 million pages of documents, taking one deposition, preparing for multiple more, and responding to written

- 2 -

4885-0255-8576.v2

discovery; (v) litigated several discovery disputes; and (vi) participated in settlement negotiations, including preparing a mediation brief and attending a formal mediation session with a well-known and experienced mediator. In total, Plaintiff's Counsel spent over 7,300 hours in prosecuting this Litigation with an aggregate lodestar of over $4.1 million.[3]

Further, the Court should consider the Class's reaction to the attorneys' fees and expenses which counsel seek. Over 22,000 copies of the Notice in the form approved by the Court have been mailed to potential Class Members and their nominees. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*.[4] The Notice advises Class Members that Lead Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund plus expenses not to exceed $139,000. While the August 2, 2023 deadline for objecting to the requested attorneys' fees and expenses has not passed, to date, not a single objection to Lead Counsel's fee and expense request has been received.

---

[3] *See* Declaration of Ashley M. Price Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Fee Decl."); Declaration of June P. Hoidal Filed on Behalf of Zimmerman Reed LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Zimmerman Reed Fee Decl."); Declaration of Lucas E. Gilmore Filed on Behalf of Hagens Berman Sobol Shapiro LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Hagens Berman Fee Decl."), submitted herewith. Price Decl., Exs. C-E.

[4] *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Gilardi Decl."), ¶¶11-12, submitted herewith. Price Decl., Ex. B.

4885-0255-8576.v2

Lead Counsel firmly believes that the Settlement is the result of its tireless efforts as well as its reputation as attorneys who are unwavering in their dedication to the interests of the Class and unafraid to zealously prosecute a meritorious, though difficult, case through trial and subsequent appeals.  In a case asserting claims based on complex legal and factual issues, and opposed by skilled and experienced defense counsel, Lead Counsel succeeded in securing a highly favorable result for the Class.  The fact that Lead Counsel secured the Settlement of $5 million is even more notable when considering a related *qui tam* case, which made substantially similar factual allegations claiming Tactile, to increase the sales of Flexitouch, its flagship product, paid kickbacks to medical professionals and submitted false claims to federal healthcare providers.  *See U.S. ex rel. Veterans First Medical Supply, LLC v. Tactile Systems Technology, Inc.*, No. 4:18-cv-02871 (S.D. Tex.) (the "*Qui Tam* Action").  There, the *qui tam* plaintiff voluntarily dismissed the case on the eve of trial and recovered nothing.  *Id.* at ECFs 293-296.  In this light, the 30% fee requested is fair and reasonable when considered under the applicable standards, the substantial risks of bringing and pursuing this Litigation, the extensive litigation efforts required, and the results achieved for the Class – especially when juxtaposed against the voluntary dismissal of the *Qui Tam* Action.  Lead Counsel also submits that the expenses requested are reasonable in amount and were necessarily incurred for the successful prosecution of this Litigation.

Importantly, Lead Plaintiff supports the fees and expenses requested by Lead Counsel.  *See* Declaration of Deborah L. Martin on behalf of St. Clair County Employees' Retirement System ("Lead Plaintiff Decl."), submitted herewith.  Price Decl., Ex. A.  Lead

- 4 -

Plaintiff was actively involved throughout the Litigation and believes that the Settlement represents a favorable recovery for the Class. *Id.* Because of this involvement, Lead Plaintiff is in a unique position to evaluate the work of counsel, the results achieved, and the effort required to obtain this highly favorable result.

For all the reasons discussed herein, and in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), the Price Declaration, and the accompanying declarations, Lead Counsel respectfully requests that the Court approve its request for an award of attorneys' fees and expenses.

## II.    HISTORY OF LITIGATION

The Court is respectfully referred to the Price Declaration for a detailed description of the procedural history of the Litigation, the efforts of counsel in obtaining this result, the negotiation and substance of the Settlement, the substantial risks and uncertainties of the Litigation, and the reasonableness of the fee and expense request.

