UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------------------------

|  |  |
|---|---|
| Brian Mart, et al., | ) File No. 20-cv-2074 |
|  | ) (NEB/DTS) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| Tactile Systems Technology, | ) Zoom Video Conference |
| Inc., et al., | ) Minneapolis, Minnesota |
|  | ) Wednesday, August 23 2023 |
| Defendants. | ) 10:09 a.m. |
|  | ) |

------------------------------------------------------------

BEFORE THE HONORABLE NANCY E. BRASEL
UNITED STATES DISTRICT COURT DISTRICT JUDGE
**(MOTIONS HEARING - DOCKET NO. 161)**

APPEARANCES:

| | |
|---|---|
| For Plaintiffs: | ROBBINS GELLER RUDMAN & DOWD LLP |
| | BY:  ASHLEY M. PRICE |
| | ELLEN GUSIKOFF STEWART |
| | NICOLE Q. GILLILAND |
| | 655 West Broadway, #1900 |
| | San Diego, California 92101 |
| | |
| | ZIMMERMAN REED LLP |
| | BY:  JUNE PINEDA HOIDAL |
| | 80 South Eighth Street, #1100 |
| | Minneapolis, Minnesota 55402 |
| | |
| For Defendants: | FAEGRE DRINKER BIDDLE & REATH LLP |
| | BY:  MATTHEW B. KILBY |
| | RORY COLLINS |
| | 90 South Seventh Street, #2200 |
| | Minneapolis, Minnesota 55402 |
| | |
| Court Reporter: | RENEE A. ROGGE, RMR-CRR |
| | United States District Courthouse |
| | 300 South Fourth St., Box 1005 |
| | Minneapolis, Minnesota 55415 |

Proceedings recorded by mechanical stenography;
Transcript produced by computer.

**P R O C E E D I N G S**

**IN OPEN COURT VIA ZOOM VIDEO CONFERENCE**

THE COURT:  Good morning, everyone.  We are on the record.

The case is Brian Mart, et al., versus Tactile Systems Technology.  The case number is 20-cv-2074.

We are holding this hearing via video conference, and I appreciate you all being here today.

Could I please have appearances, beginning with the plaintiffs?

MS. PRICE:  Sure.  This is Ashley Price with my partner Ellen Gusikoff Stewart.  We are at Robbins Geller Rudman & Dowd in our San Diego offices today, representing St. Clair County Employees Retirement System.

THE COURT:  Good morning.

MS. GUSIKOFF STEWART:  Good morning, Your Honor.

MS. HOIDAL:  Good morning, Your Honor.  June Pineda Hoidal.  I'm with the Zimmerman Reed law firm here in Minneapolis, also on behalf of plaintiffs.

MR. KILBY:  Good morning, Your Honor.  This is Matt Kilby from the Faegre Drinker firm on behalf of defendants, and with me is my colleague Rory Collins.

THE COURT:  All right.  Good morning to all of you.

And so I think we have all of the attorneys that

we're expecting here today. And I don't see anyone else -- oh, I'm sorry. We do have Ms. Gilliland from Robbins Geller as well, correct?

MS. GILLILAND: Correct. Good morning.

THE COURT: All right. Good morning.

I don't see any class members or objectors who have joined this hearing. I don't believe that we expected any.

Is that correct, Ms. Price?

MS. PRICE: That's correct, Your Honor.

THE COURT: All right. And so what we have before us today is really three motions, one for the final approval of settlement and the allocation plan -- those are two motions -- and then a third for an approval of attorneys' fees.

I have reviewed your briefs in support of these proposed orders. I do have some questions on the proposed orders; but before I go into those, I think I'll just hand it over to you, Ms. Price, to present your position in the case.

MS. PRICE: Sure. I think that, you know, this is an excellent result for the class, the $5 million recovery, in the face of very complex litigation, securities fraud litigation. And then, in this case, we have that coupled on top of needing to show that there were violations of the

Anti-Kickback Statute and False Claims Act that made it doubly complex. We thought that our claims were certainly meritorious; but in the face of a $5 million settlement and the uncertainties and delays and expenses of future litigation, this is an excellent result for the class.

I think the headline today is that with the over 22,000 notices sent out to potential class members, there are no objections to the settlement, no objections to the plan of allocation, no objections to the requested award for attorneys' fees and expenses. I think that that speaks to the approval, the class-wide approval for the settlement. The plaintiff also supports the settlement. And so I think that all of those, those together, support the final approval here.

I am happy to take any of your questions, though.

THE COURT: All right. Thank you.

Before I go into those, Mr. Kilby, do you have anything that you want to add?

MR. KILBY: Just that defendants support the settlement based on the stipulation and the papers that have been submitted, Your Honor. Thank you.

THE COURT: Thank you.

The first question I had is the motion for approval of settlement and for the plan of allocation are separate motions. It would seem to me that I could issue an

order, one order for both of those motions.

Is there a reason that you believe that I should do otherwise, Ms. Price?

MS. PRICE:  I think that one sole order is fine in this case, if that's what, if that's what the court prefers.

THE COURT:  It just seems --

MS. PRICE:  I believe that is how we presented it in our papers; but if there was some reason that you approve the settlement, but didn't approve the plan of allocation, that might be a reason to separate them out, but --

THE COURT:  Sure, sure.  All right.

Okay.  And then I wanted to make sure that there were no exclusions from the class.  So in the -- I think it's in the proposed order, but it's an exclusion of any person who would otherwise be a member, but who timely and requested exclusion.

We don't have any of those folks, am I correct?

MS. PRICE:  That's correct.