## III.   THE LEGAL STANDARD GOVERNING THE AWARD OF ATTORNEYS' FEES

### A.    The Percentage-of-the-Fund Recovered Is the Preferred Approach for Awarding Attorneys' Fees in Common Fund Cases

It has long been recognized in equity that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of this doctrine is to avoid unjust enrichment and to spread litigation costs proportionately among all the beneficiaries. *Id.* This rule, known as the

4885-0255-8576.v2

common fund doctrine, is firmly rooted in American case law.  *See, e.g.*, *Trs. v. Greenough*, 105 U.S. 527 (1881); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

For its efforts in creating a $5 million common fund, Lead Counsel seeks a reasonable percentage of the fund recovered as attorneys' fees.  In *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996), the Eighth Circuit approved the percentage method in awarding attorneys' fees from a common fund.  Indeed, "[i]n the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'"  *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005).[5]  *See also Phillips v. Caliber Home Loans, Inc.*, No. 19-cv-2711 (WMW/LIB), 2022 WL 832085, at *6 (D. Minn. Mar. 21, 2022) (awarding one-third fee and noting that "[a] typical calculation of attorneys' fees in a class action involves the common fund doctrine, which is based on a percentage of the common fund recovered"); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (upholding 36% fee award).

Compensating counsel in common fund cases on a percentage basis makes good sense.  First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated on a percentage-of-the-recovery method.[6]

---

[5]    All emphasis is added and citations are omitted throughout unless otherwise noted.

[6]    Courts are encouraged to look to the private marketplace in setting a percentage fee. *See Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The judicial task might be simplified if the judge and the lawyers [spent] their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character.").

4885-0255-8576.v2

Second, it provides plaintiffs' counsel with a strong incentive to obtain the maximum possible recovery under the circumstances.

**B.      Consideration of Relevant Factors Supports the Fee Requested**

In examining the factors relevant to a fee award, the key issue is whether the requested fee is reasonable. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). Courts in this Circuit have used the factors cited in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated sub. nom. by Blanchard v. Bergeron*, 489 U.S. 87 (1989), in assessing the reasonableness of the fee request:

> "(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee for similar work in the community; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The undesirability of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases."

*In re CenturyLink Sales Pracs. & Sec. Litig.*, MDL No. 17-2795 (MJD/KMM), 2020 WL 7133805, at \*11 (D. Minn. Dec. 4, 2020). However, "[b]ecause 'not all of the individual *Johnson* factors will apply in every case, [ ] the court has wide discretion as to which factors to apply and the relative weight to assign to each.'" *Id.* (alterations in original). As discussed in detail below, consideration of these factors wholly confirms the reasonableness of the fee requested.

**1.      The Benefit Conferred on the Class Supports a 30% Fee**

"The benefit conferred to the class and the result achieved is accorded particular weight here." *Xcel Energy*, 364 F. Supp. 2d at 994. Through the diligent pursuit of the

- 7 -

4885-0255-8576.v2

Class's claims and skillful negotiation, Lead Counsel obtained a Settlement of $5 million, plus earned interest. The benefit conferred to the Class is particularly notable when compared to the $0 recovery obtained by the *Qui Tam* Action's plaintiff, who had brought similar allegations of Defendants' misconduct, had completed discovery, briefed and argued summary judgment, and was on the brink of trial. As a result, Defendants repeatedly pointed to the *Qui Tam* Action to assert that this Litigation should likewise result in no recovery. In that context, therefore, the $5 million recovery is significant and should be given considerable weight.

Moreover, the successful recovery for the Class was achieved through Lead Counsel's focused litigation efforts and contentious, arm's-length negotiations. Lead Counsel put together an experienced team of lawyers, professionals, and experts who are responsible for this noteworthy and hard-fought result. Given the defenses to liability and damages raised by Defendants in their motion to dismiss and during the settlement negotiations, the Settlement is a highly favorable outcome.

This Settlement also confers a substantial and certain benefit on the Class – in contrast to the considerable delays, costs, and uncertainty inherent in further litigation. Thus, the $5 million recovery represents an excellent result for the Class, and exceeds the median percentage of total damages for securities class actions settled in the Eighth Circuit between 2013 and 2022. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis*, at 19, Appendix 3 (Cornerstone Research 2023) ("Cornerstone Report"), available at https://securities.stanford.edu/research-reports/1996-2022/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.