THE COURT:  Okay.  Okay.

MS. PRICE:  At the time that we submitted the proposed order, the deadline had not yet passed.  We left that language there in case somebody did submit a request to be excluded from the class.  That did not happen.

THE COURT:  Okay.  I also noted that the draft order doesn't address certifying Robbins Geller as class

counsel.  The memo requests it.  It's just -- I think it was an oversight in the draft order.

But you do want that in the order, I'm assuming?

MS. PRICE:  Yes, Your Honor.

THE COURT:  Okay.  Fair.

I also noted at the outset of the hearing that there were no class members who joined in this hearing.  I wanted to confirm -- and I just didn't go back to look -- to make sure that the publication here included the Zoom link and information.

MS. PRICE:  That's correct.  It did on the paper mailings that went out to potential class members, as well as it was available on the dedicated website that was available for class members to reference.

THE COURT:  Okay.  And then I also wanted to confirm that at this time that the defendant has satisfied the financial obligations by paying the $5 million and putting it in escrow?

MS. PRICE:  That's correct.

MR. KILBY:  We have.

THE COURT:  Okay.  Because that is included in the order as well.

Moving to the attorneys' fees, I just had a few questions there.

You had estimated that the $5 million award is

approximately 7 percent of estimated aggregate damages. It's not clear to me where that comes from. I think that would be 71.4 million or approximately, depending on my math.

Where does that number come from?

MS. PRICE: That comes from consultation with our expert.

THE COURT: Okay. And is there anything in the record or -- I'm not saying I doubt you. I'm just wondering if there is anything in the record to reference your expert report or your consultation.

MS. PRICE: No. I mean, besides the fact that we have stated that we consulted with our expert in order to come up with our plan of allocation and the approximate value of the settlement to the class-wide damages, it's not provided in an expert report anywhere in the record.

THE COURT: Okay. All right. There's also -- we talked at the initial hearing about the retention of jurisdiction, and we had a long colloquy about that.

Is there anything that you want to add on that issue, knowing that it was of concern to me? I think my concerns were addressed, and I did include it on the notice order, but I wanted to see if there's anything else you wanted to add on that issue.

MS. PRICE: I don't think that there's anything I

want to add.  I'm happy to answer any further questions.

I think, you know, we are always going to be working with anybody who is challenging their -- the decision on their claims and making sure that all valid claims get paid.  So I think, as my partner said at the initial hearing, we bend over backwards to make sure that the valid claims are being paid, and any challenges we, or deficiencies, we take the time to address them so that, you know, hopefully this never comes before you again, but -- I think that that's where we're at.

THE COURT:  Okay.  Thank you.

MS. PRICE:  Sure.

THE COURT:  So this is -- it's not going to matter for purposes of approval, but I'm curious about it.

The attorneys' fees motion goes through the lodestar comparison and analysis.  And it looks like the lodestar for the three firms together is 4.1 million, by your estimate, and that the lodestar for your lead counsel is 3.6.

Am I right about that?

MS. PRICE:  You are correct.

THE COURT:  And then you do a multiplier, which is negative .35.  And when you do that .35 multiplier, you use just the lead counsel fees.

MS. PRICE:  We did there.  We did there.

THE COURT:  It would actually look better for you or be better for you if you used everyone's.  And I was just curious about the reasoning behind that.  Again, it doesn't matter, but it caught my eye.

MS. PRICE:  I think we just, as we were drafting it, we just did lead counsel because that was, came before us as we were drafting the papers; and then once we compiled everything together, the number was greater; but, you know, in future it certainly is better for us if we included all of the counsel.

THE COURT:  I mean, and, again, I think the way in which you've calculated is reasonable, certainly, either way you do it.  I was just curious about it.  Okay.

On any of those questions, Mr. Kilby, do you have anything that you wish to add?

MR. KILBY:  A very minor point, Your Honor, with respect to the estimate of damages that is out to what percent the settlement is of the estimate of damages.

There were no estimates of damages put in the record, as opposing counsel noted.  And, of course, the amount of any damages was hotly disputed, and it would have been disputed in the litigation.  So the comment that that is not an agreed number between the parties, it's solely an estimate, that comes from plaintiffs.

THE COURT:  Yep.  Right.  And the way that I would

usually do that is to simply state in the order that that is what the plaintiffs have estimated the damages to be.  I don't think it will -- I don't think anyone would read that as "Everybody agrees that that's what the damages were."

All right.  Just one moment.

(Pause)

THE COURT:  Okay.  I don't think I have any further questions.

I do intend to approve.  I am drafting the order and using the draft orders that you provided; and they should be out very quickly, so I don't think you'll have much delay here.

So is there anything further that needs to come before the court, Ms. Price?

MS. PRICE:  No, Your Honor.  Thank you very much.

THE COURT:  Mr. Kilby?

MR. KILBY:  Nothing from defendants, and we thank you for your time today.

THE COURT:  Well, this is a really fascinating case, particularly because of the qui tam that was parallel that made some of the legal issues really interesting for the court.  So I thank you for that, but I also really, more than that, just appreciate you on getting this settled and getting a fair settlement for the class.  So I intend to approve it.  And I'm hoping to see you all in my courtroom

again.  Thank you.

MR. KILBY:  Thank you.

MS. PRICE:  Thank you.

MS. GUSIKOFF STEWART:  Thank you, Your Honor.

(Court adjourned at 10:23 a.m., 08-23-2023.)

* * *

I, Renee A. Rogge, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Certified by:  /s/Renee A. Rogge
Renee A. Rogge, RMR-CRR