4885-0255-8576.v2

### 2.    The Risks to Which Lead Counsel Was Exposed Supports the Requested Fee

Lead Counsel undertook this Litigation on a contingent fee basis, assuming a significant risk that the Litigation would yield no recovery and leave them uncompensated. Unlike counsel for Defendants, who are paid an hourly rate and paid for their expenses on a regular basis, Plaintiff's Counsel have not been compensated for any time or expense since this case began in 2020, expending over 7,300 hours of attorney and professional time equating to over $4.1 million in lodestar and incurring more than $123,000 in expenses throughout the course of over two years of litigation. Lead Counsel knew that if its efforts were not successful, it would not generate a fee and its expenses would not be paid. *See Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *19 (S.D.N.Y. Dec. 18, 2019) ("Lead Counsel understood from the outset that they were embarking on a complex, and potentially expensive and lengthy litigation, which would require the investment of thousands of hours of attorney time, with no guarantee of ever being compensated for their investment of such time and money."); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) ("'Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.'").

While securities class action cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in achieving a successful outcome. Indeed, the risk of no recovery in complex cases of this type is very real. There are numerous cases where plaintiffs' counsel in contingent cases such as this, after expending

- 9 -

4885-0255-8576.v2

thousands of hours, have received no compensation despite their diligence and expertise. As the court in *Xcel* recognized: "The risk of no recovery in complex cases of this sort is not merely hypothetical. Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." 364 F. Supp. 2d at 994.

For example, in *In re Oracle Corp. Sec. Litig.*, a case that Lead Counsel prosecuted, the court granted summary judgment to defendants after eight years of litigation, and after plaintiffs' counsel incurred over $6 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million. No. C 01-00988 SI, 2009 WL 1709050, at *1 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Indeed, even the most promising case can be eviscerated by a sudden change in the law after years of litigation. In *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010), 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of some 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010), after plaintiffs had completed extensive foreign discovery.

Here, the risks of undertaking the Litigation were present throughout. As detailed in the Settlement Memorandum and Price Declaration, Defendants argued vigorously that Lead Plaintiff could not establish its claims, and would not recover any damages. To establish its claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), Lead Plaintiff must prove that Defendants made material misrepresentations or omissions, and/or conducted a fraudulent scheme, that they had intent to deceive investors, and that their fraud caused investors' losses – most of which

- 10 -

Defendants had already forcefully challenged in their motion to dismiss. In addition, Defendants disputed Lead Plaintiff's underlying allegations that Defendants' sales and marketing practices had violated the Anti-Kickback Statute ("AKS"), 42 U.S.C. §1320a-7b, and the False Claims Act ("FCA"). Defendants further challenged the insider trading claim brought under §20A of the Exchange Act. Lead Counsel expected to confront comprehensive and forceful challenges to these issues in Defendants' anticipated summary judgment motion, as well as strenuous arguments against class certification. Price Decl., ¶¶8-10, 20, 53.

While Lead Plaintiff believes it has strong counterarguments to Defendants' arguments, the fact remains that the Court at class certification or summary judgment, or the jury at trial, could have found any of Defendants' arguments persuasive, thereby significantly reducing or even completely eliminating recoverable damages. Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a successful result would be realized only after considerable and difficult effort. Lead Counsel committed significant resources of both time and money to vigorously and successfully prosecute this Litigation for the Class's benefit.

### 3.    The Difficulty and Novelty of the Legal and Factual Issues of the Case Support the Requested Fee

The difficulty and novelty of the issues involved in a case are significant factors to be considered in making a fee award. *See, e.g.*, *CenturyLink*, 2020 WL 7133805, at *12 (supporting fee award where plaintiffs' counsel "faced challenging legal and factual issues

- 11 -

in pursuing nationwide claims and relief," the defendant company "mounted a strong defense," and plaintiffs' counsel faced "complex issues that required intensive discovery and briefing"); *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2016 WL 1637039, at *10 (D. Minn. Apr. 6, 2016) ("[t]his factor weighs in favor of the fees requested by counsel" where "there is every indication that the legal and factual issues are complex").

Securities class actions present inherently complex and novel issues. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) ("securities fraud cases require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish'"); *see also Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) ("'[a] securities case, by its very nature, is a complex animal'"). Additionally, as discussed above, passage of the PSLRA has made the successful prosecution of securities cases more complex and uncertain. *See In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

From the outset, this PSLRA action was a difficult and highly uncertain securities case that involved highly complex issues of law and convoluted facts. At its core, the Litigation alleged that Defendants had made kickback payments to physicians and other medical personnel to induce sales of Tactile's flagship product known as Flexitouch, and that therefore, Defendants made materially false and misleading representations regarding Tactile's reported revenue growth, Tactile's compliance with federal laws and regulations, and the merits of the *Qui Tam* Action, and made omissions violating Item 303 of

- 12 -

Regulation S-K. Thus, to be successful at trial, Lead Plaintiff needed to prove not only securities fraud claims brought under §§10(b), 20(a), and 20A of the Exchange Act, but also that Defendants had engaged in the alleged underlying kickback schemes, violating the AKS and the FCA. Additionally, Lead Plaintiff alleged that Defendants materially overstated the market size for Flexitouch, or its total addressable market ("TAM"). Lead Plaintiff further alleged that Defendants were knowing or reckless in making materially false or misleading statements or omissions, and/or conducting fraudulent schemes. Besides alleging Defendants' access to facts contradicting their public statements, Lead Plaintiff alleged that Defendants were motivated to perpetrate securities fraud to pocket millions of dollars in insider sales. Lead Plaintiff alleged Defendants' material misrepresentations and omissions, and their fraudulent schemes, caused the price of Tactile securities to trade at artificially inflated levels during the Class Period, and further, that corrective disclosures revealing Defendants' fraud caused damages to Lead Plaintiff and the rest of the Class. Finally, in addition to claiming that Defendants' insider trading was evidence of Defendants' scienter under §10(b), Lead Plaintiff also alleged that Defendants' insider trading violated §20A of the Exchange Act.

Addressing – and ultimately proving – these numerous claims and issues involved in-depth analysis of complicated legal questions, required obtaining considerable amounts of evidence through document productions and deposition testimony, and necessitated the consultation of experts. Indeed, as demonstrated by Lead Plaintiff's numerous discovery requests, the 17 document subpoenas to non-parties, the over 1.2 million pages of documents produced and reviewed, and the several contentious discovery disputes, "[t]he

- 13 -

4885-0255-8576.v2

process and scope of discovery in this case is indicative of the issues' complexity." *Khoday*, 2016 WL 1637039, at *10. As discussed in the Price Declaration and as set forth above, substantial risks and uncertainties in this Litigation made it far from certain that Lead Counsel would secure any recovery, let alone $5 million.

Indeed, while securities cases themselves are notoriously challenging to litigate, this case's complexity was compounded by having to establish underlying violations of the AKS and FCA – both of which have their own complex requirements. *See United States ex rel. Fesenmaier v. The Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003 (WMW/DTS), 2021 WL 101193 (D. Minn. Jan. 12, 2021) (discussing the complexities of multiple elements of the AKS and FCA); *United States v. Teva Pharms. USA, Inc.*, No. 13 Civ. 3702 (CM), 2019 WL 1245656 (S.D.N.Y. Feb. 27, 2019) (same). The risks presented by the AKS and FCA allegations were heightened by the fact that the plaintiff in the *Qui Tam* Action had litigated substantially similar claims against Defendants to the eve of trial, but had voluntarily dismissed its claims with no recovery. *See Qui Tam* Action, ECFs 293-296. Defendants repeatedly referenced the *Qui Tam* Action's dismissal and vigorously argued that because the *Qui Tam* Action's plaintiff could not prove the AKS and FCA violations after over three years of hard-fought litigation, neither could Lead Plaintiff.

Indeed, from this Litigation's inception, Defendants steadfastly maintained that they did nothing wrong, and that their sales practices were proper and complied with the law. Price Decl., ¶¶20, 53-54. Although Defendants' motion to dismiss was largely denied, difficult issues of proof remained as to key elements of Lead Plaintiff's claims, including falsity and/or scheme, scienter, loss causation, and damages. At the time the parties entered

- 14 -

into the Stipulation, two discovery motions brought by the parties were pending, including Lead Plaintiff's motion to compel seeking to expand the scope of Defendants' search for documents responsive to Lead Plaintiff's discovery requests.  As argued in that motion, a negative ruling by the Court would have considerably circumscribed the relevant documents Defendants had to produce regarding, among other critical issues, the Individual Defendants' knowledge of the kickback schemes.  *Id.*, ¶41.  Moreover, once discovery closed, Lead Plaintiff anticipated facing significant obstacles when it moved to certify the class and opposed Defendants' anticipated summary judgment motion.  *Id.*, ¶54.

Even if Lead Counsel successfully proceeded to trial and obtained a significant judgment for the Class, Lead Counsel's efforts to establish liability and damages in the Litigation, in all likelihood, would not end with a judgment in this Court, but would continue through one or more levels of appellate review.  In cases such as this, even a victory at trial does not guarantee ultimate success.  Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

4885-0255-8576.v2

In sum, this highly complex case has been extensively litigated and vigorously contested for multiple years, with no firm end in sight. Despite the difficulty of the issues raised, counsel secured a highly favorable result for the Class.

### 4. The Skill of the Lawyers Involved Supports the Fee Request

The quality of the representation by Lead Counsel and the standing of Lead Counsel are important factors that support the reasonableness of the requested fee. *See Khoday,* 2016 WL 1637039, at *10 ("The skill and extensive experience of counsel in complex litigation is relevant in determining fair compensation . . . ."). This Settlement was achieved by Lead Counsel, one of the preeminent class action securities litigation firms in the country, with decades of experience in prosecuting and trying complex class actions.[7] Lead Counsel's efforts were substantially assisted by the experience and expertise dedicated to the Litigation by Hagens Berman Sobol Shapiro LLP, counsel for plaintiff Brian Mart, and by Zimmerman Reed LLP, local counsel for Lead Counsel.[8] Lead Counsel's experience and skill were demonstrated by the efficient and effective prosecution of this Litigation, culminating in the highly favorable settlement before the Court. *Phillips*, 2022 WL 832085, at *6 ("the record reflects that [p]laintiffs' counsel are experienced and sophisticated, with years of experience in complex class-action litigation"). Indeed, Lead Counsel achieved a highly favorable result for the Class, due in

---

[7]    *See* the firm resume of Lead Counsel, which is attached as Ex. G to the Robbins Geller Fee Decl.

[8]    *See* Ex. C to the Hagens Berman Fee Decl. and Ex. E to the Zimmerman Reed Fee Decl.

- 16 -

4885-0255-8576.v2

large part to its experience and expertise in litigating complex class actions. *See CenturyLink*, 2020 WL 7133805, at \*12 ("Plaintiffs' Counsel has significant complex and class action litigation experience. They expended extensive time and money pursuing discovery and briefing several dispositive and non-dispositive motions. Despite significant pending motions, they managed to negotiate substantial classwide relief.").

The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work.[9] Defendants were represented by Faegre Drinker Biddle & Reath LLP, accomplished lawyers with significant expertise in defending complex actions. Price Decl., ¶79. Notwithstanding this formidable opposition, Lead Counsel's ability to present a strong case and to demonstrate its willingness and ability to continue to vigorously prosecute the Litigation through trial and the inevitable appeals enabled Lead Counsel to achieve a favorable settlement for the Class.

### 5.    Time and Effort Required Support the Fee Award

The time and labor expended by Lead Counsel in prosecuting this Litigation firmly support the requested fee. *See, e.g.*, *Khoday*, 2016 WL 1637039, at \*10 ("Since this litigation began, Plaintiffs' counsel has expended nearly 20,000 hours to litigate and resolve this dispute, exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the class.").

---

[9]    *See, e.g.*, *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (finding the fact that defendant's attorneys "consist[ing] of multiple well-respected and capable defense firms" which "consistently challenged Plaintiffs throughout the litigation" supported class counsel's fee request); *Thorpe*, 2016 WL 10518902, at \*9 (finding fact that "Defense counsel have reputations for vigorous advocacy in the defense of complex civil cases such as this" favored approval of one-third fee award).

4885-0255-8576.v2

Lead Counsel dedicated considerable resources and time to the research, investigation, prosecution, and settlement of the Litigation. As described in the Price Declaration, these efforts included an extensive and comprehensive investigation, which included drafting a highly-detailed amended complaint. Thereafter, Lead Counsel researched, drafted, and successfully opposed Defendants' motion to dismiss, which also required thorough preparation for oral argument at the motion to dismiss hearing. Lead Counsel engaged in extensive fact discovery, reviewed more than 1.2 million pages of documents, reviewed, prepared, and produced over 17 thousand pages of documents on Lead Plaintiff's behalf, responded to written discovery requests, litigated discovery disputes, conducted a deposition, and prepared for multiple more. *See generally* Price Decl. Likewise, settlement negotiations required the preparation of a compelling mediation statement and engaging in robust arm's-length negotiations. In total, Plaintiff's Counsel spent more than 7,300 hours, representing over $4.1 million in attorney and professional support staff time.[10] In light of this effort, Lead Counsel moved the case along expeditiously and made every effort to limit duplicative efforts. *See Yarrington*, 697 F. Supp. 2d at 1063.

"When the Court uses the percentage-of-the-benefit method [to award attorneys' fees], it is not required to cross-check it against the lodestar method." *CenturyLink*, 2020 WL 7133805, at *13. However, the requested fee of 30% of the Settlement Fund, or

---

[10] Lead Counsel's work on this case will not end at final approval. Additional time will be spent working with Gilardi and the Class during the administration and distribution phases of the Litigation.

- 18 -

$1,500,000, represents a negative 0.35 multiplier to counsel's lodestar, confirming the reasonableness of the requested fee. *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018) (approving fee award that amounts to a negative lodestar multiplier and is 29% of settlement fund).[11]

Accordingly, Lead Counsel's extensive litigation efforts were reasonable and necessary to secure a significant monetary recovery on behalf of the Class, and fully support the requested fee award.

### 6.     The Positive Reaction of the Class to Date

In addition to Lead Plaintiff's approval of the requested attorneys' fees, the reaction of the Class to date also supports the requested fee. *See Khoday*, 2016 WL 1637039, at *11 ("This Court concludes that the settlement class supports Plaintiffs' counsel's request for attorney[s'] fees of 33-1/3 percent of the settlement fund."). As discussed above, as of July 13, 2023, the Court-appointed Claims Administrator, Gilardi, has disseminated more than 22,000 copies of the Notice and Proof of Claim and Release to potential Class Members and nominees informing them, among other things, that Lead Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund. While the deadline for objecting to Lead Counsel's fee request is August

---

[11]     In complex contingent litigation such as this Litigation, lodestar multipliers between 2 and 5 are commonly awarded. *See, e.g.*, *Khoday*, 2016 WL 1637039, at *11 (finding a multiplier of "less than two" to be "below the range of multipliers commonly accepted in other cases"); *Yarrington*, 697 F. Supp. 2d at 1065, 1067 (awarding fee representing a 2.26 multiplier, describing it as "modest" and "reasonable, given the risks of continued litigation, the high-quality work performed, and the substantial benefit to the Class"); *Huyer v. Buckley*, 849 F.3d 395, 400 (8th Cir. 2017) (approving multiplier of 2.4 and citing cases within the Eighth Circuit approving multipliers up to 5.6).

2, 2023, to date, not a single objection to the maximum fee (and expenses) set forth in the Notice has been received.  Should any objections be received, Lead Counsel will address them in its reply.

**7.    The Fee Requested Reflects the Market Rate in Similar Complex Contingent Litigation**

The requested fee of 30% of the Settlement Fund is in line with attorneys' fees repeatedly awarded by district courts in other complex class actions cases.  In this Circuit, "courts 'have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions.'"  *Yarrington*, 697 F. Supp. 2d at 1064 (quoting *U.S. Bancorp*, 291 F.3d at 1038) (affirming a fee award representing 36% of the settlement fund as reasonable).  *See also In re Uniti Group Inc. Sec. Litig.*, Master File No. 4:19-cv-00756-BSM (ECF 143) (E.D. Ark. Nov. 7, 2022) (approving fee of 30% of settlement fund in securities class action); *Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, No. 0:18-cv-00871-MJD-HB, 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (awarding 33-1/3% of $63 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Walmart Stores, Inc.*, No. 5:12-cv-5162, 2019 WL 1529517, at *1 (W.D. Ark. Apr. 8, 2019) (awarding 30% of $160 million settlement); *In re St. Jude Med., Inc. Sec. Litig.*, No. 0:10-cv-00851-SRN-TNL, 2015 WL 13647530, at *1 (D. Minn. June 12, 2015) (awarded 29% of $50 million settlement); *Campbell v. Transgenomic, Inc.*, No. 4:17-CV-3021, 2020 WL 2946989, at *3-*4 (D. Neb. June 3, 2020) (awarded 33.3% of nearly $2 million settlement); *U.S. Bancorp.*, 291 F.3d at 1038 (approving an attorneys' fee award of 36% of $3.5 million settlement fund); *Public Pension Grp. v. KV Pharm. Co.*, No. 4:08-cv-1859 (CEJ), slip op.

- 20 -

at 2 (E.D. Mo. Apr. 23, 2014), ECF 199 (awarding 30% of $12.8 million settlement); *Luman v. Anderson*, No. 4:08-cv-00514-HFS, slip op. at 1 (W.D. Mo. July 23, 2013), ECF 165 (awarding 30% of $4.25 million settlement); *Ray v. Lundstrom*, No. 8:10-CV-199, 2012 WL 5458425, at *4 (D. Neb. Nov. 8, 2012) (awarding 33.3% of $3.1 million settlement); *W. Wash. Laborers-Emp'rs Pension Tr. v. Panera Bread Co.*, No. 4:08-cv-00120-ERW, slip op. at 1 (E.D. Mo. June 22, 2011), ECF 103 (awarding 30% of $5.75 million settlement); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (awarding 35.5% of $15 million settlement).

Other courts are in accord. *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653(BSJ)(MHD), 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) (awarding 30% of $10 million settlement fund).[12] Because the requested fee accords with the fees awarded in numerous other complex class actions, its reasonableness is supported.

---

[12] The requested fee is also reasonable when compared to the private marketplace, a comparison encouraged by the courts. *See Cont'l Ill.*, 962 F.2d at 572. Supreme Court Justices Brennan and Marshall observed in their concurring opinion in *Blum*: "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 903 n.* (1984). Similarly, in the securities class action context, Judge Marvin Katz of the Eastern District of Pennsylvania noted that in private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery. *Ikon*, 194 F.R.D. at 194. These percentages are the prevailing market rates throughout the United States for contingent representation.

4885-0255-8576.v2

IV.   **COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE CLASS**

Lead Counsel also requests payment of the costs and expenses that it incurred to successfully prosecute and resolve this Litigation, plus interest on such amounts at the same rate as earned by the Settlement Fund.   "The requested costs must be relevant to the litigation and reasonable in amount."   *Yarrington*, 697 F. Supp. 2d at 1067.   As set forth in the individual firm fee declarations submitted herewith, Plaintiff's Counsel incurred litigation expenses in the amount of $123,248.81 in connection with the prosecution of the Litigation on behalf of the Class.   Here, "because counsel had no guarantee that these expenses would ever be reimbursed, Plaintiffs' Counsel had the incentive to keep the amounts reasonable."   *CenturyLink*, 2020 WL 7133805, at *13.   All of counsel's expenses are reasonable in amount given the scope and stage of the Litigation, and were necessary for the successful prosecution of the Litigation.   *See id.* ("'It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses.'").

The Notice informed potential Class Members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $139,000.   *See* Gilardi Decl., Ex. A, Notice at 2.   The amount of expenses for which payment is sought is $123,248.81 and to date, no Class Member has objected.

- 22 -

4885-0255-8576.v2

## V.    CONCLUSION

Based on the foregoing and upon the entire record herein, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 30% of the Settlement Fund, plus litigation costs and expenses in the amount of $123,248.81, in addition to the interest earned thereon at the same rate and for the same period as that earned on those portions of the Settlement Fund until paid.

DATED:  July 19, 2023

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
(admitted *pro hac vice*)
JESSICA T. SHINNEFIELD
(admitted *pro hac vice*)
ASHLEY M. PRICE
(admitted *pro hac vice*)
NICOLE Q. GILLILAND
(admitted *pro hac vice*)
JOSEPH J. TULL
(admitted *pro hac vice*)

s/ Ashley M. Price
ASHLEY M. PRICE

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
jshinnefield@rgrdlaw.com
aprice@rgrdlaw.com
ngilliland@rgrdlaw.com
jtull@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 23 -

4885-0255-8576.v2

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

Additional Counsel for Lead Plaintiff

ZIMMERMAN REED LLP
CAROLYN G. ANDERSON, MN 275712
JUNE P. HOIDAL, MN 033330X
BEHDAD C. SADEGHI, MN 393374
1100 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
Telephone:  612/341-0400
612/341-0844 (fax)
Carolyn.Anderson@zimmreed.com
June.Hoidal@zimmreed.com
Behdad.Sadeghi@zimmreed.com

Local Counsel

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
LUCAS E. GILMORE
(admitted *pro hac vice*)
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

- 24 -

- 25 -

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com

Counsel for Plaintiff Brian Mart

4885-0255-8576.v2